**No. 22-50775**

# In the United States Court of Appeals for the Fifth Circuit

La Union del Pueblo Entero; Friendship-West Baptist Church; Anti-Defamation League Austin, Southwest, and Texoma; Southwest Voter Registration Education Project; Texas Impact; Mexican American Bar Association of Texas; Texas Hispanics Organized for Political Education; JOLT Action; William C. Velazquez Institute; James Lewin; Fiel Houston, Incorporated,

*Plaintiffs-Appellees*,

*v.*

John Scott, In His Official Capacity as Texas Secretary of State; Warren K. Paxton, In His Official Capacity as Attorney General of Texas; State of Texas,

*Defendants-Appellants*,

consolidated with
No. 22-50777

Mi Familia Vota; Marla Lopez; Marlon Lopez; Paul Rutledge,

*Plaintiffs-Appellees*,

*v.*

Gregory W. Abbott, In His Official Capacity as the Governor of Texas, John B. Scott, In His Official Capacity as Secretary of State of Texas; Warren K. Paxton, In His Official Capacity as Attorney General of Texas,

*Defendants-Appellants*,

DELTA SIGMA THETA SORORITY, INCORPORATED; HOUSTON AREA URBAN LEAGUE, THE ARC OF TEXAS; JEFFREY LAMAR CLEMMONS,

*Plaintiffs-Appellees*,

*v.*

GREGORY WAYNE ABBOTT, IN HIS OFFICIAL CAPACITY AS THE GOVERNOR OF TEXAS, WARREN KENNETH PAXTON, JR., IN HIS OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF TEXAS,

*Defendants-Appellants*,

MI FAMILIA VOTA; MARLA LOPEZ; MARLON LOPEZ; PAUL RUTLEDGE,

*Plaintiffs-Appellees*,

*v.*

GREG ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS; JOHN B. SCOTT, IN HIS OFFICIAL CAPACITY AS TEXAS SECRETARY OF STATE; WARREN KENNETH PAXTON, JR., IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS,

*Defendants-Appellants*,

consolidated with
No. 22-50778

LA UNION DEL PUEBLO ENTERO; ET AL,

*Plaintiffs*,

*v.*

GREGORY W. ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF TEXAS; ET AL,

*Defendants*,

OCA-GREATER HOUSTON; LEAGUE OF WOMEN VOTERS OF TEXAS; REVUP-TEXAS; WORKERS DEFENSE ACTION FUND,

*Plaintiffs-Appellees,*

*v.*

JOHN B. SCOTT, IN HIS OFFICIAL CAPACITY AS TEXAS SECRETARY OF STATE, KEN PAXTON, TEXAS ATTORNEY GENERAL,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

## DEFENDANTS-APPELLANTS' RECORD EXCERPTS

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

JUDD E. STONE II
Solicitor General

WILLIAM F. COLE
Assistant Solicitor General
William.Cole@oag.texas.gov

Counsel for Defendants-Appellants

# TABLE OF CONTENTS

1.  Docket Sheet (ROA.1-111) .......................................................... Tab 1
2.  Notice of Appeal (ROA.10857-58) ............................................. Tab 2
3.  Notice of Appeal (ROA.10859-60)............................................. Tab 3
4.  Notice of Appeal (ROA.10861-62) ............................................ Tab 4
5.  Order on State Defendants' Motion to Dismiss MFV Plaintiffs'
    Second Amended Complaint (ROA.10589-10662)................................. Tab 5
6.  Order On State Defendants' Motion to Dismiss OCA Plaintiffs'
    Second Amended Complaint (ROA.10663-10723) ................................ Tab 6
7.  Order On State Defendants' Motion to Dismiss LUPE Plaintiffs'
    Second Amended Complaint (ROA.10724-92) ......................................... Tab 7

TAB 1: DOCKET SHEET (ROA.1-111)

CONSOLIDATED,ESC,INTAPP,LEAD_CASE

# U.S. District Court [LIVE]
# Western District of Texas (San Antonio)
# CIVIL DOCKET FOR CASE #: 5:21-cv-00844-XR

| | |
|---|---|
| La Union Del Pueblo Entero, et al v. Gregory W. Abbott, et al | Date Filed: 09/03/2021 |
| Assigned to: Judge Xavier Rodriguez | Jury Demand: Both |
| Case in other court:  5CCCA, 21-51145 (Doc. 123) | Nature of Suit: 441 Civil Rights: Voting |
| 5CCA, 22-50435 (Doc. 426) | Jurisdiction: Federal Question |
| 5CCA, 22-50732 (Doc. 451) | |
| 5CCA, 22-50775 (Doc. 457) | |
| 5CCA, 22-50777 (Doc. 458) | |
| 5CCA, 22-50778 (Doc. 459) | |

Cause: 42:1973 Voting Rights Act

**Plaintiff**

**La Union Del Pueblo Entero**          represented by          **Kenneth E. Broughton , Jr.**
Reed Smith, LLP
811 Main Street, 17th Floor
Houston, TX 77002
713-469-3819
Fax: 713-469-3899
Email: kbroughton@reedsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nina Perales**
MALDEF [Mexican American Legal Defense
& Educational Fund]
110 Broadway Street, #300
San Antonio, TX 78205
(210) 224-5476
Fax: 210/224-5382
Email: nperales@maldef.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Victor Genecin**
NAACP Legal Defense & Educational Fund,
Inc.
40 Rector Street, Fifth Floor
New York, NY 10006
(212) 965-2200
Fax: (212) 226-7592
Email: vgenecin@naacpldf.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher H. Bell**

Fried, Frank, Harris, Shriver & Jacobson LLP
801 17th Street, NW
Washington, DC 20006
(202) 639-7000
Fax: (202) 639-7003
Email: christopher.bell@friedfrank.com
*TERMINATED: 01/28/2022*
*ATTORNEY TO BE NOTICED*

**Jasmine M. Johnson**
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004
(212) 859-8000
Fax: (212) 859-4000
*ATTORNEY TO BE NOTICED*

**Jason S. Kanterman**
Fried, Frank, Harris, Shriver, & Jacobson
LLP
One New York Plaza
New York, NY 10004
212-859-8000
Email: jason.kanterman@friedfrank.com
*ATTORNEY TO BE NOTICED*

**Jessica M. Choi**
5 Faith
Irvine, CA 92612
949-735-1889
Email: jmc2372@columbia.edu
*TERMINATED: 10/22/2021*
*ATTORNEY TO BE NOTICED*

**Julia Renee Longoria**
Mexican American Legal Defense and
Educational Fund
110 Broadway
Suite 300
San Antonio, TX 78205
210-224-5476
Fax: 214-224-5382
Email: jlongoria@maldef.org
*ATTORNEY TO BE NOTICED*

**Kevin Zhen**
Fried. Frank. Harris. Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004
(212) 859-8000
Fax: (212) 859-4000
Email: kevin.zhen@friedfrank.com
*ATTORNEY TO BE NOTICED*

**Michael C. Keats**
Fried. Frank. Harris. Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004
(212) 859-8000
Fax: (212) 859-4000
Email: michael.keats@friedfrank.com
*ATTORNEY TO BE NOTICED*

**Rebecca L. Martin**
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004
(212) 859-8000
Fax: (212) 859-4000
Email: rebecca.martin@friedfrank.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Friendship-West Baptist Church**       represented by **Elizabeth Yvonne Ryan**
Weil, Gotshal & Manges LLP
200 Crescent Court
Suite 300
Dallas, TX 75201
(214) 746-8158
Fax: (214) 746-7777
Email: liz.ryan@weil.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul R. Genender**
Weil, Gotshal & Manges L.L.P.
200 Crescent Court
Suite 300
Dallas, TX 75201-6950
214.746.7877
Fax: 214.746.7777
Email: paul.genender@weil.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sean Morales-Doyle**
Brennan Center for Justice
120 Broadway
Suite 1750
New York, NY 10271
646-292-8363

Email: morales-doyles@brennan.law.nyu.edu
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Victor Genecin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander P. Cohen**
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8020
Fax: (212) 310-8007
Email: alexander.cohen@weil.com
*ATTORNEY TO BE NOTICED*

**Andrew B. Garber**
Brennan Center for Justice at NYU School of
Law
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8310
Fax: (212) 463-7308
Email: andrew.garber@nyu.edu
*ATTORNEY TO BE NOTICED*

**Eliza Sweren-Becker**
Brennan Center for Justice at NYU School of
Law
120 Broadway, Suite 1750
New York, NY 10271
(646) 925-8765
Fax: (212) 463-7308
Email: sweren-beckere@brennan.law.nyu.edu
*ATTORNEY TO BE NOTICED*

**Jasleen K. Singh**
Brennan Center for Justice
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8389
Fax: (212) 463-7308
Email: jasleen.singh@nyu.edu
*ATTORNEY TO BE NOTICED*

**Matthew Berde**
Weil Gotshal & Manges LLP
200 Crescent Court, Suite 300
Dallas, TX 75201
(214) 746-7889
Fax: (214) 746-7777

Email: matt.berde@weil.com
*ATTORNEY TO BE NOTICED*

**Patrick A. Berry**
Brennan Center for Justice at NYU School of
Law
120 Broadway, Suite 1750
New York, NY 10271
(646) 925-8574
Fax: (212) 463-7308
Email: patrick.berry@nyu.edu
*ATTORNEY TO BE NOTICED*

**Plaintiff**

| | | |
|---|---|---|
| **The Anti-Defamation League Austin, Southwest, and Texoma** | represented by | **Elizabeth Yvonne Ryan** (See above for address) *LEAD ATTORNEY* *ATTORNEY TO BE NOTICED* |

**Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul R. Genender**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sean Morales-Doyle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Victor Genecin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander P. Cohen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew B. Garber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eliza Sweren-Becker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jasleen K. Singh**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Matthew Berde**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick A. Berry**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Southwest Voter Registration Education Project**              represented by    **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Victor Genecin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher H. Bell**
(See above for address)
*TERMINATED: 01/28/2022*
*ATTORNEY TO BE NOTICED*

**Jasmine M. Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jason S. Kanterman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jessica M. Choi**
(See above for address)
*TERMINATED: 10/22/2021*
*ATTORNEY TO BE NOTICED*

**Julia Renee Longoria**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kevin Zhen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael C. Keats**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rebecca L. Martin**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Texas Impact**                                    represented by    **Danielle V. Ahlrich**
Reed Smith LLP
401 Congress Avenue, Suite 1800
Austin, TX 78701
(512) 623-1801
Fax: (512) 623-1802
Email: dahlrich@reedsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Yvonne Ryan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Paul R. Genender**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sean Morales-Doyle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander P. Cohen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew B. Garber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eliza Sweren-Becker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jasleen K. Singh**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Berde**
(See above for address)
*ATTORNEY TO BE NOTICED*

Patrick A. Berry
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mexican American Bar Association of Texas**                    represented by    **Danielle V. Ahlrich**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Victor Genecin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher H. Bell**
(See above for address)
*TERMINATED: 01/28/2022*
*ATTORNEY TO BE NOTICED*

**Jasmine M. Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jason S. Kanterman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jessica M. Choi**
(See above for address)
*TERMINATED: 10/22/2021*
*ATTORNEY TO BE NOTICED*

**Julia Renee Longoria**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kevin Zhen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael C. Keats**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rebecca L. Martin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Texas Hispanics Organized for Political**
**Education**

represented by **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Victor Genecin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher H. Bell**
(See above for address)
*TERMINATED: 01/28/2022*
*ATTORNEY TO BE NOTICED*

**Jasmine M. Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jason S. Kanterman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jessica M. Choi**
(See above for address)
*TERMINATED: 10/22/2021*
*ATTORNEY TO BE NOTICED*

**Julia Renee Longoria**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kevin Zhen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael C. Keats**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rebecca L. Martin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**JOLT Action**

represented by **Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Victor Genecin**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher H. Bell**
(See above for address)
*TERMINATED: 01/28/2022*
*ATTORNEY TO BE NOTICED*

**Jasmine M. Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jason S. Kanterman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jessica M. Choi**
(See above for address)
*TERMINATED: 10/22/2021*
*ATTORNEY TO BE NOTICED*

**Julia Renee Longoria**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kevin Zhen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael C. Keats**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rebecca L. Martin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**William C. Velasquez Institute**                    represented by    **Danielle V. Ahlrich**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Victor Genecin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher H. Bell**
(See above for address)
*TERMINATED: 01/28/2022*
*ATTORNEY TO BE NOTICED*

**Jasmine M. Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jason S. Kanterman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jessica M. Choi**
(See above for address)
*TERMINATED: 10/22/2021*
*ATTORNEY TO BE NOTICED*

**Julia Renee Longoria**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kevin Zhen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael C. Keats**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rebecca L. Martin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**James Lewin**                    represented by   **Christian Dashaun Menefee**
                                    Harris County Attorney's Office
                                    1019 Congress, 15th Floor
                                    Houston, TX 77002
                                    (713) 755-5101
                                    Fax: (713) 755-8924
                                    Email: Christian.Menefee@cao.hctx.net
                                    *LEAD ATTORNEY*
                                    *ATTORNEY TO BE NOTICED*

                                    **Jonathan Gabriel Chaim Fombonne**
                                    Harris County Attorneys Office
                                    1019 Congress, 15th Floor
                                    Houston, TX 77002
                                    (713) 274-5102
                                    Fax: (713) 755-8924
                                    Email: jonathan.fombonne@cao.hctx.net

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sameer Singh Birring**
Harris County Attorney's Office
1019 Congress
15th Floor
Houston, TX 77002
(713) 274-5142
Email: sameer.birring@harriscountytx.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sean Morales-Doyle**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Victor Genecin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander P. Cohen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew B. Garber**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eliza Sweren-Becker**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jasleen K. Singh**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew Berde**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Patrick A. Berry**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Fiel Houston, Inc.**                    represented by  **Danielle V. Ahlrich**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Nina Perales**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Victor Genecin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Christopher H. Bell**
(See above for address)
*TERMINATED: 01/28/2022*
*ATTORNEY TO BE NOTICED*

**Jasmine M. Johnson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jason S. Kanterman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jessica M. Choi**
(See above for address)
*TERMINATED: 10/22/2021*
*ATTORNEY TO BE NOTICED*

**Julia Renee Longoria**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Kevin Zhen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael C. Keats**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Rebecca L. Martin**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Mi Familia Vota**                    represented by  **Ben Clements**
Free Speech For People
1320 Centre. St. #405

Newton, MA 02459
(617) 244-0234
Fax: (512) 628-0142
Email: bclements@freespeechforpeople.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Danielle V. Ahlrich**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura E. Rosenbaum**
Stoel Rives LLP
760 S.W. 9th Avenue, Suite 3000
Portland, OR 97205
(503) 294-9642
Fax: (503) 220-2480
Email: laura.rosenbaum@stoel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Victor Genecin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wendy J. Olson**
Stoel Rives LLP
101 S. Capitol Blvd, Suite 1900
Boise, ID 83702
(208) 389-9000
Fax: (208) 389-9040
Email: wendy.olson@stoel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bradley R. Prowant**
Stoel Rives LLP
33 S. Sixth Street, Suite 4200
Minneapolis, MN 55402-3722
(612) 373-8800
Fax: (612) 373-8881
Email: bradley.prowant@stoel.com
*ATTORNEY TO BE NOTICED*

**Courtney M. Hostetler**
Free Speech For People
1320 Centre. St. #405
Newton, MA 02459
(617) 249-3015
Fax: (512) 628-0142
Email: chostetler@freespeechforpeople.org

*ATTORNEY TO BE NOTICED*

**Elijah M. Watkins**
Stoel Rives LLP
101 S. Capitol Blvd., Ste. 1900
Suite 1900
Boise, ID 83702
208-389-9000
Fax: 208-389-9040
Email: elijah.watkins@stoel.com
*ATTORNEY TO BE NOTICED*

**John Bonifaz**
Free Speech For People
1320 Centre. St. #405
Newton, MA 02459
(617) 244-0234
Fax: (512) 628-0142
Email: jbonifaz@freespeechforpeople.org
*ATTORNEY TO BE NOTICED*

**Marc T. Rasich**
Stoel Rives LLP
201 S. Main Street, Suite 1100
Salt Lake City, UT 84111
(801) 328-3131
Fax: (801) 578-6969
Email: marc.rasich@stoel.com
*TERMINATED: 04/19/2022*
*ATTORNEY TO BE NOTICED*

**Mark L. Bieter**
Stoel Rives LLP
101 S. Capitol Blvd., Suite 1900
Boise, ID 83702
(208) 389-9000
Fax: (208) 389-9040
Email: mark.bieter@stoel.com
*ATTORNEY TO BE NOTICED*

**Ronald A. Fein**
Free Speech For People
1320 Centre. St. #405
Newton, MA 02459
(617) 244-0234
Fax: (512) 628-0142
Email: rfein@freespeechforpeople.org
*ATTORNEY TO BE NOTICED*

**Sean Michael Lyons**
Lyons & Lyons, PC
237 W Travis St
Ste 100

San Antonio, TX 78205
2102255251
Fax: 2102256545
Email: sean@lyonsandlyons.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Marla Lopez**                                 represented by  **Ben Clements**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura E. Rosenbaum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Victor Genecin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wendy J. Olson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bradley R. Prowant**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Courtney M. Hostetler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elijah M. Watkins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Bonifaz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marc T. Rasich**
(See above for address)
*TERMINATED: 04/19/2022*
*ATTORNEY TO BE NOTICED*

**Mark L. Bieter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ronald A. Fein**

(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Michael Lyons**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Marlon Lopez**                                    represented by  **Ben Clements**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Danielle V. Ahlrich**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura E. Rosenbaum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Victor Genecin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wendy J. Olson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bradley R. Prowant**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Courtney M. Hostetler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elijah M. Watkins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Bonifaz**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marc T. Rasich**
(See above for address)
*TERMINATED: 04/19/2022*
*ATTORNEY TO BE NOTICED*

**Mark L. Bieter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ronald A. Fein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Michael Lyons**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Paul Rutledge**                    represented by   **Ben Clements**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Danielle V. Ahlrich**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Laura E. Rosenbaum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Victor Genecin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wendy J. Olson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Bradley R. Prowant**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Courtney M. Hostetler**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Elijah M. Watkins**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John Bonifaz**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Marc T. Rasich**
(See above for address)
*TERMINATED: 04/19/2022*
*ATTORNEY TO BE NOTICED*

**Mark L. Bieter**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Ronald A. Fein**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Sean Michael Lyons**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Consol Plaintiff**

**Houston Justice**
*TERMINATED: 02/23/2022*

represented by **Georgina Yeomans**
NAACP Legal Defense & Educational Fund, Inc.
700 14th Street N.W. Suite 600
Washington, DC 20005
(202) 682-1300
Fax: (202) 682-1312
Email: gyeomans@naacpldf.org
*TERMINATED: 02/23/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**J. Keely Dulaney**
Reed Smith LLP
811 Main Street, Suite 1700
Houston, TX 77002
(713) 469-3888
Fax: (713) 469-3899
Email: kpippin@reedsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer A. Holmes**
NAACP Legal Defense & Educational Fund, Inc.
700 14th Street N.W. Suite 600
Washington, DC 20005
(202) 682-1300
Fax: (202) 682-1312
Email: jholmes@naacpldf.org

*TERMINATED: 02/23/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kathryn Sadasivan**
NAACP Legal Defense & Educational Fund,
Inc.
40 Rector Street, Fifth Floor
New York, NY 10006
(212) 965-2200
Fax: (212) 226-7592
Email: ksadasivan@naacpldf.org
*TERMINATED: 02/23/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth E. Broughton , Jr.**
(See above for address)
*TERMINATED: 02/23/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Liliana Zaragoza**
NAACP Legal Defense & Educational Fund,
Inc.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
Fax: (212) 226-7592
Email: lzaragoza@naacpldf.org
*TERMINATED: 02/23/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lora Spencer**
Reed Smith LLP
811 Main Street
Suite 1700
Houston, TX 77002
713-469-3800
Fax: 713-469-3899
Email: lspencer@reedsmith.com
*TERMINATED: 01/12/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mohammed A. Badat**
NAACP Legal Defense & Educational Fund,
Inc.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
Fax: (212) 226-7592

Email: abadat@naacpldf.org
*TERMINATED: 02/23/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah C. Stewart**
Reed Smith, LLP
2850 N. Harwood Street, Suite 1500
Dallas, TX 75201
469-680-4228
Fax: 469-680-4299
Email: sarah.stewart@reedsmith.com
*TERMINATED: 02/23/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shira Wakschlag**
The Arc of the United States
1825 K Street, Nw, Suite 1200
Washington, DC 20006
(202) 534-3708
Fax: (202) 534-3731
Email: wakschlag@thearc.org
*TERMINATED: 02/23/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**Houston Area Urban League**          represented by  **Georgina Yeomans**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**J. Keely Dulaney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer A. Holmes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kathryn Sadasivan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth E. Broughton , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Liliana Zaragoza**
(See above for address)
*TERMINATED: 05/31/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lora Spencer**
(See above for address)
*TERMINATED: 01/12/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mohammed A. Badat**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roswill Mejia**
Reed Smith LLP
401 Congress Avenue
Suite 1800
Austin, TX 78701
United Sta
512-409-2718
Fax: 512-623-1802
Email: rmejia@reedsmith.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah C. Stewart**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shira Wakschlag**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ciara A. Sisco**
NAACP Legal Defense & Educational Fund,
Inc.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
Fax: (212) 226-7592
Email: csisco@naacpldf.org
*ATTORNEY TO BE NOTICED*

**R. Gary Spencer**
NAACP Legal Defense & Educational Fund,
Inc.
40 Rector Street, 5th Floor

New York, NY 10006
(212) 965-2200
Fax: (212) 226-7592
Email: gspencer@naacpldf.org
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**Delta Sigma Theta Sorority Inc.**                represented by    **Georgina Yeomans**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**J. Keely Dulaney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer A. Holmes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kathryn Sadasivan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth E. Broughton , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Liliana Zaragoza**
(See above for address)
*TERMINATED: 05/31/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lora Spencer**
(See above for address)
*TERMINATED: 01/12/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mohammed A. Badat**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roswill Mejia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah C. Stewart**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shira Wakschlag**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**The Arc of Texas**                    represented by    **Georgina Yeomans**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**J. Keely Dulaney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer A. Holmes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kathryn Sadasivan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth E. Broughton , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Liliana Zaragoza**
(See above for address)
*TERMINATED: 05/31/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lora Spencer**
(See above for address)
*TERMINATED: 01/12/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mohammed A. Badat**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roswill Mejia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah C. Stewart**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shira Wakschlag**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**Jeffrey Lamar Clemmons**              represented by    **Georgina Yeomans**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**J. Keely Dulaney**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer A. Holmes**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kathryn Sadasivan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth E. Broughton , Jr.**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Liliana Zaragoza**
(See above for address)
*TERMINATED: 05/31/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lora Spencer**
(See above for address)
*TERMINATED: 01/12/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mohammed A. Badat**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Roswill Mejia**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarah C. Stewart**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Shira Wakschlag**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**LULAC Texas**                    represented by   **Christopher Dooley Dodge**
Elias Law Group LLP
10 G Street NE, Suite 600
Washington, DC 20002
202-968-4490
Fax: (202) 968-4498
Email: cdodge@elias.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Domingo A. Garcia**
The Law Offices of Domingo A. Garcia, P.C.
1111 W. Mockingbird Lane, Suite 1200
Dallas, TX 75247
(214) 941-8300
Fax: (214) 943-7536
Email: domingo@dgley.com
*TERMINATED: 05/17/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elena Rodriguez Armenta**
Elias Law Group LLP
10 G St Ne, Suite 600
Washington, DC 20002
(202) 968-4490
Fax: (202) 968-4498
Email: erodriguezarmenta@elias.law
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Graham White**
Elias Law Group
10 G Street NE
Washington, DC 20002
(202) 968-4507
Fax: (202) 968-4498
Email: gwhite@elias.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Russell Hardin**
Perkins Coie, LLP
500 N. Akard Street, Suite 3300
Dallas, TX 75201
(214) 965-7743
Email: johnhardin@perkinscoie.com
*TERMINATED: 09/06/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Patrick Hawley**
Elias Law Group LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
(206) 656-0179
Fax: (202) 968-4498
Email: jhawley@elias.law
*TERMINATED: 08/19/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph N. Posimato**
Elias Law Group LLP
10 G Street Ne, Suite 600
Washington, DC 20002
(202) 968-4591
Fax: (202) 968-4498
Email: jposimato@elias.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kathryn Elizabeth Yukevich**
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, TX 75201
(214) 978-4000
Fax: (214) 978-4044
Email: kyukevich@mckoolsmith.com
*TERMINATED: 04/04/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc Erik Elias**
Elias Law Group LLP
10 G St. Ne, Suite 600
Washington, DC 20002
(202) 968-4490
Fax: (202) 968-4498
Email: melias@elias.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Meaghan E. Mixon**
Elias Law Group LLP
10 G Street NE, Suite 600
Washington, DC 20002
(202) 968-4662
Email: mmixon@elias.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah B. Baron**
Elias Law Group LLP
10 G St. Ne, Suite 600
Washington, DC 20002
(202) 968-4556
Fax: (202) 968-4498
Email: nbaron@elias.law
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Uzoma N. Nkwonta**
Elias Law Group LLP
10 G Street NE, Suite 600
Washington, DC 20002
(202) 968-4517
Email: unkwonta@elias.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniela Lorenzo**
Elias Law Group LLP
10 G Street Ne, Suite 600
Washington, DC 20002
(202) 968-4490
Fax: (202) 968-4498
Email: dlorenzo@elias.law
*ATTORNEY TO BE NOTICED*

**Haley Costello Essig**
Ellis Law Group LLP
10 G St NE, Suite 600
Washington, DC 20002
(202) 968-4490

Fax: (202) 968-4498
Email: hessig@elias.law
*TERMINATED: 06/15/2022*
*ATTORNEY TO BE NOTICED*

**James A. Rodman**
Rodman Law Office
5608 Parkcrest Drive, Suite 200
Austin, TX 78731
(512) 481-0400
Fax: (512) 481-0500
Email: jimrodman@rodmanlawoffice.com
*ATTORNEY TO BE NOTICED*

**Marcos Mocine-Mcqueen**
Elias Law Group LLP
10 G St. Ne Suite 600
Washington, DC 20002
(202) 968-4492
Fax: (202) 968-4498
Email: mmcqueen@elias.law
*ATTORNEY TO BE NOTICED*

**Michael B. Jones**
Elias Law Group LLP
10 G St. NE, Suite 600
Washington, DC 20002
(202) 985-1752
Fax: (202) 968-4498
Email: mjones@elias.law
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**Voto Latino**                    represented by  **Christopher Dooley Dodge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elena Rodriguez Armenta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Graham White**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Russell Hardin**
(See above for address)
*TERMINATED: 09/06/2022*
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Jonathan Patrick Hawley**
(See above for address)
*TERMINATED: 08/19/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph N. Posimato**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kathryn Elizabeth Yukevich**
(See above for address)
*TERMINATED: 04/04/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc Erik Elias**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Meaghan E. Mixon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah B. Baron**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Uzoma N. Nkwonta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniela Lorenzo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Haley Costello Essig**
(See above for address)
*TERMINATED: 06/15/2022*
*ATTORNEY TO BE NOTICED*

**James A. Rodman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marcos Mocine-Mcqueen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael B. Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**Texas Alliance for Retired Americans**     represented by     **Christopher Dooley Dodge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elena Rodriguez Armenta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Graham White**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Russell Hardin**
(See above for address)
*TERMINATED: 09/06/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Patrick Hawley**
(See above for address)
*TERMINATED: 08/19/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph N. Posimato**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kathryn Elizabeth Yukevich**
(See above for address)
*TERMINATED: 04/04/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc Erik Elias**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Meaghan E. Mixon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah B. Baron**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Uzoma N. Nkwonta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniela Lorenzo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Haley Costello Essig**
(See above for address)
*TERMINATED: 06/15/2022*
*ATTORNEY TO BE NOTICED*

**James A. Rodman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marcos Mocine-Mcqueen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael B. Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**Texas AFT**                          represented by  **Christopher Dooley Dodge**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elena Rodriguez Armenta**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Graham White**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James A. Rodman**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John Russell Hardin**
(See above for address)
*TERMINATED: 09/06/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jonathan Patrick Hawley**
(See above for address)
*TERMINATED: 08/19/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Joseph N. Posimato**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kathryn Elizabeth Yukevich**
(See above for address)
*TERMINATED: 04/04/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marc Erik Elias**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Meaghan E. Mixon**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Noah B. Baron**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Uzoma N. Nkwonta**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniela Lorenzo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Haley Costello Essig**
(See above for address)
*TERMINATED: 06/15/2022*
*ATTORNEY TO BE NOTICED*

**Marcos Mocine-Mcqueen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael B. Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**OCA-Greater Houston**                    represented by    **Adriel Cepeda-Derieux**
American Civil Liberties Union Foundation
125 Broadway Street, 18th Floor
New York, NY 10004
(212) 284-7334
Email: acepedaderieux@aclu.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andre I. Segura**
Law Office of Andre Ivan Segura
5225 Katy Freeway, Suite 350
Houston, TX 77007
(713) 942-8146
Fax: (713) 942-8966
Email: asegura@aclutx.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Brian Dimmick**
American Civil Liberties Union Foundation,
Inc.
915 15th St Nw
Washington, DC 20005
(202) 731-2395
Email: bdimmick@aclu.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hani Mirza**
Texas Civil Rights Project
1412 Main Street
Suite 608
Dallas, TX 75202
972-333-9200 ext. 171
Fax: 972-957-7867
Email: hani@texascivilrightsproject.org
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Jerry Vattamala**
Asian American Legal Defense and
Education Fund (AALDEF)
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932
Fax: (212) 966-4303
Email: jvattamala@aaldef.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jessica Ring Amunson**
Jenn & Block LLP
1099 New York Avenue, #900
Washington, DC 20001
(202) 639-6000
Fax: (202) 639-6066
Email: jamunson@jenner.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lia Sifuentes Davis**
Disability Rights Texas
2222 West Braker Lane
Austin, TX 78758
512-454-4816
Fax: 512-454-3999
Email: ldavis@drtx.org
*TERMINATED: 07/18/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lisa A. Snead**
Disability Rights Texas
2222 W. Braker Lane
Austin, TX 78758
512-454-4816
Fax: 5120302-4936
Email: lsnead@drtx.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lucia Romano**
Disability Rights Texas
1500 McGowen - Ste 100
Houston, TX 77004
(713) 974-7691
Fax: 713/974-7695
Email: lromano@drtx.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mimi M.D. Marziani**
Texas Civil Rights Project
1405 Montopolis Drive
Austin, TX 78741
512-474-5073 x108
Fax: 512-474-0726
Email: mimi@texascivilrightsproject.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Patrick Stegemoeller**
Asian American Legal Defense and
Education Fund
99 Hudson St. 12th Floor
New York, NY 10013
(212) 966-5932
Fax: (212) 966-4303
Email: pstegemoeller@aaldef.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ryan V. Cox**
Texas Civil Rights Project
2911 N. Main Ave.
San Antonio, TX 78212
210-268-6286
Email: ryan@texascivilrightsproject.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samantha Osaki**
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(909) 815-9291
Email: sosaki@aclu.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Savannah Kumar**
ACLU Foundation of Texas
P.O. Box 8306
Houston, TX 77288
(713) 942-8146
Fax: (713) 942-8966
Email: skumar@aclutx.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sophia Lin Lakin**
American Civil Liberties Union Foundation,
Inc.

125 Broad Street, 18th Floor
New York, NY 10004
(212) 519-7836
Fax: 212-549-2654
Email: slakin@aclu.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Susana Lorenzo-Giguere**
Asian American Legal Defense and
Education Fund
99 Hudson St 12th Floor
New York City, NY 10013
(212) 966-5932
Fax: (212) 966-4303
Email: slorenzo-giguere@aaldef.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas Paul Buser-Clancy**
ACLU Foundation of Texas
P.O. Box 8306
Houston, TX 77288
713-942-8146
Fax: 713-942-8966
Email: tbuser-clancy@aclutx.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Urja Mittal**
Jenner & Block LLP
1099 New York Avenue, #900
Washington, DC 20001
(202) 639-6000
Fax: (202) 639-6066
Email: umittal@jenner.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Dolling**
Texas Civil Rights Project
2202 Alabama Street
Houston, TX 77004
832-767-3650
Fax: 632-554-9981
Email: zachary@texascivilrightsproject.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ari Savitzky**
American Civil Liberties Union Foundation,
Inc.
125 Broad Street, 18th Floor

New York, NY 10004
(212) 549-2681
Email: asavitzky@aclu.org
*ATTORNEY TO BE NOTICED*

**Ashley Alcantara Harris**
ACLU Foundation of Texas
P.O. Box 8306
Houston, TX 77288
713-942-8146
Email: aharris@aclutx.org
*ATTORNEY TO BE NOTICED*

**Peter Hofer**
Disability Rights Texas
2222 W. Braker Ln.
Austin, TX 78758
(512) 454-4816
Fax: 512/454-3999
Email: phofer@disabilityrightstx.org
*ATTORNEY TO BE NOTICED*

**Sarah Xiyi Chen**
Texas Civil Rights Project
1902 Corona Dr
Austin, TX 78723
626-758-0719
Email: schen@texascivilrightsproject.org
*ATTORNEY TO BE NOTICED*

**Sophia Cai**
Jenner & Block LLP
455 Market Street, #2100
San Francisco, CA 94105
(628) 267-6800
Fax: (628) 267-6859
Email: SCai@jenner.com
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

| | | |
|---|---|---|
| **League of Women Voters of Texas** | represented by | **Adriel Cepeda-Derieux**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Andre I. Segura**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Ari Savitzky**<br>(See above for address)<br>*LEAD ATTORNEY* |

*ATTORNEY TO BE NOTICED*

**Hani Mirza**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lia Sifuentes Davis**
(See above for address)
*TERMINATED: 07/18/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lucia Romano**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mimi M.D. Marziani**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ryan V. Cox**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samantha Osaki**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Savannah Kumar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sophia Lin Lakin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas Paul Buser-Clancy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Dolling**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Alcantara Harris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lisa A. Snead**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Hofer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**REVUP-Texas**                    represented by  **Adriel Cepeda-Derieux**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andre I. Segura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ari Savitzky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hani Mirza**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lia Sifuentes Davis**
(See above for address)
*TERMINATED: 07/18/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lucia Romano**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mimi M.D. Marziani**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ryan V. Cox**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samantha Osaki**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Savannah Kumar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sophia Lin Lakin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas Paul Buser-Clancy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Dolling**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Alcantara Harris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lisa A. Snead**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Hofer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**Texas Organizing Project**                    represented by    **Adriel Cepeda-Derieux**
*TERMINATED: 04/14/2022*                                        (See above for address)
                                                               *TERMINATED: 04/14/2022*
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Andre I. Segura**
                                                               (See above for address)
                                                               *TERMINATED: 04/14/2022*
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Ari Savitzky**
                                                               (See above for address)

*TERMINATED: 04/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hani Mirza**
(See above for address)
*TERMINATED: 04/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lia Sifuentes Davis**
(See above for address)
*TERMINATED: 04/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lucia Romano**
(See above for address)
*TERMINATED: 04/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mimi M.D. Marziani**
(See above for address)
*TERMINATED: 04/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ryan V. Cox**
(See above for address)
*TERMINATED: 04/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samantha Osaki**
(See above for address)
*TERMINATED: 04/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Savannah Kumar**
(See above for address)
*TERMINATED: 04/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sophia Lin Lakin**
(See above for address)
*TERMINATED: 04/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas Paul Buser-Clancy**

(See above for address)
*TERMINATED: 04/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Dolling**
(See above for address)
*TERMINATED: 04/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Alcantara Harris**
(See above for address)
*TERMINATED: 04/14/2022*
*ATTORNEY TO BE NOTICED*

**Lisa A. Snead**
(See above for address)
*TERMINATED: 04/14/2022*
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**Workers Defense Action Fund**    represented by    **Adriel Cepeda-Derieux**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Andre I. Segura**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ari Savitzky**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Hani Mirza**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lia Sifuentes Davis**
(See above for address)
*TERMINATED: 07/18/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Lucia Romano**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mimi M.D. Marziani**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ryan V. Cox**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Samantha Osaki**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Savannah Kumar**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sophia Lin Lakin**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas Paul Buser-Clancy**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zachary Dolling**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ashley Alcantara Harris**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lisa A. Snead**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Peter Hofer**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consol Plaintiff**

**United States Of America**                  represented by **Daniel Joshua Freeman**
U.S. Department of Justice
950 Pennsylvania Ave, 4CON 8.143
Washington, DC 20530
(202) 305-4355

Email: daniel.freeman@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jennifer Jaeseon Yun**
U.S. Department of Justice
150 M Street NE, 8th Floor
Washington, DC 20002
202-305-5533
Email: jennifer.yun@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael Elliot Stewart**
U.S. Department of Justice
950 Pennsylvania Ave. NW, 4CON 8th Floor
Washington, DC 20530
202-598-7233
Email: michael.stewart3@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard Alan Dellheim**
US Department of Justice
9150 M Street, NE/8.1815
Washington, DC 20530
202.305.1734
Email: richard.dellheim@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas Christian Herren , Jr.**
U.S. Department of Justice
Civil Rights Division
150 M Street NE, Room 8.1807
Washington, DC 20530
(202) 514-1416
Email: chris.herren@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Dana Paikowsky**
U.S. Department of Justice
4 Constitution Square
Washington, DC 20503
(202) 353-5225
Email: dana.paikowsky@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Jaywin Singh Malhi**
United States Department of Justice
Civil Rights Division
950 Pennsylvania Avenue NW

Washington, DC 20530
(800) 253-3931
Fax: (202) 307-3961
Email: jaywin.malhi@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Laura Brady Bender**
U.S. Department of Justice
950 Pennsylvania Ave., NW
4CON 8th Floor
Washington, DC 20530
(202) 353-5373
Email: laura.bender@usdoj.gov
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

<table>
<tr><td>

**Gregory W. Abbott**
*in his official capacity as Govenor of Texas*

</td><td>represented by</td><td>

**Jack Buckley Disorbo**
Office of the Attorney General of Texas
209 W. 14th St. Room 703i
Austin
Austin, TX 78701
(713) 638-7407
Email: jack.disorbo@oag.texas.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric A. Hudson**
Terrazas, PLLC
1001 S. Capital of Texas Highway
Austin, TX 78746
5122949891
Email: ehudson@terrazaspllc.com
*ATTORNEY TO BE NOTICED*

**Jeffrey Michael White**
Law Office of Jeffrey M. White, PLLC
7804 Yokohama Ter.
Austin, TX 78744
817-688-1301
Email: jeff.white@jeffwhitelaw.com
*TERMINATED: 04/29/2022*
*ATTORNEY TO BE NOTICED*

**Patrick K. Sweeten**
Office of the Attorney General of Texas
P.O. Box 12548
Mc-009
Austin, TX 78711-2548
512-463-4139
Fax: 512-457-4110

</td></tr>
</table>

Email: Patrick.Sweeten@oag.texas.gov
*ATTORNEY TO BE NOTICED*

**William Thomas Thompson**
Office of the Attorney General
Special Litigation Unit
P.O. Box 12548
Mc 009
Austin, TX 78711-2548
512-936-2567
Email: Will.Thompson@oag.texas.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**Jose A. Esparza**
*in his official capacity as Deputy Secretary*
*of the State of Texas*

represented by **Eric A. Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey Michael White**
(See above for address)
*TERMINATED: 04/29/2022*
*ATTORNEY TO BE NOTICED*

**Patrick K. Sweeten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Warren K. Paxton**
*in his official capacity as Attorney General*
*of Texas*

represented by **Eric A. Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jack Buckley Disorbo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jeffrey Michael White**
(See above for address)
*TERMINATED: 04/29/2022*
*ATTORNEY TO BE NOTICED*

**Patrick K. Sweeten**
(See above for address)
*ATTORNEY TO BE NOTICED*

**William Thomas Thompson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lupe C. Torres**
*in her official capacity as Medina County*

represented by **Chad Ennis**
Texas Secretary of State

*Elections Administrator*

1019 Brazos Street
Austin, TX 78701
512-472-2700
Fax: 512-472-2728
Email: CEnnis@sos.texas.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert E Henneke**
Texas Public Policy Foundation
901 Congress Avenue
Austin, TX 78701
512-472-2700
Fax: 512-472-2728
Email: rhenneke@texaspolicy.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Lisa Wise**
*in her Official Capacity as the El Paso*
*County Elections Administrator*

represented by **Angelica Lien Leo**
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5075
Fax: (650) 849-7400
Email: aleo@cooley.com
*TERMINATED: 05/12/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Beatriz Mejia**
Cooley LLP
3 Embarcadero Center 20th Floor
San Francisco, CA 94111
(415) 693-2000
Fax: (415) 693-2222
Email: mejiab@cooley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Caroline A. Lebel**
Cooley LLP
3 Embarcadero Center 20th Floor
San Francisco, CA 94111
(415) 693-2000
Fax: (415) 693-2222
Email: clebel@cooley.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Christine Sun**
States United Democracy Center

3749 Buchanan St., No. 475165
San Francisco, CA 94147
(615) 574-9108
Fax: n/a
Email: christine@statesuniteddemocracy.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David Louk**
Cooley LLP
3 Embarcadero Center, 20th Floorr
San Francisco, CA 94111
(415) 693-2000
Fax: (415) 693-2222
Email: dlouk@cooley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Germaine Habell**
Cooley LLP
4401 Eastgate Mall
San Diego, CA 92121
(858) 550-6000
Fax: (858) 550-6420
Email: ghabell@cooley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kathleen Hartnett**
Cooley LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000
Fax: (415) 693-2222
Email: khartnett@cooley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kelsey Spector**
Cooley LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000
Fax: (415) 693-2222
Email: kspector@cooley.conn
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Orion Armon**
Cooley LLP
1144 15th Street, Suite 2300
Denver, CO 80202
(720) 566-4000

Fax: (720) 566-4099
Email: oarmon@cooley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ranjana Natarajan**
States United Democracy Center
1801 East 51st Street, Suite 365, #334
Austin, TX 78723
323-422-8578
Email: ranjana@statesuniteddemocracy.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sharon Song**
Cooley LLP
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111
(415) 693-2000
Fax: (415) 693-2222
Email: song@cooley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Zack Goldberg**
States United Democracy Center
86 Fleet Place, No. 6t
Brooklyn, NY 11201
(917) 656-6234
Email: zack@statesuniteddemocracy.org
*TERMINATED: 01/31/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marina Eisner**
States United Democracy Center
1101 17th Street Nw
Washington, DC 20036
(240) 600-1316
Email: marina@statesuniteddemocracy.org
*ATTORNEY TO BE NOTICED*

**Robert Cotter**
States United Democracy Center
7510 N. Greenview Ave., Apt. #3
Chicago, IL 60626
(224) 235-2606
Email: robert@statesuniteddemocracy.org
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**Harris County Republican Party**             represented by   **John M. Gore**
                                                                 Jones Day

51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3930
Fax: (202) 626-1700
Email: jmgore@jonesday.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles E.T. Roberts**
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3795
Fax: (202) 626-1700
Email: cetroberts@jonesday.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dallas County Republican Party**          represented by   **John M. Gore**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles E.T. Roberts**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**National Republican Senatorial**          represented by   **John M. Gore**
**Committee**                                              (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles E.T. Roberts**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**National Republican Congressional**       represented by   **John M. Gore**
**Committee**                                              (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Charles E.T. Roberts**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Kim Ogg**                                  represented by   **Eric J.R. Nichols**
*Harris Count;y District Attorney*                         Butler Snow LLP
1400 Lavaca Street, Suite 1000

Austin, TX 78701
737-802-1800
Fax: 737-802-1801
Email: eric.nichols@butlersnow.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Joe Gonzales**                              represented by   **Larry L. Roberson**
*Bexar County District Attorney*                              Bexar County District Attorney's Office
                                                             101 W. Nueva
                                                             7th Floor
                                                             San Antonio, TX 78205-3030
                                                             (210) 335-2141
                                                             Fax: (210) 335-2773
                                                             Email: lroberson@bexar.org
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Lisa V. Cubriel**
                                                             Bexar County District Attorney's Office
                                                             Civil Division
                                                             101 W. Nueva, 7th Floor
                                                             San Antonio, TX 78205
                                                             210-335-2142
                                                             Fax: 210-335*2773
                                                             Email: Lisa.Cubriel@bexar.org
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Robert D. Green**
                                                             United States Attorney's Office
                                                             Civil Division
                                                             601 NW Loop 410
                                                             Suite 600
                                                             San Antonio, TX 78216
                                                             210-384-7362
                                                             Email: robert.green3@usdoj.gov
                                                             *TERMINATED: 02/23/2022*
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Jose Garza**                                represented by   **Anthony J. Nelson**
*Travis County District Attorney*                            Travis County Attorney's Office
                                                             314 West 11th Street
                                                             Room 590
                                                             Austin, TX 78701
                                                             (512) 854-4801
                                                             Fax: 512/854-4808
                                                             Email: tony.nelson@traviscountytx.gov
                                                             *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Defendant**

**John Creuzot**
*Dallas County District Attorney*

represented by   **Barbara S. Nicholas**
Assistant District Attorney
Civil Division Administration Building, 5th
Floor
500 Elm Street, Suite 6300
Dallas, TX 75202
(214) 653-6068
Fax: (214) 653-6134
Email: Barbara.Nicholas@dallascounty.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ben L Stool**
Criminal District Attorney's Office of Dallas
County, T
500 Elm Street
Suite 6300
Dallas, TX 75202
(214) 653-6234
Fax: (214) 653-6134
Email: ben.stool@dallascounty.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Ricardo Rodriguez, Jr.**

represented by   **Michael J. Garza**
Hidalgo County District Attorney's Office
100 E. Cano St.
Edinburg, TX 78539
(956) 292-7609
Fax: (956) 318-2301
Email: michael@michaeljgarzapc.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Yvonne Rosales**
*in her official capacity as El Paso County
District Attorney*

represented by   **Rogelio C. Rodriguez**
Law Firm
3800 N. Mesa, A-2202
El Paso, TX 79902
(915) 422-1000
Fax: 915-532-3900
Email: attorney@rodriguezfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Rebecca Guerrero**

represented by   **Anthony J. Nelson**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Consol Defendant**

**Isabel Longoria**                    represented by   **Christina Marie Beeler**
*Harris County Elections Administrator*                  Texas Civil Rights Project
                                                         2100 Travis Street
                                                         Suite 360
                                                         Houston, TX 77002
                                                         512-914-1249
                                                         Email: christinab@texascivilrightsproject.org
                                                         *TERMINATED: 06/06/2022*
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Jonathan Gabriel Chaim Fombonne**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Sameer Singh Birring**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Tiffany Sue Bingham**
                                                         Harris County Attorney Office
                                                         1019 Congress 15th Floor
                                                         Houston, TX 77002
                                                         (713) 274-5132
                                                         Fax: (713) 755-8924
                                                         Email: tiffany.bingham@harriscountytx.gov
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Consol Defendant**

**Jacque Callanen**                    represented by   **Larry L. Roberson**
*In her Official Capacity as Elections*                  (See above for address)
*Administrator of Bexar County*                          *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Lisa V. Cubriel**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Robert D. Green**
                                                         (See above for address)
                                                         *TERMINATED: 02/23/2022*
                                                         *LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Consol Defendant**

**Yvonne Ramon**
*in her Official Capacity as the Hidalgo*
*County Elections Administrator*

represented by   **Josephine L. Ramirez**
Hidalgo County District Attorney's Office
100 E. Cano, First Floor
Edinburg, TX 78539
956-292-7609
Fax: 956-292-7619
Email:
josephine.ramirez@da.co.hidalgo.tx.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leigh Ann Tognetti**
Hidalgo County Criminal District Attorney
100 E Cano
Edinburg, TX 78539
9562927600
Email: leigh.tognetti@da.co.hidalgo.tx.us
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Consol Defendant**

**Michael Scarpello**
*in his Official Capacity as the Dallas*
*County Elections Administrator*

represented by   **Barbara S. Nicholas**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ben L Stool**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Earl S. Nesbitt**
WALTERS BALIDO & CRAIN L.L.P.
Meadow Park Tower
10440 North Central Expressway, Suite 1500
Dallas, TX 75231
(214) 749-4805
Fax: (214) 760-1670
Email: earl.nesbitt@wbclawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Consol Defendant**

**STATE OF TEXAS**

represented by   **Patrick K. Sweeten**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**William Thomas Thompson**

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Eric A. Hudson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jack Buckley Disorbo**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Consol Defendant**

**John Scott**                                represented by    **Patrick K. Sweeten**
*in his official capacity as Texas Secretary*                  (See above for address)
*of State*                                                     *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Eric A. Hudson**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Jack Buckley Disorbo**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

                                                               **William Thomas Thompson**
                                                               (See above for address)
                                                               *ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Dana DeBeauvoir**                          represented by    **Anthony J. Nelson**
*in her Official Capacity as the Travis*                       (See above for address)
*County Clerk*                                                 *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Leslie W. Dippel**
                                                               Travis County Attorney's Office
                                                               P.O. Box 1748
                                                               314 W. 11th Street
                                                               Room 500
                                                               Austin, TX 78767
                                                               (512) 854-9513
                                                               Fax: 512/854-4808
                                                               Email: leslie.dippel@traviscountytx.gov
                                                               *LEAD ATTORNEY*
                                                               *ATTORNEY TO BE NOTICED*

                                                               **Patrick T. Pope**
                                                               Travis County Attorney
                                                               Civil Litigation Division
                                                               PO BOX 1748

Austin, TX 78767
512-854-9523
Fax: 512-854-4808
Email: patrick.pope@traviscountytx.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sherine Elizabeth Thomas**
Assistant County Attorney
Travis County, Texas
P.O. Box 1748
Austin, TX 78767
(512) 854-9513
Fax: 512/854-4808
Email: sherine.thomas@traviscountytx.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**Foundation for Government Accountability**

represented by **Donna Garcia Davidson**
PO Box 12131
Austin, TX 78711
(512) 775-7625
Fax: (877)200-6001
Email: donna@dgdlawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Chase Martin**
Attorney at Law
15275 Collier Blvd., Suite 201
Naples, FL 34119
(239) 244-8808
Email: chase@thefga.org
*ATTORNEY TO BE NOTICED*

**Stewart Whitson**
Stewart Whitson
15275 Collier Blvd, Suite 201
Naples, FL 34119
(239) 244-8808
Email: stewart@thefga.org
*ATTORNEY TO BE NOTICED*

<u>**Amicus**</u>

**John R. Ashcroft**
*Missouri Seretary of State*
*TERMINATED: 01/12/2022*

<u>**Amicus**</u>

**Young Black Lawyers' Organizing Coalition**

represented by **Veronica Smith Moye**
Gibson, Dunn & Crutcher LLP

2001 Ross Avenue
Suite 2100
Dallas, TX 75201
214-698-3320
Fax: 214-571-2936
Email: vmoye@gibsondunn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**Republican National Committee**  represented by  **John M. Gore**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/03/2021 | 1 | COMPLAINT ( Filing fee $ 402 receipt number 0542-15188447). No Summons requested at this time, filed by La Union Del Pueblo Entero. (Attachments: # 1 Civil Cover Sheet)(Perales, Nina) (Entered: 09/03/2021) |
| 09/03/2021 | 2 | REQUEST FOR ISSUANCE OF SUMMONS by Fiel Houston, Inc., Friendship-West Baptist Church, Isabel Longoria, JOLT Action, James Lewin, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute. (Perales, Nina) (Entered: 09/03/2021) |
| 09/03/2021 | 3 | RULE 7 DISCLOSURE STATEMENT filed by Fiel Houston, Inc., Friendship-West Baptist Church, Isabel Longoria, JOLT Action, James Lewin, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute. (Perales, Nina) (Entered: 09/03/2021) |
| 09/03/2021 |  | Case assigned to Judge Fred Biery. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (rg) (Entered: 09/03/2021) |
| 09/03/2021 |  | If ordered by the court, all referrals will be assigned to Magistrate Judge Chestney. (rg) (Entered: 09/03/2021) |
| 09/03/2021 | 4 | MOTION to Appear Pro Hac Vice by Nina Perales *Motion for Admission PHV of Michael C. Keats* ( Filing fee $ 100 receipt number 0542-15191289) by on behalf of Fiel Houston, Inc., JOLT Action, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, William C. Velasquez Institute. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 09/03/2021) |
| 09/03/2021 | 5 | MOTION to Appear Pro Hac Vice by Nina Perales *Motion for Admission PHV of Christopher H. Bell* ( Filing fee $ 100 receipt number 0542-15191293) by on behalf of Fiel Houston, Inc., JOLT Action, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics |

| | | |
|---|---|---|
| | | Organized for Political Education, William C. Velasquez Institute. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 09/03/2021) |
| 09/03/2021 | 6 | MOTION to Appear Pro Hac Vice by Nina Perales *Motion for Admission PHV of Jessica M. Choi* ( Filing fee $ 100 receipt number 0542-15191295) by on behalf of Fiel Houston, Inc., JOLT Action, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, William C. Velasquez Institute. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 09/03/2021) |
| 09/07/2021 | 7 | Summons Issued as to Gregory W. Abbott. (rg) (Entered: 09/07/2021) |
| 09/07/2021 | 8 | Summons Issued as to Jose A. Esparza. (rg) (Entered: 09/07/2021) |
| 09/07/2021 | 9 | Summons Issued as to Warren K. Paxton. (rg) (Entered: 09/07/2021) |
| 09/07/2021 | 10 | Summons Issued as to Lupe C. Torres. (rg) (Entered: 09/07/2021) |
| 09/07/2021 | 11 | MOTION to Appear Pro Hac Vice by Nina Perales *Motion for Admission PHV of Rebecca L. Martin* ( Filing fee $ 100 receipt number 0542-15192607) by on behalf of Fiel Houston, Inc., JOLT Action, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, William C. Velasquez Institute. (Attachments: # 1 Proposed Order)(Perales, Nina) (Entered: 09/07/2021) |
| 09/07/2021 | 12 | ORDER GRANTING 4 5 6 Motion to Appear Pro Hac Vice for Attorney(s) Christopher H. Bell, Jessica M. Choi, Michael C. Keats for JOLT Action, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, William C. Velasquez Institute, Fiel Houston, Inc. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney is hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Administrative Policies and Procedures for Electronic Filing. Signed by Judge Fred Biery. (rg) (Entered: 09/07/2021) |
| 09/08/2021 | 13 | ORDER GRANTING 11 Motion to Appear Pro Hac Vice for Attorney Rebecca L. Martin for Fiel Houston, Inc.,Rebecca L. Martin for JOLT Action,Rebecca L. Martin for La Union Del Pueblo Entero,Rebecca L. Martin for Mexican American Bar Association of Texas,Rebecca L. Martin for Southwest Voter Registration Education Project,Rebecca L. Martin for Texas Hispanics Organized for Political Education,Rebecca L. Martin for William C. Velasquez Institute. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Fred Biery. (rg) (Entered: 09/08/2021) |
| 09/08/2021 | 14 | MOTION to Appear Pro Hac Vice by Elizabeth Yvonne Ryan *for Matthew Berde* ( Filing fee $ 100 receipt number 0542-15198666) by on behalf of Friendship-West Baptist Church, Isabel Longoria, James Lewin, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma. (Attachments: # 1 Proposed Order)(Ryan, Elizabeth) (Entered: 09/08/2021) |
| 09/08/2021 | 15 | MOTION to Appear Pro Hac Vice by Elizabeth Yvonne Ryan *for Alexander P. Cohen* ( Filing fee $ 100 receipt number 0542-15199697) by on behalf of Friendship-West Baptist Church, Isabel Longoria, James Lewin, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma. (Attachments: # 1 Proposed Order)(Ryan, Elizabeth) (Entered: 09/08/2021) |

| | | |
|---|---|---|
| 09/08/2021 | 16 | MOTION to Appear Pro Hac Vice by Elizabeth Yvonne Ryan *for Patrick A. Berry* ( Filing fee $ 100 receipt number 0542-15199756) by on behalf of Friendship-West Baptist Church, Isabel Longoria, James Lewin, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma. (Attachments: # 1 Proposed Order)(Ryan, Elizabeth) (Entered: 09/08/2021) |
| 09/08/2021 | 17 | MOTION to Appear Pro Hac Vice by Elizabeth Yvonne Ryan *for Andrew B. Garber* ( Filing fee $ 100 receipt number 0542-15199807) by on behalf of Friendship-West Baptist Church, Isabel Longoria, James Lewin, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma. (Attachments: # 1 Proposed Order)(Ryan, Elizabeth) (Entered: 09/08/2021) |
| 09/08/2021 | 18 | MOTION to Appear Pro Hac Vice by Elizabeth Yvonne Ryan *for Eliza Sweren-Becker* ( Filing fee $ 100 receipt number 0542-15199840) by on behalf of Friendship-West Baptist Church, Isabel Longoria, James Lewin, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma. (Attachments: # 1 Proposed Order)(Ryan, Elizabeth) (Entered: 09/08/2021) |
| 09/09/2021 | 19 | NOTICE of Attorney Appearance by Nina Perales on behalf of Fiel Houston, Inc., JOLT Action, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, William C. Velasquez Institute (Perales, Nina) (Entered: 09/09/2021) |
| 09/09/2021 | 20 | ORDER GRANTING 14 15 16 17 18 Motion to Appear Pro Hac Vice for Attorney Matthew Berde,Alexander P. Cohen,Patrick A. Berry,Andrew B. Garber,Eliza Sweren-Becker for Friendship-West Baptist Church, Isabel Longoria, James Lewin, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Signed by Judge Fred Biery. (rg) (Entered: 09/09/2021) |
| 09/14/2021 | 21 | SUMMONS Returned Executed by James Lewin, Texas Hispanics Organized for Political Education, Friendship-West Baptist Church, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute, Fiel Houston, Inc., JOLT Action, Southwest Voter Registration Education Project, Isabel Longoria, Texas Impact. Gregory W. Abbott served on 9/10/2021, answer due 10/1/2021. (Perales, Nina) (Entered: 09/14/2021) |
| 09/14/2021 | 22 | ORDER REASSIGNING CASE. Case reassigned to Judge Xavier Rodriguez for all proceedings. Judge Fred Biery no longer assigned to case. Signed by Judge Fred Biery. (rg) (Entered: 09/14/2021) |
| 09/14/2021 | 23 | SUMMONS Returned Executed by James Lewin, Texas Hispanics Organized for Political Education, Friendship-West Baptist Church, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute, Fiel Houston, Inc., JOLT Action, Southwest Voter Registration Education Project, Isabel Longoria, Texas Impact. Warren K. Paxton served on 9/10/2021, answer due 10/1/2021. (Perales, Nina) (Entered: 09/14/2021) |
| 09/14/2021 | 24 | Opposed MOTION to Consolidate Cases by Gregory W. Abbott, Jose A. Esparza, Warren K. Paxton. (Attachments: # 1 Ex. A - Orig. Complaint (1:21-cv-780), # 2 Ex. B - Orig. Complaint (5:21-cv-848), # 3 Ex. C - Orig. Complaint (1:21-cv-786), # 4 Proposed Order)(Sweeten, Patrick) (Entered: 09/14/2021) |
| 09/15/2021 | 25 | SUMMONS Returned Executed by James Lewin, Texas Hispanics Organized for Political Education, Friendship-West Baptist Church, La Union Del Pueblo Entero, Mexican |

| | | American Bar Association of Texas, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute, Fiel Houston, Inc., JOLT Action, Southwest Voter Registration Education Project, Isabel Longoria, Texas Impact. Jose A. Esparza served on 9/13/2021, answer due 10/4/2021. (Perales, Nina) (Entered: 09/15/2021) |
|---|---|---|
| 09/15/2021 | 26 | SUMMONS Returned Executed by James Lewin, Texas Hispanics Organized for Political Education, Friendship-West Baptist Church, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute, Fiel Houston, Inc., JOLT Action, Southwest Voter Registration Education Project, Isabel Longoria, Texas Impact. Lupe C. Torres served on 9/13/2021, answer due 10/4/2021. (Perales, Nina) (Entered: 09/15/2021) |
| 09/20/2021 | 27 | NOTICE of Attorney Appearance by Patrick K. Sweeten on behalf of Gregory W. Abbott, Jose A. Esparza, Warren K. Paxton. Attorney Patrick K. Sweeten added to party Gregory W. Abbott(pty:dft), Attorney Patrick K. Sweeten added to party Jose A. Esparza(pty:dft), Attorney Patrick K. Sweeten added to party Warren K. Paxton(pty:dft) (Sweeten, Patrick) (Entered: 09/20/2021) |
| 09/21/2021 | 28 | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint by Gregory W. Abbott, Jose A. Esparza, Warren K. Paxton. (Attachments: # 1 Proposed Order)(White, Jeffrey) (Entered: 09/21/2021) |
| 09/21/2021 | | Text Order GRANTING 28 Motion for Extension of Time to Answer entered by Judge Xavier Rodriguez. (This is a text-only entry generated by the court. There is no document associated with this entry.) (XR) (Entered: 09/21/2021) |
| 09/21/2021 | 29 | NOTICE *Regarding Pending Motion to Consolidate* by Gregory W. Abbott, Jose A. Esparza, Warren K. Paxton (White, Jeffrey) (Entered: 09/21/2021) |
| 09/22/2021 | 30 | Unopposed MOTION for Extension of Time to File Answer by Lupe C. Torres. (Attachments: # 1 Proposed Order)(Henneke, Robert) (Entered: 09/22/2021) |
| 09/23/2021 | | Text Order GRANTING 30 Motion for Extension of Time to Answer entered by Judge Xavier Rodriguez. (This is a text-only entry generated by the court. There is no document associated with this entry.) (XR) (Entered: 09/23/2021) |
| 09/23/2021 | | Reset Deadlines: Lupe C. Torres answer due 10/25/2021. (rg) (Entered: 09/23/2021) |
| 09/30/2021 | 31 | ORDER GRANTING 24 Motion to Consolidate Cases. SA-21-CV-848, SA-21-CV-920, A-21-CV-780 and A-21-CV-786 are MEMBER CASES and will be CONSOLIDATED under LEAD CASE - SA-21-CV-844-XR. ALL PLEADINGS ARE TO BE FILED INTO THE LEAD CASE.All served Defendants shall file an answer on or before October 25, 2021. An initial pretrial conference shall be conducted on November 16, 2021 at 1:30 p.m. by video conference; Discovery plan and scheduling order, no later than November 9, 2021. Signed by Judge Xavier Rodriguez. (rg) (Entered: 09/30/2021) |
| 10/06/2021 | 32 | MOTION to Appear Pro Hac Vice by Sean Michael Lyons *Wendy J. Olson* ( Filing fee $ 100 receipt number 0542-15301531) by on behalf of Mi Familia Vota, Marla Lopez, Marlon Lopez, Paul Rutledge. (Lyons, Sean) (Entered: 10/06/2021) |
| 10/06/2021 | 33 | MOTION to Appear Pro Hac Vice by Sean Michael Lyons *Marc T. Rasich* ( Filing fee $ 100 receipt number 0542-15301618) by on behalf of Marla Lopez, Marlon Lopez, Mi Familia Vota, Paul Rutledge. (Lyons, Sean) (Entered: 10/06/2021) |
| 10/06/2021 | 34 | MOTION to Appear Pro Hac Vice by Sean Michael Lyons *Laura E. Rosenbaum* ( Filing fee $ 100 receipt number 0542-15301626) by on behalf of Marla Lopez, Marlon Lopez, |

| | | |
|---|---|---|
| | | Mi Familia Vota, Paul Rutledge. (Lyons, Sean) (Entered: 10/06/2021) |
| 10/06/2021 | 35 | MOTION to Appear Pro Hac Vice by Sean Michael Lyons *Elijah M. Watkins* ( Filing fee $ 100 receipt number 0542-15301641) by on behalf of Marla Lopez, Marlon Lopez, Mi Familia Vota, Paul Rutledge. (Lyons, Sean) (Entered: 10/06/2021) |
| 10/06/2021 | 36 | MOTION to Appear Pro Hac Vice by Sean Michael Lyons *John C. Bonifaz* ( Filing fee $ 100 receipt number 0542-15301654) by on behalf of Marla Lopez, Marlon Lopez, Mi Familia Vota, Paul Rutledge. (Lyons, Sean) (Entered: 10/06/2021) |
| 10/06/2021 | 37 | MOTION to Appear Pro Hac Vice by Sean Michael Lyons *Ben Clements* ( Filing fee $ 100 receipt number 0542-15301675) by on behalf of Marla Lopez, Marlon Lopez, Mi Familia Vota, Paul Rutledge. (Lyons, Sean) (Entered: 10/06/2021) |
| 10/06/2021 | 38 | MOTION to Appear Pro Hac Vice by Sean Michael Lyons *Ronald A. Fein* ( Filing fee $ 100 receipt number 0542-15301682) by on behalf of Marla Lopez, Marlon Lopez, Mi Familia Vota, Paul Rutledge. (Lyons, Sean) (Entered: 10/06/2021) |
| 10/06/2021 | 39 | MOTION to Appear Pro Hac Vice by Sean Michael Lyons *Courtney M. Hostetler* ( Filing fee $ 100 receipt number 0542-15301692) by on behalf of Marla Lopez, Marlon Lopez, Mi Familia Vota, Paul Rutledge. (Lyons, Sean) (Entered: 10/06/2021) |
| 10/06/2021 | 40 | WAIVER OF SERVICE Returned Executed by Paul Rutledge, Mi Familia Vota, Marla Lopez, Marlon Lopez as to Gregory W. Abbott. Waiver sent on 10/5/2021, answer due 12/6/2021; Jose A. Esparza. Waiver sent on 10/5/2021, answer due 12/6/2021; Warren K. Paxton. Waiver sent on 10/5/2021, answer due 12/6/2021. (Lyons, Sean) (Entered: 10/06/2021) |
| 10/06/2021 | 41 | MOTION to Appear Pro Hac Vice by Sean Morales-Doyle *for Jasleen K. Singh* ( Filing fee $ 100 receipt number 0542-15302528) by on behalf of Friendship-West Baptist Church, Isabel Longoria, James Lewin, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma. (Attachments: # 1 Proposed Order)(Morales-Doyle, Sean) (Entered: 10/06/2021) |
| 10/06/2021 | | Text Order GRANTING 32 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 10/06/2021) |
| 10/06/2021 | | Text Order GRANTING 33 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 10/06/2021) |
| 10/06/2021 | | Text Order GRANTING 34 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 10/06/2021) |
| 10/06/2021 | | |

| | | |
|---|---|---|
| | | Text Order GRANTING <u>35</u> Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 10/06/2021) |
| 10/06/2021 | | Text Order GRANTING <u>36</u> Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 10/06/2021) |
| 10/06/2021 | | Text Order GRANTING <u>41</u> Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 10/06/2021) |
| 10/07/2021 | | Text Order GRANTING <u>37</u> Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 10/07/2021) |
| 10/07/2021 | | Text Order GRANTING <u>38</u> Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.)(cb) (Entered: 10/07/2021) |
| 10/07/2021 | | Text Order GRANTING <u>39</u> Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.)(cb) (Entered: 10/07/2021) |
| 10/07/2021 | <u>42</u> | SUMMONS Returned Executed by Vote Latino, Texas AFT, Texas Alliance for Retired Americans, LULAC Texas. Yvonne Ramon served on 9/24/2021, answer due 10/15/2021. (Hardin, John) (Entered: 10/07/2021) |
| 10/07/2021 | <u>43</u> | MOTION by Public Interest Legal Foundation. (Attachments: # <u>1</u> Exhibit Proposed Answer)(Taylor, Andy) (Entered: 10/07/2021) |
| 10/19/2021 | <u>44</u> | MOTION to Withdraw as Attorney - *Jessica Choi,* by Fiel Houston, Inc., JOLT Action, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, William C. Velasquez Institute. (Attachments: # <u>1</u> Proposed Order)(Choi, Jessica) (Entered: 10/19/2021) |
| 10/21/2021 | <u>45</u> | |

| | | |
|---|---|---|
| | | MOTION to Appear Pro Hac Vice by John Russell Hardin *for Graham White* ( Filing fee $ 100 receipt number 0542-15359890) by on behalf of LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino. (Hardin, John) (Entered: 10/21/2021) |
| 10/21/2021 | 46 | Memorandum in Opposition to Motion, filed by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino, re 43 MOTION filed by Movant Public Interest Legal Foundation (Nkwonta, Uzoma) (Entered: 10/21/2021) |
| 10/21/2021 | 47 | Response in Opposition to Motion, filed by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, Houston Justice, The Arc of Texas, re 43 MOTION filed by Movant Public Interest Legal Foundation (Broughton, Kenneth) (Entered: 10/21/2021) |
| 10/21/2021 | 48 | NOTICE *of Joinder* by Marla Lopez, Marlon Lopez, Mi Familia Vota, Paul Rutledge re 47 Response in Opposition to Motion, (Rasich, Marc) (Entered: 10/21/2021) |
| 10/21/2021 | 49 | Response in Opposition to Motion, filed by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, Houston Justice, The Arc of Texas, re 43 MOTION filed by Movant Public Interest Legal Foundation (Broughton, Kenneth) (Entered: 10/21/2021) |
| 10/21/2021 | 50 | Response in Opposition to Motion, filed by Fiel Houston, Inc., Friendship-West Baptist Church, Isabel Longoria, JOLT Action, James Lewin, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute, re 43 MOTION filed by Movant Public Interest Legal Foundation (Genender, Paul) (Entered: 10/21/2021) |
| 10/21/2021 | 51 | NOTICE *of Joinder in Opposition* by League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund re 49 Response in Opposition to Motion, 43 MOTION (Cox, Ryan) (Entered: 10/21/2021) |
| 10/21/2021 | 52 | Response in Opposition to Motion, filed by Jacque Callanen, Yvonne Ramon, Michael Scarpello, Lisa Wise, re 43 MOTION filed by Movant Public Interest Legal Foundation *Opposition to Public Interest Legal Foundation's Motion to Intervene* (Armon, Orion) (Entered: 10/21/2021) |
| 10/22/2021 | | Text Order GRANTING 44 Motion to Withdraw as Attorney entered by Judge Xavier Rodriguez. The appearance of Jessica M. Choi for Plaintiffs La Unin Del Pueblo Entero, Southwest Voter Registration Education Project, Mexican American Bar Association of Texas, Texas Hispanics Organized for Political Education, JOLT Action, William C. Velasquez Institute and Fiel Houston, Inc. is hereby WITHDRAWN and she shall be removed from all service lists pertaining to this action. These Plaintiffs will continue to be represented by Julia Longoria, who has already entered her appearance in this matter, and by other attorneys from Fried, Frank, Harris, Shriver & Jacobson LLP. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 10/22/2021) |
| 10/22/2021 | | Text Order GRANTING 45 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 10/22/2021) |

| 10/24/2021 | 53 | MOTION to Dismiss *or, in the Alternative, Strike the Complaint of La Union Del Pueblo Entero, et al.* by Gregory W. Abbott, Jose A. Esparza, Warren K. Paxton. (Sweeten, Patrick) (Entered: 10/24/2021) |
|---|---|---|
| 10/25/2021 | 54 | MOTION to Dismiss by Gregory W. Abbott, Jose A. Esparza, Warren K. Paxton. (Attachments: # 1 Affidavit, # 2 Exhibit)(Hudson, Eric) (Entered: 10/25/2021) |
| 10/25/2021 | 55 | MOTION to Dismiss *the Complaint of OCA-Greater Houston, et al.* by Jose A. Esparza, Warren K. Paxton. (Sweeten, Patrick) (Entered: 10/25/2021) |
| 10/25/2021 | 56 | ANSWER to 1 Complaint with Jury Demand . Attorney Anthony J. Nelson added to party Dana DeBeauvoir(pty:cd) by Dana DeBeauvoir.(Nelson, Anthony) (Entered: 10/25/2021) |
| 10/25/2021 | 57 | Opposed MOTION *to Intervene* by Harris County Republican Party, Dallas County Republican Party, National Republican Senatorial Committee, National Republican Congressional Committee. (Attachments: # 1 Proposed Answer, # 2 Proposed Answer, # 3 Proposed Answer, # 4 Proposed Answer, # 5 Proposed Answer)(Gore, John) (Entered: 10/25/2021) |
| 10/25/2021 | 58 | *Original* ANSWER to 1 Complaint by Isabel Longoria.(Birring, Sameer) (Entered: 10/25/2021) |
| 10/25/2021 | 59 | ANSWER to Complaint with Jury Demand by Michael Scarpello.(Nicholas, Barbara) (Entered: 10/25/2021) |
| 10/25/2021 | 60 | RULE 7 DISCLOSURE STATEMENT filed by Dallas County Republican Party, Harris County Republican Party, National Republican Congressional Committee, National Republican Senatorial Committee. (Gore, John) (Entered: 10/25/2021) |
| 10/25/2021 | 61 | *Consolidated Defendant's* ANSWER to 1 Complaint . Attorney Josephine L. Ramirez added to party Yvonne Ramon(pty:condft) by Yvonne Ramon.(Ramirez, Josephine) (Entered: 10/25/2021) |
| 10/25/2021 | 62 | ANSWER to 1 Complaint with Jury Demand by Dana DeBeauvoir.(Nelson, Anthony) (Entered: 10/25/2021) |
| 10/25/2021 | 63 | NOTICE of Attorney Appearance by John M. Gore on behalf of Dallas County Republican Party, Harris County Republican Party, National Republican Congressional Committee, National Republican Senatorial Committee. Attorney John M. Gore added to party Dallas County Republican Party(pty:mov), Attorney John M. Gore added to party Harris County Republican Party(pty:mov), Attorney John M. Gore added to party National Republican Congressional Committee(pty:mov), Attorney John M. Gore added to party National Republican Senatorial Committee(pty:mov) (Gore, John) (Entered: 10/25/2021) |
| 10/25/2021 | 64 | MOTION to Dismiss *the Complaint by Houston Justice, et al.* by Gregory W. Abbott, Jose A. Esparza, Warren K. Paxton. (Sweeten, Patrick) (Entered: 10/25/2021) |
| 10/25/2021 | 65 | *Original* ANSWER to 1 Complaint by Isabel Longoria.(Birring, Sameer) (Entered: 10/25/2021) |
| 10/25/2021 | 66 | *Original* ANSWER to 1 Complaint by Isabel Longoria.(Birring, Sameer) (Entered: 10/25/2021) |
| 10/25/2021 | 67 | MOTION to Dismiss *the Complaint of Mi Familia, et al.* by Gregory W. Abbott, Jose A. Esparza, Warren K. Paxton. (Sweeten, Patrick) (Entered: 10/25/2021) |

| 10/25/2021 | 68 | MOTION to Dismiss by Lupe C. Torres. (Attachments: # 1 Proposed Order)(Henneke, Robert) (Entered: 10/25/2021) |
|---|---|---|
| 10/25/2021 | 69 | *DEFENDANT'S* ANSWER to 1 Complaint *FOR DECLARATORY AND INJUNCTIVE RELIEF* by Lisa Wise.(Armon, Orion) (Entered: 10/25/2021) |
| 10/25/2021 | 70 | ANSWER to Complaint with Jury Demand . Attorney Robert D. Green added to party Jacque Callanen(pty:condft) by Jacque Callanen.(Green, Robert) (Entered: 10/25/2021) |
| 10/26/2021 | 71 | MOTION to Appear Pro Hac Vice by John M. Gore *for E. Stewart Crosland* ( Filing fee $ 100 receipt number 0542-15373559) by on behalf of Dallas County Republican Party, Harris County Republican Party, National Republican Congressional Committee, National Republican Senatorial Committee. (Gore, John) (Entered: 10/26/2021) |
| 10/26/2021 | 72 | MOTION to Appear Pro Hac Vice by John M. Gore *for Stephen J. Kenny* ( Filing fee $ 100 receipt number 0542-15373621) by on behalf of Dallas County Republican Party, Harris County Republican Party, National Republican Congressional Committee, National Republican Senatorial Committee. (Gore, John) (Entered: 10/26/2021) |
| 10/27/2021 | 73 | NOTICE *of Joinder* by Dana DeBeauvoir re 52 Response in Opposition to Motion, (Nelson, Anthony) (Entered: 10/27/2021) |
| 10/28/2021 | 74 | REPLY to Response to Motion, filed by Public Interest Legal Foundation, re 43 MOTION filed by Movant Public Interest Legal Foundation *Joint* (Taylor, Andy) (Entered: 10/28/2021) |
| 10/29/2021 | 75 | NOTICE of Attorney Appearance by Donna Garcia Davidson on behalf of Foundation for Government Accountability. Attorney Donna Garcia Davidson added to party Foundation for Government Accountability(pty:am) (Davidson, Donna) (Entered: 10/29/2021) |
| 10/29/2021 | 76 | MOTION to Appear Pro Hac Vice by Donna Garcia Davidson ( Filing fee $ 100 receipt number 0542-15389054) by on behalf of Foundation for Government Accountability. (Davidson, Donna) (Entered: 10/29/2021) |
| 10/29/2021 | 77 | MOTION to Appear Pro Hac Vice by Donna Garcia Davidson ( Filing fee $ 100 receipt number 0542-15389174) by on behalf of Foundation for Government Accountability. (Davidson, Donna) (Entered: 10/29/2021) |
| 10/29/2021 | 78 | MOTION for Leave to File Amicus Brief by Donna G. Davidson. by Foundation for Government Accountability. (Attachments: # 1 Brief)(Davidson, Donna) (Entered: 10/29/2021) |
| 11/01/2021 | 79 | MOTION to Appear Pro Hac Vice by Thomas Paul Buser-Clancy *for Ari Savitzky* ( Filing fee $ 100 receipt number 0542-15394930) by on behalf of League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund. (Buser-Clancy, Thomas) (Entered: 11/01/2021) |
| 11/01/2021 | 80 | NOTICE of Attorney Appearance by Ashley Alcantara Harris on behalf of League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund. Attorney Ashley Alcantara Harris added to party League of Women Voters of Texas(pty:conpla), Attorney Ashley Alcantara Harris added to party OCA-Greater Houston(pty:conpla), Attorney Ashley Alcantara Harris added to party REVUP-Texas(pty:conpla), Attorney Ashley Alcantara Harris added to party Texas Organizing Project(pty:conpla), Attorney Ashley Alcantara Harris added to party Workers Defense Action Fund(pty:conpla) (Harris, Ashley) (Entered: 11/01/2021) |
| 11/02/2021 | 81 | |

| | | |
|---|---|---|
| | | ANSWER to Complaint with Jury Demand by Jacque Callanen.(Green, Robert) (Entered: 11/02/2021) |
| 11/04/2021 | 82 | Unopposed MOTION for Extension of Time to File *Motion to Dismiss Briefing Deadlines* by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, Houston Justice, The Arc of Texas. (Attachments: # 1 Proposed Order)(Broughton, Kenneth) (Entered: 11/04/2021) |
| 11/04/2021 | | Text Order GRANTING 82 Motion for Extension of Time to File entered by Judge Xavier Rodriguez. Responses to the pending motions to dismiss must be filed no later than November 18, 2021. Any replies must be filed no later than December 3, 2021. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 11/04/2021) |
| 11/04/2021 | 83 | NOTICE *of Statement of Interest* by UNITED STATES OF AMERICA re 64 MOTION to Dismiss *the Complaint by Houston Justice, et al.*, 68 MOTION to Dismiss *or, in the Alternative, Strike the Complaint of La Union Del Pueblo Entero, et al.*, 54 MOTION to Dismiss , 67 MOTION to Dismiss *the Complaint of Mi Familia, et al.* (Freeman, Daniel) (Entered: 11/04/2021) |
| 11/05/2021 | 84 | Pretrial Disclosures *Initial Disclosures Pursuant to Rule 26(A) F.R.C.P* by Marla Lopez, Marlon Lopez, Mi Familia Vota, Paul Rutledge. (Lyons, Sean) (Entered: 11/05/2021) |
| 11/05/2021 | 85 | MOTION to Appear Pro Hac Vice by Georgina Yeomans *for Mohammed Amir Badat* ( Filing fee $ 100 receipt number 0542-15413223) by on behalf of Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, Houston Justice, The Arc of Texas. (Yeomans, Georgina) (Entered: 11/05/2021) |
| 11/05/2021 | | Text Order GRANTING 79 Motion to Appear Pro Hac Vice; GRANTING 85 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorneys hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 11/05/2021) |
| 11/05/2021 | 86 | NOTICE *of Service of Initial Disclosures* by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, Houston Justice, The Arc of Texas (Broughton, Kenneth) (Entered: 11/05/2021) |
| 11/05/2021 | 89 | MOTION to Appear Pro Hac Vice by Stewart Whitson by Foundation for Government Accountability. (Attachments: # 1 Proposed Order)(rg) (Entered: 11/08/2021) |
| 11/08/2021 | 87 | Response in Opposition to Motion, filed by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino, re 57 Opposed MOTION *to Intervene* filed by Movant National Republican Congressional Committee, Movant Harris County Republican Party, Movant Dallas County Republican Party, Movant National Republican Senatorial Committee (Nkwonta, Uzoma) (Entered: 11/08/2021) |
| 11/08/2021 | 88 | Response in Opposition to Motion, filed by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, Houston Justice, The Arc of Texas, re 57 Opposed MOTION *to Intervene* filed by Movant National Republican Congressional Committee, Movant Harris County Republican Party, Movant Dallas County Republican Party, Movant National Republican Senatorial Committee (Broughton, Kenneth) (Entered: 11/08/2021) |
| 11/08/2021 | 90 | |

| | | |
|---|---|---|
| | | NOTICE *of Joinder* by Marla Lopez, Marlon Lopez, Mi Familia Vota, Paul Rutledge re 87 Response in Opposition to Motion, 57 Opposed MOTION *to Intervene*, 88 Response in Opposition to Motion, (Lyons, Sean) (Entered: 11/08/2021) |
| 11/08/2021 | 91 | Response in Opposition to Motion, filed by Fiel Houston, Inc., Friendship-West Baptist Church, Isabel Longoria, JOLT Action, James Lewin, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute, re 57 Opposed MOTION *to Intervene* filed by Movant National Republican Congressional Committee, Movant Harris County Republican Party, Movant Dallas County Republican Party, Movant National Republican Senatorial Committee (Ryan, Elizabeth) (Entered: 11/08/2021) |
| 11/09/2021 | 92 | NOTICE *of Joinder in Opposition to Intervention* by League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund re 88 Response in Opposition to Motion, (Cox, Ryan) (Entered: 11/09/2021) |
| 11/09/2021 | 93 | Joint MOTION for Extension of Time to File *The Parties' Rule 26(f) Report* by Gregory W. Abbott, Jose A. Esparza, Warren K. Paxton. (Attachments: # 1 Proposed Order)(Hudson, Eric) (Entered: 11/09/2021) |
| 11/10/2021 | | Text Order GRANTING 93 Motion for Extension of Time to File entered by Judge Xavier Rodriguez. The deadline for the Parties to file their Rule 26(f) Report is extended to Wednesday, November 10, 2021. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ldox) (Entered: 11/10/2021) |
| 11/10/2021 | 94 | Rule 26(f) Discovery Report/Case Management Plan by Friendship-West Baptist Church, James Lewin, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma. (Attachments: # 1 Exhibit)(Garber, Andrew) (Entered: 11/10/2021) |
| 11/12/2021 | 95 | MOTION to Appear Pro Hac Vice by Ryan V. Cox *Stegemoeller, Patrick* ( Filing fee $ 100 receipt number 0542-15432973) by on behalf of League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund. (Cox, Ryan) (Entered: 11/12/2021) |
| 11/12/2021 | | Text Order GRANTING 95 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 11/12/2021) |
| 11/12/2021 | 96 | ORDER --The parties are hereby ORDERED to file their exchangedinitial disclosures on the public docket, no later than 3:00 p.m. on Monday, November 15, 2021. Signed by Judge Xavier Rodriguez. (mgr) (Entered: 11/12/2021) |
| 11/14/2021 | 97 | NOTICE *of Initial Disclosures* by UNITED STATES OF AMERICA (Attachments: # 1 Exhibit 1: Initial Disclosures)(Freeman, Daniel) (Entered: 11/14/2021) |
| 11/15/2021 | 98 | NOTICE *of Filing of Initial Disclosures* by League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund re 96 Order (Attachments: # 1 Initial Disclosures)(Cox, Ryan) (Entered: 11/15/2021) |
| 11/15/2021 | 99 | |

| | | NOTICE of Filing Defendant Callanen's Initial Disclosures by Jacque Callanen (Attachments: # 1 Exhibit Defendant Callanen's Initial Disclosures)(Green, Robert) (Entered: 11/15/2021) |
|---|---|---|
| 11/15/2021 | 100 | NOTICE of Filing Initial Disclosures by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, Houston Justice, The Arc of Texas (Attachments: # 1 Exhibit A)(Broughton, Kenneth) (Entered: 11/15/2021) |
| 11/15/2021 | 101 | NOTICE *of FILING OF INITIAL DISCLOSURES* by Yvonne Ramon (Ramirez, Josephine) (Entered: 11/15/2021) |
| 11/15/2021 | 102 | NOTICE of Filing Initial Disclosures by Fiel Houston, Inc., Friendship-West Baptist Church, Isabel Longoria, JOLT Action, James Lewin, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute (Attachments: # 1 Exhibit LUPE Initial Disclosures)(Perales, Nina) (Entered: 11/15/2021) |
| 11/15/2021 | 103 | NOTICE *of Initial Disclosures* by Lisa Wise (Attachments: # 1 Exhibit Exhibit 1 - Def. Wise Initial Disclosures)(Armon, Orion) (Entered: 11/15/2021) |
| 11/15/2021 | 104 | NOTICE of Filing Initial Disclosures by Dana DeBeauvoir (Attachments: # 1 Exhibit A - Initial Disclosures)(Nelson, Anthony) (Entered: 11/15/2021) |
| 11/15/2021 | 105 | NOTICE of Filing Initial Disclosures by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino (Attachments: # 1 Exhibit 1 - Initial Disclosures)(Yukevich, Kathryn) (Entered: 11/15/2021) |
| 11/15/2021 | 106 | NOTICE of Filing Initial Disclosures by Michael Scarpello (Stool, Ben) (Entered: 11/15/2021) |
| 11/15/2021 | 107 | NOTICE of Filing Initial Disclosures by Lupe C. Torres (Henneke, Robert) (Entered: 11/15/2021) |
| 11/15/2021 | 108 | NOTICE of Filing Initial Disclosures by Isabel Longoria (Attachments: # 1 Exhibit)(Birring, Sameer) (Entered: 11/15/2021) |
| 11/15/2021 | 109 | MOTION to Appear Pro Hac Vice by Nina Perales *for Attorney Jason S. Kanterman* ( Filing fee $ 100 receipt number 0542-15439435) by on behalf of Fiel Houston, Inc., JOLT Action, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, William C. Velasquez Institute. (Perales, Nina) (Entered: 11/15/2021) |
| 11/15/2021 | 110 | NOTICE of Filing Initial Disclosures by Dallas County Republican Party, Harris County Republican Party, National Republican Congressional Committee, National Republican Senatorial Committee, Republican National Committee (Gore, John) (Entered: 11/15/2021) |
| 11/15/2021 | 111 | REPLY to Response to Motion, filed by Dallas County Republican Party, Harris County Republican Party, National Republican Congressional Committee, National Republican Senatorial Committee, re 57 Opposed MOTION *to Intervene* filed by Movant National Republican Congressional Committee, Movant Harris County Republican Party, Movant Dallas County Republican Party, Movant National Republican Senatorial Committee (Gore, John) (Entered: 11/15/2021) |
| 11/15/2021 | 112 | NOTICE of Filing Defendants Initial Disclosures by Gregory W. Abbott, Jose A. Esparza, Warren K. Paxton (Attachments: # 1 Exhibit Texas Defendants Initial |

| | | Disclosures)(Sweeten, Patrick) (Entered: 11/15/2021) |
|---|---|---|
| 11/15/2021 | 113 | NOTICE *of Joinder* by Republican National Committee re 57 Opposed MOTION *to Intervene* (Gore, John) (Entered: 11/15/2021) |
| 11/15/2021 | 114 | RULE 7 DISCLOSURE STATEMENT filed by Republican National Committee. (Gore, John) (Entered: 11/15/2021) |
| 11/15/2021 | | Text Order GRANTING 109 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 11/15/2021) |
| 11/15/2021 | 115 | Rule 26(f) Discovery Report/Case Management Plan by United States Of America. (Freeman, Daniel) (Entered: 11/15/2021) |
| 11/15/2021 | 116 | APPENDIX to 112 Notice of Filing by Gregory W. Abbott, Jose A. Esparza, Warren K. Paxton. (Attachments: # 1 Legislative History: SB 7, Legislative Session 87(R), # 2 Legislative History: SB 1, Legislative Session 87, 1st Special Session, # 3 Leg. History: SB 1, Legislative Session 87, Second Special Session (Part I), # 4 Leg. History: SB 1, Legislative Session 87, Second Special Session (Part II), # 5 Leg. History: SB 1, Legislative Session 87, Second Special Session (Part III))(Sweeten, Patrick) (Entered: 11/15/2021) |
| 11/15/2021 | 117 | APPENDIX by Gregory W. Abbott, Jose A. Esparza, Warren K. Paxton. (Attachments: # 1 Leg. History: SB 1, Legislative Session 87, Second Special Session (Part V), # 2 Leg. History: SB 1, Legislative Session 87, Second Special Session (Part VI), # 3 Leg. History: SB 1, Legislative Session 87, Second Special Session (Part VII), # 4 Leg. History: SB 1, Legislative Session 87, Second Special Session (Part VIII))(Sweeten, Patrick) (Entered: 11/15/2021) |
| 11/15/2021 | 118 | MOTION to Appear Pro Hac Vice by Andy Taylor *for attorney Kaylan Phillips* ( Filing fee $ 100 receipt number 0542-15441931) by on behalf of Public Interest Legal Foundation. (Taylor, Andy) (Entered: 11/15/2021) |
| 11/15/2021 | 119 | MOTION to Appear Pro Hac Vice by Andy Taylor *for attorney Maureen S. Riordan* ( Filing fee $ 100 receipt number 0542-15441938) by on behalf of Public Interest Legal Foundation. (Taylor, Andy) (Entered: 11/15/2021) |
| 11/16/2021 | | Text Order GRANTING 78 Motion for Leave to File Amicus Brief entered by Judge Xavier Rodriguez. The amicus brief is deemed to have been filed on the date of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 11/16/2021) |
| 11/16/2021 | | Text Order GRANTING 76 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 11/16/2021) |
| 11/16/2021 | | Text Order GRANTING 77 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for |

| | | |
|---|---|---|
| | | electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 11/16/2021) |
| 11/16/2021 | | Text Order MOOTING 89 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez in light of the Court's order granting Mr. Whitson's previous motion 76 to appear pro hac vice in this matter. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 11/16/2021) |
| 11/16/2021 | | Text Order DENYING 71 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez in light of the Court's denial of the Republican Committees' motion to intervene 57 for the reasons stated in open court. (This is a text-only entry generated by the court. There is no document associated with this entry.) (Entered: 11/16/2021) |
| 11/16/2021 | | Text Order DENYING 72 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez in light of the Court's denial of the Republican Committees' motion to intervene 57 for the reasons stated in open court. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 11/16/2021) |
| 11/16/2021 | | Text Order DENYING 118 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez in light of the Court's denial of the Public Interest Legal Foundation's motion to intervene 43 for the reasons stated in open court. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 11/16/2021) |
| 11/16/2021 | | Text Order DENYING 119 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez in light of the Court's denial of the Public Interest Legal Foundation's motion to intervene 43 for the reasons stated in open court. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 11/16/2021) |
| 11/16/2021 | 120 | AMICUS CURIAE BRIEF by Foundation for Government Accountability. (rg) (Entered: 11/17/2021) |
| 11/16/2021 | 121 | ORDER DENYING 43 Public Interest Legal Foundation Motion to Intervene. Signed by Judge Xavier Rodriguez. (rg) (Entered: 11/17/2021) |
| 11/16/2021 | 124 | Minute Entry for proceedings held before Judge Xavier Rodriguez: Status Conference held on 11/16/2021. (Minute entry documents are not available electronically.). (Court Reporter Gigi Simcox.)(rg) (Entered: 11/19/2021) |
| 11/18/2021 | 122 | ORDER DENYING 57 the Committees' Motion to intervene Signed by Judge Xavier Rodriguez. (rg) (Entered: 11/18/2021) |
| 11/18/2021 | 123 | Appeal of Order entered by District Judge 122 by Dallas County Republican Party, Harris County Republican Party, National Republican Congressional Committee, National Republican Senatorial Committee, Republican National Committee. ( Filing fee $ 505 receipt number 0542-15454561). Attorney John M. Gore added to party Republican National Committee(pty:mov) (Gore, John) (Entered: 11/18/2021) |
| 11/18/2021 | | NOTICE OF APPEAL following 123 Notice of Appeal (E-Filed), by Dallas County Republican Party, Harris County Republican Party, National Republican Congressional Committee, National Republican Senatorial Committee, Republican National Committee. Filing fee $ 505.00, receipt number 15454561. Per 5th Circuit rules, the appellant has 14 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out a (Transcript Order) and follow the instructions set out on the form. This form is available in the Clerk's Office or by clicking the hyperlink above. (rg) (Entered: 11/18/2021) |

| | | |
|---|---|---|
| 11/18/2021 | 125 | SCHEDULING ORDER: Bench Trial set for 7/5/2022 10:30 AM before Judge Xavier Rodriguez, Pretrial Conference set for 6/23/2022 10:30 AM before Judge Xavier Rodriguez, Amended Pleadings due by 1/22/2022, Discovery due by 5/13/2022, Joinder of Parties due by 1/22/2022, Dispositive Motions due by 5/27/2022. Signed by Judge Xavier Rodriguez. (rg) (Entered: 11/19/2021) |
| 11/19/2021 | 126 | Transcript filed of Proceedings held on 11-16-21, Proceedings Transcribed: Status Conference. Court Reporter/Transcriber: Gigi Simcox, Telephone number: 210-244-5037, gigi_simcox@txwd.uscourts.gov. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 12/10/2021, Redacted Transcript Deadline set for 12/20/2021, Release of Transcript Restriction set for 2/17/2022, Appeal Record due by 12/6/2021, (gs) (Entered: 11/19/2021) |
| 11/23/2021 | 127 | NOTICE of Attorney Appearance by Patrick K. Sweeten on behalf of STATE OF TEXAS, John Scott. Attorney Patrick K. Sweeten added to party STATE OF TEXAS(pty:condft), Attorney Patrick K. Sweeten added to party John Scott(pty:condft) (Sweeten, Patrick) (Entered: 11/23/2021) |
| 11/23/2021 | 128 | Unopposed MOTION for Extension of Time to File *United States of America's Complaint (consolidated case 5:21-cv-1085)* by STATE OF TEXAS, John Scott. (Attachments: # 1 Proposed Order)(Sweeten, Patrick) (Entered: 11/23/2021) |
| 11/26/2021 | 129 | TRANSCRIPT REQUEST by Dallas County Republican Party, Harris County Republican Party, National Republican Congressional Committee, National Republican Senatorial Committee, Republican National Committee for dates of 11/16/2021. Proceedings Transcribed: Status Conference. Court Reporter: Gigi Simcox.. (Gore, John)***Modified TEXT on 12/1/2021 (dtg).***TRANSCRIPT IS ALREADY ON FILE IN THE CLERK'S OFFICE.***SEE DOCKET ENTRY #126.***STATUS CONFERENCE OF 11/16/2021.*** (Entered: 11/26/2021) |
| 11/29/2021 | | Text Order GRANTING 128 Motion for Extension of Time to File entered by Judge Xavier Rodriguez. The deadline for the State of Texas and Secretary Scott to Complaint filed by the United States is hereby extended to December 3, 2021. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 11/29/2021) |
| 11/30/2021 | 130 | MOTION to Appear Pro Hac Vice by Nina Perales *for Attorney Kevin Zen* ( Filing fee $ 100 receipt number 0542-15484074) by on behalf of Fiel Houston, Inc., JOLT Action, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, William C. Velasquez Institute. (Perales, Nina) (Entered: 11/30/2021) |
| 11/30/2021 | 131 | AMENDED COMPLAINT against STATE OF TEXAS, John Scott amending, filed by United States Of America.(Freeman, Daniel) (Entered: 11/30/2021) |
| 12/01/2021 | | Text Order GRANTING 130 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: |

| | | |
|---|---|---|
| | | 12/01/2021) |
| 12/01/2021 | 132 | NOTICE *of Amended Initial Disclosures* by United States Of America (Attachments: # 1 Exhibit 1: US Amended Initial Disclosures)(Freeman, Daniel) (Entered: 12/01/2021) |
| 12/01/2021 | 133 | Pretrial Disclosures *Amended Initial Disclosures* by Lisa Wise. (Armon, Orion) (Entered: 12/01/2021) |
| 12/01/2021 | 134 | Pretrial Disclosures *Amended Initial Disclosures* by Lupe C. Torres. (Henneke, Robert) (Entered: 12/01/2021) |
| 12/01/2021 | 135 | NOTICE *of Amended Initial Disclosures* by Gregory W. Abbott, Jose A. Esparza, Warren K. Paxton (Attachments: # 1 Exhibit State Defendants' Initial Disclosures)(Sweeten, Patrick) (Entered: 12/01/2021) |
| 12/01/2021 | 136 | AMENDED COMPLAINT against Jacque Callanen, Dana DeBeauvoir, Isabel Longoria, Warren K. Paxton, Yvonne Ramon, Michael Scarpello, John Scott, Lisa Wise amending 1 Complaint., filed by Vote Latino, Texas AFT, Texas Alliance for Retired Americans, LULAC Texas.(Nkwonta, Uzoma) (Entered: 12/01/2021) |
| 12/01/2021 | 137 | AMENDED COMPLAINT against Dana DeBeauvoir, Isabel Longoria, Warren K. Paxton, John Scott amending, filed by Workers Defense Action Fund, OCA-Greater Houston, League of Women Voters of Texas, REVUP-Texas, Texas Organizing Project.(Cox, Ryan) (Entered: 12/01/2021) |
| 12/01/2021 | 138 | NOTICE of Voluntary Dismissal by Isabel Longoria (Attachments: # 1 Exhibit 1)(Birring, Sameer) (Entered: 12/01/2021) |
| 12/01/2021 | 139 | AMENDED COMPLAINT against Gregory W. Abbott, Jacque Callanen, Jose A. Esparza, Isabel Longoria, Warren K. Paxton amending, filed by Paul Rutledge, Mi Familia Vota, The Arc of Texas, Marlon Lopez, Jeffrey Lamar Clemmons, Houston Area Urban League, Houston Justice, Delta Sigma Theta Sorority Inc., Marla Lopez.(Olson, Wendy) (Entered: 12/01/2021) |
| 12/01/2021 | 140 | AMENDED COMPLAINT against STATE OF TEXAS amending, filed by La Union Del Pueblo Entero.(Perales, Nina) (Entered: 12/02/2021) |
| 12/02/2021 | 141 | NOTICE of Filing PLAINTIFFS' JOINT AMENDED INITIAL DISCLOSURES by La Union Del Pueblo Entero (Attachments: # 1 Exhibit AMENDED INITIAL DISCLOSURES)(Perales, Nina) (Entered: 12/02/2021) |
| 12/02/2021 | | Text Order DENYING 53 Motion to Dismiss entered by Judge Xavier Rodriguez. In light of the amended complaint at ECF No. 140, this motion to dismiss is DENIED as moot. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 12/02/2021) |
| 12/02/2021 | | Text Order DENYING 54 Motion to Dismiss entered by Judge Xavier Rodriguez. In light of the amended complaint at ECF No. 136, this motion to dismiss is DENIED as moot. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 12/02/2021) |
| 12/02/2021 | | Text Order DENYING 55 Motion to Dismiss entered by Judge Xavier Rodriguez. In light of the amended complaint at ECF No. 137, this motion to dismiss is DENIED as moot. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 12/02/2021) |
| 12/02/2021 | | |

| | | |
|---|---|---|
| | | Text Order DENYING 64 Motion to Dismiss entered by Judge Xavier Rodriguez. In light of the amended complaint at ECF No. 139, this motion to dismiss is DENIED as moot. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 12/02/2021) |
| 12/02/2021 | | Text Order DENYING 67 Motion to Dismiss entered by Judge Xavier Rodriguez. In light of the amended complaint at ECF No. 139, this motion to dismiss is DENIED as moot. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 12/02/2021) |
| 12/02/2021 | | Text Order DENYING 68 Motion to Dismiss entered by Judge Xavier Rodriguez. On November 30, 2021, the United States of America filed an amended complaint. ECF No. 131. On December 1, 2021, the remaining plaintiffs in these consolidated cases filed amended complaints. ECF Nos. 136, 137, 139. 140. None of these complaints identify Lupe C. Torres as a defendant. Thus, it appears that Lupe C. Torres is no longer a defendant in these cases. Accordingly, this motion to dismiss is DENIED as moot. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 12/02/2021) |
| 12/08/2021 | 142 | Agreed MOTION *Regarding the Disclosure of Privileged Information* by Gregory W. Abbott, Warren K. Paxton, John Scott. (Sweeten, Patrick) (Entered: 12/08/2021) |
| 12/08/2021 | 143 | ORDER GRANTING 142 Motion regarding the disclosure of privileged information. Signed by Judge Xavier Rodriguez. (rg) (Entered: 12/09/2021) |
| 12/10/2021 | | Certification of the Electronic Record on Appeal in USCA #21-51145 has been accepted by the 5th Circuit. re 123 Notice of Appeal. Attorneys are advised that they may now download the EROA from the Fifth Circuit CM/ECF site by following these instructions here (dtg) (Entered: 12/10/2021) |
| 12/14/2021 | 144 | Unopposed MOTION for Extension of Time to File Answer re 137 Amended Complaint, 139 Amended Complaint, 140 Amended Complaint, 136 Amended Complaint, by Gregory W. Abbott, Jose A. Esparza, Warren K. Paxton, STATE OF TEXAS, John Scott. (Attachments: # 1 Proposed Order)(White, Jeffrey) (Entered: 12/14/2021) |
| 12/14/2021 | | Text Order GRANTING 144 Motion for Extension of Time to Answer entered by Judge Xavier Rodriguez. The deadline for the State Defendants to respond to the Amended Complaint is hereby extended to January 5, 2022. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 12/14/2021) |
| 12/14/2021 | 145 | MOTION to Dismiss *the Federal Government's Claims* by STATE OF TEXAS, John Scott. (Sweeten, Patrick) (Entered: 12/14/2021) |
| 12/15/2021 | 146 | ANSWER to 137 Amended Complaint with Jury Demand by Dana DeBeauvoir.(Nelson, Anthony) (Entered: 12/15/2021) |
| 12/15/2021 | 147 | ANSWER to 136 Amended Complaint, with Jury Demand by Yvonne Ramon.(Ramirez, Josephine) (Entered: 12/15/2021) |
| 12/15/2021 | 148 | ANSWER to 136 Amended Complaint, with Jury Demand by Dana DeBeauvoir.(Nelson, Anthony) (Entered: 12/15/2021) |
| 12/15/2021 | 149 | ANSWER to 136 Amended Complaint, with Jury Demand by Michael Scarpello.(Nicholas, Barbara) (Entered: 12/15/2021) |
| 12/15/2021 | 150 | ANSWER to 140 Amended Complaint with Jury Demand by Michael Scarpello.(Nicholas, Barbara) (Entered: 12/15/2021) |

| 12/15/2021 | 151 | ANSWER to 136 Amended Complaint, with Jury Demand by Jacque Callanen.(Green, Robert) (Entered: 12/15/2021) |
| 12/15/2021 | 152 | ANSWER to 139 Amended Complaint, with Jury Demand by Jacque Callanen.(Green, Robert) (Entered: 12/15/2021) |
| 12/15/2021 | 153 | *Defendant's* ANSWER to 136 Amended Complaint, by Lisa Wise.(Armon, Orion) (Entered: 12/15/2021) |
| 12/15/2021 | 154 | *Defendant's* ANSWER to 140 Amended Complaint by Lisa Wise.(Armon, Orion) (Entered: 12/15/2021) |
| 12/15/2021 | 155 | ANSWER to 137 Amended Complaint by Isabel Longoria.(Birring, Sameer) (Entered: 12/15/2021) |
| 12/15/2021 | 156 | ANSWER to 139 Amended Complaint, by Isabel Longoria.(Birring, Sameer) (Entered: 12/15/2021) |
| 12/15/2021 | 157 | ANSWER to 136 Amended Complaint, by Isabel Longoria.(Birring, Sameer) (Entered: 12/15/2021) |
| 12/17/2021 | 158 | Unopposed MOTION for Extension of Time to File Response/Reply as to 145 MOTION to Dismiss *the Federal Government's Claims* by United States Of America. (Attachments: # 1 Proposed Order)(Stewart, Michael) (Entered: 12/17/2021) |
| 12/20/2021 | | Text Order GRANTING 158 Motion for Extension of Time to File Response/Reply entered by Judge Xavier Rodriguez. The deadline for the United States to file a response to the State Defendants' Motion to Dismiss 145 is hereby extended to January 18, 2022. The deadline for the State Defendants' reply is extended to February 1, 2022. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 12/20/2021) |
| 12/21/2021 | 159 | MOTION to Appear Pro Hac Vice by John Russell Hardin *[Noah B. Baron]* ( Filing fee $ 100 receipt number 0542-15556846) by on behalf of LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino. (Hardin, John) (Entered: 12/21/2021) |
| 12/22/2021 | | Text Order GRANTING 159 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 12/22/2021) |
| 12/22/2021 | 160 | Unopposed MOTION for Protective Order *Stipulated Between the United States of America and Defendants the State of Texas and Secretary of State John Scott* by United States Of America. (Attachments: # 1 Proposed Order)(Stewart, Michael) (Entered: 12/22/2021) |
| 12/22/2021 | 161 | STIPULATION *Regarding Extension of Expert Discovery Deadline* by United States Of America. (Stewart, Michael) (Entered: 12/22/2021) |
| 12/23/2021 | 162 | STIPULATED PROTECTIVE ORDER. Signed by Judge Xavier Rodriguez. (mgr) (Entered: 12/28/2021) |
| 12/28/2021 | 168 | Pro Hac Vice Fee Paid by Mark F. Hearne; Filing fee $100.00, receipt number 500059574. (rg) (Entered: 01/03/2022) |

| 12/28/2021 | 169 | Pro Hac Vice Fee Paid by Stephen S. Davis; Filing fee $100.00, receipt number 500059575. (rg) (Entered: 01/03/2022) |
|---|---|---|
| 12/28/2021 | 170 | Pro Hac Vice Fee Paid by John R. Ashcroft; Filing fee $100.00, receipt number 500059573. (rg) (Entered: 01/03/2022) |
| 12/29/2021 | 163 | MOTION to Appear Pro Hac Vice by John Russell Hardin *[Marcos Mocine-McQueen* ( Filing fee $ 100 receipt number 0542-15568912) by on behalf of LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino. (Hardin, John) (Entered: 12/29/2021) |
| 12/30/2021 | | Text Order GRANTING 163 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 12/30/2021) |
| 12/30/2021 | 164 | NOTICE *of Initial Disclosures by Lisa Wise* by Lisa Wise (Attachments: # 1 Initial Disclosures by Lisa Wise)(Armon, Orion) (Entered: 12/30/2021) |
| 01/03/2022 | 165 | MOTION to Appear Pro Hac Vice by Mark F. Hearne by on behalf of John R. Ashcroft. (Attachments: # 1 Proposed Order)(rg) (Entered: 01/03/2022) |
| 01/03/2022 | 166 | MOTION to Appear Pro Hac Vice by Stephen S. Davis by on behalf of John R. Ashcroft. (Attachments: # 1 Proposed Order)(rg) (Entered: 01/03/2022) |
| 01/03/2022 | 167 | MOTION to Appear Pro Hac Vice by John R. Ashcroft by on behalf of John R. Ashcroft. (Attachments: # 1 Proposed Order)(rg) (Entered: 01/03/2022) |
| 01/03/2022 | 171 | MOTION for Leave to File Amicus Brief by John R. Ashcroft. by John R. Ashcroft. (Attachments: # 1 Brief)(rg) (Entered: 01/03/2022) |
| 01/04/2022 | 172 | Opposed MOTION to Consolidate Cases by Gregory W. Abbott, Warren K. Paxton, John Scott. (Sweeten, Patrick) (Entered: 01/04/2022) |
| 01/04/2022 | 173 | MOTION to Appear Pro Hac Vice by John Russell Hardin *[Haley Costello Essig]* ( Filing fee $ 100 receipt number 0542-15579725) by on behalf of LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino. (Hardin, John) (Entered: 01/04/2022) |
| 01/04/2022 | | Text Order GRANTING 173 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 01/04/2022) |
| 01/05/2022 | 174 | ORDER - Set Motion Hearing for 172 Opposed MOTION to Consolidate Cases (Motion Hearing set for 1/11/2022 10:30 AM before Judge Xavier Rodriguez). Signed by Judge Xavier Rodriguez. (rg) (Entered: 01/05/2022) |
| 01/05/2022 | 175 | MOTION to Dismiss *the Complaint of the OCA-Greater Houston Plaintiffs* by Warren K. Paxton, John Scott. (Attachments: # 1 Exhibit Transcript of November 16, 2021 Hearing)(Sweeten, Patrick) (Entered: 01/05/2022) |
| 01/05/2022 | 176 | MOTION to Dismiss *LUPE, et al.'s First Amended Complaint* by Gregory W. Abbott, Warren K. Paxton, STATE OF TEXAS. (Attachments: # 1 Exhibit A - Status Conference |

| | | |
|---|---|---|
| | | Transcript 11-16-21)(Sweeten, Patrick) (Entered: 01/05/2022) |
| 01/05/2022 | 177 | MOTION to Dismiss *LULAC, et al.'s First Amended Complaint* by Gregory W. Abbott, Warren K. Paxton, STATE OF TEXAS, John Scott. (Attachments: # 1 Exhibit A - Status Conference Transcript 11-16-21)(Sweeten, Patrick) (Entered: 01/05/2022) |
| 01/05/2022 | 178 | Unopposed MOTION for Leave to Exceed Page Limitation *for the State Defendants' Motion to Dismiss the Houston Justice Plaintiffs' Amended Complaint* by Gregory W. Abbott, Warren K. Paxton, John Scott. (Attachments: # 1 Proposed Order Proposed Order on Motion for Leave, # 2 Exhibit Proposed Motion to Dismiss, # 3 Exhibit November 16, 2021 Hearing Transcript)(Sweeten, Patrick) (Entered: 01/05/2022) |
| 01/06/2022 | 179 | NOTICE of Attorney Appearance by William Thomas Thompson on behalf of Gregory W. Abbott, Warren K. Paxton, John Scott. Attorney William Thomas Thompson added to party Gregory W. Abbott(pty:dft), Attorney William Thomas Thompson added to party Warren K. Paxton(pty:dft), Attorney William Thomas Thompson added to party John Scott(pty:condft) (Thompson, William) (Entered: 01/06/2022) |
| 01/07/2022 | | Text Order GRANTING 178 Motion for Leave to File Excess Pages entered by Judge Xavier Rodriguez. Pursuant to the Fact Sheet for Judge Xavier Rodriguez, found on the TXWD website, any brief or memorandum less than 30 pages may be submitted without leave of Court. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 01/07/2022) |
| 01/07/2022 | 180 | MOTION to Appear Pro Hac Vice by John Russell Hardin *for Michael B. Jones* ( Filing fee $ 100 receipt number 0542-15593872) by on behalf of LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino. (Hardin, John) (Entered: 01/07/2022) |
| 01/07/2022 | 182 | MOTION to Dismiss the Houston Justice Plaintiffs' Amended Complaint by Gregory W. Abbott, Warren K. Paxton, John Scott. (rg) (Entered: 01/10/2022) |
| 01/09/2022 | 181 | Response in Opposition to Motion, filed by League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund, re 172 Opposed MOTION to Consolidate Cases filed by Consol Defendant John Scott, Defendant Warren K. Paxton, Defendant Gregory W. Abbott *jointly filed by all private plaintiffs* (Cox, Ryan) (Entered: 01/09/2022) |
| 01/10/2022 | | Text Order GRANTING 180 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 01/10/2022) |
| 01/10/2022 | 183 | Response in Opposition to Motion, filed by United States Of America, re 172 Opposed MOTION to Consolidate Cases filed by Consol Defendant John Scott, Defendant Warren K. Paxton, Defendant Gregory W. Abbott (Paikowsky, Dana) (Entered: 01/10/2022) |
| 01/11/2022 | | Text Order DENYING 172 Motion to Consolidate Cases entered by Judge Xavier Rodriguez. For the reasons discussed at today's hearing, the motion to consolidate Longoria v. Paxton, No. 5-21-cv-1223 (W.D. Tex.) with La Union del Pueblo Entero v. Abbott, No. 5:21-cv-844 (W.D. Tex.) is hereby DENIED. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 01/11/2022) |
| 01/11/2022 | 184 | |

| | | |
|---|---|---|
| | | MOTION to Appear Pro Hac Vice by Ryan V. Cox *for Sarah Chen* ( Filing fee $ 100 receipt number 0542-15602998) by on behalf of League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund. (Cox, Ryan) (Entered: 01/11/2022) |
| 01/11/2022 | | Text Order GRANTING 184 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 01/11/2022) |
| 01/11/2022 | 185 | ORDER DENYING 171 Motion for Leave to File Amicus Brief. Signed by Judge Xavier Rodriguez. (rg) (Entered: 01/11/2022) |
| 01/11/2022 | 186 | Unopposed MOTION to Withdraw as Attorney *,Lora Spencer,* by Houston Justice. (Attachments: # 1 Proposed Order)(Spencer, Lora) (Entered: 01/11/2022) |
| 01/11/2022 | 190 | Minute Entry for proceedings held before Judge Xavier Rodriguez: Status Conference held on 1/11/2022. (Minute entry documents are not available electronically.). (Court Reporter Gigi Simcox.)(rg) (Entered: 01/13/2022) |
| 01/12/2022 | | Text Order DENYING 165 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez in light of the Court's denial 185 of John Ashcroft's motion for leave to file an amicus brief 171 in this matter. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 01/12/2022) |
| 01/12/2022 | | Text Order DENYING 166 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez in light of the Court's denial 185 of John Ashcroft's motion for leave to file an amicus brief 171 in this matter. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 01/12/2022) |
| 01/12/2022 | | Text Order DENYING 167 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez in light of the Court's denial 185 of John Ashcroft's motion for leave to file an amicus brief 171 in this matter. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 01/12/2022) |
| 01/12/2022 | | Text Order GRANTING 186 Motion to Withdraw as Attorney entered by Judge Xavier Rodriguez. IT IS THEREFORE ORDERED that Lora Spencer shall be withdrawn as counsel of record for Plaintiffs. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 01/12/2022) |
| 01/12/2022 | 187 | MOTION to Appear Pro Hac Vice by Orion Armon *on Behalf of David Louk* ( Filing fee $ 100 receipt number 0542-15607042) by on behalf of Lisa Wise. (Attachments: # 1 Proposed Order)(Armon, Orion) (Entered: 01/12/2022) |
| 01/12/2022 | 188 | MOTION to Appear Pro Hac Vice by Orion Armon *on Behalf of David Louk* ( Filing fee $ 100 receipt number 0542-15607268) by on behalf of Lisa Wise. (Attachments: # 1 Proposed Order)(Armon, Orion). Duplicate Filing fee was refunded by Finance on 1/24/2022 (kc). (Entered: 01/12/2022) |
| 01/12/2022 | | Text Order GRANTING 187 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: |

| | | |
|---|---|---|
| | | 01/12/2022) |
| 01/12/2022 | | Text Order MOOTING 188 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez in light of the Court's order granting Mr. Louk's previous motion 187 to appear pro hac vice in this matter. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 01/12/2022) |
| 01/13/2022 | 189 | TRANSCRIPT REQUEST by Fiel Houston, Inc., Friendship-West Baptist Church, JOLT Action, James Lewin, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, Texas Impact, William C. Velasquez Institute for proceedings held on 1/11/2022.. (Perales, Nina)***Modified TEXT on 1/14/2022 (dtg).***STATUS CONFERENCE (VIDEO) OF 1/11/2022 BEFORE JUDGE XAVIER RODRIGUEZ.***COURT REPORTER: GIGI SIMCOX.*** (Entered: 01/13/2022) |
| 01/14/2022 | 191 | MOTION to Amend Complaint by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, Houston Justice, Marla Lopez, Marlon Lopez, Mi Familia Vota, Paul Rutledge, The Arc of Texas. (Attachments: # 1 Exhibit A - Second Amended Complaint, # 2 Proposed Order)(Holmes, Jennifer) (Entered: 01/14/2022) |
| 01/14/2022 | 192 | MOTION to Amend Complaint by League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund. (Attachments: # 1 Exhibit Second Amended Complaint, # 2 Proposed Order)(Cox, Ryan) (Entered: 01/14/2022) |
| 01/18/2022 | | Text Order GRANTING 191 Motion for Leave to File Second Amended Complaint entered by Judge Xavier Rodriguez. The Clerk is DIRECTED to file the proposed Second Amended Complaint, attached to the motion as Exhibit A [191-1]. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 01/18/2022) |
| 01/18/2022 | | Text Order GRANTING 192 Motion for Leave to File Second Amended Complaint entered by Judge Xavier Rodriguez. The Clerk is DIRECTED to file the proposed Second Amended Complaint, attached to the motion as Exhibit A [192-1]. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 01/18/2022) |
| 01/18/2022 | 193 | Transcript filed of Proceedings held on 1-11-22, Proceedings Transcribed: Status Conference. Court Reporter/Transcriber: Gigi Simcox, Telephone number: 210-244-5037, gigi_simcox@txwd.uscourts.gov. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 2/8/2022, Redacted Transcript Deadline set for 2/18/2022, Release of Transcript Restriction set for 4/18/2022, Appeal Record due by 2/2/2022, (gs) (Entered: 01/18/2022) |
| 01/18/2022 | 194 | MOTION for Leave to File Second Amended Complaint by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino. (Attachments: # 1 Exhibit A- Second Amended Complaint, # 2 Proposed Order)(Nkwonta, Uzoma) (Entered: 01/18/2022) |
| 01/18/2022 | 195 | Memorandum in Opposition to Motion, filed by United States Of America, re 145 MOTION to Dismiss *the Federal Government's Claims* filed by Consol Defendant John Scott, Consol Defendant STATE OF TEXAS (Freeman, Daniel) (Entered: 01/18/2022) |

| | | |
|---|---|---|
| 01/18/2022 | 199 | SECOND AMENDED COMPLAINT against Gregory W. Abbott, Jacque Callanen, Isabel Longoria, Warren K. Paxton, John Scott, Kim Ogg, Joe Gonzales, Jose Garza amending, filed by Paul Rutledge, Mi Familia Vota, The Arc of Texas, Marlon Lopez, Jeffrey Lamar Clemmons, Houston Area Urban League, Houston Justice, Delta Sigma Theta Sorority Inc., Marla Lopez.(rg) (Entered: 01/20/2022) |
| 01/18/2022 | 200 | SECOND AMENDED COMPLAINT against Dana DeBeauvoir, Jose Garza, Isabel Longoria, Kim Ogg, Warren K. Paxton, John Scott amending, filed by Workers Defense Action Fund, OCA-Greater Houston, League of Women Voters of Texas, REVUP-Texas.(rg) (Entered: 01/20/2022) |
| 01/19/2022 | 196 | Response in Opposition to Motion, filed by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino, re 177 MOTION to Dismiss *LULAC, et al.'s First Amended Complaint* filed by Consol Defendant John Scott, Defendant Warren K. Paxton, Defendant Gregory W. Abbott, Consol Defendant STATE OF TEXAS (Nkwonta, Uzoma) (Entered: 01/19/2022) |
| 01/19/2022 | | Text Order GRANTING 194 Motion for Leave to File Second Amended Complaint entered by Judge Xavier Rodriguez. The Clerk is DIRECTED to file the proposed Second Amended Complaint, attached to the motion as Exhibit A [194-1]. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 01/19/2022) |
| 01/19/2022 | 197 | Memorandum in Opposition to Motion, filed by Fiel Houston, Inc., Friendship-West Baptist Church, JOLT Action, James Lewin, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute, re 176 MOTION to Dismiss *LUPE, et al.'s First Amended Complaint* filed by Defendant Warren K. Paxton, Defendant Gregory W. Abbott, Consol Defendant STATE OF TEXAS (Perales, Nina) (Entered: 01/19/2022) |
| 01/19/2022 | 198 | Response in Opposition to Motion, filed by League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund, re 175 MOTION to Dismiss *the Complaint of the OCA-Greater Houston Plaintiffs* filed by Consol Defendant John Scott, Defendant Warren K. Paxton (Cox, Ryan) (Entered: 01/19/2022) |
| 01/19/2022 | 207 | SECOND AMENDED COMPLAINT against Jacque Callanen, Dana DeBeauvoir, Jose Garza, Joe Gonzales, Isabel Longoria, Kim Ogg, Warren K. Paxton, Yvonne Ramon, Michael Scarpello, John Scott, Lisa Wise, John Creuzot, Ricardo Rodriguez, Jr., Yvonne Rosales amending, filed by Vote Latino, Texas AFT, Texas Alliance for Retired Americans, LULAC Texas.(rg) (Entered: 01/25/2022) |
| 01/20/2022 | | Text Order MOOTING 182 Motion to Dismiss in light of the filing of the Houston Justice Plaintiffs' Second Amended Complaint 199 entered by Judge Xavier Rodriguez. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 01/20/2022) |
| 01/20/2022 | | Text Order MOOTING 175 Motion to Dismiss in light of the filing of the OCA-Greater Houston Plaintiffs' Second Amended Complaint 200 entered by Judge Xavier Rodriguez. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 01/20/2022) |
| 01/21/2022 | 201 | NOTICE of Attorney Appearance by Christina Marie Beeler on behalf of Isabel Longoria. Attorney Christina Marie Beeler added to party Isabel Longoria(pty:condft) (Beeler, |

| | | |
|---|---|---|
| | | Christina) (Entered: 01/21/2022) |
| 01/21/2022 | 202 | NOTICE of Attorney Appearance by Tiffany Sue Bingham on behalf of Isabel Longoria. Attorney Tiffany Sue Bingham added to party Isabel Longoria(pty:condft) (Bingham, Tiffany) (Entered: 01/21/2022) |
| 01/21/2022 | 203 | MOTION for Leave to File Amicus Brief by Young Black Lawyers' Organizing Coalition. (Attachments: # 1 Proposed Amicus Curiae Brief)(Moye, Veronica) (Entered: 01/21/2022) |
| 01/22/2022 | 204 | MOTION for Leave to File Second Amended Complaint by Fiel Houston, Inc., Friendship-West Baptist Church, JOLT Action, James Lewin, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute. (Attachments: # 1 Exhibit A (Proposed Second Amended Complaint), # 2 Proposed Order)(Morales-Doyle, Sean) (Entered: 01/22/2022) |
| 01/24/2022 | 205 | MOTION to Compel *Production* by United States Of America. (Attachments: # 1 Proposed Order, # 2 Exhibit Exhibit 1, # 3 Exhibit Exhibit 2, # 4 Exhibit Exhibit 3, # 5 Exhibit Exhibit 4)(Stewart, Michael) (Entered: 01/24/2022) |
| 01/24/2022 | 206 | Unopposed MOTION for Extension of Time to File Response/Reply as to 176 MOTION to Dismiss *LUPE, et al.'s First Amended Complaint*, 177 MOTION to Dismiss *LULAC, et al.'s First Amended Complaint* by Warren K. Paxton, STATE OF TEXAS, John Scott. (White, Jeffrey) (Entered: 01/24/2022) |
| 01/25/2022 | | Text Order GRANTING 204 Motion for Leave to File Second Amended Complaint entered by Judge Xavier Rodriguez. The Clerk is DIRECTED to file the proposed Second Amended Complaint [204-1]. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 01/25/2022) |
| 01/25/2022 | 208 | SECOND AMENDED COMPLAINT against John Creuzot, Jose Garza, Warren K. Paxton, Yvonne Rosales, STATE OF TEXAS, Michael Scarpello, John Scott, Lisa Wise amending, filed by Texas Hispanics Organized for Political Education, Friendship-West Baptist Church, La Union Del Pueblo Entero, James Lewin, Mexican American Bar Association of Texas, William C. Velasquez Institute, Fiel Houston, Inc., JOLT Action, Southwest Voter Registration Education Project, Texas Impact.(rg) (Entered: 01/25/2022) |
| 01/25/2022 | | Text Order MOOTING 176 Motion to Dismiss in light of the filing of the LUPE Plaintiffs' Second Amended Complaint 208 entered by Judge Xavier Rodriguez. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 01/25/2022) |
| 01/25/2022 | 209 | STIPULATION *Extension of Expert Discovery Deadline* by Fiel Houston, Inc., Friendship-West Baptist Church, JOLT Action, James Lewin, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, Texas Impact, William C. Velasquez Institute. (Perales, Nina) (Entered: 01/25/2022) |
| 01/26/2022 | | Text Order MOOTING 177 Motion to Dismiss in light of the filing of the LULAC Plaintiffs' Second Amended Complaint 207 entered by Judge Xavier Rodriguez. There is no document associated with this entry.) (cb) (Entered: 01/26/2022) |
| 01/26/2022 | | Text Order MOOTING 206 Unopposed Motion for Extension of Time to File Reply to Motions to Dismiss the LUPE Plaintiffs' First Amended Complaint 176 and the LULAC |

| | | |
|---|---|---|
| | | Plaintiffs' First Amended Complaint 177 entered by Judge Xavier Rodriguez. The Motions to Dismiss have been mooted in light of the filing of the LUPE Plaintiffs' Second Amended Complaint 208 and the LULAC Plaintiffs' Second Amended Complaint 207 . (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 01/26/2022) |
| 01/26/2022 | 210 | Unopposed MOTION for Extension of Time to File Response/Reply as to 205 MOTION to Compel *Production* by STATE OF TEXAS, John Scott. (Attachments: # 1 Proposed Order)(White, Jeffrey) (Entered: 01/26/2022) |
| 01/26/2022 | 211 | ORDER GRANTING 210 Motion for Extension of Time to File Response/Reply. Defendants are hereby ORDERED to file a response no later than February 9, 2022. Any reply must be filed no later than February 16, 2022. The Court hereby SETS a hearing on this motion for Wednesday, February 23, 2022, at 10:30 a.m. The Courtroom Deputy will inform the parties of the means by which the hearing will be conducted. Signed by Judge Xavier Rodriguez. (rg) (Entered: 01/26/2022) |
| 01/26/2022 | | Motion Hearing: 205 MOTION to Compel Production. Motion Hearing set for 2/23/2022 10:30 AM before Judge Xavier Rodriguez. (rg) (Entered: 01/26/2022) |
| 01/27/2022 | 212 | Opposed MOTION for Extension of Time to File Response/Reply as to 207 Amended Complaint, 200 Amended Complaint, 208 Amended Complaint, 199 Amended Complaint, by Gregory W. Abbott, Warren K. Paxton, STATE OF TEXAS, John Scott. (Attachments: # 1 Proposed Order)(White, Jeffrey) (Entered: 01/27/2022) |
| 01/27/2022 | | Text Order GRANTING 212 Motion for Extension of Time to File Response/Reply entered by Judge Xavier Rodriguez. The deadline for State Defendants to respond to the Houston Justice Plaintiffs' Second Amended Complaint 199 and the OCA-Greater Houston Plaintiffs' Second Amended Complaint 200 is hereby extended to February 8, 2022. The deadline for State Defendants to respond to the LULAC Plaintiffs' Second Amended Complaint 207 is extended to February 9, 2022. The deadline for State Defendants to respond to the LUPE Plaintiffs' Second Amended Complaint 208 is extended to February 15, 2022. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 01/27/2022) |
| 01/27/2022 | 213 | MOTION to Withdraw as Attorney - *Christopher Bell,* by Fiel Houston, Inc., JOLT Action, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, William C. Velasquez Institute. (Attachments: # 1 Proposed Order)(Bell, Christopher) (Entered: 01/27/2022) |
| 01/28/2022 | | Text Order GRANTING 213 Motion to Withdraw as Attorney entered by Judge Xavier Rodriguez. The appearance of Christopher H. Bell is withdrawn and he shall be removed from all service lists pertaining to this action. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 01/28/2022) |
| 01/28/2022 | 214 | STIPULATION *Regarding Extension of Expert Discovery Deadline* by United States Of America. (Stewart, Michael) (Entered: 01/28/2022) |
| 01/28/2022 | 215 | ANSWER to 200 Amended Complaint by Isabel Longoria.(Birring, Sameer) (Entered: 01/28/2022) |
| 01/28/2022 | 216 | ANSWER to 199 Amended Complaint, by Isabel Longoria.(Birring, Sameer) (Entered: 01/28/2022) |
| 01/28/2022 | 217 | |

| | | ANSWER to 200 Amended Complaint by Dana DeBeauvoir.(Nelson, Anthony) (Entered: 01/28/2022) |
|---|---|---|
| 01/28/2022 | 218 | MOTION to Withdraw as Attorney *ZACK GOLDBERG* by Lisa Wise. (Attachments: # 1 Proposed Order)(Natarajan, Ranjana) (Entered: 01/28/2022) |
| 01/31/2022 | | Text Order GRANTING 218 Motion to Withdraw as Attorney entered by Judge Xavier Rodriguez. The appearance of Zack Goldberg for Defendant Lisa Wise is withdrawn and he shall be removed from all service lists pertaining to this action. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 01/31/2022) |
| 01/31/2022 | 219 | ANSWER to 207 Amended Complaint, by Isabel Longoria.(Birring, Sameer) (Entered: 01/31/2022) |
| 02/01/2022 | 220 | ANSWER to 207 Amended Complaint, by Dana DeBeauvoir.(Nelson, Anthony) (Entered: 02/01/2022) |
| 02/01/2022 | 221 | ANSWER to 199 Amended Complaint, with Jury Demand by Jacque Callanen.(Green, Robert) (Entered: 02/01/2022) |
| 02/01/2022 | 222 | ANSWER to 207 Amended Complaint, with Jury Demand by Jacque Callanen.(Green, Robert) (Entered: 02/01/2022) |
| 02/01/2022 | 223 | REPLY to Response to Motion, filed by STATE OF TEXAS, John Scott, re 145 MOTION to Dismiss *the Federal Government's Claims* filed by Consol Defendant John Scott, Consol Defendant STATE OF TEXAS (Sweeten, Patrick) (Entered: 02/01/2022) |
| 02/02/2022 | 224 | ANSWER to 207 Amended Complaint, with Jury Demand by Michael Scarpello.(Nicholas, Barbara) (Entered: 02/02/2022) |
| 02/02/2022 | 225 | REQUEST FOR ISSUANCE OF SUMMONS by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, Houston Justice, The Arc of Texas. *on [Doc #199] Second Amended Complaint* (Broughton, Kenneth) (Entered: 02/02/2022) |
| 02/02/2022 | 226 | ANSWER to 207 Amended Complaint, with Jury Demand by Yvonne Ramon.(Ramirez, Josephine) (Entered: 02/02/2022) |
| 02/02/2022 | 227 | MOTION to Appear Pro Hac Vice by Kenneth E. Broughton, Jr *for Danielle V. Ahlrich* ( Filing fee $ 100 receipt number 0542-15674143) by on behalf of Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, Houston Justice, The Arc of Texas. (Attachments: # 1 Proposed Order)(Broughton, Kenneth) (Entered: 02/02/2022) |
| 02/02/2022 | 228 | REQUEST FOR ISSUANCE OF SUMMONS by League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund. *Harris DA* (Cox, Ryan) (Entered: 02/02/2022) |
| 02/02/2022 | 229 | REQUEST FOR ISSUANCE OF SUMMONS by League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund. *Travis DA* (Cox, Ryan) (Entered: 02/02/2022) |
| 02/02/2022 | | Text Order GRANTING 227 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted permission to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: |

| | | 02/02/2022) |
|---|---|---|
| 02/02/2022 | 230 | *Defendant Lisa Wise's* ANSWER to 207 Amended Complaint, by Lisa Wise.(Armon, Orion) (Entered: 02/02/2022) |
| 02/03/2022 | 231 | REQUEST FOR ISSUANCE OF SUMMONS by Fiel Houston, Inc., Friendship-West Baptist Church, JOLT Action, James Lewin, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute. (Perales, Nina) (Entered: 02/03/2022) |
| 02/04/2022 | 232 | Consent MOTION for Protective Order by United States Of America. (Attachments: # 1 Exhibit 1: Stipulated Protective Order)(Freeman, Daniel) (Entered: 02/04/2022) |
| 02/04/2022 | 233 | Response in Opposition to Motion, filed by Gregory W. Abbott, Warren K. Paxton, STATE OF TEXAS, John Scott, re 203 MOTION for Leave to File Amicus Brief filed by Movant Young Black Lawyers' Organizing Coalition (Attachments: # 1 Proposed Order)(Olson, Leif) (Entered: 02/04/2022) |
| 02/04/2022 | 234 | MOTION to Appear Pro Hac Vice by Ranjana Natarajan *for ROBERT COTTER* ( Filing fee $ 100 receipt number 0542-15682493) by on behalf of Lisa Wise. (Natarajan, Ranjana) (Entered: 02/04/2022) |
| 02/04/2022 | 235 | Summons Issued as to Jose Garza, Joe Gonzales, Kim Ogg, Yvonne Rosales. (wg) (Entered: 02/04/2022) |
| 02/04/2022 | | Text Order GRANTING 234 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted permission to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 02/04/2022) |
| 02/08/2022 | 236 | WAIVER OF SERVICE Returned Executed by Texas Hispanics Organized for Political Education, Friendship-West Baptist Church, La Union Del Pueblo Entero, James Lewin, Mexican American Bar Association of Texas, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute, JOLT Action, Southwest Voter Registration Education Project, Texas Impact (Perales, Nina) (Entered: 02/08/2022) |
| 02/08/2022 | 237 | STIPULATED CONFIDENTIALITY AND PROTECTIVE ORDER. Signed by Judge Xavier Rodriguez. (rg) (Entered: 02/08/2022) |
| 02/08/2022 | 238 | ANSWER to 208 Amended Complaint, with Jury Demand by Michael Scarpello.(Stool, Ben) (Entered: 02/08/2022) |
| 02/08/2022 | 239 | MOTION to Dismiss *the Houston Justice Plaintiffs' Second Amended Complaint* by Gregory W. Abbott, Warren K. Paxton, John Scott. (Sweeten, Patrick) (Entered: 02/08/2022) |
| 02/08/2022 | 240 | MOTION to Dismiss *the OCA-Greater Houston Plaintiffs' Second Amended Complaint* by Warren K. Paxton, John Scott. (Sweeten, Patrick) (Entered: 02/08/2022) |
| 02/08/2022 | 241 | MOTION *for Entry of Order Regarding Discovery of Electronically Stored Information* by United States Of America. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Yun, Jennifer) (Entered: 02/08/2022) |

| 02/08/2022 | 242 | *Defendant Lisa Wise's* ANSWER to 208 Amended Complaint, by Lisa Wise.(Armon, Orion) (Entered: 02/08/2022) |
|---|---|---|
| 02/09/2022 | 243 | MOTION to Dismiss *LULAC Plaintiffs' Second Amended Complaint* by Warren K. Paxton, John Scott. (Attachments: # 1 Exhibit Transcript of Status Conference)(Sweeten, Patrick) (Entered: 02/09/2022) |
| 02/09/2022 | 244 | WAIVER OF SERVICE Returned Executed by Texas Hispanics Organized for Political Education, Friendship-West Baptist Church, La Union Del Pueblo Entero, James Lewin, Mexican American Bar Association of Texas, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute, Fiel Houston, Inc., JOLT Action, Southwest Voter Registration Education Project, Texas Impact (Perales, Nina) (Entered: 02/09/2022) |
| 02/09/2022 | 245 | NOTICE of Attorney Appearance by Jack Buckley Disorbo on behalf of Warren K. Paxton, STATE OF TEXAS, John Scott. Attorney Jack Buckley Disorbo added to party Warren K. Paxton(pty:dft), Attorney Jack Buckley Disorbo added to party STATE OF TEXAS(pty:condft), Attorney Jack Buckley Disorbo added to party John Scott(pty:condft) (Disorbo, Jack) (Entered: 02/09/2022) |
| 02/09/2022 | 246 | SUMMONS Returned Executed by The Arc of Texas, Houston Area Urban League, Houston Justice, Delta Sigma Theta Sorority Inc.. Joe Gonzales served on 2/8/2022, answer due 3/1/2022; Kim Ogg served on 2/8/2022, answer due 3/1/2022. (Broughton, Kenneth) (Entered: 02/09/2022) |
| 02/09/2022 | 247 | RESPONSE to Motion, filed by STATE OF TEXAS, John Scott, re 205 MOTION to Compel *Production* filed by Consol Plaintiff United States Of America (Attachments: # 1 Exhibit A- Defendants' Obj. and Resp. to USA's First RFPs, # 2 Exhibit B- Gipson Declaration 2.7.22- Final- Executed, # 3 Exhibit C- SB1- Crawford Declaration 2.8.22 - FINAL signed, # 4 Exhibit D- 211117 LUPE Transcript of Status Conference, # 5 Exhibit E- 20211230 USA's 1st Interrogatories to State Defs)(Sweeten, Patrick) (Entered: 02/09/2022) |
| 02/09/2022 | 248 | SUMMONS Returned Executed by The Arc of Texas, Houston Area Urban League, Houston Justice, Delta Sigma Theta Sorority Inc.. *[doc 199] Plaintiffs' Second Amended Complaint* (Broughton, Kenneth) (Entered: 02/09/2022) |
| 02/10/2022 | 251 | STIPULATED ORDER 241 regarding discovery of electronically stored information Signed by Judge Xavier Rodriguez. (rg) (Entered: 02/11/2022) |
| 02/11/2022 | 249 | REPLY to Response to Motion, filed by Young Black Lawyers' Organizing Coalition, re 203 MOTION for Leave to File Amicus Brief filed by Movant Young Black Lawyers' Organizing Coalition (Moye, Veronica) (Entered: 02/11/2022) |
| 02/11/2022 | 250 | MOTION to Appear Pro Hac Vice by Jennifer A. Holmes *Liliana Zaragoza* ( Filing fee $ 100 receipt number 0542-15706486) by on behalf of Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, Houston Justice, The Arc of Texas. (Attachments: # 1 Exhibit A - Additional Bar Admission Information)(Holmes, Jennifer) (Entered: 02/11/2022) |
| 02/11/2022 | 252 | Response in Opposition to Motion, filed by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, Houston Justice, Marla Lopez, Marlon Lopez, Mi Familia Vota, Paul Rutledge, The Arc of Texas, re 239 MOTION to Dismiss *the Houston Justice Plaintiffs' Second Amended Complaint* filed by Consol Defendant John Scott, Defendant Warren K. Paxton, Defendant Gregory W. Abbott (Attachments: # 1 Exhibit A - State of Texass Motion for Rehearing at 1, State v. Stephens, No. PD-1032-20 |

| | | (Dec. 30, 2021))(Holmes, Jennifer) (Entered: 02/11/2022) |
|---|---|---|
| 02/14/2022 | | Text Order GRANTING 250 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted permission to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 02/14/2022) |
| 02/14/2022 | | Text Order GRANTING 203 Motion for Leave to File Amicus Brief by the Young Black Lawyers Organizing Coalition (YBLOC) entered by Judge Xavier Rodriguez. YBLOC seeks to represent a unique perspective within the universe of civic organizations impacted by SB1--that of lawyers and law students dedicated to protecting and empowering Black voters. Because YBLOC conducts organizing and advocacy in support of its mission *in Texas* (along with six other states), the Court concludes that YBLOC has a "special interest that justifies [it] having a say." *Strasser v. Dooley*, 432 F.2d 567, 569 (1st Cir. 1970). The Clerk is DIRECTED to file the proposed amicus brief attached as an exhibit to YBLOCs motion [203-1]. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 02/14/2022) |
| 02/14/2022 | 253 | AMICUS CURIAE BRIEF by Young Black Lawyers' Organizing Coalition. (rg) (Entered: 02/14/2022) |
| 02/15/2022 | 254 | REQUEST FOR ISSUANCE OF SUMMONS by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, Houston Justice, The Arc of Texas. *Jose Garza re Doc# 199* ) (Broughton, Kenneth) (Entered: 02/15/2022) |
| 02/15/2022 | 255 | MOTION to Dismiss *LUPE Plaintiffs' Second Amended Complaint* by Warren K. Paxton, STATE OF TEXAS, John Scott. (Attachments: # 1 Exhibit A- LUPE Transcript of Status Conference)(Sweeten, Patrick) (Entered: 02/15/2022) |
| 02/15/2022 | 256 | Summons Issued as to Jose Garza, in his official capacity as the Travis County District Attorney. (wg) (Entered: 02/15/2022) |
| 02/16/2022 | 257 | GOVT'S REPLY to Response to Motion, filed by United States Of America, re 205 MOTION to Compel *Production* filed by Consol Plaintiff United States Of America (Stewart, Michael) (Entered: 02/16/2022) |
| 02/18/2022 | 258 | REQUEST FOR ISSUANCE OF SUMMONS by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino. *John Creuzot, in his official capacity as Dallas County District Attorney* (Hardin, John) (Entered: 02/18/2022) |
| 02/18/2022 | 259 | REQUEST FOR ISSUANCE OF SUMMONS by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino. *Yvonne Rosales, in her official capacity as El Paso County District Attorney* (Hardin, John) (Entered: 02/18/2022) |
| 02/18/2022 | 260 | REQUEST FOR ISSUANCE OF SUMMONS by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino. *Ricardo Rodriguez, Jr., in his official capacity as Hidalgo County District Attorney* (Hardin, John) (Entered: 02/18/2022) |
| 02/18/2022 | 261 | REQUEST FOR ISSUANCE OF SUMMONS by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino. *Kim Ogg, in her official capacity as Harris County District Attorney* (Hardin, John) (Entered: 02/18/2022) |
| 02/18/2022 | 262 | REQUEST FOR ISSUANCE OF SUMMONS by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino. *Jose Garza, in his official capacity as Travis* |

| | | *County District Attorney* (Hardin, John) (Entered: 02/18/2022) |
|---|---|---|
| 02/18/2022 | 263 | REQUEST FOR ISSUANCE OF SUMMONS by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino. *Joe Gonzales, in his official capacity as Bexar County District Attorney* (Hardin, John) (Entered: 02/18/2022) |
| 02/18/2022 | 264 | REPLY to Response to Motion, filed by Gregory W. Abbott, Warren K. Paxton, John Scott, re 239 MOTION to Dismiss *the Houston Justice Plaintiffs' Second Amended Complaint* filed by Consol Defendant John Scott, Defendant Warren K. Paxton, Defendant Gregory W. Abbott (Sweeten, Patrick) (Entered: 02/18/2022) |
| 02/22/2022 | 265 | SUMMONS Returned Executed by Texas Hispanics Organized for Political Education, Friendship-West Baptist Church, La Union Del Pueblo Entero, James Lewin, Mexican American Bar Association of Texas, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute, Fiel Houston, Inc., JOLT Action, Southwest Voter Registration Education Project. Yvonne Rosales served on 2/15/2022, answer due 3/8/2022. (Perales, Nina) (Entered: 02/22/2022) |
| 02/22/2022 | 266 | Summons Issued as to John Creuzot. (rg) (Entered: 02/22/2022) |
| 02/22/2022 | 267 | Summons Issued as to Yvonne Rosales. (rg) (Entered: 02/22/2022) |
| 02/22/2022 | 268 | Summons Issued as to Ricardo Rodriguez, Jr. (rg) (Entered: 02/22/2022) |
| 02/22/2022 | 269 | SUMMONS Returned Executed by Workers Defense Action Fund, OCA-Greater Houston, League of Women Voters of Texas, REVUP-Texas, Texas Organizing Project. Jose Garza served on 2/7/2022, answer due 2/28/2022. (Mirza, Hani) (Entered: 02/22/2022) |
| 02/22/2022 | 270 | Summons Issued as to Kim Ogg. (rg) (Entered: 02/22/2022) |
| 02/22/2022 | 271 | SUMMONS Returned Executed by Workers Defense Action Fund, OCA-Greater Houston, League of Women Voters of Texas, REVUP-Texas, Texas Organizing Project. Kim Ogg served on 2/11/2022, answer due 3/4/2022. (Mirza, Hani) (Entered: 02/22/2022) |
| 02/22/2022 | 272 | Summons Issued as to Jose Garza. (rg) (Entered: 02/22/2022) |
| 02/22/2022 | 273 | Summons Issued as to Joe Gonzales. (rg) (Entered: 02/22/2022) |
| 02/22/2022 | 274 | SUMMONS Returned Executed by The Arc of Texas, Houston Area Urban League, Houston Justice, Delta Sigma Theta Sorority Inc.. Jose Garza served on 2/17/2022, answer due 3/10/2022. (Broughton, Kenneth) (Entered: 02/22/2022) |
| 02/22/2022 | 275 | Unopposed MOTION *to Withdraw Houston Justice as a Party* by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, Houston Justice, The Arc of Texas. (Attachments: # 1 Proposed Order)(Broughton, Kenneth) (Entered: 02/22/2022) |
| 02/22/2022 | 276 | ANSWER to 199 Amended Complaint, with Jury Demand . Attorney Robert D. Green added to party Joe Gonzales(pty:dft) by Joe Gonzales.(Green, Robert) (Entered: 02/22/2022) |
| 02/22/2022 | 277 | ANSWER to 207 Amended Complaint, with Jury Demand by Joe Gonzales.(Green, Robert) (Entered: 02/22/2022) |
| 02/22/2022 | 278 | MOTION to Substitute Attorney by Jacque Callanen, Joe Gonzales. (Green, Robert) (Entered: 02/22/2022) |

| | | |
|---|---|---|
| 02/22/2022 | 279 | Response in Opposition to Motion, filed by League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund, re 240 MOTION to Dismiss *the OCA-Greater Houston Plaintiffs' Second Amended Complaint* filed by Consol Defendant John Scott, Defendant Warren K. Paxton (Davis, Lia) (Entered: 02/22/2022) |
| 02/23/2022 | | Text Order GRANTING 275 Motion entered by Judge Xavier Rodriguez. Plaintiff Houston Justice is DISMISSED WITH PREJUDICE. All other Plaintiffs remain a party to this action, and the dismissal of Houston Justice does not affect remaining Plaintiffs' claims against any defendants. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 02/23/2022) |
| 02/23/2022 | | Text Order GRANTING 278 Motion to Substitute Attorney entered by Judge Xavier Rodriguez. The appearance of Robert D. Green is withdrawn and the appearance of Lisa V. Cubriel of the Bexar County Criminal District Attorney's Office is substituted as counsel for Joe Gonzales and Jacquelyn Callanen in all cases consolidated into this matter. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 02/23/2022) |
| 02/23/2022 | | Text Order GRANTING 205 Motion to Compel entered by Judge Xavier Rodriguez. For the reasons stated in open court, the motion is hereby GRANTED. No later than March 31, 2022, State Defendants must produce under protective order updated contents of relevant fields, including the "Card Status" field, from the Texas Department of Public Safety database to the United States. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 02/23/2022) |
| 02/23/2022 | 280 | SUMMONS Returned Executed by Vote Latino, Texas AFT, Texas Alliance for Retired Americans, LULAC Texas. Joe Gonzales served on 2/23/2022, answer due 3/16/2022. (Hardin, John) (Entered: 02/23/2022) |
| 02/23/2022 | 281 | RESPONSE to Motion, filed by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino, re 243 MOTION to Dismiss *LULAC Plaintiffs' Second Amended Complaint* filed by Consol Defendant John Scott, Defendant Warren K. Paxton (Nkwonta, Uzoma) (Entered: 02/23/2022) |
| 02/23/2022 | 282 | Minute Entry for proceedings held before Judge Xavier Rodriguez: Motion Hearing held on 2/23/2022 re 205 MOTION to Compel *Production* filed by United States Of America (Minute entry documents are not available electronically.). (Court Reporter Gigi Simcox.)(rg) (Entered: 02/24/2022) |
| 02/24/2022 | 283 | MOTION to Appear Pro Hac Vice by Jennifer A. Holmes *Ciara A. Sisco* ( Filing fee $ 100 receipt number 0542-15750860) by on behalf of Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, The Arc of Texas. (Holmes, Jennifer) (Entered: 02/24/2022) |
| 02/24/2022 | | Text Order GRANTING 283 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted permission to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 02/24/2022) |
| 02/25/2022 | 284 | Transcript filed of Proceedings held on 2-23-22, Proceedings Transcribed: Motion to Compel. Court Reporter/Transcriber: Gigi Simcox, Telephone number: 210-244-5037, gigi_simcox@txwd.uscourts.gov. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased |

| | | |
|---|---|---|
| | | from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 3/18/2022, Redacted Transcript Deadline set for 3/28/2022, Release of Transcript Restriction set for 5/26/2022, Appeal Record due by 3/14/2022, (gs) (Entered: 02/25/2022) |
| 02/25/2022 | 285 | MOTION to Appear Pro Hac Vice by Jennifer A. Holmes *R. Gary Spencer* ( Filing fee $ 100 receipt number 0542-15753994) by on behalf of Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, The Arc of Texas. (Holmes, Jennifer) (Entered: 02/25/2022) |
| 02/25/2022 | 286 | SUMMONS Returned Executed by Vote Latino, Texas AFT, Texas Alliance for Retired Americans, LULAC Texas. Jose Garza served on 2/22/2022, answer due 3/15/2022. (Hardin, John) (Entered: 02/25/2022) |
| 02/25/2022 | | Text Order GRANTING 285 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted permission to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 02/25/2022) |
| 02/25/2022 | 287 | SUMMONS Returned Executed by Vote Latino, Texas AFT, Texas Alliance for Retired Americans, LULAC Texas. John Creuzot served on 2/22/2022, answer due 3/15/2022. (Hardin, John) (Entered: 02/25/2022) |
| 02/25/2022 | 288 | Unopposed MOTION for Extension of Time to File Response/Reply as to 208 Amended Complaint, by Jose Garza. (Attachments: # 1 Proposed Order)(Nelson, Anthony) (Entered: 02/25/2022) |
| 02/25/2022 | 289 | Unopposed MOTION for Extension of Time to File Response/Reply as to 207 Amended Complaint, by Jose Garza. (Attachments: # 1 Proposed Order)(Nelson, Anthony) (Entered: 02/25/2022) |
| 02/25/2022 | 290 | Unopposed MOTION for Extension of Time to File Response/Reply as to 200 Amended Complaint by Jose Garza. (Attachments: # 1 Proposed Order)(Nelson, Anthony) (Entered: 02/25/2022) |
| 02/25/2022 | | Text Order GRANTING 288 Motion for Extension of Time to File Response/Reply entered by Judge Xavier Rodriguez. Accordingly, it is ORDERED that Defendant Travis County District Attorney Jose Garza shall file a response to LUPE Plaintiffs' Second Amended Complaint on or before March 4, 2022. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 02/25/2022) |
| 02/25/2022 | | Text Order GRANTING 289 Motion for Extension of Time to File Response/Reply entered by Judge Xavier Rodriguez. Accordingly, it is ORDERED that Defendant Travis County District Attorney Jose Garza shall file a response to LULAC Plaintiffs' Second Amended Complaint on or before March 4, 2022. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 02/25/2022) |
| 02/25/2022 | | Text Order GRANTING 290 Motion for Extension of Time to File Response/Reply entered by Judge Xavier Rodriguez. Accordingly, it is ORDERED that Defendant Travis County District Attorney Jose Garza shall file a response to OCA-Greater Houston Plaintiffs' Second Amended Complaint on or before March 7, 2022. (This is a text-only |

| | | entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 02/25/2022) |
|---|---|---|
| 02/28/2022 | 291 | Unopposed MOTION for Extension of Time to File Answer re 200 Amended Complaint by Kim Ogg. (Attachments: # 1 Proposed Order)(Nichols, Eric) (Entered: 02/28/2022) |
| 02/28/2022 | 292 | Unopposed MOTION for Extension of Time to File Answer re 199 Amended Complaint, by Kim Ogg. (Attachments: # 1 Proposed Order)(Nichols, Eric) (Entered: 02/28/2022) |
| 02/28/2022 | | Text Order GRANTING 291 Motion for Extension of Time to Answer entered by Judge Xavier Rodriguez. No later than March 15, 2022, Defendant Kim Ogg, in her capacity as Harris County District Attorney, shall answer or otherwise respond to the Second Amended Complaint for Declaratory and Injunctive Relief filed by Plaintiffs OCA-Greater Houston, League of Women Voters of Texas, REVUP-Texas, Texas Organizing Project, and Workers Defense Action Fund. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 02/28/2022) |
| 02/28/2022 | | Text Order GRANTING 292 Motion for Extension of Time to Answer entered by Judge Xavier Rodriguez. No later than March 15, 2022, Defendant Kim Ogg, in her capacity as Harris County District Attorney, shall answer or otherwise respond to the Second Amended Complaint filed by Plaintiffs Houston Area Urban League, Delta Sigma Theta Sorority, Inc., The Arc of Texas, Mi Familia Vota, Marla Lopez, Marlon Lopez, Paul Rutledge, and Jeffrey Lamar Clemmons. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 02/28/2022) |
| 02/28/2022 | 293 | DESIGNATION OF EXPERT WITNESSES by United States Of America. (Stewart, Michael) (Entered: 02/28/2022) |
| 02/28/2022 | 294 | NOTICE of Filing Plaintiffs' Expert Designation by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Fiel Houston, Inc., Houston Area Urban League, JOLT Action, League of Women Voters of Texas, Mexican American Bar Association of Texas, OCA-Greater Houston, REVUP-Texas, Texas Hispanics Organized for Political Education, Texas Organizing Project, The Arc of Texas, William C. Velasquez Institute, Workers Defense Action Fund (Broughton, Kenneth) (Entered: 02/28/2022) |
| 02/28/2022 | 295 | NOTICE of Plaintiffs' Expert Designation by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, The Arc of Texas (Broughton, Kenneth) (Entered: 02/28/2022) |
| 02/28/2022 | 296 | DESIGNATION OF EXPERT WITNESSES by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino. (Nkwonta, Uzoma) (Entered: 02/28/2022) |
| 02/28/2022 | 297 | NOTICE of Plaintiffs' Expert Designation by Fiel Houston, Inc., Friendship-West Baptist Church, JOLT Action, James Lewin, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute (Longoria, Julia) (Entered: 02/28/2022) |
| 03/01/2022 | 298 | Pretrial Disclosures Defendant Lisa Wise's Designation of Potential Testifying Experts by Lisa Wise. (Armon, Orion) (Entered: 03/01/2022) |
| 03/01/2022 | 299 | NOTICE of Mi Familia Vota Plaintiffs' Expert Designations by Marla Lopez, Marlon Lopez, Mi Familia Vota, Paul Rutledge (Watkins, Elijah) (Entered: 03/01/2022) |

| 03/01/2022 | 300 | REPLY to Response to Motion, filed by Warren K. Paxton, John Scott, re 240 MOTION to Dismiss *the OCA-Greater Houston Plaintiffs' Second Amended Complaint* filed by Consol Defendant John Scott, Defendant Warren K. Paxton (Sweeten, Patrick) (Entered: 03/01/2022) |
|---|---|---|
| 03/01/2022 | 301 | Response in Opposition to Motion, filed by Fiel Houston, Inc., Friendship-West Baptist Church, JOLT Action, James Lewin, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute, re 255 MOTION to Dismiss *LUPE Plaintiffs' Second Amended Complaint* filed by Consol Defendant John Scott, Defendant Warren K. Paxton, Consol Defendant STATE OF TEXAS (Longoria, Julia) (Entered: 03/01/2022) |
| 03/01/2022 | 302 | Response in Opposition to Motion, filed by Lisa Wise, re 255 MOTION to Dismiss *LUPE Plaintiffs' Second Amended Complaint* filed by Consol Defendant John Scott, Defendant Warren K. Paxton, Consol Defendant STATE OF TEXAS (Armon, Orion) (Entered: 03/01/2022) |
| 03/02/2022 | 303 | SUMMONS Returned Executed by Vote Latino, Texas AFT, Texas Alliance for Retired Americans, LULAC Texas. Ricardo Rodriguez, Jr. served on 2/23/2022, answer due 3/16/2022. (Hardin, John) (Entered: 03/02/2022) |
| 03/02/2022 | 304 | SUMMONS Returned Executed by Vote Latino, Texas AFT, Texas Alliance for Retired Americans, LULAC Texas. Kim Ogg served on 2/23/2022, answer due 3/16/2022. (Hardin, John) (Entered: 03/02/2022) |
| 03/02/2022 | 305 | NOTICE *Designation of Expert Witnesses* by Yvonne Ramon (Ramirez, Josephine) (Entered: 03/02/2022) |
| 03/02/2022 | 306 | REPLY to Response to Motion, filed by Warren K. Paxton, John Scott, re 243 MOTION to Dismiss *LULAC Plaintiffs' Second Amended Complaint* filed by Consol Defendant John Scott, Defendant Warren K. Paxton (Sweeten, Patrick) (Entered: 03/02/2022) |
| 03/04/2022 | 307 | MOTION to Extend Scheduling Order Deadlines by Gregory W. Abbott, Warren K. Paxton, STATE OF TEXAS, John Scott. (Attachments: # 1 Proposed Order)(Sweeten, Patrick) (Entered: 03/04/2022) |
| 03/04/2022 | 308 | Consent MOTION to Amend/Correct 125 Scheduling Order, *Consent Motion to Modify Scheduling Order* by United States Of America. (Attachments: # 1 Proposed Order)(Stewart, Michael) (Entered: 03/04/2022) |
| 03/04/2022 | 309 | ANSWER to 208 Amended Complaint, with Jury Demand . Attorney Barbara S. Nicholas added to party John Creuzot(pty:dft) by John Creuzot.(Nicholas, Barbara) (Entered: 03/04/2022) |
| 03/04/2022 | 310 | Unopposed MOTION for Extension of Time to File Answer re 200 Amended Complaint by Jose Garza. (Attachments: # 1 Proposed Order)(Nelson, Anthony) (Entered: 03/04/2022) |
| 03/04/2022 | 311 | Unopposed MOTION for Extension of Time to File Answer re 207 Amended Complaint, by Jose Garza. (Attachments: # 1 Proposed Order)(Nelson, Anthony) (Entered: 03/04/2022) |
| 03/04/2022 | 312 | Unopposed MOTION for Extension of Time to File Answer re 208 Amended Complaint, by Jose Garza. (Attachments: # 1 Proposed Order)(Nelson, Anthony) (Entered: |

| | | |
|---|---|---|
| | | 03/04/2022) |
| 03/07/2022 | | Text Order GRANTING 308 Consent Motion to Amend Scheduling Order entered by Judge Xavier Rodriguez. The Scheduling Order 125 shall be modified to include the following: *Number and Timing of Depositions.* Pursuant to Federal Rule of Civil Procedure 30(a)(2)(A)(i), the parties may depose any person, including a party, without further leave of Court unless the deposition would result in more than 50 depositions or more than 250 hours of deposition testimony being taken under Rule 30 by the plaintiffs collectively, or by the defendants collectively. Further, the parties may depose any expert witness disclosed by an opposing party pursuant to Rule 26(a)(2) without regard to these limitations, but otherwise in accordance with the terms of Rule 30. This modification of the scheduling order shall not alter or amend any of the dates and deadlines in the Scheduling Order, including the May 13, 2022 deadline for completion of all fact discovery. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 03/07/2022) |
| 03/07/2022 | | Text Order GRANTING 310 Motion for Extension of Time to Answer OCA-Greater Houston Plaintiffs' Second Amended Complaint entered by Judge Xavier Rodriguez. The deadline for Defendant Travis County District Attorney Jos Garza shall to answer or otherwise respond to the OCA-Greater Houston Plaintiffs' Second Amended Complaint 200 is hereby extended to March 14, 2022. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 03/07/2022) |
| 03/07/2022 | | Text Order GRANTING 311 Motion for Extension of Time to Answer LULAC Plaintiffs' Second Amended Complaint entered by Judge Xavier Rodriguez. The deadline for Defendant Travis County District Attorney Jose Garza shall to answer or otherwise respond to the LULAC Plaintiffs' Second Amended Complaint 207 is hereby extended to March 11, 2022. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 03/07/2022) |
| 03/07/2022 | | Text Order GRANTING 312 Motion for Extension of Time to Answer LUPE Plaintiffs' Second Amended Complaint entered by Judge Xavier Rodriguez. The deadline for Defendant Travis County District Attorney Jose Garza shall to answer or otherwise respond to the LUPE Plaintiffs' Second Amended Complaint 208 is hereby extended to March 11, 2022. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 03/07/2022) |
| 03/07/2022 | | Text Order GRANTING 307 Motion to Extend Scheduling Order Deadlines entered by Judge Xavier Rodriguez. The deadline for the State Defendants to designate rebuttal experts and serve on all parties the material required by Fed. R. Civ. P. 26(a)(2)(B) for such rebuttal experts is hereby extended to March 29, 2022. The State Defendants are cautioned that the Court will disfavor any requests to extend the dispositive motion deadline premised on this extension. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 03/07/2022) |
| 03/08/2022 | 313 | REPLY to Response to Motion, filed by Warren K. Paxton, STATE OF TEXAS, John Scott, re 255 MOTION to Dismiss *LUPE Plaintiffs' Second Amended Complaint* filed by Consol Defendant John Scott, Defendant Warren K. Paxton, Consol Defendant STATE OF TEXAS (Sweeten, Patrick) (Entered: 03/08/2022) |
| 03/08/2022 | 314 | ANSWER to 207 Amended Complaint, with Jury Demand by John Creuzot.(Nicholas, Barbara) (Entered: 03/08/2022) |
| 03/08/2022 | 315 | MOTION to Appear Pro Hac Vice by Thomas Paul Buser-Clancy *for Brian Dimmick* ( Filing fee $ 100 receipt number 0542-15794984) by on behalf of League of Women |

| | | |
|---|---|---|
| | | Voters of Texas, OCA-Greater Houston, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund. (Buser-Clancy, Thomas) (Entered: 03/08/2022) |
| 03/08/2022 | 316 | MOTION to Appear Pro Hac Vice by Thomas Paul Buser-Clancy *for Susan Mizner* ( Filing fee $ 100 receipt number 0542-15794996) by on behalf of League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund. (Buser-Clancy, Thomas) (Entered: 03/08/2022) |
| 03/10/2022 | | Text Order GRANTING 315 Motion to Appear Pro Hac Vice; GRANTING 316 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorneys hereby granted permission to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 03/10/2022) |
| 03/10/2022 | 317 | Unopposed MOTION for Extension of Time to File Answer re 199 Amended Complaint, by Jose Garza. (Attachments: # 1 Proposed Order)(Nelson, Anthony) (Entered: 03/10/2022) |
| 03/10/2022 | 318 | AMENDED ANSWER to 208 Amended Complaint, by John Creuzot. (Nicholas, Barbara) (Entered: 03/10/2022) |
| 03/11/2022 | 319 | DEFENDANT, JOSE GARZA, TRAVIS COUNTY DISTRICT ATTORNEY, MOTION for Extension of Time to File Answer re 208 Amended Complaint, by Jose Garza. (wg) (Entered: 03/14/2022) |
| 03/11/2022 | 320 | DEFENDANT, JOSE GARZA, TRAVIS COUNTY DISTRICT ATTORNEY, MOTION for Extension of Time to File Answer re 200 Amended Complaint by Jose Garza. (wg) (Entered: 03/14/2022) |
| 03/14/2022 | 321 | Unopposed MOTION for Extension of Time to File Answer re 207 Amended Complaint, by Jose Garza. (Attachments: # 1 Proposed Order)(Nelson, Anthony) (Entered: 03/14/2022) |
| 03/14/2022 | | Text Order GRANTING 317 Motion for Extension of Time to Answer HAUL Plaintiffs' Second Amended Complaint entered by Judge Xavier Rodriguez. Defendant Garza's deadline to respond to the HAUL Plaintiffs' Second Amended Complaint 199 is hereby extended to March 17, 2022. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 03/14/2022) |
| 03/14/2022 | | Text Order GRANTING 319 Motion for Extension of Time to Answer LUPE Plaintiffs' Second Amended Complaint entered by Judge Xavier Rodriguez. Defendant Garza's deadline to respond to the LUPE Plaintiffs' Second Amended Complaint 208 is hereby extended to March 16, 2022. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 03/14/2022) |
| 03/14/2022 | | Text Order GRANTING 320 Motion for Extension of Time to Answer LULAC Plaintiffs' Second Amended Complaint entered by Judge Xavier Rodriguez. Defendant Garza's deadline to respond to the LULAC Plaintiffs' Second Amended Complaint 207 is hereby extended to March 16, 2022. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 03/14/2022) |
| 03/14/2022 | | Text Order GRANTING 321 Motion for Extension of Time to Answer OCA-Greater Houston Plaintiffs' Second Amended Complaint entered by Judge Xavier Rodriguez. Defendant Garza's deadline to respond to the OCA-Greater Houston Plaintiffs' Second Amended Complaint 200 is hereby extended to March 17, 2022. (This is a text-only entry |

| | | |
|---|---|---|
| | | generated by the court. There is no document associated with this entry.) (cb) (Entered: 03/14/2022) |
| 03/15/2022 | 322 | SUMMONS Returned Executed by Vote Latino, Texas AFT, Texas Alliance for Retired Americans, LULAC Texas. Yvonne Rosales served on 3/9/2022, answer due 3/30/2022. (Hardin, John) (Entered: 03/15/2022) |
| 03/15/2022 | 323 | Second MOTION for Extension of Time to File Answer re 200 Amended Complaint by Kim Ogg. (Attachments: # 1 Proposed Order)(Nichols, Eric) (Entered: 03/15/2022) |
| 03/15/2022 | 324 | Second MOTION for Extension of Time to File Answer re 199 Amended Complaint, by Kim Ogg. (Attachments: # 1 Proposed Order)(Nichols, Eric) (Entered: 03/15/2022) |
| 03/15/2022 | | Text Order GRANTING 323 Motion for Extension of Time to Answer OCA-Greater Houston Plaintiffs' Second Amended Complaint entered by Judge Xavier Rodriguez. Ogg shall answer or otherwise respond to the OCA-Greater Houston Plaintiffs' Second Amended Complaint 200 on or before March 29, 2022. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 03/15/2022) |
| 03/15/2022 | | Text Order GRANTING 324 Motion for Extension of Time to Answer HAUL Plaintiffs' Second Amended Complaint entered by Judge Xavier Rodriguez. Ogg shall answer or otherwise respond to the HAUL Plaintiffs' Second Amended Complaint 199 on or before March 29, 2022. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 03/15/2022) |
| 03/16/2022 | 325 | NOTICE of Attorney Appearance by Zachary Dolling on behalf of League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund. Attorney Zachary Dolling added to party League of Women Voters of Texas(pty:conpla), Attorney Zachary Dolling added to party OCA-Greater Houston(pty:conpla), Attorney Zachary Dolling added to party REVUP-Texas(pty:conpla), Attorney Zachary Dolling added to party Texas Organizing Project(pty:conpla), Attorney Zachary Dolling added to party Workers Defense Action Fund(pty:conpla) (Dolling, Zachary) (Entered: 03/16/2022) |
| 03/16/2022 | 326 | MOTION to Appear Pro Hac Vice by Leigh Ann Tognetti *for Michael J Garza* ( Filing fee $ 100 receipt number 0542-15823828) by on behalf of Ricardo Rodriguez, Jr.. (Attachments: # 1 Proposed Order)(Tognetti, Leigh). According to our records, filing party submitted duplicate PHV payments. This fee was returned back to the filer by their financial institution. The original payment made on 3/16/22 via a previous incomplete docket entry is the actual payment assigned to this matter: 0542-15823549(kc). (Entered: 03/16/2022) |
| 03/16/2022 | 327 | ANSWER to 207 Amended Complaint, with Jury Demand by Ricardo Rodriguez, Jr..(Tognetti, Leigh) (Entered: 03/16/2022) |
| 03/16/2022 | 328 | *Defendant Garza's* ANSWER to 207 Amended Complaint, *by LULAC Plaintiffs*. Attorney Anthony J. Nelson added to party Jose Garza(pty:dft) by Jose Garza.(Nelson, Anthony) (Entered: 03/16/2022) |
| 03/16/2022 | 329 | *Defendant Garza's* ANSWER to 208 Amended Complaint, *by LUPE Plaintiffs* by Jose Garza.(Nelson, Anthony) (Entered: 03/16/2022) |
| 03/17/2022 | | Text Order GRANTING 326 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted permission to practice pro hac vice in this case must register |

| | | |
|---|---|---|
| | | for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 03/17/2022) |
| 03/17/2022 | 330 | *Defendant Garza's* ANSWER to 199 Amended Complaint, *by HAUL Plaintiffs* by Jose Garza.(Nelson, Anthony) (Entered: 03/17/2022) |
| 03/17/2022 | 331 | MOTION to Appear Pro Hac Vice by Ranjana Natarajan ( Filing fee $ 100 receipt number 0542-15828577) by on behalf of Lisa Wise. (Natarajan, Ranjana) (Entered: 03/17/2022) |
| 03/17/2022 | 332 | *Defendant Garza's* ANSWER to 200 Amended Complaint *by OCA-GH Plaintiffs* by Jose Garza.(Nelson, Anthony) (Entered: 03/17/2022) |
| 03/17/2022 | | Text Order GRANTING 331 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 03/17/2022) |
| 03/18/2022 | 333 | NOTICE *OF SUPPLEMENTAL AUTHORITY REGARDING PENDING MOTIONS TO DISMISS* by Gregory W. Abbott, Jose A. Esparza, Warren K. Paxton, STATE OF TEXAS, John Scott re 300 Reply to Response to Motion, 195 Memorandum in Opposition to Motion, 239 MOTION to Dismiss *the Houston Justice Plaintiffs' Second Amended Complaint*, 243 MOTION to Dismiss *LULAC Plaintiffs' Second Amended Complaint*, 301 Response in Opposition to Motion,, 255 MOTION to Dismiss *LUPE Plaintiffs' Second Amended Complaint*, 264 Reply to Response to Motion, 313 Reply to Response to Motion, 306 Reply to Response to Motion, 240 MOTION to Dismiss *the OCA-Greater Houston Plaintiffs' Second Amended Complaint*, 223 Reply to Response to Motion, 145 MOTION to Dismiss *the Federal Government's Claims*, 281 Response to Motion, 252 Response in Opposition to Motion,, (Hudson, Eric) (Entered: 03/18/2022) |
| 03/21/2022 | 334 | MOTION for Protective Order *and Motion to Quash Deposition of Texas Secretary of State* by Gregory W. Abbott, Warren K. Paxton, STATE OF TEXAS, John Scott. (Attachments: # 1 Exhibit A - Declaration of John B. Scott, # 2 Exhibit B - United States' First Set of Interrogatories, # 3 Exhibit C - United States' First Set of Requests for Admission, # 4 Exhibit D - United States' First Set of Requests for Production, # 5 Exhibit E - United States' Second Set of Requests for Production, # 6 Exhibit F - United States' Third Set of Requests for Production, # 7 Exhibit G - State Defs' Objections and Responses to the United States' First Set of Interrogatories, # 8 Exhibit H - United States' Notice of Rule 30(b)(6) Deposition of the Texas Secretary of State, # 9 Exhibit I - United States' Notice of Deposition of John Scott, # 10 Proposed Order)(Sweeten, Patrick) (Entered: 03/21/2022) |
| 03/22/2022 | 335 | MOTION to Appear Pro Hac Vice by Sean Michael Lyons *Mark L. Bieter* ( Filing fee $ 100 receipt number 0542-15839066) by on behalf of Mi Familia Vota. (Lyons, Sean) (Entered: 03/22/2022) |
| 03/22/2022 | 336 | MOTION to Appear Pro Hac Vice by Sean Michael Lyons *Bradley R. Prowant* ( Filing fee $ 100 receipt number 0542-15839126) by on behalf of Mi Familia Vota. (Lyons, Sean) (Entered: 03/22/2022) |
| 03/22/2022 | | Text Order GRANTING 335 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted permission to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry |

| | | |
|---|---|---|
| | | generated by the court. There is no document associated with this entry.) (JA3) (Entered: 03/22/2022) |
| 03/22/2022 | | Text Order GRANTING 336 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted permission to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 03/22/2022) |
| 03/22/2022 | 337 | ORDER The Court hereby STAYS the deposition of Texas Secretary of State John B. Scott pending resolution of the instant discovery motion and the State Defendants motion to dismiss the claims brought by the United States. A response to the instant discovery motion must be filed no later than March 29, 2022. Any reply must be filed no later than April 1, 2022. Signed by Judge Xavier Rodriguez. (rg) (Entered: 03/22/2022) |
| 03/23/2022 | 338 | RESPONSE to 333 Notice (Other),,, by United States Of America. (Freeman, Daniel) (Entered: 03/23/2022) |
| 03/23/2022 | 339 | NOTICE of Designation of Potential Testifying Experts by Jose Garza, Rebecca Guerrero re 125 Scheduling Order, (Nelson, Anthony) (Entered: 03/23/2022) |
| 03/23/2022 | 340 | NOTICE of Designation of Potential Testifying Experts by John Creuzot, Michael Scarpello re 209 Stipulation, (Nicholas, Barbara) (Entered: 03/23/2022) |
| 03/23/2022 | 341 | NOTICE of Designation of Potential Testifying Experts by John Creuzot, Michael Scarpello re 209 Stipulation, (Nicholas, Barbara) (Entered: 03/23/2022) |
| 03/24/2022 | 342 | THIS DEFICIENCY WAS ISSUED IN ERROR. ACCESS WILL BE RESTRICTED. DEFICIENCY NOTICE  Discovery Documents, responses to requests for production, any kind of information regarding this type of documents does not get filed here in Federal Court. That information stays between parties and attorneys. re 340 Notice Regarding Requests for Production (rg) Modified on 3/25/2022 (rg). (Entered: 03/25/2022) |
| 03/28/2022 | 343 | Unopposed MOTION for Entry of Confidentiality and Protective Order Regarding Production of Ultrasensitive Information by Fiel Houston, Inc., Friendship-West Baptist Church, JOLT Action, James Lewin, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute. (Attachments: # 1 Proposed Order)(Berry, Patrick) (Entered: 03/28/2022) |
| 03/29/2022 | 344 | MOTION to Dismiss Defendant Kim Ogg's Motion to Dismiss by Kim Ogg. (Attachments: # 1 Exhibit, # 2 Exhibit)(Nichols, Eric) (Entered: 03/29/2022) |
| 03/29/2022 | 345 | Response in Opposition to Motion, filed by United States Of America, re 334 MOTION for Protective Order and Motion to Quash Deposition of Texas Secretary of State filed by Consol Defendant John Scott, Defendant Warren K. Paxton, Defendant Gregory W. Abbott, Consol Defendant STATE OF TEXAS (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Paikowsky, Dana) (Entered: 03/29/2022) |
| 03/29/2022 | 346 | ORDER GRANTING 343 Motion for Entry of Confidentiality and Protective Order Regarding Production of Ultrasensitive Information. Signed by Judge Xavier Rodriguez. (rg) (Entered: 03/29/2022) |
| 03/29/2022 | 347 | DESIGNATION OF EXPERT WITNESSES by Gregory W. Abbott, Warren K. Paxton, |

| | | |
|---|---|---|
| | | STATE OF TEXAS, John Scott. (Sweeten, Patrick) (Entered: 03/29/2022) |
| 03/30/2022 | 348 | Unopposed MOTION for Extension of Time to File Answer by Yvonne Rosales. (Rodriguez, Rogelio) (Entered: 03/30/2022) |
| 03/31/2022 | | Text Order GRANTING 348 Motion for Extension of Time to Answer entered by Judge Xavier Rodriguez. Defendant Yvonne Rosales must file an answer or otherwise respond to the complaint at ECF No. 208, no later than April 7, 2022.(This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 03/31/2022) |
| 03/31/2022 | | Reset Deadlines: Yvonne Rosales answer due 4/7/2022. (rg) (Entered: 03/31/2022) |
| 04/01/2022 | 349 | REPLY to Response to Motion, filed by Gregory W. Abbott, Warren K. Paxton, STATE OF TEXAS, John Scott, re 334 MOTION for Protective Order *and Motion to Quash Deposition of Texas Secretary of State* filed by Consol Defendant John Scott, Defendant Warren K. Paxton, Defendant Gregory W. Abbott, Consol Defendant STATE OF TEXAS (Sweeten, Patrick) (Entered: 04/01/2022) |
| 04/02/2022 | 350 | Unopposed MOTION for Extension of Time to File Response/Reply *to Defendant Kim Ogg's motion to dismiss, Dkt. # 344,* by League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund. (Attachments: # 1 Proposed Order Proposed order granting motion and extending deadline to respond to Defendant Kim Ogg's motion to dismiss until April 19, 2022.)(Dolling, Zachary) (Entered: 04/02/2022) |
| 04/03/2022 | 351 | Unopposed MOTION to Withdraw as Attorney *Kathryn E. Yukevich* by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino. (Yukevich, Kathryn) (Entered: 04/03/2022) |
| 04/04/2022 | | Text Order GRANTING 350 Motion for Extension of Time to File Response/Reply entered by Judge Xavier Rodriguez. Plaintiffs OCA-Greater Houston, League of Women Voters of Texas, REVUPTexas, Texas Organizing Project, and Workers Defense Action Fund's deadline to respond to Defendant Kim Ogg's Motion to Dismiss is extended to April 19, 2022. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 04/04/2022) |
| 04/04/2022 | | Text Order GRANTING 351 Motion to Withdraw as Attorney entered by Judge Xavier Rodriguez. Kathryn E. Yukevich is hereby WITHDRAWN as counsel of record for Plaintiffs LULAC Texas, Voto Latino, Texas Alliance for Retired Americans, and Texas AFT. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 04/04/2022) |
| 04/05/2022 | 352 | MOTION to Appear Pro Hac Vice by John Russell Hardin *for Christopher D. Dodge* ( Filing fee $ 100 receipt number 0542-15888929) by on behalf of LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino. (Attachments: # 1 Supplement)(Hardin, John) (Entered: 04/05/2022) |
| 04/05/2022 | | Text Order GRANTING 352 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted permission to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 04/05/2022) |
| 04/06/2022 | 353 | |

| | | |
|---|---|---|
| | | MOTION for Protective Order *and Motion to Quash Deposition of Former Texas Secretary of State* by Gregory W. Abbott, Warren K. Paxton, STATE OF TEXAS, John Scott. (Attachments: # 1 Exhibit A- Declaration of Ruth R. Hughs, # 2 Exhibit B- State Defendant's Correspondence with MFV and US)(Sweeten, Patrick) (Entered: 04/06/2022) |
| 04/07/2022 | 354 | ORDER Plaintiff Mi Familia Vota is hereby ORDERED to file a response to the State Defendants motion, no later than April 12, 2022. Any reply must be filed no later than April 14, 2022. Set Motion Hearing for 353 MOTION for Protective Order and Motion to Quash Deposition of Former Texas Secretary of State (Motion Hearing set for 4/18/2022 3:30 PM before Judge Xavier Rodriguez). Signed by Judge Xavier Rodriguez. (rg). (Entered: 04/07/2022) |
| 04/07/2022 | 355 | NOTICE *of Designation of Potential Rebuttal Testifying Experts* by Jose Garza, Rebecca Guerrero re 125 Scheduling Order, (Nelson, Anthony) (Entered: 04/07/2022) |
| 04/07/2022 | 356 | Unopposed MOTION *to Be Excused from Active Participation* by Yvonne Rosales. (Rodriguez, Rogelio) (Entered: 04/07/2022) |
| 04/08/2022 | 357 | MOTION to Appear Pro Hac Vice by Zachary Dolling *for Sophia Cai* ( Filing fee $ 100 receipt number 0542-15903606) by on behalf of League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund. (Dolling, Zachary) (Entered: 04/08/2022) |
| 04/08/2022 | 358 | RESPONSE *to State Defendants' Notice of Supplemental Authority* to 333 Notice (Other),,, by Fiel Houston, Inc., Friendship-West Baptist Church, JOLT Action, James Lewin, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute. (Perales, Nina) (Entered: 04/08/2022) |
| 04/08/2022 | 359 | RESPONSE *State Defendants' Notice of Supplemental Authority* to 333 Notice (Other),,, by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, Marla Lopez, Marlon Lopez, Mi Familia Vota, Paul Rutledge, The Arc of Texas. (Yeomans, Georgina) (Entered: 04/08/2022) |
| 04/11/2022 | | Text Order GRANTING 357 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted permission to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 04/11/2022) |
| 04/11/2022 | | Text Order GRANTING 356 Motion entered by Judge Xavier Rodriguez. Defendant DA Yvonne Rosales is excused from active participation in Case Nos. 5:21-CV-00844-XR and 1:21-CV-0786-XR, including any obligation to file responsive pleadings and to attend hearings, conferences, and trial, unless otherwise ordered. Defendant DA Rosales must comply with any and all discovery obligations. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 04/11/2022) |
| 04/12/2022 | 360 | Response in Opposition to Motion, filed by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, Marla Lopez, Marlon Lopez, Mi Familia Vota, Paul Rutledge, The Arc of Texas, re 344 MOTION to Dismiss *Defendant Kim Ogg's Motion to Dismiss* filed by Defendant Kim Ogg (Yeomans, Georgina) (Entered: 04/12/2022) |
| 04/12/2022 | 361 | |

| | | |
|---|---|---|
| | | RESPONSE to Motion, filed by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino, re 344 MOTION to Dismiss *Defendant Kim Ogg's Motion to Dismiss* filed by Defendant Kim Ogg (Nkwonta, Uzoma) (Entered: 04/12/2022) |
| 04/13/2022 | 362 | NOTICE of Attorney Appearance by Lisa A. Snead on behalf of League of Women Voters of Texas, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund. Attorney Lisa A. Snead added to party League of Women Voters of Texas(pty:conpla), Attorney Lisa A. Snead added to party REVUP-Texas(pty:conpla), Attorney Lisa A. Snead added to party Texas Organizing Project(pty:conpla), Attorney Lisa A. Snead added to party Workers Defense Action Fund(pty:conpla) (Snead, Lisa) (Entered: 04/13/2022) |
| 04/13/2022 | 363 | MOTION to Extend Scheduling Order Deadlines *for Rule 26(a)(3) Disclosures* by United States Of America. (Attachments: # 1 Proposed Order)(Freeman, Daniel) (Entered: 04/13/2022) |
| 04/13/2022 | 364 | NOTICE of Attorney Appearance by Laura Brady Bender on behalf of United States Of America. Attorney Laura Brady Bender added to party United States Of America(pty:conpla) (Bender, Laura) (Entered: 04/13/2022) |
| 04/13/2022 | 365 | NOTICE of Attorney Appearance by Jaywin Singh Malhi on behalf of United States Of America. Attorney Jaywin Singh Malhi added to party United States Of America(pty:conpla) (Malhi, Jaywin) (Entered: 04/13/2022) |
| 04/13/2022 | 366 | Unopposed MOTION *to Withdraw Texas Organizing Project as a Party* by League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Texas Organizing Project, Workers Defense Action Fund. (Attachments: # 1 Proposed Order)(Dolling, Zachary) (Entered: 04/13/2022) |
| 04/13/2022 | 367 | Memorandum in Opposition to Motion, filed by Mi Familia Vota, re 334 MOTION for Protective Order *and Motion to Quash Deposition of Texas Secretary of State* filed by Consol Defendant John Scott, Defendant Warren K. Paxton, Defendant Gregory W. Abbott, Consol Defendant STATE OF TEXAS (Attachments: # 1 Exhibit 3.21.22 Email, # 2 Exhibit 4.1.22 Email)(Watkins, Elijah) (Entered: 04/13/2022) |
| 04/14/2022 | | Text Order GRANTING 366 Motion entered by Judge Xavier Rodriguez. Plaintiff Texas Organizing Project is DISMISSED WITH PREJUDICE. All other OCA-GH Plaintiffs remain a party to this action, and the dismissal of Texas Organizing Project does not affect remaining OCA-GH Plaintiffs' claims against any defendants. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 04/14/2022) |
| 04/14/2022 | 368 | ORDER GRANTING 363 Motion to Extend Scheduling Order Deadlines. Bench Trial set for 7/5/2022 10:30 AM before Judge Xavier Rodriguez, Pretrial Conference set for 6/23/2022 10:30 AM before Judge Xavier Rodriguez, Discovery due by 5/13/2022, Dispositive Motions due by 5/27/2022. Signed by Judge Xavier Rodriguez. (rg) (Entered: 04/14/2022) |
| 04/14/2022 | 369 | NOTICE *VACATION LETTER* by John Creuzot (Stool, Ben) (Entered: 04/14/2022) |
| 04/18/2022 | 370 | NOTICE of Attorney Appearance by Larry L. Roberson on behalf of Jacque Callanen, Joe Gonzales. Attorney Larry L. Roberson added to party Jacque Callanen(pty:condft), Attorney Larry L. Roberson added to party Joe Gonzales(pty:dft) (Roberson, Larry) (Entered: 04/18/2022) |
| 04/18/2022 | 371 | |

| | | REPLY to Response to Motion, filed by Gregory W. Abbott, Warren K. Paxton, STATE OF TEXAS, John Scott, re 353 MOTION for Protective Order *and Motion to Quash Deposition of Former Texas Secretary of State* filed by Consol Defendant John Scott, Defendant Warren K. Paxton, Defendant Gregory W. Abbott, Consol Defendant STATE OF TEXAS (Sweeten, Patrick) (Entered: 04/18/2022) |
|---|---|---|
| 04/18/2022 | 372 | ORDER GRANTING IN PART AND DENYING IN PART 353 Motion for Protective Order Signed by Judge Xavier Rodriguez. (mgr) (Entered: 04/18/2022) |
| 04/18/2022 | 376 | Minute Entry for proceedings held before Judge Xavier Rodriguez: Motion Hearing held on 4/18/2022 re 353 MOTION for Protective Order and Motion to Quash Deposition of Former Texas Secretary of State filed by John Scott, Warren K. Paxton, Gregory W. Abbott, STATE OF TEXAS. (Minute entry documents are not available electronically.). (Court Reporter GiGi Simcox.)(rg) (Entered: 04/19/2022) |
| 04/19/2022 | 373 | NOTICE of Filing *Plaintiffs' Supplemental Initial Disclosures* by Friendship-West Baptist Church, James Lewin, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma (Attachments: # 1 Exhibit Supplemental Initial Disclosures)(Singh, Jasleen) (Entered: 04/19/2022) |
| 04/19/2022 | 374 | MOTION to Withdraw as Attorney *for Marc Rasich* by Mi Familia Vota. (Olson, Wendy) (Entered: 04/19/2022) |
| 04/19/2022 | | Text Order GRANTING 374 Motion to Withdraw as Attorney entered by Judge Xavier Rodriguez. Marc Rasich, formerly of Stoel Rives LLP, admitted pro hac vice on October 6, 2021, is hereby withdrawn as counsel for Plaintiffs Mi Familia Vota, et al. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 04/19/2022) |
| 04/19/2022 | 375 | MOTION to Appear Pro Hac Vice by Kenneth E. Broughton, Jr *for Applicant Victor Genecin* ( Filing fee $ 100 receipt number 0542-15940326) by on behalf of Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, Houston Justice, The Arc of Texas. (Attachments: # 1 Proposed Order)(Broughton, Kenneth) (Entered: 04/19/2022) |
| 04/19/2022 | 377 | Response in Opposition to Motion, filed by League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Workers Defense Action Fund, re 344 MOTION to Dismiss *Defendant Kim Ogg's Motion to Dismiss* filed by Defendant Kim Ogg (Dolling, Zachary) (Entered: 04/19/2022) |
| 04/19/2022 | | Text Order GRANTING 375 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted permission to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 04/19/2022) |
| 04/19/2022 | 378 | RESPONSE in Support, filed by Kim Ogg, re 344 MOTION to Dismiss *Defendant Kim Ogg's Motion to Dismiss* filed by Defendant Kim Ogg (Nichols, Eric) (Entered: 04/19/2022) |
| 04/21/2022 | 379 | RESPONSE *to State Defendants' Notice of Supplemental Authority* to 333 Notice (Other),,, by League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Workers Defense Action Fund. (Dolling, Zachary) (Entered: 04/21/2022) |
| 04/22/2022 | 380 | |

| | | |
|---|---|---|
| | | REPLY to Response to Motion, filed by Kim Ogg, re 344 MOTION to Dismiss *Defendant Kim Ogg's Motion to Dismiss* filed by Defendant Kim Ogg *Defendant Kim Ogg's Reply to The OCA Plaintiffs' Responses to Ogg's Motion to Dismiss* (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Nichols, Eric) (Entered: 04/22/2022) |
| 04/26/2022 | 381 | NOTICE *of Private Plaintiffs' 2nd Supplemental Initial Disclosures* by League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Workers Defense Action Fund (Attachments: # 1 Exhibit)(Dolling, Zachary) (Entered: 04/26/2022) |
| 04/26/2022 | 382 | SUPPLEMENT *to Amended Initial Disclosures* by United States Of America. (Paikowsky, Dana) (Entered: 04/26/2022) |
| 04/27/2022 | 383 | MOTION for Hearing *on the State Defendants' Motions to Dismiss* by Gregory W. Abbott, Warren K. Paxton, STATE OF TEXAS, John Scott. (Sweeten, Patrick) (Entered: 04/27/2022) |
| 04/28/2022 | | Text Order DENYING 383 Motion for Hearing entered by Judge Xavier Rodriguez. The Court is aware of the importance of the issues raised in the State Defendants' motions to dismiss and is working as expeditiously as possible to resolve these motions. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 04/28/2022) |
| 04/29/2022 | 384 | NOTICE *of Service of Rebuttal Expert Reports* by Mi Familia Vota (Olson, Wendy) (Entered: 04/29/2022) |
| 04/29/2022 | 385 | NOTICE *of Service of Supplemental Expert Report* by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, The Arc of Texas re 295 Notice (Other) (Broughton, Kenneth) (Entered: 04/29/2022) |
| 04/29/2022 | 386 | Unopposed MOTION to Withdraw as Attorney by Gregory W. Abbott, Jose A. Esparza, Warren K. Paxton, STATE OF TEXAS, John Scott. (White, Jeffrey) (Entered: 04/29/2022) |
| 04/29/2022 | 387 | NOTICE *Amended Initial Disclosures* by Isabel Longoria (Bingham, Tiffany) (Entered: 04/29/2022) |
| 04/29/2022 | | Text Order GRANTING 386 Motion to Withdraw as Attorney entered by Judge Xavier Rodriguez. Jeffrey M. White is hereby withdrawn as counsel for the State Defendants in this matter. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 04/29/2022) |
| 04/29/2022 | 388 | NOTICE *of Service of Supplements to Expert Reports* by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino (Dodge, Christopher) (Entered: 04/29/2022) |
| 04/29/2022 | 389 | NOTICE *of Service of Supplemental Expert Report* by United States Of America (Stewart, Michael) (Entered: 04/29/2022) |
| 05/02/2022 | 390 | ORDER GRANTING IN PART AND DENYING IN PART 334 Motion for Protective Order. The deposition of Texas Secretary of State John B. Scott is STAYED until such time as the United States completes the depositions of Keith Ingram, ChristinaAdkins, and the 30(b)(6) deposition of the Office of the Texas Secretary of State. Signed by Judge Xavier Rodriguez. (rg) (Entered: 05/02/2022) |
| 05/03/2022 | 391 | MOTION to Compel *Discovery Responses from Texas Lawmakers* by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino. (Attachments: # 1 Proposed Order)(Dodge, Christopher) (Entered: 05/03/2022) |

| 05/03/2022 | 392 | APPENDIX to 391 MOTION to Compel *Discovery Responses from Texas Lawmakers* by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino. (Dodge, Christopher) (Entered: 05/03/2022) |
|---|---|---|
| 05/04/2022 | 393 | ORDER Setting Hearing on 391 MOTION to Compel Discovery Responses from Texas Lawmakers: Motion Hearing set for 5/13/2022 3:30 PM before Judge Xavier Rodriguez. Counsel for the State Legislators is hereby ORDERED to file a response to Plaintiffs motion no later than May 9, 2022. Any reply must be filed no later than May 11, 2022. Signed by Judge Xavier Rodriguez. (rg) (Entered: 05/04/2022) |
| 05/04/2022 | 394 | NOTICE *of Lupe, OCA-Greater Houston, Haul, Lulac, and Mi Familia Vota Plaintiffs' Third Supplemental Rule 26(a)(1) Initial Disclosures* by La Union Del Pueblo Entero (Attachments: # 1 Exhibit 1 to Notice of Private Plaintiffs Third Supplemental Initial Disclosures)(Broughton, Kenneth) (Entered: 05/04/2022) |
| 05/04/2022 | 395 | NOTICE *VACATION LETTER, ATTORNEY* by John Creuzot (Nicholas, Barbara) (Entered: 05/04/2022) |
| 05/04/2022 | 396 | NOTICE *of Service of Supplemental Expert Report* by United States Of America (Freeman, Daniel) (Entered: 05/04/2022) |
| 05/09/2022 | 397 | Response in Opposition to Motion, filed by Gregory W. Abbott, Warren K. Paxton, STATE OF TEXAS, John Scott, re 391 MOTION to Compel *Discovery Responses from Texas Lawmakers* filed by Consol Plaintiff Texas AFT, Consol Plaintiff LULAC Texas, Consol Plaintiff Texas Alliance for Retired Americans, Consol Plaintiff Vote Latino (Attachments: # 1 Exhibit Email of 02.24.2022, # 2 Exhibit Email of 03.14.2022, # 3 Exhibit Deposition subpoenas, # 4 Exhibit Email of 03.29.2022, # 5 Exhibit Written discovery to LULAC Plaintiffs, # 6 Exhibit Letter of 04.15.2022, # 7 Exhibit Declaration of Senator Bryan Hughes, # 8 Exhibit Declaration of Senator Paul Bettencourt, # 9 Exhibit Declaration of Representative Andrew Murr, # 10 Exhibit Declaration of Representative Briscoe Cain, # 11 Exhibit Declaration of Jonathan White)(Sweeten, Patrick) (Entered: 05/09/2022) |
| 05/11/2022 | 398 | NOTICE *of Service of Corrected Expert Report* by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, The Arc of Texas (Broughton, Kenneth) (Entered: 05/11/2022) |
| 05/11/2022 | 399 | NOTICE of Filing Private Plaintiffs' Fifth Supplemental Rule 26(a)(1) Initial Disclosures by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, The Arc of Texas (Attachments: # 1 Exhibit 1 - PLAINTIFFS FIFTH SUPPLEMENTAL RULE 26(a)(1) INITIAL DISCLOSURES)(Yeomans, Georgina) (Entered: 05/11/2022) |
| 05/11/2022 | 400 | NOTICE of Filing Private Plaintiffs' Fourth Supplemental Rule 26(a)(1) Initial Disclosures by Fiel Houston, Inc., Friendship-West Baptist Church, JOLT Action, James Lewin, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, Texas Impact, The Anti-Defamation League Austin, Southwest, and Texoma, William C. Velasquez Institute (Longoria, Julia) (Entered: 05/11/2022) |
| 05/11/2022 | 401 | NOTICE of Filing Defendant DA Rosales's Response to State Defendant's Request for Production by Yvonne Rosales (Rodriguez, Rogelio) (Entered: 05/11/2022) |
| 05/11/2022 | 402 | Opposed MOTION *to Intervene* by Dallas County Republican Party, Harris County Republican Party, National Republican Congressional Committee, National Republican Senatorial Committee, Republican National Committee. (Attachments: # 1 Proposed |

| | | |
|---|---|---|
| | | Answer, # 2 Proposed Answer, # 3 Proposed Answer, # 4 Proposed Answer, # 5 Proposed Answer)(Gore, John) (Entered: 05/11/2022) |
| 05/11/2022 | 403 | REPLY to Response to Motion, filed by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino, re 391 MOTION to Compel *Discovery Responses from Texas Lawmakers* filed by Consol Plaintiff Texas AFT, Consol Plaintiff LULAC Texas, Consol Plaintiff Texas Alliance for Retired Americans, Consol Plaintiff Vote Latino (Dodge, Christopher) (Entered: 05/11/2022) |
| 05/12/2022 | 404 | DEFICIENCY NOTICE: to attorney Rogelio Rodriguez Responses to requests for production do not get filed here in Federal Court. This is part of the Discovery process which goes between attorneys. re 401 Notice of Filing (rg) (Entered: 05/12/2022) |
| 05/12/2022 | 405 | Unopposed MOTION to Withdraw as Attorney *for Angelica Lien Leo* by Lisa Wise. (Attachments: # 1 Proposed Order)(Armon, Orion) (Entered: 05/12/2022) |
| 05/12/2022 | 406 | MOTION to Extend Scheduling Order Deadlines by Gregory W. Abbott, Warren K. Paxton, STATE OF TEXAS, John Scott. (Attachments: # 1 Proposed Order)(Sweeten, Patrick) (Entered: 05/12/2022) |
| 05/12/2022 | | Text Order GRANTING 405 Motion to Withdraw as Attorney entered by Judge Xavier Rodriguez. Angelica Lien Leo is withdrawn as counsel of record for Defendant Lisa Wise. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 05/12/2022) |
| 05/13/2022 | | Text Order GRANTING 402 Renewed Motion to Intervene entered by Judge Xavier Rodriguez. The motion is GRANTED in light of the Fifth Circuits conclusion that the Republican Committees have satisfied Rule 24(a)(2)s requirements for intervention as of right. *See La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022). The Clerk is DIRECTED to file the proposed Answers, attached as exhibits to the motion. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 05/13/2022) |
| 05/13/2022 | 407 | Response in Opposition to Motion, filed by United States Of America, re 406 MOTION to Extend Scheduling Order Deadlines filed by Consol Defendant John Scott, Defendant Warren K. Paxton, Defendant Gregory W. Abbott, Consol Defendant STATE OF TEXAS (Attachments: # 1 Exhibit Exhibit 1 (Supplement to Initial Disclosures), # 2 Exhibit Exhibit 2 (Garza Subpoena), # 3 Exhibit Exhibit 3 (Anchia Subpoena), # 4 Exhibit Exhibit 4 (State Defendants' First Set of RFPs and Interrogatories), # 5 Exhibit Exhibit 5 (Appendix A to US Second RFPs), # 6 Exhibit Exhibit 6 (Guillen Subpoena), # 7 Exhibit Exhibit 7 (LULAC v Abbott Scheduling Order))(Stewart, Michael) (Entered: 05/13/2022) |
| 05/13/2022 | 408 | Response in Opposition to Motion, filed by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Fiel Houston, Inc., Friendship-West Baptist Church, Houston Area Urban League, JOLT Action, La Union Del Pueblo Entero, League of Women Voters of Texas, Marla Lopez, Marlon Lopez, Mexican American Bar Association of Texas, Mi Familia Vota, OCA-Greater Houston, REVUP-Texas, Paul Rutledge, Texas Hispanics Organized for Political Education, Texas Impact, Texas Organizing Project, The Anti-Defamation League Austin, Southwest, and Texoma, The Arc of Texas, William C. Velasquez Institute, Workers Defense Action Fund, re 406 MOTION to Extend Scheduling Order Deadlines filed by Consol Defendant John Scott, Defendant Warren K. Paxton, Defendant Gregory W. Abbott, Consol Defendant STATE OF TEXAS (Yeomans, Georgina) (Entered: 05/13/2022) |
| 05/13/2022 | 409 | NOTICE *of Filing Exhibits 1 - 8* by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Fiel Houston, Inc., Friendship-West Baptist Church, Houston Area Urban League, |

| | | JOLT Action, James Lewin, La Union Del Pueblo Entero, League of Women Voters of Texas, Marla Lopez, Marlon Lopez, Mexican American Bar Association of Texas, Mi Familia Vota, OCA-Greater Houston, REVUP-Texas, Paul Rutledge, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, Texas Impact, Texas Organizing Project, The Anti-Defamation League Austin, Southwest, and Texoma, The Arc of Texas, William C. Velasquez Institute re 408 Response in Opposition to Motion,,, (Attachments: # 1 Exhibit 1 - May 2 2022 Email - RE_ LUPE v. Abbott, 5_21-cv-844 (W.D. Tex.) - Private Plaintiff Disclosure, # 2 Exhibit 2 - US Supplement to Amended Initial Disclosures (April 1, 2022), # 3 Exhibit 3 - Emails RE_ LUPE v. Abbott, 5_21-cv-844 (W.D. Tex.) - Private Plaintiff Disclosures, # 4 Exhibit 4 - Emails Re_ OCA-GH Witness Availability, # 5 Exhibit 5 - Email with attachment Plaintiffs' Fifth Supplemental Initial Disclosures, LUPE v. Texas, No. 5_21-CV-0844-XR, # 6 Exhibit 6 - Email re LUPE v. Texas 5_21-cv-844 (W.D. Tex.) - Availability of Tanesa Lee, # 7 Exhibit 7 - 2021.11.16 La Union v. Abbott Hearing Transcript, # 8 Exhibit 8 - March 23 2022 Rule 45 Subpoena L. Hidalgo)(Yeomans, Georgina) (Entered: 05/13/2022) |
| 05/13/2022 | 410 | SUPPLEMENT *Disclosures by State Defendants'* by Gregory W. Abbott. (Sweeten, Patrick) (Entered: 05/13/2022) |
| 05/13/2022 | 411 | Minute Entry for proceedings held before Judge Xavier Rodriguez: Motion Hearing held on 5/13/2022 re 391 MOTION to Compel Discovery Responses from Texas Lawmakers filed by Texas AFT, LULAC Texas, Texas Alliance for Retired Americans, Vote Latino (Minute entry documents are not available electronically.). (Court Reporter Gigi Simcix.)(rg) (Entered: 05/16/2022) |
| 05/13/2022 | 412 | ANSWER to 199 Amended Complaint, by Dallas County Republican Party, Harris County Republican Party, National Republican Congressional Committee, National Republican Senatorial Committee, Republican National Committee. (Attachments: # 1 1:20-CV-786, # 2 5:21-CV-848, # 3 1:21-CV-780)(rg) (Entered: 05/16/2022) |
| 05/14/2022 | | Text Order MOOTING 406 Motion to Extend Scheduling Order Deadlines entered by Judge Xavier Rodriguez. For the reasons stated in open court, this motion is hereby moot. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 05/14/2022) |
| 05/17/2022 | 413 | MOTION to Withdraw as Attorney by LULAC Texas. (Attachments: # 1 Proposed Order)(Dodge, Christopher) (Entered: 05/17/2022) |
| 05/17/2022 | | Text Order GRANTING 413 Motion to Withdraw as Attorney entered by Judge Xavier Rodriguez. The appearance of Domingo A. Garcia for Plaintiff LULAC Texas is withdrawn and shall be removed from all service lists pertaining to this action. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 05/17/2022) |
| 05/17/2022 | 415 | Certified copy of USCA JUDGMENT/MANDATE Remanding Notice of Appeal,, filed by National Republican Congressional Committee, Harris County Republican Party, Dallas County Republican Party, Republican National Committee, National Republican Senatorial Committee, 123 Notice of Appeal (E-Filed), filed by National Republican Congressional Committee, Harris County Republican Party, Dallas County Republican Party, Republican National Committee, National Republican Senatorial Committee.***This cause was considered on the record on appeal and was argued by counsel. IT IS ORDERED AND ADJUDGED that the judgment of the District Court is REVERSED and REMANDED to the District Court for further proceedings in accordance with the opinion of this Court. IT IS FURTHER ORDERED that each party bear its own costs on appeal.*** (Attachments: # 1 TRANSMITTAL LETTER FROM |

| | | USCA5)(dtg) (Entered: 05/19/2022) |
|---|---|---|
| 05/18/2022 | <u>414</u> | Unopposed MOTION to Vacate *Deadlines* by United States Of America. (Attachments: # <u>1</u> Proposed Order)(Stewart, Michael) (Entered: 05/18/2022) |
| 05/18/2022 | | Text Order GRANTING <u>414</u> Motion to Vacate entered by Judge Xavier Rodriguez. No later than June 1, 2022, the parties must file a proposed scheduling order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 05/18/2022) |
| 05/19/2022 | <u>416</u> | TRANSCRIPT REQUEST by Gregory W. Abbott, Jose A. Esparza, STATE OF TEXAS, John Scott for proceedings held on 05/13/2022. Proceedings Transcribed: Hearing on Motion to Compel Discovery. Court Reporter: Gigi Simcox. (Sweeten, Patrick) (Entered: 05/19/2022) |
| 05/19/2022 | <u>417</u> | NOTICE by Gregory W. Abbott, Warren K. Paxton, STATE OF TEXAS, John Scott re <u>397</u> Response in Opposition to Motion,,, (Attachments: # <u>1</u> Exhibit)(Sweeten, Patrick) (Entered: 05/19/2022) |
| 05/19/2022 | <u>418</u> | NOTICE of Attorney Appearance by Roswill Mejia on behalf of Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, The Arc of Texas. Attorney Roswill Mejia added to party Jeffrey Lamar Clemmons(pty:conpla), Attorney Roswill Mejia added to party Delta Sigma Theta Sorority Inc.(pty:conpla), Attorney Roswill Mejia added to party Houston Area Urban League(pty:conpla), Attorney Roswill Mejia added to party The Arc of Texas(pty:conpla) (Mejia, Roswill) (Entered: 05/19/2022) |
| 05/20/2022 | <u>419</u> | TRANSCRIPT REQUEST *Hearing on Motion to Compel Discovery* by Fiel Houston, Inc., JOLT Action, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, William C. Velasquez Institute for proceedings held on May 13, 2022.. (Perales, Nina)***Modified TEXT on 5/24/2022 (dtg).***COURT REPORTER: GIGI SIMCOX.*** (Entered: 05/20/2022) |
| 05/20/2022 | <u>420</u> | MOTION to Appear Pro Hac Vice by John Russell Hardin *for Elena Rodriguez Armenta* ( Filing fee $ 100 receipt number 0542-16058928) by on behalf of LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino. (Attachments: # <u>1</u> Proposed Order)(Hardin, John) (Entered: 05/20/2022) |
| 05/20/2022 | | Text Order GRANTING <u>420</u> Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted permission to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 05/20/2022) |
| 05/20/2022 | <u>421</u> | MOTION to Appear Pro Hac Vice by Orion Armon *on Behalf of Caroline A. Lebel* ( Filing fee $ 100 receipt number 0542-16059592) by on behalf of Lisa Wise. (Attachments: # <u>1</u> Proposed Order)(Armon, Orion) (Entered: 05/20/2022) |
| 05/23/2022 | | Text Order GRANTING <u>421</u> Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted permission to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 05/23/2022) |

| 05/23/2022 | 422 | TRANSCRIPT REQUEST by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Vote Latino for proceedings held on 5/13/2022. Proceedings Transcribed: Motion Hearing. Court Reporter: Gigi Simcix. (Nkwonta, Uzoma) (Entered: 05/23/2022) |
|---|---|---|
| 05/24/2022 | 423 | Transcript filed of Proceedings held on 5-13-22, Proceedings Transcribed: Motion to Compel. Court Reporter/Transcriber: Gigi Simcox, Telephone number: 210-244-5037, gigi_simcox@txwd.uscourts.gov. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 6/14/2022, Redacted Transcript Deadline set for 6/24/2022, Release of Transcript Restriction set for 8/22/2022, (gs) (Entered: 05/24/2022) |
| 05/24/2022 | 424 | ORDER DENYING 145 Motion to Dismiss Signed by Judge Xavier Rodriguez. (mgr) (Entered: 05/24/2022) |
| 05/25/2022 | 425 | ORDER GRANTING 391 Motion to Compel. The State Legislators are ORDERED to produce all documents, with the exception of DOC_0000477, as specified in Appendix A below, by June 3, 2022. Signed by Judge Xavier Rodriguez. (rg) (Entered: 05/25/2022) |
| 05/26/2022 | 426 | Appeal of Order entered by District Judge 425 by Paul Bettencourt, Bryan Hughes, Andrew Murr, Briscoe Cain.. Attorney Patrick K. Sweeten added to party Paul Bettencourt(pty:oth), Attorney Patrick K. Sweeten added to party Bryan Hughes(pty:oth), Attorney Patrick K. Sweeten added to party Andrew Murr(pty:oth), Attorney Patrick K. Sweeten added to party Briscoe Cain(pty:oth) (Sweeten, Patrick) (Entered: 05/26/2022) |
| 05/26/2022 | | NOTICE OF INTERLOCUTORY APPEAL as to 425 Order on Motion to Compel by Paul Bettencourt, Briscoe Cain, Bryan Hughes, Andrew Murr. Per 5th Circuit rules, the appellant has 14 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out (Transcript Order) and follow the instructions set out on the form. This form is available in the Clerk's Office or by clicking the hyperlink above. (rg) (Entered: 05/27/2022) |
| 05/27/2022 | 427 | Unopposed MOTION to Withdraw as Attorney *Liliana Zaragoza* by Jeffrey Lamar Clemmons, Delta Sigma Theta Sorority Inc., Houston Area Urban League, The Arc of Texas. (Attachments: # 1 Proposed Order)(Zaragoza, Liliana) (Entered: 05/27/2022) |
| 05/27/2022 | 428 | Unopposed MOTION to Stay *Pending Appeal* by Paul Bettencourt, Briscoe Cain, Bryan Hughes, Andrew Murr. (Sweeten, Patrick) (Entered: 05/27/2022) |
| 05/31/2022 | | Text Order GRANTING 427 Motion to Withdraw as Attorney entered by Judge Xavier Rodriguez. The appearance of Liliana Zaragoza for Plaintiffs is withdrawn, and she shall be removed from all service lists pertaining to this action. Plaintiffs will continue to be represented by remaining counsel of record. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 05/31/2022) |
| 05/31/2022 | 429 | ORDER GRANTING 428 Motion to Stay. Signed by Judge Xavier Rodriguez. (rg) (Entered: 05/31/2022) |
| 05/31/2022 | 430 | NOTICE of Attorney Appearance by Charles E.T. Roberts on behalf of Dallas County Republican Party, Harris County Republican Party, National Republican Congressional Committee, National Republican Senatorial Committee, Republican National Committee (Roberts, Charles) (Entered: 05/31/2022) |

| | | |
|---|---|---|
| 06/01/2022 | 431 | Joint MOTION for Extension of Time to File *Proposed Scheduling Order* by Gregory W. Abbott, Warren K. Paxton, STATE OF TEXAS, John Scott. (Attachments: # 1 Proposed Order)(Sweeten, Patrick) (Entered: 06/01/2022) |
| 06/01/2022 | | Text Order GRANTING 431 Motion for Extension of Time to File entered by Judge Xavier Rodriguez. No later than June 6, 2022, the parties must file a proposed scheduling order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 06/01/2022) |
| 06/03/2022 | 432 | MOTION to Withdraw as Attorney *Christina M. Beeler* by Isabel Longoria. (Attachments: # 1 Proposed Order)(Beeler, Christina) (Entered: 06/03/2022) |
| 06/03/2022 | 433 | TRANSCRIPT REQUEST by Paul Bettencourt, Briscoe Cain, Bryan Hughes, Andrew Murr for dates of 05/13/2022. Proceedings Transcribed: Hearing on Motion to Compel. Court Reporter: Gigi Simcox.. (Sweeten, Patrick) (Entered: 06/03/2022) |
| 06/06/2022 | | Text Order GRANTING 432 Motion to Withdraw as Attorney entered by Judge Xavier Rodriguez. The appearance of Christina M. Beeler for Defendant Isabel Longoria, in her Official Capacity as Harris County Elections Administrator is withdrawn and shall be removed from all service lists pertaining to this action. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 06/06/2022) |
| 06/06/2022 | 434 | Joint MOTION for Extension of Time to File *Proposed Scheduling Order* by Gregory W. Abbott, Warren K. Paxton, STATE OF TEXAS, John Scott. (Attachments: # 1 Proposed Order)(Sweeten, Patrick) (Entered: 06/06/2022) |
| 06/07/2022 | | Text Order GRANTING 434 Motion for Extension of Time to File entered by Judge Xavier Rodriguez. The parties must file a proposed scheduling order no later than today, June 7, 2022. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 06/07/2022) |
| 06/07/2022 | 435 | ANSWER to 131 Amended Complaint by STATE OF TEXAS, John Scott.(Sweeten, Patrick) (Entered: 06/07/2022) |
| 06/07/2022 | 436 | NOTICE *of Partly Agreed Proposed Amended Schedule* by Gregory W. Abbott, Warren K. Paxton, STATE OF TEXAS, John Scott (Sweeten, Patrick) (Entered: 06/07/2022) |
| 06/08/2022 | 437 | AMENDED SCHEDULING ORDER: Bench Trial set for 7/17/2023 10:30 AM before Judge Xavier Rodriguez, Pretrial Conference set for 7/6/2023 10:30 AM before Judge Xavier Rodriguez, Dispositive Motions due by 4/28/2023. Signed by Judge Xavier Rodriguez. (rg) (Entered: 06/08/2022) |
| 06/13/2022 | | Certification of the Electronic Record on Appeal in USCA #22-50435 has been accepted by the 5th Circuit. re 426 Notice of Appeal - Interlocutory. Attorneys are advised that they may now download the EROA from the Fifth Circuit CM/ECF site by following these instructions here (dtg) (Entered: 06/13/2022) |
| 06/14/2022 | 438 | NOTICE *of Modified Permanent Injunction Regarding Sections 61.032, 61.033, and 64.0321 of the Texas Election Code* by League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Workers Defense Action Fund (Attachments: # 1 Exhibit Order Modifying Permanent Injunction)(Dolling, Zachary) (Entered: 06/14/2022) |
| 06/15/2022 | 439 | Unopposed MOTION to Withdraw as Attorney *Haley Costello Essig* by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Voto Latino. (Essig, Haley) (Entered: 06/15/2022) |

| 06/15/2022 | | Text Order GRANTING 439 Motion to Withdraw as Attorney entered by Judge Xavier Rodriguez. Haley K. Costello Essig is withdrawn as counsel of record for Plaintiffs LULAC Texas, Voto Latino, Texas Alliance for Retired Americans, and Texas AFT. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 06/15/2022) |
|---|---|---|
| 06/15/2022 | 440 | NOTICE *Plaintiffs' Joint Notice related to the OCA Injunction Modification Order* by United States Of America re 438 Notice (Other), (Yun, Jennifer) (Entered: 06/15/2022) |
| 06/30/2022 | 441 | MOTION to Appear Pro Hac Vice by John Russell Hardin *for Daniela Lorenzo* ( Filing fee $ 100 receipt number 0542-16205525) by on behalf of LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Voto Latino. (Attachments: # 1 Proposed Order)(Hardin, John) (Entered: 06/30/2022) |
| 06/30/2022 | | Text Order GRANTING 441 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted permission to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 06/30/2022) |
| 07/07/2022 | 442 | MOTION to Appear Pro Hac Vice by Nina Perales *for Attorney Jasmine M. Johnson* ( Filing fee $ 100 receipt number 0542-16225698) by on behalf of Fiel Houston, Inc., JOLT Action, La Union Del Pueblo Entero, Mexican American Bar Association of Texas, Southwest Voter Registration Education Project, Texas Hispanics Organized for Political Education, William C. Velasquez Institute. (Perales, Nina) (Entered: 07/07/2022) |
| 07/07/2022 | | Text Order GRANTING 442 Motion to Appear Pro Hac Vice entered by Judge Xavier Rodriguez. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted permission to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 07/07/2022) |
| 07/11/2022 | 443 | NOTICE of Attorney Appearance by James A. Rodman on behalf of Texas AFT. Attorney James A. Rodman added to party Texas AFT(pty:conpla) (Rodman, James) (Entered: 07/11/2022) |
| 07/12/2022 | 444 | ORDER GRANTING IN PART AND DENYING IN PART 243 Motion to Dismiss. Any and all claims challenging section 7.04 of S.B. 1, as codified in section 276.018 of the Texas Election Code, are DISMISSED WITHOUT PREJUDICE. Any and all claims challenging portions of section 6.04 of S.B. 1 that the district courtenjoined in OCA Greater Hous. v. Texas, No. 1:15-CV-679-RP, 2022 WL 2019295 (W.D. Tex. June 6, 2022) are MOOT. All other claims that LULAC Texas, Voto Latino, the Texas Alliance for Retired Americans, and Texas AFT have asserted against the Texas Secretary of State and the Texas Attorney General may proceed. Signed by Judge Xavier Rodriguez. (rg) (Entered: 07/12/2022) |
| 07/14/2022 | 445 | NOTICE of Attorney Appearance by Peter Hofer on behalf of League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Workers Defense Action Fund. Attorney Peter Hofer added to party League of Women Voters of Texas(pty:conpla), Attorney Peter Hofer added to party OCA-Greater Houston(pty:conpla), Attorney Peter Hofer added to party REVUP-Texas(pty:conpla), Attorney Peter Hofer added to party Workers Defense Action Fund(pty:conpla) (Hofer, Peter) (Entered: 07/14/2022) |
| 07/18/2022 | 446 | |

| | | |
|---|---|---|
| | | Unopposed MOTION to Withdraw as Attorney by League of Women Voters of Texas, OCA-Greater Houston, REVUP-Texas, Workers Defense Action Fund. (Davis, Lia) (Entered: 07/18/2022) |
| 07/18/2022 | | Text Order GRANTING 446 Motion to Withdraw as Attorney entered by Judge Xavier Rodriguez. Lia Sifuentes Davis is withdrawn as counsel for Plaintiffs OCA-Greater Houston, League of Women Voters of Texas, REVUP-Texas, and Workers Defense Action Fund. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 07/18/2022) |
| 08/02/2022 | 447 | ORDER GRANTING IN PART AND DENYING IN PART 239 Motion to Dismiss Signed by Judge Xavier Rodriguez. (rg) (Entered: 08/02/2022) |
| 08/02/2022 | 448 | ORDER GRANTING IN PART AND DENYING IN PART 240 Motion to Dismiss the claims that OCA-Greater Houston, League of Woman Voters of Texas, REVUP-Texas, and Workers Defense Action Fund have asserted against them Signed by Judge Xavier Rodriguez. (rg) (Entered: 08/02/2022) |
| 08/02/2022 | 449 | ORDER GRANTING IN PART AND DENYING IN PART 255 Motion to Dismiss Signed by Judge Xavier Rodriguez. (rg) (Entered: 08/02/2022) |
| 08/02/2022 | 450 | ORDER GRANTING IN PART AND DENYING IN PART 344 Motion to Dismiss all claims asserted against Kim Ogg. Signed by Judge Xavier Rodriguez. (rg) (Entered: 08/02/2022) |
| 08/10/2022 | 451 | Appeal of Order entered by District Judge 450 by Kim Ogg. ( Filing fee $ 505 receipt number ATXWDC-16384323) (Nichols, Eric) (Entered: 08/10/2022) |
| 08/10/2022 | | NOTICE OF INTERLOCUTORY APPEAL as to 450 Order on Motion to Dismiss by Kim Ogg. Filing fee $505.00, receipt number ATXWDC-16384323. Per 5th Circuit rules, the appellant has 14 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out (Transcript Order) and follow the instructions set out on the form. This form is available in the Clerk's Office or by clicking the hyperlink above. (rg) (Entered: 08/11/2022) |
| 08/15/2022 | 452 | MOTION to Stay by Kim Ogg. (Attachments: # 1 Exhibit, # 2 Proposed Order)(Nichols, Eric) (Entered: 08/15/2022) |
| 08/15/2022 | | Text Order DENYING 452 Motion to Stay entered by Judge Xavier Rodriguez. The Court has already addressed the merits of Defendant Kim Ogg's arguments in its order granting in part and denying part her motion to dismiss. Further, the discovery requests are relevant and responses thereto may be secured from Defendant Ogg either as a party to this case or a third party. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 08/15/2022) |
| 08/19/2022 | 453 | Unopposed MOTION to Withdraw as Attorney by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Voto Latino. (Hawley, Jonathan) (Entered: 08/19/2022) |
| 08/19/2022 | | Text Order GRANTING 453 Motion to Withdraw as Attorney entered by Judge Xavier Rodriguez. Jonathan P. Hawley is withdrawn as counsel of record for Plaintiffs LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, and Voto Latino. (This is a text-only entry generated by the court. There is no document associated with this entry.) (JA3) (Entered: 08/19/2022) |
| 08/24/2022 | 454 | NOTICE of Filing Transcript Order Form by Kim Ogg (Nichols, Eric) (Entered: 08/24/2022) |

| 08/24/2022 | 455 | DEFICIENCY NOTICE: to attorney Eric Nichols The wrong event was used for this document. Please refile using the event "Appeal Transcript Request" even though you are not requesting a transcript the Fifth Circuit needs to receive a copy of this Transcript Order Form. re 454 Notice of Filing (rg) (Entered: 08/24/2022) |
|---|---|---|
| 08/26/2022 | 456 | Unopposed MOTION to Withdraw as Attorney by Gregory W. Abbott, Warren K. Paxton, John Scott. (Attachments: # 1 Proposed Order)(Disorbo, Jack) (Entered: 08/26/2022) |
| 08/26/2022 | | Text Order GRANTING 456 Motion to Withdraw as Attorney entered by Judge Xavier Rodriguez. Mr. Jack DiSorbo is WITHDRAWN from his representation in this case. (This is a text-only entry generated by the court. There is no document associated with this entry.) (ldlc) (Entered: 08/26/2022) |
| 08/30/2022 | 457 | Appeal of Order entered by District Judge 449 by Warren K. Paxton, STATE OF TEXAS, John Scott. (Sweeten, Patrick) (Entered: 08/30/2022) |
| 08/30/2022 | 458 | Appeal of Order entered by District Judge 447 by Gregory W. Abbott, Warren K. Paxton, John Scott. (Sweeten, Patrick) (Entered: 08/30/2022) |
| 08/30/2022 | 459 | Appeal of Order entered by District Judge 448 by Warren K. Paxton, John Scott. (Sweeten, Patrick) (Entered: 08/30/2022) |
| 08/30/2022 | | NOTICE OF INTERLOCUTORY APPEAL as to 448 Order on Motion to Dismiss, 447 Order on Motion to Dismiss, 449 Order on Motion to Dismiss by Gregory W. Abbott, Jose A. Esparza, Warren K. Paxton, STATE OF TEXAS, John Scott. Per 5th Circuit rules, the appellant has 14 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out (Transcript Order) and follow the instructions set out on the form. This form is available in the Clerk's Office or by clicking the hyperlink above. (wg) (Entered: 08/30/2022) |
| 09/06/2022 | 460 | Unopposed MOTION to Withdraw as Attorney John R. Hardin by LULAC Texas, Texas AFT, Texas Alliance for Retired Americans, Voto Latino. (Attachments: # 1 Proposed Order)(Hardin, John) (Entered: 09/06/2022) |
| 09/06/2022 | | Text Order GRANTING 460 Motion to Withdraw as Attorney entered by Judge Xavier Rodriguez. John R. Hardin is hereby WITHDRAWN as counsel of record for Plaintiffs LULAC Texas, Voto Latino, Texas Alliance for Retired Americans, and Texas AFT. (This is a text-only entry generated by the court. There is no document associated with this entry.) (cb) (Entered: 09/06/2022) |
| 09/13/2022 | 461 | TRANSCRIPT REQUEST by Warren K. Paxton, STATE OF TEXAS, John Scott for dates of n/a. Proceedings Transcribed: n/a. Court Reporter: Gigi Simcox.. (Thompson, William)***Modified TEXT on 9/15/2022 (dtg)***TRANSCRIPT IS UNNECESSARY FOR APPEAL PURPOSES.*** (Entered: 09/13/2022) |
| 09/13/2022 | 462 | TRANSCRIPT REQUEST by Gregory W. Abbott, Warren K. Paxton, John Scott for dates of n/a. Proceedings Transcribed: n/a. Court Reporter: Gigi Simcox.. (Thompson, William)******Modified TEXT on 9/15/2022 (dtg)***TRANSCRIPT IS UNNECESSARY FOR APPEAL PURPOSES.*** (Entered: 09/13/2022) |
| 09/13/2022 | 463 | TRANSCRIPT REQUEST by Warren K. Paxton, John Scott for dates of n/a. Proceedings Transcribed: n/a. Court Reporter: Gigi Simcox.. (Thompson, William)***Modified TEXT on 9/15/2022 (dtg)***TRANSCRIPT IS UNNECESSARY FOR APPEAL PURPOSES.*** (Entered: 09/13/2022) |
| 09/16/2022 | | Certification of the Electronic Record on Appeal in USCA #22-50732 has been accepted |

| | | by the 5th Circuit. re <u>451</u> Notice of Appeal - Interlocutory, Notice of Appeal. Attorneys are advised that they may now download the EROA from the Fifth Circuit CM/ECF site by following these instructions <u>here</u> (dtg) (Entered: 09/16/2022) |
|---|---|---|
| 09/21/2022 | <u>464</u> | ORDER of USCA (certified copy). re <u>451</u> Notice of Appeal - Interlocutory.***PER CURIAM: IT IS ORDERED that a temporary adminstrative stay is being placed on all discovery and related proceedings in the district court until September 29, 2022, until further order may issue.*** (Attachments: # <u>1</u> TRANSMITTAL LETTER FROM USCA5)(dtg) (Entered: 09/21/2022) |

TAB 2: NOTICE OF APPEAL (ROA.10857-58)

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, | § | |
| *Plaintiffs,* | § | |
| | § | Case No. 5:21-cv-844-XR |
| v. | § | [Consolidated Cases] |
| | § | |
| GREGORY W. ABBOTT, *et al.*, | § | |
| *Defendants.* | § | |

## STATE DEFENDANTS' NOTICE OF APPEAL

Pursuant to Federal Rules of Appellate Procedure 3(a)(1) and 4(a)(1)(A), John Scott, in his official capacity as Texas Secretary of State, Warren "Ken" Paxton, in his official capacity as Attorney General of Texas, and the State of Texas (collectively "State Defendants") give this notice of appeal to the United States Court of Appeals for the Fifth Circuit from the Order issued on August 2, 2022, ECF 449, which granted in part and denied in part State Defendants' Motion to Dismiss the Second Amended Complaint of La Unión del Pueblo Entero, Friendship-West Baptist Church, the Anti-Defamation League Austin, Southwest, and Texoma Regions, the Southwest Voter Registration Education Project, Texas Impact, the Mexican American Bar Association of Texas, Texas Hispanics Organized for Political Education, Jolt Action, the William C. Velasquez Institute, FIEL Houston Inc., and James Lewin (collectively the "LUPE Plaintiffs").

22-50775.10857

Date: August 30, 2022

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
patrick.sweeten@oag.texas.gov
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
will.thompson@oag.texas.gov
Tex. State Bar No. 24088531

**COUNSEL FOR STATE DEFENDANTS**

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on August 30, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Patrick K. Sweeten*
PATRICK K. SWEETEN

22-50775.10858

**Tab 3: Notice of Appeal (ROA.10859-60)**

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*, *Plaintiffs*, | § § § § | |
| v. | § § | Case No. 5:21-cv-844-XR [Consolidated Cases] |
| GREGORY W. ABBOTT, *et al.*, *Defendants*. | § § § | |

| | | |
|---|---|---|
| HOUSTON AREA URBAN LEAGUE, *et al.*, *Plaintiffs*, | § § § | |
| v. | § § | Case No. 5:21-cv-848-XR |
| GREGORY WAYNE ABBOTT, *et al.*, *Defendants*. | § § § | |

## STATE DEFENDANTS' NOTICE OF APPEAL

Pursuant to Federal Rules of Appellate Procedure 3(a)(1) and 4(a)(1)(A), Gregory Wayne Abbott, in his official capacity as Texas Governor, John B. Scott, in his official capacity as Texas Secretary of State, and Warren "Ken" Paxton, in his official capacity as Attorney General of Texas (collectively "State Defendants") give this notice of appeal to the United States Court of Appeals for the Fifth Circuit from the Order issued on August 2, 2022, ECF 447, which granted in part and denied in part State Defendants' Motion to Dismiss the Second Amended Complaint of Houston Area Urban League, Delta Sigma Theta Sorority, Inc., The Arc of Texas, Mi Familia Vota, Marla López, Marlon López, Paul Rutledge, and Jeffrey Lamar Clemmons (collectively the "HAUL Plaintiffs").

22-50775.10859

Date: August 30, 2022

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 463-2100
Fax: (512) 457-4410

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN
Deputy Attorney General for Special Litigation
patrick.sweeten@oag.texas.gov
Tex. State Bar No. 00798537

WILLIAM T. THOMPSON
Deputy Chief, Special Litigation Unit
will.thompson@oag.texas.gov
Tex. State Bar No. 24088531

COUNSEL FOR STATE DEFENDANTS

CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on August 30, 2022, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN

22-50775.10860

Tab 4: Notice of Appeal (ROA.10861-62)

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, *et al.*,<br>    *Plaintiffs,*<br><br>v.<br><br>GREGORY W. ABBOTT, *et al.*,<br>    *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 5:21-cv-844-XR<br>[Consolidated Cases] |
| OCA-GREATER HOUSTON, *et al.*,<br>    *Plaintiffs,*<br><br>v.<br><br>JOHN SCOTT, *et al,.*<br>    *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 1:21-cv-780-XR |

## STATE DEFENDANTS' NOTICE OF APPEAL

Pursuant to Federal Rules of Appellate Procedure 3(a)(1) and 4(a)(1)(A), John Scott, in his official capacity as Texas Secretary of State, and Ken Paxton, in his official capacity as Attorney General of Texas (collectively "State Defendants") give this notice of appeal to the United States Court of Appeals for the Fifth Circuit from the Order issued on August 2, 2022, ECF 448, which granted in part and denied in part State Defendants' Motion to Dismiss the Second Amended Complaint of OCA-Greater Houston, League of Woman Voters of Texas, REVUP-Texas, and Workers Defense Action Fund (collectively the "OCA-Greater Houston Plaintiffs").

1

Date: August 30, 2022                    Respectfully submitted.

KEN PAXTON                                /s/ Patrick K. Sweeten
Attorney General of Texas                 PATRICK K. SWEETEN
                                          Deputy Attorney General for Special Litigation
BRENT WEBSTER                             patrick.sweeten@oag.texas.gov
First Assistant Attorney General          Tex. State Bar No. 00798537

OFFICE OF THE ATTORNEY GENERAL            WILLIAM T. THOMPSON
P.O. Box 12548 (MC-009)                   Deputy Chief, Special Litigation Unit
Austin, Texas 78711-2548                  will.thompson@oag.texas.gov
Tel.: (512) 463-2100                      Tex. State Bar No. 24088531
Fax: (512) 457-4410
                                          **COUNSEL FOR STATE DEFENDANTS**


## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on August 30, 2022, and that all counsel of record were served by CM/ECF.

/s/ Patrick K. Sweeten
PATRICK K. SWEETEN

22-50775.10862

**Tab 5: Order on State Defendants' Motion to Dismiss MFV Plaintiffs' Second Amended Complaint (ROA.10589-10662)**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al., | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | 5:21-CV-0844-XR |
| | § | [Consolidated Cases] |
| GREGORY W. ABBOTT, et al., | § | |
| *Defendants.* | § | |

## ORDER

On this date, the Court considered the Texas Governor, the Texas Secretary of State, and the Texas Attorney General's motion to dismiss all claims that Houston Area Urban League, Delta Sigma Theta Sorority, Inc., The Arc of Texas, Mi Familia Vota, Marla López, Marlon López, Paul Rutledge, and Jeffrey Lamar Clemmons have asserted against them (ECF No. 239). After careful consideration, the Court issues the following order.

## BACKGROUND

On September 7, 2021, Texas Governor Greg Abbott signed into law the Election Protection and Integrity Act of 2021, an omnibus election law commonly referred to as S.B. 1. *See* Election Integrity Protection Act of 2021, S.B. 1, 87th Leg., 2d Spec. Sess. (2021). Premised on the state legislature's authority to make all laws necessary to detect and punish fraud under article VI, section 4 of the Texas Constitution, S.B. 1 went into effect on December 2, 2021, and amended the Texas Election Code (the "Election Code") by altering various election practices and procedures pertaining to early voting, voting by mail, voter assistance, and more. *See generally id.*

Days before and after the Governor signed S.B. 1 into law, several private plaintiffs filed suit, alleging that certain provisions of S.B. 1 violate federal law and the United States

1

22-50775.10589

Constitution.[1] This order addresses two of these suits filed by Houston Area Urban League ("HAUL"), Delta Sigma Theta Sorority, Inc. ("DST"), The Arc of Texas, Mi Familia Vota ("MFV"), Marla López, Marlon López, Paul Rutledge, and Jeffrey Lamar Clemmons (together, the "HAUL Plaintiffs").[2] *See* Compl., *Mi Familia Vota v. Abbott*, No. 5:21-CV-920-XR (W.D. Tex. Sept. 27, 2021), ECF No. 1; Compl., *Houston Justice v. Abbott*, No. 5:21-CV-848-XR (W.D. Tex. Sept. 7, 2021), ECF No. 1. The HAUL Plaintiffs challenge sections 2.05, 2.06, 2.07, 3.04, 3.09, 3.10, 3.12, 3.13, 3.15, 4.01, 4.06, 4.07, 4.09, 4.12, 5.01, 5.02, 5.03, 5.04, 5.06, 5.07, 5.08, 5.11, 5.12, 5.13, 5.14, 6.01, 6.03, 6.04, 6.05, 6.07, 7.02, and 7.04 of S.B. 1. ECF No. 199 ¶¶ 260–62; 276–78; 295–97; 309–11; 323–24; 329; 339; 355.[3]

On January 18, 2022, the HAUL Plaintiffs filed their second amended complaint against the Texas Governor, (the "Governor"), the Texas Secretary of State (the "Secretary"), and the Texas Attorney General (the "Attorney General"), in their official capacities (together, the "State Defendants").[4] ECF No. 199. They assert eight claims as follows:

- HAUL, DST, MFV, the Lopezes, and Mr. Rutledge allege that all of the challenged provisions—except for sections 3.15, 4.06, 4.09, and 6.04—violate the First and Fourteenth Amendments because the provisions impose an undue burden on the right to vote, and they

---

[1] For the purposes of judicial economy, the Court consolidated these cases under the above-captioned lead case. *See* ECF No. 31 (consolidating *OCA-Greater Houston v. Esparza*, No. 1:21-CV-780-XR (W.D. Tex. 2021); *Houston Justice v. Abbott*, No. 5:21-CV-848-XR (W.D. Tex. 2021); *LULAC Texas v. Esparza*, No. 1:21-CV-786-XR (W.D. Tex. 2021); and *Mi Familia Vota v. Abbott*, No. 5:21-CV-920-XR (W.D. Tex. 2021)); *see also* Order, *United States v. Texas*, No. 5:21-CV-1085-XR (W.D. Tex. Nov. 4, 2021), ECF No. 13.

[2] Houston Justice initially joined the HAUL Plaintiffs in filing this action. However, on February 22, 2022, the HAUL Plaintiffs filed an unopposed motion to withdraw Houston Justice as a party. ECF No. 275. The Court granted the motion.

[3] When citing to the parties' filings, the Court refers to paragraph numbers and ECF pagination.

[4] The HAUL Plaintiffs have also sued, in their official capacities, Harris County District Attorney Kim Ogg, Bexar County District Attorney Joe Gonzales, Travis County District Attorney José Garza, Bexar County Elections Administrator Jacquelyn Callanen, and Harris County Elections Administrator Isabel Longoria. ECF No. 199 ¶¶ 77–79; 84–85.

22-50775.10590

name the Secretary and the Attorney General as defendants for this
claim;

- HAUL, DST, and the Lopezes allege that all of the challenged
  provisions violate the Fourteenth Amendment because the
  provisions intentionally deny the right to vote on the basis of race,
  and they name the Secretary and the Attorney General as defendants
  for this claim;

- HAUL, DST, MFV, and the Lopezes allege that all of the challenged
  provisions violate the Fifteenth Amendment, and they name the
  Secretary and the Attorney General as defendants for this claim;

- HAUL, DST, MFV, and the Lopezes allege that all of the challenged
  provisions—except for sections 4.06 and 4.09—violate § 2 of the
  Voting Rights Act of 1965 ("VRA"), and they name the Governor,
  the Secretary, and the Attorney General as defendants for this claim;

- MFV, DST and The Arc of Texas allege that sections 6.01, 6.03,
  6.04, 6.05, and 6.07 violate § 208 of the VRA, and they name the
  Governor, the Secretary, and the Attorney General as defendants for
  this claim;

- Mr. Clemmons alleges that sections 4.06, 4.07, and 4.09 violate the
  Fourteenth Amendment because the provisions are
  unconstitutionally vague, and he names the Secretary and the
  Attorney General as defendants for this claim; and

- The Arc of Texas alleges that sections 5.02, 5.03, 5.06, 5.07, 5.10,
  6.03, 6.04, 6.05, and 6.07 violate Title II of the Americans with
  Disabilities Act ("ADA") and § 504 of the Rehabilitation Act, and
  it names the Secretary and the Attorney General as defendants for
  these two claims.

*Id.* ¶¶ 260–62; 276–78; 295–97; 309–11; 323–24; 329; 339; 355. The HAUL Plaintiffs seek to

enjoin the State Defendants from enforcing each of the S.B. 1 provisions that they challenge under

their constitutional and statutory claims. *Id.* at 129.

On February 8, 2022, the State Defendants filed a motion to dismiss all claims that the

HAUL Plaintiffs have asserted against them. ECF No. 239. The HAUL Plaintiffs filed a response,

ECF No. 252, and the State Defendants filed a reply, ECF No. 264. On March 18, 2022, the State

3

Defendants filed a notice of supplemental authority. ECF No. 333. Thereafter, on April 8, 2022, the HAUL Plaintiffs filed a response to the State Defendants' notice. ECF No. 359.

## DISCUSSION

### I. Legal Standards

The State Defendants move to dismiss the HAUL Plaintiffs' claims on three grounds. First, the State Defendants argue that state sovereign immunity bars the HAUL Plaintiffs from suing the Governor, the Secretary, and the Attorney General. Second, the State Defendants claim that the HAUL Plaintiffs lack standing to bring this suit. Finally, the State Defendants contend that the HAUL Plaintiffs have failed to state a claim upon which relief may be granted under Title II of the ADA, § 504 of the Rehabilitation Act, and § 208 of the VRA.

### A. Subject matter jurisdiction

Subject matter jurisdiction is a federal court's statutory or constitutional power to adjudicate a case.[5] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). The Eleventh Amendment and the doctrine of sovereign immunity limit a federal court's jurisdiction. *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir. 2002). "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). The doctrine of sovereign immunity "also prohibits suits against state officials or agencies that are effectively suits against a state." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). State sovereign immunity, however, "is not limitless[.]" *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 735 (5th Cir. 2020). "A State may waive its sovereign immunity . . . and in some circumstances Congress may abrogate it by appropriate

---

[5] Congress, by statute, has proclaimed that the "district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331. The HAUL Plaintiffs assert claims against the State Defendants under federal law. The Court, therefore, is statutorily authorized to adjudicate this case.

4

legislation." *Stewart*, 563 U.S. at 253–54 (citation omitted). Additionally, under *Ex parte Young*, 209 U.S. 123 (1908), "a litigant may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law." *Reeves*, 954 F.3d at 736.

Article III of the United States Constitution also limits a federal court's constitutional power to adjudicate a case. It "gives federal courts the power to adjudicate only genuine 'Cases' and 'Controversies.'" *California v. Texas*, 141 S. Ct. 2104, 2113 (2021) (quoting U.S. CONST. art. III, § 2). The "case-or-controversy requirement is satisfied only where a plaintiff has standing." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008). Standing, therefore, "is a component of subject matter jurisdiction." *HSBC Bank USA, N.A. as Tr. for Merrill Lynch Mortg. Loan v. Crum*, 907 F.3d 199, 202 (5th Cir. 2018). It provides definition to the constitutional limits of subject matter jurisdiction, *Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015), by identifying "those disputes which are appropriately resolved through the judicial process," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quotation marks and citation omitted).

A federal court must consider a motion to dismiss for lack of subject matter jurisdiction "before other challenges 'since the court must find jurisdiction before determining the validity of the claim.'" *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (quoting *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 450 (6th Cir. 1988)). The federal court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). At the pleading stage, "the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012).

### B. Failure to state a claim

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of claims for failure to state a claim upon which relief may be granted. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint must be taken as true and must be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555.

## II.    Analysis

The Court addresses each of the State Defendants' three grounds for dismissal, beginning, as it must, with their jurisdictional contentions.

### A. State sovereign immunity does not bar the HAUL Plaintiffs' claims against the Governor, the Secretary, and the Attorney General.

The State Defendants claim that state sovereign immunity bars the HAUL Plaintiffs' claims against the Governor, the Secretary, and the Attorney General. ECF No. 239 at 10–26. They emphasize that the HAUL Plaintiffs cannot satisfy the *Ex parte Young* exception to state sovereign immunity. *Id.* at 11–25. The State Defendants also contend that the HAUL Plaintiffs have failed to demonstrate an alternative exception to state sovereign immunity. *Id.* at 25–26.

22-50775.10594

1. **The *Ex parte Young* exception to state sovereign immunity permits the HAUL Plaintiffs to sue the Secretary and the Attorney General for most of the S.B. 1 provisions that they challenge on constitutional grounds.**

State sovereign immunity under the Eleventh Amendment generally precludes suits against state officials in their official capacities. *City of Austin*, 943 F.3d at 997. The *Ex parte Young* exception to state sovereign immunity, however, allows private parties to bring "suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). The Supreme Court has counseled that, "[i]n determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alterations on original) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)). The Supreme Court has also made clear that, for the *Ex parte Young* exception to apply, the state official, by virtue of his office, must have "some connection with the enforcement" of the challenged law. *Young*, 209 U.S. at 157.

Despite the straightforward inquiry that the Supreme Court envisioned, the Fifth Circuit has acknowledged that its own decisions "are not a model of clarity on what 'constitutes a sufficient connection to enforcement.'" *Tex. Democratic Party v. Abbott* (*Tex. Democratic Party I*), 961 F.3d 389, 400 n.21 (5th Cir. 2020) (quoting *City of Austin*, 943 F.3d at 999). Nevertheless, the Fifth Circuit has articulated some general rules. For instance, the Fifth Circuit has stated that "it is not enough that the official have a '*general* duty to see that the laws of the state are implemented.'" *Id.* at 400–01 (emphasis in original) (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). The Fifth Circuit has also determined that,"[i]f the official sued is not

statutorily tasked with enforcing the challenged law, then the requisite connection is absent and our *Young* analysis ends." *Id.* at 401 (quotation marks and citation omitted). "Moreover," according to the Fifth Circuit, "a mere connection to a law's enforcement is not sufficient—the state officials must have taken some step to enforce." *Id.*

The Fifth Circuit has further explained that plaintiffs must at least "show the defendant has 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Tex. Democratic Party v. Abbott* (*Tex. Democratic Party II*), 978 F.3d 168, 179 (5th Cir. 2020) (quoting *Morris*, 739 F.3d at 746). Put differently, the state "official must be 'statutorily tasked with enforcing the challenged law[,]'" *id.* (quoting *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020), *cert. granted, judgment vacated sub nom. Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 161 (2021)), though whether the particular duty to enforce the statute in question "arises out of the general law, or is specially created by the [statute] itself, is not material so long as it exists[,]" *Young*, 209 U.S. at 157. "Enforcement typically means 'compulsion or constraint.'" *Tex. Democratic Party II*, 978 F.3d at 179 (quoting *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010)). "A 'scintilla of "enforcement" by the relevant state official with respect to the challenged law' will do." *Id.* (quoting *City of Austin*, 943 F.3d at 1002). In short, "if an 'official *can* act, and there's a significant possibility that he or she *will* . . . , the official has engaged in enough compulsion or constraint to apply the *Young* exception.'" *Tex. Democratic Party I*, 961 F.3d at 401 (emphasis in original) (quoting *City of Austin*, 943 F.3d at 1002).

Here, the HAUL Plaintiffs assert four claims under the First, Fourteenth, and Fifteenth Amendments against the Secretary and the Attorney General. ECF No. 199 ¶¶ 250–300, 327–36. They do so pursuant to 42 U.S.C. § 1983, which "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v.*

8

*Gabbert*, 526 U.S. 286, 290 (1999). Congress has not abrogated state sovereign immunity under § 1983. *Raj*, 714 F.3d at 328. Nonetheless, the HAUL Plaintiffs may institute a § 1983 action for prospective injunctive relief consistent with the *Ex parte Young* exception to state sovereign immunity. *Edelman v. Jordan*, 415 U.S. 651, 677 (1974).

> **a. The HAUL Plaintiffs have shown that the Secretary has a sufficient enforcement connection to all of the S.B. 1 provisions that they challenge on constitutional grounds.**

"Determining whether *Ex parte Young* applies to a state official requires a provision-by-provision analysis[.]"[6] *Tex. Democratic Party II*, 978 F.3d at 179. "[T]he official must have the requisite connection to the enforcement of the particular statutory provision that is the subject of the litigation." *Id.* "This is especially true here because the Texas Election Code delineates between the authority of the Secretary of State and local officials." *Id.*

Thus, the question before the Court at this stage of the proceedings is whether the HAUL Plaintiffs have alleged a plausible set of facts establishing that the Secretary has a sufficient enforcement connection to each of the S.B. 1 provisions that they challenge on constitutional grounds—that is, whether the HAUL Plaintiffs have plausibly established that the Secretary can and will enforce each of these provisions.

---

[6] The State Defendants contend that the HAUL Plaintiffs must, at the pleading stage, establish that the *Ex parte Young* exception applies to a state official on a provision-by-provision basis. ECF No. 239 at 10; ECF No. 264 at 9; *see also* ECF No. 333 at 2. They rely on *Texas Democratic Party II* and *Texas Alliance for Retired Americans v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022), for their assertion. Neither of these cases, however, specifically hold that the *Ex parte Young* exception to state sovereign immunity *must* be assessed on a provision-by-provision basis at the pleading stage. Rather, these cases discuss the *Ex parte Young* exception to state sovereign immunity in reviewing the validity of a district court's injunction. Indeed, the Fifth Circuit has made clear that, at the pleading stage, plaintiffs need only allege a plausible set of facts establishing the Court's jurisdiction. *Physician Hosps. of Am.*, 691 F.3d at 652. Nevertheless, in resolving the instant motion to dismiss, the Court assumes, but does not decide, that the HAUL Plaintiffs must, at this stage of the proceedings, establish that the *Ex parte Young* exception to state sovereign immunity applies on a provision-by-provision basis.

9

> i. **The HAUL Plaintiffs have plausibly established that the Secretary can enforce all of the S.B. 1 provisions that they challenge on constitutional grounds.**

The HAUL Plaintiffs name the Secretary as a defendant for their claims challenging sections 2.05, 2.06, 2.07, 3.04, 3.09, 3.10, 3.12, 3.13, 3.15, 4.01, 4.06, 4.07, 4.09, 4.12, 5.01, 5.02, 5.03, 5.04, 5.07, 5.08, 5.11, 5.12, 5.13, 5.14, 6.01, 6.03, 6.04, 6.05, 6.07, 7.02, and 7.04 under the First, Fourteenth, and Fifteenth Amendments.[7] ECF No. 199 ¶¶ 250–300, 329.

A state official is most clearly tasked with enforcing a statute when the state official is "specially charged with the duty to enforce the statute[.]" *Young*, 209 U.S. at 158. Sections 2.05, 2.06, and 2.07 charge the Secretary with enforcing these provisions.

Sections 2.05 and 2.07 establish additional procedures for the maintenance of voter rolls. Section 2.05 states, in relevant part:

> The secretary of state shall enter into an agreement with the Department of Public Safety under which information in the existing statewide computerized voter registration list is compared against information in the database of the Department of Public Safety on a monthly basis to verify the accuracy of citizenship status information previously provided on voter registration applications. In comparing information under this subsection, the secretary of state shall consider only a voter's information in the database of the Department of Public Safety that was derived from documents presented by the voter to the department after the person's current voter registration became effective, and may not consider information derived from documents presented by the voter to the

---

[7] The State Defendants submit that the HAUL Plaintiffs also challenge sections 3.08, 4.04, and 4.11 and that they direct these challenges against the Secretary. ECF No. 239 at 12. Not so. The HAUL Plaintiffs clearly allege which S.B. 1 provisions they challenge in paragraphs 250 through 365 of their complaint, none of which include sections 3.08, 4.04, and 4.11. Rather, the HAUL Plaintiffs refer to sections 3.08, 4.04, and 4.11 to show how S.B. 1 has expanded the Secretary's authority under the Election Code. ECF No. 199 ¶ 75. Further, the State Defendants claim that the HAUL Plaintiffs fail to establish that the Secretary has a sufficient enforcement connection to sections 5.06 and 5.10. ECF No. 239 at 12. But the HAUL Plaintiffs challenge sections 5.06 and 5.10 under Title II of the ADA and § 504 of the Rehabilitation Act, not the United States Constitution. ECF No. 199 ¶¶ 339, 349, 355. Thus, the HAUL Plaintiffs may, but need not, rely on the *Ex parte Young* exception to state sovereign immunity to assert claims challenging sections 5.06 and 5.10. Finally, the State Defendants fail to observe that the HAUL Plaintiffs also assert claims challenging sections 5.11, 6.07, 7.02, and 7.04 under the First, Fourteenth, and Fifteenth Amendments against the Secretary. *See* ECF No. 239 at 12, 14–22; *see also* ECF No. 199 ¶¶ 260, 276–77, 295–96. Nevertheless, the Court considers whether the *Ex parte Young* exception to state sovereign immunity applies.

22-50775.10598

department before the person's current voter registration became effective.

Tᴇx. Eʟᴇᴄ. Cᴏᴅᴇ § 16.0332(a-1). Upon receiving notice from the Secretary of a voter whose citizenship is in question based on the Secretary's comparison of voter registration and Department of Public Safety records, voter registrars must deliver a written notice to the voter, requiring them to submit "proof of United States citizenship in the form of a certified copy of the voter's birth certificate, United States passport, or certificate of naturalization or any other form prescribed by the secretary of state." *Id.* § 16.0332(a). Section 2.05 makes clear that the Secretary "shall prescribe rules for the administration of this section." *Id.* § 16.0332(d). In addition, "[n]ot later than December 31 of each year, the secretary of state shall provide a report to the legislature of the number of voter registrations canceled under this section during the calendar year." *Id.* § 16.0332(e).

Moreover, the Secretary is statutorily responsible for ensuring that voter registrars substantially comply with his rules and requirements implementing the statewide computerized voter registration list. *Id.* § 18.065(a). This necessarily includes the Secretary's rules and requirements pertaining to notices that he sends to voter registrars pursuant to section 2.07. Indeed, section 2.07 directs the Secretary to provide notice to voter registrars if he determines that a voter on the statewide computerized voter registration list is no longer "a resident of the county in which the voter is registered to vote[.]" *Id.* § 18.068(a).

Furthermore, section 2.06 requires the Secretary to sanction a voter registrar if he determines that the voter registrar failed to substantially comply with his rules or requirements implementing the statewide computerized voter registration list. *Id.* § 18.065(e). Specifically, for the first violation, the Secretary must require the voter registrar to attend a training course on compliance. *Id.* § 18.065(e)(1). Section 2.06 tasks the Secretary with developing and implementing

11

the training program. *Id.* § 18.065(h). In the event of a second violation, the Secretary must "audit the voter registration list for the county in which the registrar serves to determine the actions needed to achieve substantial compliance . . . and provide the results of the audit to the registrar[.]" *Id.* § 18.065(e)(2). For a third or any subsequent violation, if the Secretary determines that the voter registrar, within fourteen days of receiving the results of his audit, "has not performed any overt actions in pursuance of compliance with the actions identified" in those results, then he must "inform the attorney general that the county which the registrar serves may be subject to a civil penalty[.]" *Id.* § 18.065(e)(3). Section 2.06 also makes clear that the Secretary "shall adopt rules and prescribe procedures for the implementation of this section." *Id.* § 18.065(i). Thus, sections 2.05, 2.06, and 2.07 plainly establish that the Secretary is statutorily tasked with enforcing the same.

However, for the *Ex parte Young* exception to apply, "[t]he text of the challenged law need not actually state the official's duty to enforce it[.]" *City of Austin*, 943 F.3d at 997–98. It is enough that the state official's duty "arises out of the general law[.]" *Young*, 209 U.S. at 157. The Supreme Court's directive in *Young* is especially relevant in this case, where the Election Code includes several provisions that clearly empower the Secretary with duties to specifically enforce the remaining S.B. 1 provisions that the HAUL Plaintiffs challenge on constitutional grounds.

For instance, sections 5.01, 5.02, 5.03, and 5.07 establishes new requirements for vote-by-mail applications. In *Texas Democratic Party II*, the Fifth Circuit considered whether state sovereign immunity barred a challenge to an Election Code provision pertaining to vote-by-mail applications. Specifically, the plaintiffs alleged that an Election Code provision permitting only voters over the age of sixty-five to vote by mail was unconstitutional under the Twenty-Sixth Amendment. *Tex. Democratic Party II*, 978 F.3d at 174. The question before the Fifth Circuit was

12

whether the district court erred in requiring the Secretary to allow voters who are otherwise qualified to vote, but under the age of sixty-five, to vote by mail. *Id.*

To determine whether the Secretary was entitled to state sovereign immunity, the panel consulted the Election Code and observed that the Secretary "has the specific and relevant duty to design the application form for mail-in ballots . . . and to provide that form to local authorities and others who request it." *Id.* at 179 (citing Tex. Elec. Code §§ 31.002(a)–(b)). It further noted that the Election Code requires the Secretary to "furnish forms to those who request them for distribution to others." *Id.* at 179–80 (citing Tex. Elec. Code § 84.013). The panel also found it significant that the Election Code requires local officials "to use the Secretary's absentee-ballot form outside of emergency situations[.]" *Id.* at 180 (citing Tex. Elec. Code § 31.002(d)). Based on these duties found throughout the Election Code, the Fifth Circuit found that "the Secretary has the authority to compel or constrain local officials based on actions []he takes as to the application form." *Id.* The Fifth Circuit therefore held that, notwithstanding the division of responsibilities among the Secretary and local officials, the Secretary had a sufficient enforcement connection to the vote-by-mail provision at issue, justifying application of the *Ex parte Young* exception to state sovereign immunity as to the Secretary. *Id.*

The same conclusion is warranted here. Section 5.01 provides that a vote-by-mail application "must be submitted in writing and signed by the applicant using ink on paper." Tex. Elec. Code § 84.001(b). In other words, the provision imposes a wet-signature requirement for vote-by-mail applications. Section 5.02 generally provides that an applicant must now submit their driver's license, election identification certificate, or personal identification card number on their vote-by-mail application. Tex. Elec. Code § 84.002(a)(1-a). Section 5.03, in turn, expressly states that a vote-by-mail application must include a space for an applicant to enter the identification

information that section 5.02 requires. *Id.* § 84.001(a)(3-a). Section 5.07 provides that an early voting clerk must reject the applicant's vote-by-mail application if the required identification information on their application is either missing or does not match the identification information that the applicant previously provided on their voter registration application. *Id.* § 86.001(f).

As *Texas Democratic Party II* explained and the HAUL Plaintiffs allege, the Secretary is statutorily required to prescribe the design and content of "the forms necessary for the administration" of the Election Code. *Id.* § 31.002(a); *see also* ECF No. 199 ¶ 74. The forms "must enhance the ability of a person to understand the applicable requirements and to physically furnish the required information in the space provided." TEX. ELEC. CODE § 31.002(a). The Secretary must furnish samples of these forms to "the appropriate authorities who have administrative duties under this code; and other persons who request a form for duplication." *Id.* § 31.002(b). The Secretary must also maintain a supply of these forms and provide them to individuals and organizations that request them for distribution to voters. *Id.* § 84.013. Local officials must then use these forms, except in an emergency. *Id.* § 31.002(d).

It therefore follows that the Election Code requires the Secretary to modify vote-by-mail applications, so that they include the statutorily-required space for applicants to enter the identification information that the Election Code now requires. Consequently, as in *Texas Democratic Party II*, the Secretary has the authority to compel or constrain local officials based on the actions he takes with respect to vote-by-mail applications.

The same reasoning applies to the HAUL Plaintiffs' challenges to section 5.08, 5.12, 5.13, 5.14, and 6.07. Section 5.08 generally provides that a voter must submit their driver's license, election identification certificate, or personal identification card number on their mail ballot carrier envelope. *Id.* § 86.002(g). It makes clear that a mail ballot carrier envelope "must include a space

14

that is hidden from view when the envelope is sealed for the voter to enter" the required identification information. *Id.* Section 5.13 also provides that an early voting clerk must reject a mail-in ballot if the required identification information on the mail ballot carrier envelope is either missing or does not match the identification information that the voter previously provided on their voter registration application. *Id.* § 87.041(b)(8).

Section 5.12, in turn, describes what curative measures a signature verification committee must or may offer to a voter whose mail-in ballot has been rejected based on, for example, the absence of the required identification information. *Id.* § 87.0271(a)(4). The provision authorizes the Secretary to "prescribe any procedures necessary to implement this section." *Id.* §§ 87.0271(f). Section 5.14 similarly describes what curative measures an early voting ballot board must or may offer to a voter whose mail-in ballot has been rejected for the same reason. *Id.* § 87.0411(a)(4). The provision also authorizes the Secretary to "prescribe any procedures necessary to implement this section." *Id.* § 87.0411(f). Section 6.07 states that a space must appear on the reverse side of the mail ballot carrier envelope for an assistor to indicate their relationship to a voter. *Id.* § 86.013(b)(3). Thus, as with vote-by-mail applications, the Secretary has the authority to compel or constrain local officials and assistors based on the actions he takes with respect to the design and content of mail ballot carrier envelopes.

The State Defendants counter that local officials are the proper defendants for the HAUL Plaintiffs' challenges to these and other provisions because the provisions explicitly reference local officials. ECF No. 239 at 14–22. It is true that, "[i]f the official sued is not 'statutorily tasked with enforcing the challenged law,' then the requisite connection is absent and '[the Court's] *Young* analysis ends.'" *In re Abbott*, 956 F.3d at 709 (quoting *City of Austin*, 943 F.3d at 998). But the

15

Supreme Court also made clear long ago that the challenged provision need not explicitly identify the state official named as a defendant for the *Ex parte Young* exception to apply:

> The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, *and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists.*

*Young*, 209 U.S. at 157 (emphasis added). Indeed, a state official may be statutorily tasked with enforcing a challenged provision based on the text in the challenged provision itself or the general law—such as, for example, the Election Code.

Further, it is worth noting that the provision at issue in *Texas Democratic Party II*, section 82.003 of the Election Code, did not explicitly refer to the Secretary either. In its entirety, section 82.003 states: "A qualified voter is eligible for early voting by mail if the voter is 65 years of age or older on election day." TEX. ELEC. CODE § 82.003. Despite the absence of a specific reference to the Secretary in section 82.003, the Fifth Circuit located the Secretary's duties to enforce the provision in another section of the Election Code: "[T]he Secretary's specific duties regarding the application form under Section 31.002 are enough for us to conclude that the Secretary has at least a scintilla of enforcement authority for Section 82.003." *Tex. Democratic Party II*, 978 F.3d at 180. In short, the State Defendants' suggestion that the *Ex parte Young* analysis requires the Court to read each provision in a vacuum, without reference to any other Election Code provision—no matter how relevant to the enforcement question at hand—is entirely divorced from Fifth Circuit precedent, from the fundamental precepts of statutory interpretation,[8] and from common sense.

---

[8] "[R]easonable statutory interpretation must account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (ellipsis in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). "[T]he cardinal rule [is] that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (citing *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989)).

22-50775.10604

Thus, it is immaterial that the Secretary is not expressly identified in the vote-by-mail and mail ballot carrier envelope provisions. The Election Code makes clear that it is the Secretary who is responsible for prescribing the design and content of vote-by-mail applications and mail ballot carrier envelopes. The challenged provisions, therefore, can be enforced only if and when the Secretary modifies vote-by-mail applications and mail ballot carrier envelopes to integrate the new identification requirements delineated in S.B. 1. The HAUL Plaintiffs allege that these provisions unconstitutionally burden the right to vote and intentionally discriminate on the basis of race. ECF No. 199 ¶¶ 260, 276–77. The *Ex parte Young* exception to state sovereign immunity authorizes the Court to "command[] a state official to do nothing more than refrain from violating federal law[.]" *Stewart*, 563 U.S. at 255. If the Court were to do so with respect to these provisions, then the Court's relief "might lead to prohibiting the Secretary from using [a vote-by-mail application or mail ballot carrier envelope] that expressed" unlawful requirements. *Tex. Democratic Party II*, 978 F.3d at 180. This was sufficient in *Texas Democratic Party II* and is certainly sufficient here, where the HAUL Plaintiffs need only allege a plausible set of facts establishing the Court's jurisdiction.

For the same reasons, it is also inconsequential that the provisions expressly task local officials with rejecting vote-by-mail applications and mail ballot carrier envelopes that do not contain the required identification information. Under the Election Code and in practice, local officials would be unable to reject either of these forms were it not for the Secretary first fulfilling his statutory duties to prescribe the design and content of vote-by-mail applications and mail ballot carrier envelopes. Put differently, it is the Secretary who is exclusively responsible for prescribing the design and content of vote-by-mail applications and mail ballot carrier envelopes in a manner that enables applicants and voters to enter the required identification information. If he fails to do so, then the Secretary necessarily compels or constrains local officials by preventing them from

17

rejecting these forms. Thus, this is not a case where the Secretary's "duty has nothing to do with enforcing" the vote-by-mail and mail ballot carrier envelope provisions. *Lewis v. Scott*, 28 F.4th 659, 663 (5th Cir. 2022). "Though there is a division of responsibilities, the Secretary has the needed connection" to these challenged provisions. *Tex. Democratic Party II*, 978 F.3d at 180.

*Texas Democratic Party II* applies with equal force to the HAUL Plaintiffs' challenges to sections 4.12, 6.01[9], and 6.03. Section 4.12 states that the "in-person delivery of a marked ballot . . . must be received by an election official at the time of delivery." *Id.* § 86.006(a-2). The provision also provides that the "receiving official shall record the voter's name, signature, and type of identification . . . on a roster prescribed by the secretary of state." *Id.* The receiving official must "attest on the roster that the delivery complies" with the requirements for returning a mail-in ballot. *Id.* Under section 6.01, "[a] person who simultaneously assists seven or more voters . . . by providing the voters with transportation to the polling place must complete and sign a form . . . that contains the person's name and address[.]" *Id.* § 64.009(f). The provision requires the Secretary to prescribe the form. *Id.* § 64.009(h). Section 6.03 similarly requires an assistor to complete a form stating their name and address, their relationship to the voter, and whether they "received or accepted any form of compensation or other benefit from a candidate, campaign, or political committee." *Id.* § 64.0322(a). Again, the Secretary must prescribe the required form. *Id.* § 64.0322(b). Consequently, sections 4.12, 6.01, and 6.03 can only be enforced if and when the Secretary prescribes the roster and forms. The HAUL Plaintiffs allege that these provisions impose requirements that unconstitutionally burden the right to vote and intentionally discriminate on the basis of race. ECF No. 199 ¶¶ 260, 262, 276–77. If the Court were to agree, then it could enjoin

---

[9] The HAUL Plaintiffs challenge two parts of section 6.01: (1) the part that now permits poll watchers to observe interactions between a voter and their assistor and (2) the part that requires assistors to complete a form when assisting voters. *See* ECF No. 199 ¶ 260.

the Secretary from prescribing the unlawful roster and forms. Indeed, the Secretary has the authority to compel or constrain local officials and assistors and therefore possesses a sufficient connection to these provisions.

The same is true for the HAUL Plaintiffs' challenges to section 3.15. The provision states that "[v]oting system ballots may not be arranged in a manner that allows a political party's candidates to be selected in one motion or gesture." TEX. ELEC. CODE § 124.002I. In other words, the provision eliminates straight-party voting. Although the Secretary "is not responsible for printing or distributing ballots[,]" *Mi Familia Vota v. Abbott*, 977 F.3d 461, 468 (5th Cir. 2020), the Election Code expressly requires the Secretary to "adopt rules and establish procedures as necessary for the implementation of the elimination of straight-party voting[,]" TEX. ELEC. CODE § 31.012(d). The Election Code, therefore, makes plain that the Secretary has a clear and immediate duty—not mere discretion—to enforce section 3.15 and ensure the elimination of straight-party voting. If the Court were to find that section 3.15 is, as the HAUL Plaintiffs allege, unconstitutional, then the Court could enjoin the Secretary by prohibiting him from adopting rules and establishing procedures that are necessary to implement the elimination of straight-party voting. In doing so, the Secretary would constrain local officials based on his actions with respect to the unconstitutionality of section 3.15.

*Texas Alliance for Retired Americans* does not hold otherwise. In that case, three organizations and one individual filed suit against the Secretary challenging, on constitutional grounds, Texas House Bill 25 ("HB 25"). *Tex. All. for Retired Ams.*, 28 F.4th at 670. HB 25 eliminated straight-ticket voting in elections by repealing section 52.071 of the Election Code. *Id.* On appeal, the Secretary argued that state sovereign immunity applied. *Id.* at 671. In considering the Secretary's argument, the panel turned to the text of section 52.071, the provision that HB 25

19

repealed. *Id.* at 672. Upon reviewing the provision's text, the panel concluded that local officials, not the Secretary, were charged with enforcing section 52.071 and HB 25's repeal of the provision. *Id.* at 672–73. It observed that the plaintiffs had not identified a "duty of the Secretary that constrains election officials with respect to the straight-ticket option on ballots." *Id.* at 673.

Here, by contrast, the HAUL Plaintiffs have invoked section 31.012(d) of the Election Code, which again, expressly requires the Secretary to "adopt rules and establish procedures as necessary for the implementation of the elimination of straight-party voting[.]" Tex. Elec. Code § 31.012(d). The Secretary's statutory duty is more than a scintilla of enforcement and establishes that the Secretary has the authority to compel or constrain local officials under section 3.15.

The Fifth Circuit's reasoning in *Texas Democratic Party II* also extends to the HAUL Plaintiffs' challenges to sections 4.07 and 6.01. Section 4.07 allows a poll watcher "to sit or stand near enough to see and hear the election officers conducting the observed activity" and makes clear that an election judge generally may not deny a poll watcher "free movement where election activity is occurring within the location at which the watcher is serving." Tex. Elec. Code §§ 33.056(a), (e). Section 6.01 authorizes a poll watcher to observe most interactions between a voter and their assistant. *Id.* § 64.009(e). The Election Code requires the Secretary to "develop and maintain a training program for watchers." *Id.* § 33.008. An individual must complete the Secretary's training program to serve as a poll watcher. *Id.* § 33.031(b). Upon completion, the training program must provide the poll watcher with a certificate, which the poll watcher must present to a local official when they arrive at a polling place. *Id.* §§ 33.008(2), 33.051(a)(2)–(a-1). The Secretary's training program is the only means by which a poll watcher may learn what they can and cannot do at a polling place.

20

Therefore, the training program must necessarily provide the poll watcher with information on where they can sit or stand in accordance with sections 4.07 and 6.01. It is axiomatic that the Secretary, who is statutorily required to develop and maintain the training program, must develop a training program that will advise poll watchers of their privileges and responsibilities at polling places. By doing so, the Secretary necessarily compels or constrains poll watchers to conduct themselves in a manner that will ensure compliance with the Election Code. The Secretary's duty to inform poll watchers of their privileges and responsibilities under the Election Code is all the more essential given that S.B. 1 limits local officials from removing poll watchers who violate the Election Code or any other law pertaining to the conduct of elections. *Id.* § 32.075(g). Because it is the Secretary who bears the responsibility to ensure that poll watchers comply with the Election Code, the information that he disseminates through the training program is not merely advice, guidance, or interpretive assistance. *Cf. Richardson v. Flores*, 28 F.4th 649, 655 (5th Cir. 2022).

Citing a history of voter intimidation against minority voters, the HAUL Plaintiffs allege that sections 4.07 and 6.01 "increase voter and election official intimidation from poll watchers" and intimidate the assistants and the voters who need assistance." ECF No. 199 ¶¶ 105, 227, 230. If the HAUL Plaintiffs are correct, then the Court could enjoin the Secretary by, for example, requiring him to instruct poll watchers through his training program that their poll watching activities must satisfy constitutional standards. In doing so, the Secretary has the authority to compel or constrain poll watchers by limiting their poll watching to that which is permissible under the Election Code and the United States Constitution.

The Secretary also has the authority to compel or constrain under sections 3.04, 3.09, 3.10, 3.12, 3.13, and 4.01. Sections 3.04, 3.12, and 3.13 generally prohibit most voters from voting inside a motor vehicle and require that polling places be located inside a building. TEX. ELEC.

21

CODE §§ 43.031(b), 85.061(a), 85.062(b). Sections 3.09 and 3.10 generally limit early voting hours. *Id.* §§ 85.005(a), 85.006(e). Section 4.01 provides that a presiding judge may not remove a poll watcher who has violated the Election Code or any other law pertaining to the conduct of elections unless an election judge or clerk observed the violation. *Id.* § 32.075(g).

The Election Code states that the Secretary "shall adopt rules . . . to assist the presiding judge of a polling place in processing forms and conducting procedures required by [the Election Code] at the opening and closing of the polling place." *Id.* § 66.004. The rules that the Secretary *must* adopt necessarily include rules pertaining to voting inside a motor vehicle, outdoor polling places, early voting hours, and poll watchers. The HAUL Plaintiffs allege that sections 3.04, 3.09, 3.10, 3.12, and 3.13 unconstitutionally burden the right to vote by restricting voting activities that typically lead to greater voter turnout among minority communities. ECF No. 199 ¶¶ 200–05, 207–12, 276–77. The also contend that section 4.01 unconstitutionally "curtail[s] the ability of election officials to protect voters and volunteers and ensure secrecy of voters' ballots." *Id.* ¶ 227. Directing the Secretary not to adopt or to modify rules implementing sections 3.04, 3.09, 3.10, 3.12, 3.13, and 4.01—if found unconstitutional—would compel or constrain local officials based on the actions he takes in response to the unconstitutionality of these provisions. In other words, by adopting, implementing, and modifying relevant rules, the Secretary has the authority to compel or constrain local officials, who, in turn, must abide by the Secretary's rules.

The Secretary also has the authority to compel or constrain under sections 4.06, 4.09, 6.04, 6.05, 7.02, and 7.04. Section 4.06 makes it a class A misdemeanor if an election officer refuses, either intentionally or knowingly, to accept a poll watcher for service when acceptance is otherwise required. TEX. ELEC. CODE § 33.051(g). Section 4.09 establishes an offense if a "person serves in an official capacity at a location at which the presence of watchers is authorized and knowingly

22-50775.10610

prevents a watcher from observing an activity or procedure the person knows the watcher is entitled to observe[.]" *Id.* § 33.061(a). Sanctionable conduct under section 4.09 includes any action that obstructs a poll watcher's view or distances the poll watcher "from the activity or procedure to be observed in a manner that would make observation not reasonably effective." *Id.*

Further, section 6.04[10] modifies the oath that a person who assists a voter must take. *Id.* § 64.034. Specifically, section 6.04 requires an assistor to take the following oath under penalty of perjury before assisting a voter:

> I swear (or affirm) under penalty of perjury that the voter I am assisting represented to me they are eligible to receive assistance; I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to reading the ballot to the voter, directing the voter to read the ballot, marking the voter's ballot, or

---

[10] In 2018, a district court initially enjoined Texas and the Secretary from enforcing sections 61.033 and 64.0321 of the Election Code. *See OCA Greater Hous. v. Texas*, No. 1:15-CV-679-RP, 2022 WL 2019295, at *1 (W.D. Tex. June 6, 2022). On June 6, 2022, the district court, upon request, modified its injunction to prohibit Texas and its Secretary from enforcing a portion of the oath as modified under section 6.04:

> As to the first ground, OCA notes that a portion of the amended oath now reads exactly as did the enjoined language in Section 64.0321. A portion of the oath now requires the assistor to attest to confining their assistance to "reading the ballot to the voter, directing the voter to read the ballot, marking the voter's ballot, or directing the voter to mark the ballot." Tex. Elec. Code § 64.034. The enjoined language permits assistance in "(1) reading the ballot to the voter; (2) directing the voter to read the ballot; (3) marking the voter's ballot; or (4) directing the voter to mark the ballot." Tex. Elec. Code § 64.0321. Aside from changes in punctuation, the language is indistinguishable. Thus, the Court's reasoning in enjoining Section 64.0321 applies to the amended oath language just as it applied in the 2018 Injunction. . . . By requiring assistors to attest to following enjoined restrictions, the amended provision essentially re-ratifies the same restrictions that the Court enjoined. In doing so, the oath limits assistance-eligible voting to an impermissibly narrow set of activities. Therefore, as with the previous iteration of this language, the Court will enjoin enforcement of the portion of [section 6.04 of S.B. 1] inserting the previously enjoined language from Section 64.0321.

*Id.* at *4.

On June 14, 2022, OCA-Greater Houston filed a notice in this consolidated action, advising the Court of the district court's modified injunction. ECF No. 438. OCA-Greater Houston submits that "the United States and Private Plaintiffs' challenges to the same portions in this case may ultimately be rendered moot." *Id.* at 5. The United States and remaining private plaintiffs also filed a notice, advising that they agree with OCA-Greater Houston's position on the potential impact of the modified injunction on their claims challenging the same portions of section 6.04. ECF No. 440. Texas and its Secretary did not appeal the district court's modified injunction. Thus, all claims in this consolidated action challenging the portions of section 6.04 that the district court recently enjoined in *OCA Greater Hous. v. Texas*, No. 1:15-CV-679-RP, 2022 WL 2019295 (W.D. Tex. June 6, 2022) are moot.

> directing the voter to mark the ballot; I will prepare the voter's ballot
> as the voter directs; I did not pressure or coerce the voter into
> choosing me to provide assistance; I am not the voter's employer,
> an agent of the voter's employer, or an officer or agent of a labor
> union to which the voter belongs; I will not communicate
> information about how the voter has voted to another person; and I
> understand that if assistance is provided to a voter who is not eligible
> for assistance, the voter's ballot may not be counted.

*Id.* Section 6.05 provides that a person commits a state jail felony if they knowingly fail to either sign the modified oath that is part of the certificate on a voter's mail ballot carrier envelope or include on the voter's mail ballot carrier envelope their signature, name, and address; their relationship to the voter; and whether they received or accepted any form of compensation in exchange for their assistance. *Id.* §§ 86.010(e)–(g). The Election Code also states that it is an offense to prohibit an employee from voting. *Id.* § 276.004(a). Section 7.02 makes it an exception for an employer's obligation to provide employees with leave to vote if the employee has any two-hour block outside of working hours during the voting period. *Id.*

Section 7.04 codifies several new offenses under sections 276.015, 276.016, 276.017, 276.018, and 276.019 of the Election Code.[11] Specifically, section 276.015 defines three general public activities as third-degree felonies:

> (b) A person commits an offense if the person, directly or through a
> third party, knowingly provides or offers to provide vote harvesting
> services in exchange for compensation or other benefit.
>
> (c) A person commits an offense if the person, directly or through a
> third party, knowingly provides or offers to provide compensation
> or other benefit to another person in exchange for vote harvesting
> services.
>
> (d) A person commits an offense if the person knowingly collects or
> possesses a mail ballot or official carrier envelope in connection
> with vote harvesting services.

---

[11] The Court is satisfied that the HAUL Plaintiffs' complaint includes sufficient allegations challenging each election law offense under section 7.04. *See* ECF No. 199 ¶¶ 26, 141–42, 157, 159, 214–15, 236, 242, 277.

22-50775.10612

*Id.* §§ 276.015(b)–(d), (f). A "benefit" is "anything reasonably regarded as a gain or advantage, including a promise or offer of employment, a political favor, or an official act of discretion, whether to a person or another party whose welfare is of interest to the person." *Id.* § 276.015(a)(1). "Vote harvesting services" means any "in-person interaction with one or more voters, in the physical presence of an official ballot or a ballot voted by mail, intended to deliver votes for a specific candidate or measure." *Id.* § 276.015(a)(2). Section 276.015 makes it clear that, "[i]f conduct that constitutes an offense under this section also constitutes an offense under any other law, the actor may be prosecuted under this section, the other law, or both." *Id.* § 276.015(g).

Section 276.016 establishes four offenses for the solicitation and distribution of vote-by-mail applications by public and election officials. *Id.* § 276.016. Section 276.017 makes it a class A misdemeanor for an early voting clerk or other election official to knowingly mail or otherwise provide a vote-by-mail ballot "or other early voting by mail ballot materials to a person who the clerk or official knows did not submit an application for a ballot to be voted by mail[.]" *Id.* § 276.017(a)–(b). Under section 276.018, it is a state jail felony if a person, "with the intent to deceive, . . . knowingly or intentionally makes a false statement or swears to the truth of a false statement: (1) on a voter registration application; or (2) previously made while making an oath, declaration, or affidavit described by this code." *Id.* § 276.018(a). Finally, section 276.019 provides that a public or election official "may not create, alter, modify, waive, or suspend any election standard, practice, or procedure mandated by law or rule in a manner not expressly authorized by this code." *Id.* § 276.019.

The Election Code now authorizes the Secretary to "refer a reported violation of law for appropriate action to the attorney general . . . or to a prosecuting attorney having jurisdiction." *Id.* § 34.005(a). It also *requires* the Secretary to report suspected election law offenses to the Attorney

25

General. *Id.* § 31.006(a). The Secretary certainly has the authority to compel or constrain others when he not only has the authority to refer, but also the obligation to report election law offenses under sections 4.06, 4.09, 6.04, 6.05, 7.02, and 7.04. *Cf. City of Austin*, 943 F.3d at 1001. The HAUL Plaintiffs allege that these provisions impose unconstitutional criminal penalties on election officials, assistors, and voters. ECF No. 199 ¶¶ 26, 214, 228, 235–36, 242. An injunction prohibiting the Secretary from referring or reporting offenses under these provisions would certainly help alleviate the harm that the HAUL Plaintiffs plausibly allege.

Further, the Election Code now provides that an election official is civilly liable if they violate an Election Code provision. TEX. ELEC. CODE § 31.129(b). Civil penalties may include termination and loss of employment benefits. *Id.* § 31.129(c). In light of his duty to report violations, the Secretary now has a specific role in ensuring that election officials comply with the Election Code. The Secretary's authority to report violations of the Election Code to the Attorney General also empowers him with the authority to compel or constrain election officials who, in turn, may credibly fear civil prosecution by way of the Secretary's referral to the Attorney General.

Thus, the Secretary also has the authority to compel or constrain under sections 5.04 and 5.11. Section 5.04 generally prohibits state and political subdivision employees and officers from distributing vote-by-mail applications to individuals who did not request an application. *Id.* § 84.0111(a). Section 5.11 describes how early voting clerks must create a signature verification committee, clarifying prerequisites for serving on the committee, and establishing that the committee may compare a voter's signature on their mail ballot carrier envelope "with any known signature of the voter on file with the county clerk or voter registrar to determine whether the signatures are those of the voter." *Id.* §§ 87.027(d)–(e), (i). If the state and political subdivision employees or early voting clerks fail to comply with their statutory duties, then the Secretary could

report their conduct to the Attorney General. These local officials would then be subject to civil prosecution.[12] This credible threat of prosecution is, again, a consequence of the Secretary's authority to compel or constrain.

Seemingly conceding that the Secretary *does* have the authority to compel or constrain, the State Defendants cite *Mi Familia Vota* and repeatedly argue that the HAUL Plaintiffs have failed to show how the Secretary's duties harm them. ECF No. 239 at 14–22. In *Mi Familia Vota*, the Fifth Circuit considered whether the Secretary had a sufficient enforcement connection to section 43.007 of the Election Code requiring "counties to use electronic voting devices rather than paper ballots in order to be eligible to participate in Texas's Countywide Polling Place Program." 977 F.3d at 468. The panel observed that section 31.014 of the Election Code requires the Secretary "to provide standards for certifying electronic devices[.]" *Id.* However, because "the Plaintiffs' claims regarding section 43.007 [was] based on its prohibition of the use of paper ballots for those counties participating in the Countywide Polling Place Program[,]" the Fifth Circuit found it significant that local officials, not the Secretary, were responsible for printing and distributing ballots. *Id.* The panel accordingly noted that "[d]irecting the Secretary not to enforce the electronic-voting-devices-only provision in section 43.007 would not afford the Plaintiffs the relief that they seek, and therefore, the Secretary of State 'is not a proper defendant.'" *Id.* (quoting *In re Abbott*, 956 F.3d at 709). Immediately thereafter, the Fifth Circuit stated, "Although a court can enjoin

---

[12] The Election Code provision that authorizes civil penalties states that "'election official' has the meaning assigned by Section 31.128." Tex. Elec. Code § 31.129(a). Section 31.128, however, merely states that "'election official' does not include a chair of a county political party holding a primary election or a runoff primary election." *Id.* § 31.128. Thus, the Court refers to the Election Code's "Definitions" section to further clarify who is an "election official" subject to a civil penalty. The "Definitions" section confirms that an early voting clerk is an election official, *see id.* § 1.005(4-a), and is therefore subject to civil prosecution. Further, the Election Code defines a "political subdivision," in relevant part, as a county that "exists for the purpose of discharging functions of government[.]" *Id.* § 1.005(13)(B). Thus, section 5.04 reaches county employees who discharge services in voting, such as a county clerk—who is an "election official" under the Election Code. *Id.* § 1.005(4-a).

22-50775.10615

state officials from enforcing statutes, such an injunction must be directed to those who have the authority to enforce those statutes." *Id.*

In other words, *Mi Familia Vota* merely reiterates the well-established rule in the Fifth Circuit that a state official must be statutorily tasked with enforcing the challenged provision. It does not, as the State Defendants appear to suggest, hold that the HAUL Plaintiffs must also now show at the pleading stage how the Secretary's duties will harm them in order to invoke the *Ex parte Young* exception to state sovereign immunity. In any event, the HAUL Plaintiffs *do* explain how the Secretary's duties will harm them. They submit that the challenged "further burden the right to vote and curtail the participation of Black, Latino, and disabled voters." ECF No. 199 ¶ 17. But for the Secretary's duties in relation to each of the challenged provisions, the HAUL Plaintiffs and their members would not be harmed by the Secretary. *See id.* ¶¶ 38–70, 72–76, 196, 201, 216, 224, 231, 238, 241, 244.

The State Defendants further argue that the Secretary's referral of suspected election law offenses to the Attorney General does not "compel or constrain anyone." ECF No. 264 at 10. That is also incorrect. The threat of criminal prosecution that the Secretary's statutory duty carries certainly constrains the HAUL Plaintiffs and their members from engaging in otherwise lawful activity. The Supreme Court said so long ago when it established the *Ex parte Young* exception to state sovereign immunity:

> The various authorities we have referred to furnish ample justification for the assertion that individuals who, as officers of the state, are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action.

22-50775.10616

*Young*, 209 U.S. at 155–56; *see also Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017) ("To the extent *Ex parte Young* requires that the state actor 'threaten' or 'commence' proceedings to enforce the unconstitutional act, state defendants' pervasive enforcement satisfies that test.").

Finally, the State Defendants also contend that the HAUL Plaintiffs improperly rely on the Secretary's general duties. ECF No. 239 at 17–18. In *Texas Alliance for Retired Americans*, *Lewis*, and *Richardson*, the Fifth Circuit recently signaled that reliance on the Secretary's "general duties" under the Election Code alone is generally insufficient to establish that the Secretary is statutorily tasked with enforcing a specific Election Code provision. *See Richardson*, 28 F.4th at 654 ("Since then, however, our precedent has clarified that the Secretary's general duties under the [Texas Election] Code fail to make the Secretary the enforcer of specific election code provisions.") (alterations in original) (quotation marks and citation omitted). Even assuming that these three cases specifically hold that reliance on the Secretary's "general duties" can *never* establish that the Secretary has a duty to enforce a specific Election Code provision, the HAUL Plaintiffs, as discussed *supra*, rely on far more than simply the Secretary's "general duties."[13] The State Defendants' argument, therefore, is unavailing.

---

[13] The Court recently heard oral argument in *Johnson v. Callanen*, No. 5:22-CV-409-XR (W.D. Tex. 2021). In that case, three visually impaired individuals and two non-profit organizations comprising visually impaired and otherwise disabled Texans filed suit against Ms. Callanen, in her official capacity as the Bexar County Elections Administrator, for violations of Title II of the ADA and § 504 of the Rehabilitation Act. The plaintiffs sought a reasonable modification to vote by mail in secret and free from intimidation in upcoming elections. Though it was clear that Ms. Callanen, who is also a defendant in this consolidated action, did not oppose the plaintiffs' request for a reasonable modification, she nonetheless responded to the plaintiffs' complaint with a motion to dismiss and opposed the plaintiffs' motion for a preliminary injunction. At the hearing, Ms. Callanen's counsel candidly stated that the basis for Ms. Callanen's opposition was her concern that, if she granted the requested modification, then the Secretary—pursuant to his "general duties" of ensuring that elections are conducted uniformly—would refer her conduct to the Attorney General, who, in turn, could impose civil penalties upon her, including revocation of her retirement. *See* TEX. ELEC. CODE §§ 31.129(c), 34.005. Indeed, Ms. Callanen's counsel referred to the deposition testimony in a prior case, where the Secretary testified under oath that referral to the Attorney General would be imminent if Ms. Callanen granted the requested modification. It is difficult to conceive of a clearer example of how the Secretary's statutory duties to obtain and maintain uniformity in the application, operation, and interpretation of

For the foregoing reasons, the Court concludes that the HAUL Plaintiffs have plausibly established that the Secretary is statutorily tasked with enforcing and can enforce all of the S.B. 1 provisions that they challenge on constitutional grounds.

> ii. **The HAUL Plaintiffs have plausibly established that the Secretary will enforce all of the S.B. 1 provisions that they challenge on constitutional grounds.**

To establish that the Secretary will enforce the S.B. 1 provisions that they challenge on constitutional grounds, the HAUL Plaintiffs need only show that the Secretary has a "demonstrated willingness" to exercise his duty to enforce those provisions. *Tex. Democratic Party II*, 978 F.3d at 181 (quoting *Morris*, 739 F.3d at 746).

The HAUL Plaintiffs allege that the Secretary "is likely to carry out his duties under the law, including enforcement of S.B. 1" and each of the challenged provisions. ECF No. 199 ¶ 76. They further contend that the Secretary "has already expressed a commitment to broad exercise of his authority to oversee the electoral process, including by undertaking a so-called 'forensic audit' of Collin, Dallas, Harris, and Tarrant counties, despite no indication of any irregularities." *Id.*

The State Defendants contend that the HAUL Plaintiffs have failed to show that the Secretary has demonstrated a willingness to enforce the S.B. 1 provisions that create election law offenses. ECF No. 239 at 18. They concede that these provisions imbue the Secretary with "power," but claim that, because his "power" is "discretionary," the HAUL Plaintiffs cannot demonstrate that there is a "significant possibility" that the Secretary will enforce these provisions. *Id.* But the Secretary's power is not merely discretionary. While it is true that section 34.005 of the Election Code authorizes, but does not require, the Secretary to refer a reported violation of election law to the Attorney General or a local district attorney, TEX. ELEC. CODE § 34.005, section

---

the Election Code—however "general" they may be—compel or constrain local officials—like Ms. Callanen—by subjecting them to credible, perilous consequences.

31.006(a) of the Election Code plainly states that the Secretary "shall" report his suspicions of criminal conduct under any provision of the Election Code to the Attorney General, *id.* § 31.006(a). The HAUL Plaintiffs' allegations, combined with the Secretary's mandatory duties discussed *supra*, sufficiently show at this stage of the proceedings that the Secretary will enforce the S.B. 1 provisions challenged on constitutional grounds.

Thus, the Court finds that the HAUL Plaintiffs have alleged a plausible set of facts establishing that the Secretary has a sufficient enforcement connection to all of the S.B. 1 provisions that they challenge on constitutional grounds. Their claims challenging these provisions under the First, Fourteenth, and Fifteenth Amendments may proceed against the Secretary pursuant to the *Ex parte Young* exception to state sovereign immunity.

> **b. The HAUL Plaintiffs have shown that the Attorney General has a sufficient enforcement connection to all but four of the S.B. 1 provisions that they challenge on constitutional grounds.**

As with their claims under the First, Fourteenth, and Fifteenth Amendments against the Secretary, the relevant question before the Court at this stage of the proceedings is whether the HAUL Plaintiffs have alleged a plausible set of facts establishing that the Attorney General has a sufficient enforcement connection to the same S.B. 1 provisions that they challenge under the First, Fourteenth, and Fifteenth Amendments—that is, whether the HAUL Plaintiffs have plausibly established that the Attorney General can and will enforce the same S.B. 1 provisions that they challenge under the First, Fourteenth, and Fifteenth Amendments.

31

i.   **The HAUL Plaintiffs have plausibly established that the Attorney General can enforce all but four of the S.B. 1 provisions that they challenge on constitutional grounds.**

The HAUL Plaintiffs name the Attorney General as a defendant for their claims under the First, Fourteenth, and Fifteenth Amendments, challenging the same S.B. 1 provisions discussed *supra*.[14] ECF No. 199 ¶¶ 250–300.

As the HAUL Plaintiffs allege, the Attorney General is statutorily tasked with prosecuting criminal offenses prescribed by the Election Code. TEX. ELEC. CODE § 273.021; s*ee also* ECF No. 208 ¶ 80–81. He "is charged with enforcing the new statutory provisions[.]" ECF No. 199 ¶ 80. The Attorney General and local district attorneys "investigate and prosecute alleged violations of the Election Code, including those provisions introduced in SB 1." *Id.* ¶ 81 (citing TEX. ELEC. CODE §§ 273.001, 273.021). The Attorney General, therefore, has the authority to compel or constrain under sections 4.06, 4.09, 6.04, 6.05, 7.02, and 7.04—all of which establish one or more election law offenses.

Further, the Attorney General is now expressly tasked with compelling or constraining under section 8.01, the S.B. 1 provision that authorizes the Attorney General to collect a civil penalty from an election official who "violates a provision of this code." TEX. ELEC. CODE § 31.129(b). The civil penalty "may include termination of the person's employment and loss of the person's employment benefits." *Id.* § 31.129(c). Thus, he also has the authority to compel and constrain any and all election officials who are subject to civil prosecution for violations of sections 2.05, 2.06, 2.07, 3.04, 3.09, 3.10, 3.12, 3.13, 3.15, 4.01, 4.06, 4.07, 4.12, 5.01, 5.04, 5.07, 5.11,

---

[14] The State Defendants submit that the HAUL Plaintiffs also challenge sections 2.04, 4.11, 5.15, and 8.01, and that they direct these challenges to the Attorney General. ECF No. 239 at 22. Again, that is not the case. The HAUL Plaintiffs do not identify these provisions in their claims. *See* ECF No. 199 ¶¶ 250–365. Instead, they refer to these provisions to explain the Attorney General's role with respect to some of the S.B. 1 provisions that they actually challenge. *See id.* ¶¶ 75, 81–82; *see also* ECF No. 252 at 14.

22-50775.10620

5.12, 5.13, 5.14, 6.01, and 6.03—all of which establish requirements for election officials as defined under the Election Code, violations of which may result in civil prosecution.

However, the Court cannot conclude that the Attorney General has the authority to compel or constrain under sections 5.02, 5.03, 5.08, and 6.07. Section 5.02 requires an applicant to include certain identification information on their vote-by-mail application, and section 5.03 directs the Secretary to prescribe the design and content of a vote-by-mail application so that includes a space for entering the required identification information. *Id.* §§ 84.002(1-a), 84.011(a)(3-a). Section 5.08 does the same with respect to mail ballot carrier envelopes. *Id.* § 86.002(g). Section 6.07 similarly states that a space must appear on the reverse side of a mail ballot carrier envelope for an assistor to indicate their relationship to a voter. *Id.* § 86.013(b)(3).

But none of these provisions expressly create election law offenses or subject an election official to civil penalties. It does not appear that the Attorney General can criminally or civilly prosecute the Secretary for failing to prescribe the design and content of vote-by-mail applications and mail ballot carrier envelopes in accordance with sections 5.03, 5.08, and 6.07. It is also not plain that the Attorney General can prosecute an applicant who fails to include the required identification information pursuant to section 5.02. The HAUL Plaintiffs do not suggest otherwise in their complaint or briefing. Absent an explanation to the contrary, the Court must dismiss the HAUL Plaintiffs' claims challenging sections 5.02, 5.03, 5.08, and 6.07 under the First, Fourteenth, and Fifteenth Amendments against the Attorney General.

Therefore, the Court concludes that the HAUL Plaintiffs have plausibly established that the Attorney General is statutorily tasked with enforcing and can enforce all but four of the S.B. 1 provisions (sections 5.02, 5.03, 5.08, and 6.07) that they challenge on constitutional grounds.

22-50775.10621

ii.    **The HAUL Plaintiffs have plausibly established that the Attorney General will enforce all but four of the S.B. 1 provisions that they challenge on constitutional grounds.**

The HAUL Plaintiffs need only show that the Attorney General has a "demonstrated willingness" to exercise his duty to enforce the S.B. 1 provisions that they challenge on constitutional grounds to establish that the Attorney General will enforce those provisions. *Tex. Democratic Party II*, 978 F.3d at 181 (quoting *Morris*, 739 F.3d at 746).

The HAUL Plaintiffs allege that, "[i]n word and deed, the Attorney General has demonstrated a willingness to enforce the election code, and there is no indication that he will make an exception for SB 1." ECF No. 199 ¶ 83. Citing the Attorney General's website, the HAUL Plaintiffs observe that, "[s]ince taking office in 2015, the Attorney General has resolved 286 prosecutions of Texas Election Code criminal offenses against 76 defendants . . . [and] is currently prosecuting over 500 felony election fraud offenses in Texas courts." *Id.* (alterations in original) (citation omitted). They further submit that the Attorney General "announced the formation of the 2021 Texas Election Integrity Unit to 'continue to pursue prosecutions for criminals willing to commit election crimes.'" *Id.* (citation omitted).

The HAUL Plaintiffs also assert that the Attorney General "has devoted additional staff and resources to focus on prosecuting election fraud cases." *Id.* According to the HAUL Plaintiffs, "[t]here is no reason to presume that the Attorney General will not pursue civil penalties and fines, as he is authorized to do, with the same vigor he has pursued criminal prosecutions in the past." *Id.* Indeed, "[j]ust last year, the Secretary sued Harris County in state court to block the county from distributing mail-in ballot applications during the COVID-19 pandemic—a policy that has now been codified in SB 1." ECF No. 252 at 14 (citing *State v. Hollins*, 620 S.W.3d 400 (Tex. 2020) (per curiam)). These allegations, combined with the Attorney General's duties discussed

34

*supra*, are sufficient at this stage of the proceedings to plausibly establish that the Attorney General has demonstrated a willingness to enforce the S.B. 1 provisions challenged on constitutional grounds.

The State Defendants argue that, since the Attorney General may not unilaterally prosecute election law offenses, "demonstrates why the Attorney General is not a proper defendant here." ECF No. 239 at 23. True, the Election Code originally authorized the Attorney General to unilaterally "prosecute a criminal offense prescribed by the election laws of this state." TEX. ELEC. CODE § 273.021(a). In *State v. Stephens*, however, the Texas Court of Criminal Appeals held that this delegation of unilateral prosecutorial authority violated the separation-of-powers clause of the Texas Constitution. No. PD-1032-20, 2021 WL 5917198, at *11 (Tex. Crim. App. Dec. 15, 2021) (not released for publication).[15]

But even absent the delegation of authority to independently prosecute election law offenses, the surviving provisions of the Election Code still envision, and likely require, the Attorney General's participation in enforcement activities. For instance, section 273.001 provides:

> (a) If two or more registered voters of the territory covered by an election present affidavits alleging criminal conduct in connection with the election to the county or district attorney having jurisdiction in that territory, the county or district attorney shall investigate the allegations. If the election covers territory in more than one county, the voters may present the affidavits to the attorney general, and the attorney general shall investigate the allegations.
>
> (b) A district or county attorney having jurisdiction or the attorney general may conduct an investigation on the officer's own initiative to determine if criminal conduct occurred in connection with an election.
>
> (c) On receipt of an affidavit [from a registrar], the county or district attorney having jurisdiction and, if applicable, the attorney general shall investigate the matter.

---

[15] The State Defendants submit that "that *Stephens* was wrongly decided." ECF No. 239 at 24 n.2. Texas "has filed a motion asking the Texas Court of Criminal Appeals to reconsider its decision." *Id.*

22-50775.10623

> (d) On referral of a complaint from the secretary of state under Section 31.006, the attorney general may investigate the allegations.

TEX. ELEC. CODE § 273.001. Moreover, *Stephens* does not foreclose the Attorney General's authority to prosecute election law offenses, including those prescribed by the S.B. 1 provisions challenged here. Indeed, the Court of Criminal Appeals made clear that "the consent and deputization order of a local prosecutor or the request of a district or county attorney for assistance" can provide the Attorney General with the authority to enforce election law offenses. *Stephens*, 2021 WL 5917198, at *10.

The State Defendants also suggest that the HAUL Plaintiffs must show that the Attorney General intends to enforce each of the S.B. 1 provisions that they challenge on constitutional grounds. ECF No. 264 at 13–14. Setting aside the fact that the HAUL Plaintiffs need only allege a plausible set of facts establishing the Court's jurisdiction, the State Defendants' argument strains credulity and defies logic. S.B. 1 is an omnibus election law that establishes several election law offenses and imposes sweeping civil liability on election officials for a variety of Election Code violations. It cannot be that the Attorney General must recite extensive portions of the Election Code so that the HAUL Plaintiffs can challenge on constitutional grounds the many S.B. 1 provisions that clearly implicate the Attorney General's civil and criminal enforcement power. As the Supreme Court first put it:

> It would seem to be clear that the attorney general, under his power existing at common law, and by virtue of these various statutes, had a general duty imposed upon him, which includes the right and the power to enforce the statutes of the state, including, of course, the act in question, if it were constitutional. His power by virtue of his office sufficiently connected him with the duty of enforcement to make him a proper party to a suit of the nature of the one now before the . . . court.

*Young*, 209 U.S. at 161.

36

The State Defendants' reliance on *City of Austin* is also unpersuasive. ECF No. 239 at 24. In *City of Austin*, the Fifth Circuit considered whether the *Ex parte Young* exception to state sovereign immunity applied to the Attorney General. 943 F.3d at 998. The City had passed a municipal ordinance prohibiting landlords from discriminating against tenants who paid their rent with federal housing vouchers. *Id.* at 996. Texas subsequently passed a state law barring municipalities or counties from adopting such ordinances. *Id.* The state statute empowered the Attorney General to enforce the law by intervening in any enforcement suit that the City might bring against a landlord for violating the municipal ordinance. *Id.* at 1000 n.1.

In response, the City sued the Attorney General, alleging that federal housing law preempted the state legislation. *Id.* at 997. The City argued that the *Ex parte Young* exception to state sovereign immunity applied because the Attorney General possessed the authority to enforce the state law and had a "habit" of intervening in lawsuits involving municipal ordinances to "enforce the supremacy of state law." *Id.* at 1001. The Fifth Circuit, however, held that this was not sufficient to demonstrate "some scintilla of 'enforcement,'" as the Attorney General's authority to enforce the statute alone did not constrain the City's ability to enforce its ordinance. *Id.* at 1001–02. According to the Fifth Circuit, simply because the Attorney General had "chosen to intervene to defend *different* statutes under *different* circumstances does not show that he is likely to do the same here." *Id.* at 1002 (emphasis in original). The Fifth Circuit also noted that "the City face[d] no consequences" if it enforced its ordinance. *Id.*

This case differs from *City of Austin* in many respects. Importantly, sections 4.06, 4.09, 6.04, 6.05, 7.02, and 7.04 each establish one or more election law offenses. In addition, under section 31.129 of the Election Code, election officials would face significant consequences if the Attorney General were to civilly prosecute them: They would risk losing their employment and

employment benefits if they violate sections 2.05, 2.06, 2.07, 3.04, 3.09, 3.10, 3.12, 3.13, 3.15, 4.01, 4.06, 4.07, 4.12, 5.01, 5.04, 5.07, 5.11, 5.12, 5.13, 5.14, 6.01, and 6.03.

Furthermore, under S.B. 1, the Attorney General has broad investigatory powers, and though S.B. 1 does not specify whether the Attorney General may enforce section 31.129, he has undoubtedly filed civil lawsuits against election officials, invoking the State's "intrinsic right to enact, interpret, and enforce its own laws." Appellant's Emergency Mot. for Relief Under Rule 29.3, *State v. Hollins*, 607 S.W.3d 923 (Tex. App.—Houston [14[th] Dist.] 2020, pet. granted) (No. 14-20-00627-CV), 2020 WL 5509152, at *9 (quoting *State v. Naylor*, 466 S.W.3d 783, 790 (Tex. 2015)).

Moreover, and as already discussed at length, the Attorney General touts his office's eagerness to prosecute entities and individuals, like the HAUL Plaintiffs and their members, for criminal offenses under the Election Code. Far from different statutes under different circumstances, the Attorney General has demonstrated a willingness to enforce civil and criminal provisions of the Election Code regulating some of the same elections procedures that the HAUL Plaintiffs challenge as unconstitutional in this case. This is sufficient to establish that "formal enforcement [is] on the horizon." *Tex. Democratic Party II*, 978 F.3d at 181 (quoting *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 392 (5th Cir. 2015)).

The State Defendants further contend that "[s]peculation that [the Attorney General] might be asked by a local prosecutor to 'assist' in enforcing SB 1 'is inadequate to support an *Ex parte Young* action against the Attorney General." ECF No. 239 at 24 (alterations in original) (quoting *In re Abbott*, 956 F.3d at 709). *In re Abbott*, however, is inapposite. There, the district court issued a temporary restraining order against the Governor and the Attorney General, exempting various categories of abortion from "GA-09, an emergency measure temporarily postponing non-essential

38

medical procedures during the COVID-19 pandemic." *In re Abbott*, 956 F.3d at 703. On appeal, the Fifth Circuit considered whether state sovereign immunity required dismissal of the Attorney General. *Id.* at 708. In particular, the Fifth Circuit considered whether the *Ex parte Young* exception to state sovereign immunity applied. *Id.* at 709. The panel observed that the district court had reasoned that the Attorney General "ha[d] 'authority' to prosecute violations of GA-09 'at the request of local prosecutors,' and that he ha[d] also 'publicly threatened enforcement' against abortion providers." *Id.* But in the Fifth Circuit's view, "[n]either rationale establishe[d] the Attorney General's 'connection' to enforcing GA-09 for *Ex parte Young* purposes." *Id.* "Speculation that he might be asked by a local prosecutor to 'assist' in enforcing GA-09," the Fifth Circuit determined, "is inadequate to support an *Ex parte Young* action against the Attorney General." *Id.* The Fifth Circuit also found it significant that "[t]he Attorney General threatened that GA-09 *would be enforced*, not that *he* would enforce it." *Id.* (emphasis in original).

In this case, by contrast, the HAUL Plaintiffs challenge S.B. 1 provisions that establish criminal and civil offenses under the Election Code. There is nothing temporary about the credible threat of criminal and civil prosecution by the Attorney General. Indeed, the Secretary is statutorily required to refer his suspicions of criminal offenses prescribed by the Election Code to the Attorney General, and the Secretary is also authorized to report any violations of the Election Code. Further, the HAUL Plaintiffs allege that the Attorney General has made it abundantly clear that he will enforce the Election Code. In other words, the Attorney General has not said that the challenged provisions *would be enforced*, but that *he* would enforce them.

Put differently, the Attorney General's credible threat of enforcing the challenged S.B. 1 provisions is not mere speculation. The Attorney General publicly maintains that one of his key

22-50775.10627

priorities is to investigate and prosecute allegations of voter fraud.[16] He has also publicly stated that 510 election offenses against 43 defendants remain pending and that 386 active election fraud investigations currently exist.[17] In light of *Stephens*, it must necessarily be the case that the Attorney General is prosecuting these election law offenses and pursuing these election fraud investigations along with local district attorneys. Indeed, the local district attorneys sued in this consolidated action have not expressly and affirmatively represented that they *never* intend to prosecute criminal offenses prescribed by the Election Code, and there are certainly many more local district attorneys throughout Texas who have not disavowed their intention to enlist the Attorney General's assistance to prosecute election law offenses. Consequently, the State Defendants' reliance on *In re Abbot* is unavailing. The HAUL Plaintiffs' allegations, combined with the Attorney General's duties discussed *supra*, sufficiently show at this stage of the proceedings that the Attorney General will enforce the challenged provisions.

Thus, the Court finds that the HAUL Plaintiffs have alleged a plausible set of facts establishing that the Attorney General has a sufficient enforcement connection to all but four of the S.B. 1 provisions (sections 5.02, 5.03, 5.08, and 6.07) that they challenge on constitutional grounds. Their claims challenging these provisions under the First, Fourteenth, and Fifteenth Amendments may proceed against the Attorney General pursuant to the *Ex parte Young* exception to state sovereign immunity.

---

[16] *See* Attorney General of Tex., *Election Integrity | Office of the Attorney General*, https://www.texas attorneygeneral.gov/initiatives/election-integrity (last visited July 28, 2022). The Court may take judicial notice of governmental websites, *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam), and may consider matters of which it takes judicial notice on a motion to dismiss, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

[17] *See* Attorney General of Tex., *supra* note 16.

22-50775.10628

2.  **Congress validly abrogated state sovereign immunity for the HAUL Plaintiffs' claim under Title II of the ADA against the Secretary and for their claims under §§ 2 and 208 of the VRA against the Governor, the Secretary, and the Attorney General.**

*Ex parte Young* is not the only vehicle for obtaining relief against a state. Congress may also abrogate a state's sovereign immunity. *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). To abrogate a state's sovereign immunity, it must be shown that Congress "both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (alterations in original) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)).

a.  **The HAUL Plaintiffs' claim under Title II of the ADA.**

"In enacting the ADA, Congress 'invoke[d] the sweep of congressional authority, including the power to enforce the [F]ourteenth [A]mendment[.]" *United States v. Georgia*, 546 U.S. 151, 154 (2006) (alterations in original) (quoting 42 U.S.C. § 12101(b)(4)). Indeed, the ADA specifically provides that a "State shall not be immune under the [E]leventh [A]mendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. The Supreme Court has accordingly accepted this provision of the ADA "as an unequivocal expression of Congress's intent to abrogate state sovereign immunity." *Georgia*, 546 U.S. at 154 (citing *Garrett*, 531 U.S. at 363–64).

As to whether Congress has acted pursuant to a valid grant of constitutional authority, the Supreme Court has held that "the Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment." *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). Put differently, "Congress may subject nonconsenting States to suit in federal court when it does so pursuant to a valid exercise of

41

its § 5 power." *Garrett*, 531 U.S. at 364. Thus, "the ADA can apply to the States only to the extent that the statute is appropriate § 5 legislation." *Id.*

Section 5 of the Fourteenth Amendment grants Congress the power to enforce the substantive guarantees found in § 1 of the Fourteenth Amendment by enacting "appropriate legislation." U.S. CONST. amend. XIV, § 5. Section 1 of the Fourteenth Amendment provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, § 1. Thus, to determine whether Congress has acted pursuant to a valid grant of constitutional authority in enacting Title II, a court assesses, on a claim-by-claim basis:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 617 (5th Cir. 2020) (quoting *Georgia*, 546 U.S. at 159). The first step, according to the Fifth Circuit, is to determine whether the plaintiffs have stated a claim upon which relief may be granted under Title II of the ADA. *Id.* at 617–18.

### i.   The HAUL Plaintiffs have stated a valid claim under Title II.

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines the term "disability" as "a physical or mental impairment that substantially limits one or more major life activities[,]" *id.* § 12102(1)(A), and Title II "defines

42

'public entities' to include local governments[,]" *Cadena v. El Paso County*, 946 F.3d 717, 723 (5th Cir. 2020) (citing 42 U.S.C. § 12131(1)(A)).

Here, the HAUL Plaintiffs allege that they have members "with disabilities within the meaning of the ADA and are entitled to the protections of the ADA." ECF No. 199 ¶ 343. Amy Litzinger, for example, lives with quadriplegic cerebral palsy, uses a power wheelchair, and "receives direct support staff assistance thirteen hours per day through the CLASS Medicaid Waiver program." *Id.* ¶ 58. Laura Halvorson "lives with muscular dystrophy, quadriplegia, and chronic neuromuscular respiratory failure." *Id.* ¶ 59. She "lacks muscle function and uses a ventilator twenty-four hours per day." *Id.* Ruben Fernandez "lives with cerebral palsy and has a label of Intellectual/Developmental Disability." *Id.* ¶ 60. Mr. Fernandez's "disability substantially limits several major life activities, including performing manual tasks, walking, standing, lifting, and caring for himself." *Id.* (citing 42 U.S.C. § 12102(2)(A)). Finally, Courtney Pugh "lives with Ulrich Congenital Muscular Dystrophy." *Id.* ¶ 61. She "is a wheelchair and daily-ventilator user who requires significant support with activities of daily living." *Id.*

Further, the HAUL Plaintiffs have filed suit against the Secretary and the Attorney General, in their official capacities. *Id.* ¶¶ 72, 80, 345. They allege that the Secretary and the Attorney General are "public entities pursuant to the ADA." *Id.* ¶ 345.

Together, these allegations establish that the HAUL Plaintiffs have properly invoked Title II of the ADA against public entities.

The Court now considers whether the HAUL Plaintiffs have alleged sufficient facts to state a *prima facie* case of discrimination under Title II. To do so, they must allege sufficient facts showing:

> (1) that [they, their members, or their constituents are] a qualified
> individual within the meaning of the ADA; (2) that [they, their

> members, or their constituents are] being excluded from
> participation in, or being denied benefits of, services, programs, or
> activities for which the public entity is responsible, or [are]
> otherwise being discriminated against by the public entity; and (3)
> that such exclusion, denial of benefits, or discrimination is by reason
> of [their or their members' or constituents'] disability.

*Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004) (citing *Lightbourn v. County of El Paso*, 118 F.3d 421, 428 (5th Cir. 1997)).

As to the first element, a qualified individual within the meaning of Title II is a disabled individual "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The HAUL Plaintiffs allege that they have "members who are qualified for the programs, services, and activities offered by Defendants—including vote by mail and in-person voting on Election Day and during early voting—because they are registered to vote in Texas, are otherwise eligible, and intend to vote in the next election[.]" ECF No. 199 ¶ 344. Indeed, Ms. Litzinger, Ms. Halvorson, Mr. Fernandez, and Ms. Pugh are registered to vote and reside in Texas. *Id.* ¶¶ 58–61. Each of them has previously voted in Texas either in person or by mail. *Id.* Thus, the HAUL Plaintiffs have sufficiently shown that their members are qualified individuals within the meaning of Title II.

With respect to the second and third elements, federal regulations provide that public entities may not, on the basis of disability, "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others[.]" 28 C.F.R. § 35.130(b)(1)(ii). They also prohibit public entities from providing, by reason of disability, "a qualified individual with a disability with an aid, benefit, or service that

44

is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others[.]" *Id.* § 35.130(b)(1)(iii). In addition, public entities may not "utilize criteria or methods of administration . . . [t]hat have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the service, program, or activity with respect to individuals with disabilities." *Id.* § 35.130(b)(3)(ii). Federal regulations also make clear that public entities generally "shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity[.]" *Id.* § 35.130(b)(8). Finally, the ADA itself provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by" the statute. 42 U.S.C. § 12203(b).

Here, the HAUL Plaintiffs allege that sections 5.02, 5.03, 5.06, 5.07, 5.10, 6.03, 6.04, 6.05, and 6.07 of S.B. 1 violate Title II. ECF No. 199 ¶ 349. The Court has already discussed all but two of these provisions: sections 5.06 and 5.10. Section 5.06 provides that an election judge may permit a person who cancels their vote-by-mail application after being sent a mail-in ballot, and fails to return the sent mail-in ballot, "to vote only a provisional ballot[.]" Tex. Elec. Code § 84.035(b). Section 5.10 states that the electronic online tool early voting clerks use to track vote-by-mail applications and mail-in ballots must allow a voter to add or correct the identification information that is now required. *Id.* § 86.015(c)(4).

The HAUL Plaintiffs contend that these provisions "collectively and individually discriminate against people with disabilities in exercising their right to vote, including on members and/or constituents of [their] organizations." ECF No. 199 ¶ 349. Specifically, they assert that, in

22-50775.10633

requiring specific identification information on vote-by-mail applications, sections 5.02, 5.03, 5.06, 5.07, and 5.10:

> impose[] eligibility criteria that tends to screen out people with disabilities who may lack access to such IDs or other numbers by reason of their disabilities and denies voters with disabilities equal access to the early voting ballot application process by prohibiting Plaintiffs' members and other qualified voters with disabilities from voting even if they meet all other qualifications to vote by mail and denying them reasonable modifications to access the State's voting program.

*Id.* ¶ 349(a). The HAUL Plaintiffs further allege that sections 6.03, 6.05, and 6.07 interfere with disabled voters' ability to vote on an equal basis by "requiring those assisting voters with disabilities to fill out onerous forms and subjecting [them] to criminal liability for submitting incorrect forms[.]" *Id.* ¶ 349(b).

As to section 6.04, the HAUL Plaintiffs allege that the provision:

> in requiring those who assist voters to take an oath regarding the nature of their assistance under penalty of perjury, denies voters with disabilities equal access to voting by unlawfully limiting the scope of assistance the assistor can provide and interfering with the legal rights of voters with disabilities and those who assist them in exercising their rights and deny voters with disabilities equal access to voting.

*Id.* ¶ 349(c). The HAUL Plaintiffs therefore contend that the Secretary and the Attorney General have violated Title II and federal regulations. *Id.* ¶ 350. These allegations clearly establish the second and third elements for a *prima facie* case of discrimination under Title II.

The State Defendants counter that the HAUL Plaintiffs have failed to state a claim under Title II.[18] ECF No. 239 at 26–32. They first contend that the HAUL Plaintiffs cannot assert a Title

---

[18] The State Defendants assert the same arguments against the HAUL Plaintiffs' claims under § 208 of the VRA and § 504 of the Rehabilitation Act. ECF No. 239 at 6. Unless otherwise stated, the Court's analysis as to the sufficiency of the HAUL Plaintiffs' Title II claim also applies to the sufficiency of the HAUL Plaintiffs' claims under § 208 of the VRA and § 504 of the Rehabilitation Act.

22-50775.10634

II claim because the organizations themselves do not have a disability. *Id.* at 26. However, it is well settled that an organization may sue as the representative of its members. *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010). Moreover, many courts have allowed organizations that serve disabled individuals to sue public entities under Title II. *See A Helping Hand, LLC v. Baltimore County*, 515 F.3d 356, 362–64 (4th Cir. 2008); *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 332–36 (6th Cir. 2002); *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 46–48 (2d Cir. 1997). They did so after observing that "Title II's enforcement provision extends to relief to '*any person* alleging discrimination on the basis of disability.'" *Innovative Health Sys., Inc.*, 117 F.3d at 47 (emphasis in original) (quoting 42 U.S.C. § 12133). "[T]he use of such broad language in the enforcement provisions of the statutes evinces a congressional intention to define standing to bring a private action under [Title II] as broadly as is permitted by Article III of the Constitution." *Id.* (quotation marks and citation omitted); *see also Steward v. Abbott*, 189 F. Supp. 3d 620, 630–32 (W.D. Tex. 2016) (finding that organizations have associational standing in Title II case); *Fla. State Conf. of NAACP v. Lee*, --- F. Supp. 3d ----, No. 4:21cv187-MW/MAF, 2021 WL 6072197, at *9 (N.D. Fla. 2021) (stating that plaintiffs must show "that they—*or their constituents*—are qualified individuals with a disability") (emphasis added). The Court sees no reason to carve out an exception in this case.

The State Defendants also argue that the HAUL Plaintiffs cannot assert Title II claims as third parties. ECF No. 239 at 27–29. This "argument conflates the merits of the suit with [their] standing to bring it." *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 613 (5th Cir. 2017). Thus, the State Defendants' discussion on standing is, for the most part, inapplicable in assessing whether the HAUL Plaintiffs have stated a valid claim under Title II.[19]

---

[19] Indeed, "[a]n organization can seek relief under either an associational standing theory or an organizational standing theory." *US Inventor Inc. v. Hirshfeld*, 549 F. Supp. 3d 549, 555 (E.D. Tex. 2021).

22-50775.10635

The State Defendants further argue that the HAUL Plaintiffs have failed to state a Title II claim because neither the Secretary nor the Attorney General "provide the benefits Plaintiffs say they should receive." ECF No. 239 at 29. ECF No. 239 at 29. On this point, the Court agrees with the State Defendants, to an extent. A *prima facie* case for discrimination under Title II requires a showing that the defendant public entity in some way provides the service or benefit at issue. *Ivy v. Williams*, 781 F.3d 250, 258 (5th Cir. 2015), *vacated and remanded as moot sub nom. Ivy v. Morath*, 137 S. Ct. 414 (2016). Although the Attorney General has authority to enforce criminal and civil offenses under the Election Code as discussed *supra*, it is unclear whether and how he provides the service or benefit at issue in this case, namely voting and voting by mail. The HAUL Plaintiffs do not offer a compelling explanation in their complaint or briefing. Thus, the Court concludes that, in this case, the Attorney General does not provide the service or benefit at issue and will therefore dismiss the Attorney General as a defendant to the HAUL Plaintiffs' Title II claim only.[20]

The Secretary, however, certainly provides the service or benefit of voting and voting by mail. The Secretary "is the chief election officer of the state." Tex. Elec. Code § 31.001(a). As chief election officer, the Secretary must "obtain and maintain uniformity in the application, operation, and interpretation of this code and of the election laws outside this code." *Id.* § 31.003. "In performing this duty," the Election Code explains, "the secretary shall prepare detailed and comprehensive written directives and instructions relating to and based on this code and the election laws outside this code." *Id.* The Election Code also charges the Secretary with "distribut[ing] these materials to the appropriate state and local authorities having duties in the administration of these laws." *Id.* The Election Code further provides that the Secretary must

---

[20] The Court's finding does not extend to the HAUL Plaintiffs' claims under § 208 of the VRA and § 504 of the Rehabilitation Act against the Attorney General.

"assist and advise all election authorities with regard to the application, operation, and interpretation of this code and of the election laws outside this code." *Id.* § 31.004(a). The Secretary shall also "maintain an informational service for answering inquiries of election authorities relating to the administration of the election laws or the performance of their duties." *Id.* § 31.004(b).

The Election Code also requires the Secretary to "adopt standards of training in election law and procedure for presiding or alternate election judges[.]" *Id.* § 32.111(a)(1). Specifically, the Secretary must "develop materials for a standardized curriculum for that training; and distribute the materials as necessary to the governing bodies of political subdivisions that hold elections and to each county executive committee of a political party that holds a primary election." *Id.* §§ 32.111(a)(2)–(3). In addition, the Election Code states that a county clerk must "provide one or more sessions of training" to election judges and clerks. *Id.* § 32.114(a). The trainings that election judges and clerks must complete are premised upon "the standardized training program and materials developed and provided by the secretary of state[.]" *Id.* The Secretary must "schedule and provide assistance for the training of election judges and clerks" upon request by a county executive committee or a county clerk. *Id.* § 32.115. Moreover, the Election Code tasks the Secretary with taking "appropriate action to protect the voting rights of the citizens of this state from abuse by the authorities administering the state's electoral processes." *Id.* § 31.005(a). The Election Code empowers the Secretary as follows:

> (b) The secretary of state may order a person performing official functions in the administration of any part of the electoral processes to correct offending conduct if the secretary determines that the person is exercising the powers vested in that person in a manner that:
>
> > (1) impedes the free exercise of a citizen's voting rights; or

49

> (2) unless acting under an order of a court of competent jurisdiction, delays or cancels an election that the person does not have specific authority to delay or cancel.
>
> (c) If a person described by Subsection (b) fails to comply with an order from the secretary of state under this section, the secretary may seek enforcement of the order by a temporary restraining order or a writ of injunction or mandamus obtained through the attorney general.

*Id.* §§ 31.005(b)–(c).

Based on these statutory duties, it is clear that the Secretary is responsible for providing the service or benefit of voting and voting by mail. Indeed, the Election Code lists him first under chapter 31, which is titled "Officers to Administer Elections." Thus, his statutory duties permit him to "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service" at issue in this case. 28 C.F.R. § 35.130(b)(1)(ii). In implementing and enforcing the Election Code provisions to obtain and maintain the uniformity of all election laws, the Secretary must not "[a]id or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program[.]" *Id.* § 35.130(b)(1)(v). This includes, as the Election Code expressly requires, his provision of assistance to counties and local officials. Moreover, the Secretary may not "utilize criteria or methods of administration: (i) [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability" when issuing directives, distributing election materials, and protecting voting rights. *Id.* § 35.130(b)(3). If he fails to do so, as the HAUL Plaintiffs allege in this case, then he is subject to liability under Title II.

The State Defendants have acknowledged in prior litigation that the "Secretary of State is the chief election officer, specially charged with administering elections." *Veasy v. Perry*, 29 F.

Supp. 3d 896, 923 (S.D. Tex. 2014). But they now contend otherwise, arguing that "local election officials, not the Secretary . . . administer Texas elections." ECF No. 239 at 29. They cite *Ivy* and *Lightbourn* to support their contention. *Id.* at 29–30. Both of these cases, however, are inapposite. Moreover, neither of these cases forecloses the possibility that the Secretary, in addition to local officials, is responsible for providing a service or benefit under Title II.

In *Ivy*, a class of hearing impaired individuals filed suit against the Texas Education Agency ("TEA") for violations of Title II. 781 F.3d at 251, 254. "In Texas, individuals under the age of 25 cannot obtain driver's licenses unless they submit a driver education certificate to the Department of Public Safety[.]" *Id.* at 252 (citing TEX. TRANSP. CODE § 521.1601). The requisite driver education certificate is "only available from private driver education schools licensed by the TEA." *Id.* The plaintiffs requested injunctive relief requiring the TEA to bring driver education into compliance with Title II. *Id.* at 251. In response, the TEA filed a motion to dismiss for want of jurisdiction and for failure to state a claim. *Id.* at 253. The district court denied the TEA's motion, but certified its order for immediate appeal. *Id.* at 251.

On appeal, the Fifth Circuit considered whether the plaintiffs had failed to state a Title II claim. *Id.* at 254–58. The panel first observed that Title II prohibits a public entity from excluding a qualified individual with a disability from its services, programs, or activities because of the individual's disability. *Id.* at 254–55 (citing 42 U.S.C. § 12132). It then articulated the relevant legal issue as "whether the named plaintiffs have been 'excluded from participation in or . . . denied the benefits of the services, programs, or activities of [the TEA].'" *Id.* at 255 (alterations in original) (quoting 42 U.S.C. § 12132). "To answer that question," the panel made clear, "we must decide whether driver education is a service, program, or activity of the TEA." *Id.* "Although this

51

[was] a close question[,]" the Fifth Circuit held that driver education was not a service, program, or activity of the TEA. *Id.*

In reaching its holding, the Fifth Circuit considered the plain text of Title II and interpretive guidance from the Department of Justice ("DOJ").[21] *See id.* at 255–57. The Fifth Circuit interpreted the phrase "services, programs, or activities of a public entity" in Title II to mean "what 'services, programs, or activities' are provided by the public entity." *Id.* (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)). The panel found it significant that "the TEA itself does not teach driver education, contract with driver education schools, or issue driver education certificates to individual students." Because the TEA's program "provide[d] the licensure and regulation of driving education schools, not driver education itself[,]" the Fifth Circuit found that the text of Title II "suggests that driver education is not a program, service, or activity of the TEA." *Id.*

Interpretive guidance from the DOJ "stated that a public entity is not accountable for discrimination in the employment or other practices of [a company licensed by the public entity], if those practices are not the result of requirements or policies established by the [public entity]." *Id.* at 256 (alterations in original) (quotation marks and citation omitted). The panel observed that the plaintiffs had alleged that it was "the TEA's *failure* to establish requirements or policies [that] allowed private driver education schools to be inaccessible." *Id.* (emphasis in original). The Fifth Circuit therefore determined that "the DOJ's interpretive guidance indicates that the TEA is not accountable for the driver education schools' inaccessibility because the TEA's requirements and policies have not caused it." *Id.*

---

[21] The Fifth Circuit also considered federal regulations and caselaw construing contractual and agency relationships between private and public entities. *See Ivy*, 781 F.3d at 255–58. Federal regulations, however, did not provide clarity, and contractual and agency relationships are not relevant here.

52

Here, whether the Secretary provides voting and vote-by-mail services is not a close question. The Election Code makes clear that voting in person and by mail are services or benefits that the Secretary provides. The Secretary has a concrete and specific role in the administration of elections throughout Texas and oversees voting processes and procedures. Indeed, the Election Code, including many of the S.B. 1 provisions that the HAUL Plaintiffs challenge in this case, requires the Secretary to implement the Election Code itself by way of rules and requirements. In other words, the Election Code charges the Secretary with administering elections.

Further, the Secretary's duties under the Election Code constitute far more than the mere licensing that the Fifth Circuit found insufficient in *Ivy*. The Secretary must provide voting and vote-by-mail services and must do so in a specific and particular manner pursuant to the Election Code. Indeed, it is precisely because of the Secretary's statutory obligation to implement and enforce the Election Code that, according to the HAUL Plaintiffs, he is subject to liability under Title II. Whereas the plaintiffs in *Ivy* claimed that the TEA had failed to establish requirements or policies to counteract disability discrimination, the HAUL Plaintiffs in this case allege that the Secretary violates Title II by administering elections in accordance with the Election Code. They are *not* alleging that the Secretary has failed to establish requirements or policies that allow their disabled members to access voting and vote-by-mail services or benefits. Put differently, the HAUL Plaintiffs contend that the Secretary, in administering elections according to the specific procedures and processes the Election Code contemplates, discriminates against disabled voters.

It is for this reason that the State Defendants' reliance on *Lightbourn* is also misplaced. In that case, five visually impaired individuals, among others, filed a Title II suit for injunctive relief against the Secretary. *Lightbourn*, 118 F.3d at 423. The plaintiffs alleged that the Secretary "discriminated against them by failing to ensure that persons with visual and mobility impairments

53

have access to 'polling sites and voting procedures.'" *Id.* In particular, they argued that Title II required the Secretary to provide them with the opportunity to vote in secret, without the assistance of an election worker or other person. *Id.* at 423–24, 431. The Fifth Circuit was not persuaded. It framed the relevant legal issue as whether the Secretary had "a duty to ensure that local election authorities comply with the ADA." *Id.* at 427. The panel then consulted the Election Code to review the Secretary's duties under certain provisions and determined that "the Secretary ha[d] no duty under either Texas law or the ADA to take steps to ensure that local election officials comply with the ADA." *Id.* at 432.

But here, the duty at issue is the Secretary's mandate to administer elections according to the Election Code. The HAUL Plaintiffs are *not* alleging that the Secretary has a duty to take steps to ensure that local officials comply with the ADA. It is therefore not the case that "the logic of Plaintiffs' claim would impose supervisory liability on the State Defendants." ECF No. 239 at 30. Rather, the Secretary is personally and potentially liable under Title II because *he* must administer elections in compliance with Election Code provisions that—the HAUL Plaintiffs allege— discriminate against disabled voters. *Lightbourn*, therefore, does not insulate the Secretary from the HAUL Plaintiffs' Title II claim.

Still, the State Defendants maintain that the HAUL Plaintiffs' Title II claim must be dismissed because they have not plausibly alleged that S.B. 1 "actually discriminates against voters with disabilities." *Id.* According to the State Defendants, no discrimination exists because "[d]isabled Texans have multiple options to vote in every election." *Id.* at 31. These alternatives, they submit, include voting in a polling place or at the curbside during early voting, in a polling place or at the curbside on Election Day, and by mail. *Id.* Their arguments miss the mark. The relevant question before the Court at this stage of the proceedings is whether the HAUL Plaintiffs

54

have alleged sufficient facts showing that the challenged S.B. 1 provisions violate Title II. The State Defendants' belief that the status quo already offers disabled voters meaningful access to vote—as Title II requires—is an argument for another day.

What is more, the HAUL Plaintiffs allege that the challenged provisions deny disabled voters not only equal and effective access to vote in person, but also equal and effective access to vote by mail. "Absentee and in-person voting are different benefits, and voters with disabilities are entitled to equal access to both." *Merrill v. People First of Ala.*, 141 S. Ct. 25, 27 (2020) (Sotomayor, J., dissenting); *see also Alexander v. Choate*, 469 U.S. 287, 301 (1985) ("The benefit itself, of course, cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled; to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made."); *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 506 (4th Cir. 2016) ("This case does not turn on whether there is a standalone right to vote privately and independently without assistance. Plaintiffs' argument is that defendants have provided such a benefit to non-disabled voters while denying that same benefit to plaintiffs on the basis of their disability."). Even assuming that the alternatives that the State Defendants identify constitute reasonable modifications under Title II, they do nothing for eligible disabled voters who are discriminated against when voting by mail. Surely, voting by mail cannot be a reasonable modification when, as the HAUL Plaintiffs plausibly allege, disabled voters who are eligible to vote by mail do not have meaningful access to actually do so because of their disabilities.

For these reasons, the State Defendants' contention that "Texas law allows for numerous accommodations for disabled voters" is also misplaced at this stage of litigation. ECF No. 239 at 31. The same goes for the State Defendants' argument that the HAUL Plaintiffs cannot state a

valid Title II claim because "Texas law expressly prohibits election officials from interpreting the Texas Election Code" in a manner that discriminates against disabled voters. *Id.* at 30. The question before the Court is whether the HAUL Plaintiffs have alleged sufficient facts to state a valid Title II claim, not whether existing law—in the State Defendants' opinion—already provides meaningful access to vote in person and by mail, and precludes discrimination against disabled voters.

The Court, therefore, finds that the HAUL Plaintiffs have stated a claim upon which relief may be granted under Title II of the ADA.

### ii. Congress acted pursuant to a valid grant of constitutional authority in enacting Title II of the ADA to prohibit discrimination in voting.

Having concluded that the HAUL Plaintiffs have stated a valid Title II claim, the Court now considers which aspects of the State Defendants' alleged conduct violate Title II and to what extent such misconduct also violates the Fourteenth Amendment. *Block*, 952 F.3d at 617.

In *Lane*, the Supreme Court held "that Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment." 541 U.S. at 533–34. In reaching its holding, the *Lane* Court considered the "constitutional right or rights that Congress sought to enforce when it enacted Title II." *Id.* at 522. The *Lane* Court observed that the Fourteenth Amendment requires that "all persons similarly situated should be treated alike[.]" *Id.* (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 439 (1985)). It then determined that Title II seeks to enforce this constitutional command by prohibiting discrimination against disabled persons. The *Lane* Court also found that Title II "seeks to enforce a variety of other basic constitutional guarantees, infringements of which are subject to more searching judicial review." *Id.* at 522–23. "These rights include some, like the right of access to the courts at issue in this case,

56

that are protected by . . . the Fourteenth Amendment." *Id.* at 523. The *Lane* Court accordingly concluded that in enacting Title II, Congress validly abrogated state sovereign immunity as it applies to Title II cases implicating the right of access to the courts. *Id.* at 533–34.

In this case, the HAUL Plaintiffs allege that certain S.B. 1 provisions discriminate against their disabled members by burdening their right to vote. "The Fourteenth Amendment has been interpreted to protect voters generally from laws that excessively burden the right to vote and the conduct of the political process." *Veasy v. Abbott*, 830 F.3d 216, 316 (5th Cir. 2016) (Jones, J., joined by Jolly, Smith, Clement, and Owen, JJ., concurring in part) (citing *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189–91 (2008); *Burdick v. Takushi*, 504 U.S. 428, 432–34 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 786–90 (1983)); *see also McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 807 (1969) ("[B]ecause of the overriding importance of voting rights, classifications 'which might invade or restrain them must be closely scrutinized and carefully confined' where those rights are asserted under the Equal Protection Clause[.]" (quoting *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966)). Thus, it is clear that the State Defendants' alleged misconduct violates both Title II and the Fourteenth Amendment.

It is of no consequence that the HAUL Plaintiffs challenge S.B. 1 provisions pertaining to the State Defendants' vote-by-mail program. The Fourteenth Amendment, and the Equal Protection Clause in particular, "extend to all action of the State denying equal protection of the laws, whatever the agency of the State taking the action, or whatever the guise in which it is taken." *Cooper v. Aaron*, 358 U.S. 1, 17 (1958) (citations omitted). The Election Code, in turn, provides that an eligible voter who has a physical condition that prevents them from appearing at a polling place on an election day without a likelihood of needing personal assistance or of injuring their

57

health has a right to vote by mail. TEX. ELEC. CODE § 82.002(a)(1). Therefore, voting by mail in Texas is state action subject to the constitutional guarantees found in the Fourteenth Amendment.

Accordingly, the Court finds that Congress acted pursuant to a valid grant of constitutional authority in enacting Title II to prohibit discrimination in voting. Thus, state sovereign immunity presents no obstacle to the HAUL Plaintiffs' Title II claim against the Secretary.

### b.  The HAUL Plaintiffs' claims under §§ 2 and 208 of the VRA.

The Fifth Circuit "has held that the Voting Rights Act, 'which Congress passed pursuant to its Fifteenth Amendment enforcement power, validly abrogated state sovereign immunity.'" *Mi Familia Vota*, 977 F.3d at 469 (quoting *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017)). State sovereign immunity, therefore, does not bar the HAUL Plaintiffs' claims under §§ 2 and 208 of the VRA against the Governor, the Secretary, and the Attorney General.

### 3.  Texas accepted federal funds and therefore waived sovereign immunity for the HAUL Plaintiffs' claim under § 504 of the Rehabilitation Act against the Secretary and the Attorney General.

A state waives its sovereign immunity to claims under § 504 of the Rehabilitation Act by accepting federal funds. *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 281 (5th Cir. 2005). The HAUL Plaintiffs allege that the Secretary and the Attorney General "receive [f]ederal financial assistance or funding[.]" ECF No. 199 ¶ 361. They claim that "Texas has a significant pool of federal funds earmarked for making elections accessible and secure." *Id.* These allegations plausibly establish that the Secretary and the Attorney General accepted federal funds. Thus, state sovereign immunity does not bar the HAUL Plaintiffs' claim under § 504 of the Rehabilitation Act.[22]

---

[22] State sovereign immunity belongs to the state and extends to its officials. *See Can. Hockey, L.L.C. v. Tex. A&M Univ. Athletic Dep't*, No. 20-20503, 2022 WL 445172, at *3 (5th Cir. 2022) ("State sovereign immunity divests federal courts of jurisdiction over states and their agencies and instrumentalities, unless *the state* consents to suit[.]") (emphasis added). Thus, by accepting federal funds, Texas waived the Secretary's and the Attorney General's

In sum, state sovereign immunity does not bar the HAUL Plaintiffs' claims under the First, Fourteenth, and Fifteenth Amendments, Title II of the ADA, §§ 2 and 208 of the VRA, and § 504 of the Rehabilitation Act. However, the Court will dismiss the HAUL Plaintiffs' Title II claim against the Attorney General for failure to state a claim.

## B.  The HAUL Plaintiffs have sufficiently shown that they have standing.

It is well settled that a plaintiff invoking a federal court's jurisdiction must establish standing by satisfying three irreducible requirements. *Lujan*, 504 U.S. at 560. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Juridical entities may satisfy these requirements under an associational or organizational theory of standing. *OCA-Greater Hous.*, 867 F.3d at 610. At the pleading stage, "the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician*, 691 F.3d at 652. Where, as here, the plaintiffs challenge several provisions in a statute, they must plead "all the elements of standing for each provision they seek to challenge." *In re Gee*, 941 F.3d 153, 162 n.4 (5th Cir. 2019). Further, where, as here, multiple plaintiffs seek injunctive relief, only one needs to establish standing for each claim asserted. *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006).

Here, the organizations are named as plaintiffs for all claims that the HAUL Plaintiffs assert against the Governor, the Secretary, and the Attorney General, except for one claim that Mr. Clemmons alone asserts against the Secretary and the Attorney General. Therefore, the HAUL

---

immunity for claims under § 504 of the Rehabilitation Act. Whether a specific state entity receives or directly benefits from federal financial assistance is a different question and more properly assessed under Rule 12(b)(6). "[A] plaintiff may not predicate a § 504 claim against a state actor on the mere fact that the state itself obtains federal money." *Lightbourn*, 118 F.3d at 427. The HAUL Plaintiffs have alleged that the Secretary and the Attorney General received federal financial assistance or funding. Their claim under § 504 of the Rehabilitation Act, therefore, is not subject to dismissal pursuant to Rule 12(b)(6) for failure to allege that the specific state entity receives federal funds.

22-50775.10647

Plaintiffs need only allege a plausible set of facts establishing that at least one organization and Mr. Clemmons have standing to assert these claims against the Governor, the Secretary, and the Attorney General.

The HAUL Plaintiffs have sufficiently shown that all organizational plaintiffs have organizational standing to assert each claim and challenge each S.B. 1 provision at issue in this case. Organizational standing exists if the entity itself "meets the same standing test that applies to individuals." *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999). The HAUL Plaintiffs have also sufficiently shown that Mr. Clemmons has standing to assert his claim and challenge each S.B. 1 provision at issue in his claim.

### 1. HAUL, DST, MFV, and The Arc of Texas have organizational standing.

HAUL, DST, and MFV assert three claims against the Secretary and the Attorney General under the First, Fourteenth, and Fifteenth Amendments. ECF No. 199 ¶¶ 250–300. Their claims each challenge most of the S.B. 1 provisions discussed herein. *Id.* ¶¶ 260–62, 276–78, 295–97.

HAUL, DST, and MFV also assert a claim under § 2 of the VRA against the Governor, the Secretary, and the Attorney General. *Id.* ¶¶ 301–17. Their § 2 claim challenges all of the S.B. 1 provisions discussed herein. *Id.* ¶¶ 309, 311.

MFV, DST, and The Arc of Texas assert a claim under § 208 of the VRA against the Governor, the Secretary, and the Attorney General. *Id.* ¶¶ 318–26. Their § 208 claim challenges sections 6.01, 6.03, 6.04, 6.05, and 6.07. *Id.* ¶¶ 323–24.

The Arc of Texas asserts claims under Title II of the ADA and § 504 of the Rehabilitation Act against the Secretary and the Attorney General. *Id.* ¶¶ 337–65. Its disability claims challenge sections 5.02, 5.03, 5.06, 5.10, 6.03, 6.04, 6.05, and 6.07. *Id.* ¶¶ 339, 355.

60

### a. Injury in fact

Under an organizational theory of standing, an organization may establish an injury in fact by alleging "a drain on its resources resulting from counteracting the effects of the defendant's actions." *La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 305 (5th Cir. 2000). That is precisely what the HAUL Plaintiffs have alleged in this case.

"HAUL is nonpartisan, nonprofit corporation with its principal office in Houston, Texas." ECF No. 199 ¶ 38. It is affiliated with the National Urban League, which "is the nation's oldest and largest community-based movement devoted to empowering African Americans to enter the economic and social mainstream." *Id.* "HAUL advocates for and provides social services to disadvantaged people of all races, gender, age groups and . . . disabilities." *Id.* In particular, "HAUL works to achieve economic and social justice for its constituents by providing community voter/political participation education and supporting and offering third[-]party voter registration, including through its two auxiliary, age-specific, volunteer groups." *Id.*

HAUL's work includes providing social services to disadvantaged individuals in Texas. *Id.* ¶ 41. But, in light of the S.B. 1 provisions that it challenges, "HAUL will be forced to divert time and resources from the other critical social services it provides to disadvantaged persons . . . to ensuring their clients . . . are able to vote in upcoming elections without being subjected to civil and criminal offenses and penalties." *Id.* Because of the challenged S.B. 1 provisions, HAUL will need "to retrain and educate their large constituencies on the new voting restrictions, procedures, and violations[.]" *Id.* In addition, "HAUL will have to increase its Get Out The Vote ('GOTV') work to respond to the lack of means and methods to vote" allegedly caused by each of the S.B. 1 provisions that it challenges. *Id.*

22-50775.10649

DST "is a national, nonpartisan, not-for-profit membership service organization, comprised predominately of Black women[.]" *Id.* ¶ 42. "The organization has 75 chapters that include alumnae and college chapters and approximately 20,445 members in Texas, most of whom are registered voters in Texas." *Id.* ¶ 44. DST's "top social action priorities" include voter registration and voter education programs. *Id.* ¶ 43. In particular, DST has dedicated extensive resources "to provide public education and training about the importance of the decennial Census and its impact on redistricting, the allocation of funding, and policy-making." *Id.*

But, because of the challenged S.B. 1 provisions, DST, "both nationally and particularly their chapters in Harris, Bexar, Travis and Dallas counties," will need "to divert time, money, and resources from other activities, such as their voter registration and voter education efforts[.]" *Id.* ¶ 48. This also includes their work "related to the post-Census redistricting cycle[.]" *Id.* DST will also need to train their Texan members on "providing public education regarding the changes in voting law and procedure[.]" *Id.*

MFV "is a national, non-profit civic engagement organization that unites Latino, immigrant, and allied communities to promote social and economic justice." *Id.* ¶ 62. The organization "operates in six states, including Texas." *Id.* Given each of the S.B. 1 provisions that they challenge, MFV "must divert personnel, time, and resources away from its routine community activities[.]" *Id.* ¶ 64. Specifically, MFV must now reallocate its resources to:

> (1) increase voter awareness, education, and support to comply with the expansive new rules of SB 1; (2) increase voter awareness and education about new voting restrictions that may result in rejected mail-in ballot applications or rejected ballots completed by lawfully registered voters; (3) increase awareness and education about the elimination of voting methods used in 2020 that will no longer be available to voters, including 24-hour voting and drive-through voting; (4) increase awareness and education about new restrictions on people who provide transportation and other physical and language assistance at the polls to ensure that the elderly, disabled,

22-50775.10650

> or non-English-speaking voters who [MFV] supports are able to
> vote in compliance with SB 1; (5) increase awareness and education
> about the new requirements to apply for mail-in ballots; . . . and (7)
> increase awareness and education of voters and poll workers about
> the expanded rights of poll watchers and the potential for
> intimidation of voters and poll workers under the new law.

*Id.*

MFV "will also have to expend resources to help lawfully registered voters monitor voter rolls . . . and assist with the costly and complicated system of reestablishing lawful registration status." *Id.* Further, MFV will need "to support voters who, under burdensome time constraints, must cure mail-in ballots for alleged deficiencies—if election officials choose to provide notice." *Id.* Such a response will require MFV "to spend finite resources on these activities so long as the challenged provisions of SB 1 are in effect." *Id.* ¶ 65.

Finally, "The Arc of Texas has promoted, protected, and advocated for the human rights and self-determination of Texans with intellectual and developmental disabilities ('IDD') since its founding in 1953." *Id.* ¶ 49. It "is a statewide advocacy and membership organization—with 6,000 individual members and 27 local member chapters throughout the state—that supports and advocates for these rights on behalf of the IDD community." *Id.* Specifically, "The Arc of Texas works with and alongside individuals with IDD and their families to identify barriers and solutions to inclusive education, competitive integrated employment, quality community-based services and support[], and access to civil rights and justice." *Id.* The organization "has been instrumental in the creation of virtually every program, service, right, and benefit that is now available to more than half a million Texans with IDD." *Id.* ¶ 50. It "continues to advocate for including people with intellectual and developmental disabilities in all aspects of society." *Id.*

"Voting rights has always been a central priority in [the] advocacy work of The Arc of Texas." *Id.* ¶ 51. Indeed, "voting rights are intertwined with all of the organization's advocacy

63

efforts." *Id.* Each of the S.B. 1 provisions that The Arc of Texas challenges "makes it substantially more difficult for The Arc of Texas to carry out its civic engagement mission." *Id.* ¶ 57. In light of these challenged provisions, "The Arc of Texas will have to expend more time, money, and resources on its efforts to educate and assist voters[,]" and will need "to divert resources form its other core activities[.]" *Id.* The Arc of Texas, therefore, "is limited, and will continue to be limited, in the resources that it can devote to its other core organizational goals." *Id.*

These allegations sufficiently show that HAUL, DST, MFV, and The Arc of Texas have suffered cognizable organizational injuries based on a diversion-of-resources theory.

The State Defendants disagree and argue that the HAUL Plaintiffs "cannot rely on a diversion-of-resources theory to demonstrate organizational standing because nothing about SB1 *causes* them to divert resources or actually impairs their activities." ECF No. 264 at 15 (emphasis in original). The HAUL Plaintiffs' allegations, however, belie the State Defendants' contention.

The State Defendants also rely on *N.A.A.C.P. v. City of Kyle*, 626 F.3d 233 (5th Cir 2010), for the proposition that "[n]ot every diversion of resources to counteract the defendant's conduct . . . establishes an injury in fact." *Id.* (quoting *City of Kyle*, 626 F.3d at 238). They argue that the HAUL Plaintiffs' diversion-of-resources theory fails to establish a cognizable injury because they have not identified specific projects that they have placed on hold or otherwise curtailed in light of the S.B. 1 provisions that they challenge. (citing *City of Kyle*, 626 F.3d at 238).

Setting aside the fact that the HAUL Plaintiffs *have* identified specific projects that need to be placed on hold, *see supra*, the Fifth Circuit expressly rejected such a prerequisite to standing at the pleading stage in *OCA-Greater Houston*:

> Our remark in *City of Kyle* that those plaintiffs could have established standing by "identif[ying] any specific projects that the HBA had to put on hold or otherwise curtail in order to respond to the revised ordinances" *was not a heightening of the* Lujan *standard,*

> but an example of how to satisfy it by pointing to a non-litigation-
> related expense.

867 F.3d at 612 (emphasis added). The plaintiff organization in *OCA-Greater Houston* alleged that it had been injured by the need for "'additional time and effort spent explaining the Texas provisions at issue to limited English proficient voters' because 'addressing the challenged provisions frustrates and complicates its routine community outreach activities.'" *Id.* at 610. The panel held that the plaintiff organization's injury was a sufficient Article III injury to establish organizational standing because the Texas law at issue forced the organization to divert resources and "perceptibly impaired [its] ability to get out the vote among its members." *Id.* at 612 (quotation marks omitted). To establish a cognizable organizational injury, therefore, the HAUL Plaintiffs need not identify specific projects that they have placed on hold or otherwise curtailed. Having done so, they have simply exceeded the requirements for pleading organizational standing.

Thus, the HAUL Plaintiffs have adequately alleged that HAUL, DST, MFV, and The Arc of Texas has suffered cognizable organizational injuries based on a diversion-of-resources theory to assert each claim challenging each of the S.B. 1 provisions at issue in this case. "Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests[.]"[23] *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) ("If a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact[.]").

---

[23] To the extent that the State Defendants argue that the HAUL Plaintiffs have failed to identify an injury for each challenged provision, "[w]hat the State Defendants fail to appreciate is that the organizational injury the [HAUL] Plaintiffs have alleged is the same for each of the S.B. 1 provisions they challenge." *La Unión del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR, 2022 WL 2706116, at *13 (W.D. Tex. July 12, 2022).

### b. Causation and redressability

Whether HAUL's, DST's, MFV's, and The Arc of Texas's cognizable organizational injuries are fairly traceable to and redressable by the Secretary and the Attorney General is a straightforward inquiry. The invalidity of a Texas election statute is, without question, fairly traceable to and redressable by the Secretary. *OCA-Greater Hous.*, 867 F.3d at 613. Further, the credible threat of enforcing the challenged S.B. 1 provisions, as discussed in the Court's *Ex parte Young* analysis *supra*, is fairly traceable to the Attorney General, who has authority to impose civil penalties on election officials and prosecute election law offenses.[24] An injunction prohibiting the Attorney General from enforcing these provisions will, at least partly, redress the injuries that these organizational plaintiffs have suffered. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) ("[T]he ability to effectuate a partial remedy satisfies the redressability requirement." (quotation marks and citation omitted)).

The State Defendants argue that the organizational plaintiffs' injuries are not fairly traceable to nor redressable by the Secretary and the Attorney General. ECF No. 264 at 7–8. For the most part, their contentions echo those that they raised in asserting that the Secretary and the Attorney General are entitled to state sovereign immunity. *Id.* However, as the State Defendants observe, "Article III standing analysis and *Ex parte Young* analysis 'significantly overlap.'" *City of Austin*, 943 F.3d at 1002 (quoting *Air Evac EMS, Inc.*, 851 F.3d at 520. Therefore, for the same reasons discussed in the Court's *Ex parte Young* analysis *supra*, these arguments are unpersuasive.

---

[24] *Paxton v. Longoria*, No. 22-0224, 2022 WL 2080867 (Tex. June 10, 2022) does not hold otherwise. There, the Texas Supreme Court concluded that the Attorney General does not have authority to seek civil penalties under section 31.129 of the Election Code against an election official "based solely on the fact of the parties' agreement that [the Attorney General] lacks authority to enforce Section 31.129[.]" *Longoria*, 2022 WL 2080867, at *7.

The State Defendants also contend that *OCA-Greater Houston* only applies in cases considering the facial validity of a Texas election statute. ECF No. 239 at 13. To be sure, in *Texas Democratic Party v. Hughs*, 974 F.3d 570 (5th Cir. 2020) (per curiam), the Fifth Circuit noted that *OCA-Greater Houston* involved a facial challenge. *Id.* at 570–71. The panel did so after observing that an "important question" had not been resolved, namely "whether and to what extent *Ex parte Young*'s exception to sovereign immunity permits plaintiffs to sue the Secretary in an as-applied challenge to a law enforced by local officials." *Id.* at 570. But the panel did not resolve that important question. Rather, it held that the "openness of the question alone [was] sufficient reason to deny" the plaintiffs' request for summary affirmance of a district court order concluding that the Secretary was not entitled to state sovereign immunity. *Id.* at 571. Moreover, as discussed *supra*, the *Ex parte Young* exception to state sovereign immunity applies to the HAUL Plaintiffs' claims under § 101 of the CRA and the First and Fourteenth Amendments, Congress validly abrogated state sovereign immunity in enacting the VRA and Title II, and Texas has waived sovereign immunity under § 504 of the Rehabilitation Act. *Hughs*, therefore, is inapposite.

Equally unpersuasive is the State Defendants' argument that *OCA-Greater Houston* is not binding on the Court because, in their view, the panel failed to consider *Bullock v. Calvert*, 480 S.W.2d 367 (Tex. 1972). ECF No. 239 at 130. *Bullock*, according to the State Defendants, indicates that the Secretary's duties under the Election Code are "not a delegation of authority to care for any breakdown in the election process." *Id.* (citing *In re Hotze*, 627 S.W.3d 642, 649 (Tex. 2020) (citing *Bullock*, 480 S.W.2d at 372))). Their contention, however, is based on conjecture and reads much into the opinion that cannot be supported by the panel's careful reasoning.

There is also no reason to ignore *OCA-Greater Houston* in response to a nonbinding concurring opinion of the Texas Supreme Court. *Id.* The State Defendants' belief that *OCA-*

*Greater Houston* was "wrongly" decided has no bearing. *Id.* The Court "is bound by a circuit decision unless or until it is overturned by an en banc decision of the circuit court or a decision of the Supreme Court." *Perez v. Abbott*, 250 F. Supp. 3d 123, 139 (W.D. Tex. 2017) (citing *Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1211 (5th Cir. 1991)).

However, the HAUL Plaintiffs have not sufficiently shown that their VRA claims are fairly traceable to and redressable by the Governor. The HAUL Plaintiffs' argument that the Governor is not entitled to state sovereign immunity under the VRA, though correct, does not establish that he is a proper defendant for their VRA claims. The HAUL Plaintiffs must plausibly show that their injuries are fairly traceable to and redressable by the Governor. The HAUL Plaintiffs' complaint only alleges that the Governor "is the chief executive officer of the State of Texas" and that he signed S.B. 1 into law. ECF No. 199 ¶¶ 25, 71. All other references to the Governor in the complaint provide important background information on the enactment of S.B. 1, but they fall short of plausibly showing how their injuries are fairly traceable to and redressable by the Governor. "As a result, Governor [Abbott] is not a proper defendant." *Morris*, 739 F.3d at 746.

Thus, the HAUL Plaintiffs have alleged sufficient facts to plausibly establish that HAUL, DST, MFV, and The Arc of Texas has standing to sue the Secretary and the Attorney General, but not the Governor, under each of their claims challenging each of the S.B. 1 provisions at issue in this case.[25]

### 2. Mr. Clemmons has standing.

Mr. Clemmons asserts a claim against the Secretary and the Attorney General under the Fourteenth Amendment. *Id.* ¶¶ 327–36. His claim challenges sections 4.06, 4.07, and 4.09. *Id.* ¶ 329.

---

[25] It is likely that associational standing exists as well.

### a. Injury in fact

To constitute an injury in fact, a threatened future injury must be (1) potentially suffered by the plaintiff, not someone else; (2) "concrete and particularized," not abstract; and (3) "actual or imminent, not 'conjectural' or 'hypothetical.'" *Stringer v. Whitley*, 942 F.3d 715, 720–21 (5th Cir. 2019) (citations omitted). The injury must be "imminent . . . to ensure that the alleged injury is not too speculative for Article III purposes." *Id.* at 721 (quoting *Lujan*, 504 U.S. at 564 n.2). For a threatened future injury to satisfy the imminence requirement, there must be at least a "substantial risk" that the injury will occur. *Id.* (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Nonetheless, "[t]he injury alleged as an Article III injury-in-fact need not be substantial; it need not measure more than an identifiable trifle." *OCA-Greater*, 867 F.3d at 612 (quotation marks and citation omitted). "This is because the injury in fact requirement under Article III is qualitative, not quantitative, in nature." *Id.* (quotation marks and citation omitted). Indeed, in the pre-enforcement context, a plaintiff need only "face 'a credible threat of prosecution' and 'should not be required to await and undergo a criminal prosecution as the sole means of seeking relief.'" *Holder v. Humanitarian Law Project*, 561 U.S. 1, 15 (2010) (quoting *Babbitt v. Farm Workers*,

Mr. Clemmons "is a resident of Austin, Texas, and a senior at Huston-Tillotson University." ECF No. 199 ¶ 70. He "served as an election judge in Travis County for the July 14, 2020 primary election in Texas." *Id.* Mr. Clemmons "wants to continue to serve as an election judge in upcoming elections." *Id.* He fears, however, that he "could face devastating criminal penalties from fulfilling his responsibilities as an election judge." *Id.* In particular, he "is unable to ascertain whether his duties as an election judge, requiring him to take action where necessary to prevent poll watchers from speaking to voters, viewing voters' ballots, or otherwise being disorderly in the polling place, will require him to violate the Texas Election Code as amended

by" sections 4.06, 4.07, and 4.09. *Id.* ¶ 334. "Taken together, these provisions could expose [him] to criminal liability for taking action also required by the Texas Election Code in future elections." *Id.* ¶ 335. Mr. Clemmons, therefore, "has to choose between forgoing future service and facing criminal prosecution under the vague law." In other words, Mr. Clemmons alleges that the credible threat of enforcing these provisions against election judges injures him.

Section 4.06 makes it a class A misdemeanor if an election officer, including an election judge, refuses, either intentionally or knowingly, to accept a poll watcher for service when acceptance is otherwise required. TEX. ELEC. CODE § 33.051(g). Mr. Clemmons alleges that this provision "is impermissibly vague because it does not provide an election official, including an election judge, with notice of whether they can knowingly refuse to accept a poll watcher for behavior elsewhere prohibited in the Texas Election Code." ECF No. 199 ¶ 330. He submits that "other areas of the Texas Election Code provide reasons to exclude a poll watcher that could reasonably be interpreted as inconsistent with the broad language of this new provision." *Id.*

Section 4.07 allows a poll watcher "to sit or stand near enough to see and hear the election officers conducting the observed activity" and makes clear that an election judge may not deny a poll watcher "free movement where election activity is occurring within the location at which the watcher is serving." TEX. ELEC. CODE § 33.056(a), (e). Mr. Clemmons alleges that section 4.07 is "impermissibly vague because it does not give a person of ordinary intelligence fair notice of what conduct is prohibited." ECF No. 199 ¶ 331. In particular, he contends that the provision "does not define 'free movement,' nor does the Texas Election Code." *Id.* The absence of a definition, Mr. Clemmons submits, is all the more harmful because polling places "are crowded and full of other election officials trying, and indeed often legally obligated, to carry out their duties." *Id.* "If, for example, an election official is required to stand in a particular location that a poll watcher seeks

70

to occupy, is the election official required in all instances to move, to prevent a poll watcher from being denied free movement?" *Id.*

Mr. Clemmons also alleges that section 4.07 "does not make clear how it relates to other sections of the Texas Election Code that prevent poll watchers from speaking directly to a voter or election official, or observing a voter's ballot." *Id.* ¶ 332. For example, the Election Code provides that a poll watcher "may not be present at the voting station when a voter is preparing the voter's ballot or is being assisted by a person of the voter's choice." TEX. ELEC. CODE § 33.057(b). The Election Code also prohibits a poll watcher from "convers[ing] with an election officer regarding the election, except to call attention to an irregularity of violation of law; convers[ing] with a voter; or communicat[ing] in any manner with a voter regarding the election." *Id.* §§ 33.058(a)(1)–(3). Thus, Mr. Clemmons does not know whether and to what extent these Election Code provisions impact his statutory responsibility as an election judge to allow poll watchers "free movement."

Finally, section 4.09 makes it an offense when an election judge "at a location at which the presence of watchers is authorized . . . knowingly prevents a watcher from observing an activity or procedure the [election judge] knows the watcher is entitled to observe[.]" *Id.* § 33.061(a). Sanctionable conduct under section 4.09 includes any action that obstructs a poll watcher's view or distances the poll watcher "from the activity or procedure to be observed in a manner that would make observation not reasonably effective." *Id.*

Mr. Clemmons contends that section 4.09 "fails to define the conduct it prohibits with sufficient specificity to apprise an ordinary person of its requirements." ECF No. 199 ¶ 333. "For example," he alleges, "it is not clear from the text from whose perspective the 'observation not reasonably effective' standard applies." *Id.* In addition, Mr. Clemmons claims that section 4.09 "is in conflict with other areas of the Texas Election Code, described above." *Id.* According to Mr.

Clemmons, section 4.09 "is so standardless that it invites arbitrary and disparate enforcement by parties not entrusted with policymaking authority." *Id.*

The Court is satisfied that the HAUL Plaintiffs have alleged sufficient facts to plausibly establish that Mr. Clemmons has suffered a cognizable injury. The Attorney General has the authority to enforce election law offenses, and the Election Code requires the Secretary to refer suspected election law offenses to the Attorney General. Further, the Attorney General has the authority to impose civil penalties on election officials, including election judges. The Secretary is also authorized to report violations of the Election Code to the Attorney General. Thus, sections 4.06, 4.07, and 4.09 subject election judges to criminal and civil prosecution. Mr. Clemmons wants to serve as an election judge and would do so were it not for these provisions. His intended future conduct is "'arguably proscribed' by the law." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014). Mr. Clemmons, therefore, has sufficiently alleged a cognizable injury and "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief." *Babbitt*, 442 U.S. at 298 (quotation marks and citation omitted).

### b. Causation and redressability

Once again, whether Mr. Clemmons's cognizable injury is fairly traceable to and redressable by the Secretary and the Attorney General is a straightforward inquiry. The invalidity of a Texas election statute is, without question, fairly traceable to and redressable by the Secretary. *OCA-Greater Hous.*, 867 F.3d at 613. Further, the credible threat of enforcing sections 4.06, 4.07, and 4.09 is fairly traceable to the Attorney General, who has authority to impose civil penalties on election judges and prosecute election law offenses. An injunction prohibiting the Attorney General from enforcing these provisions will, at least partly, redress the injuries that Mr. Clemmons has suffered.

22-50775.10660

Thus, the HAUL Plaintiffs have alleged sufficient facts to plausibly establish that Mr. Clemmons has standing to sue the Secretary and the Attorney General under his claim challenging sections 4.06, 4.07, and 4.09.

## CONCLUSION

For the foregoing reasons, the Texas Governor, the Texas Secretary of State, and the Texas Attorney General's motion to dismiss all claims that Houston Area Urban League, Delta Sigma Theta Sorority, Inc., The Arc of Texas, Mi Familia Vota, Marla López, Marlon López, Paul Rutledge, and Jeffrey Lamar Clemmons have asserted against them (ECF No. 239) is hereby **GRANTED IN PART** and **DENIED IN PART** as follows:

The claims challenging sections 5.02, 5.03, 5.08, and 6.07 of S.B. 1 under the First, Fourteenth, and Fifteenth Amendments to the United States Constitution against the Texas Attorney General are **DISMISSED WITHOUT PREJUDICE**.

Any and all claims challenging portions of section 6.04 of S.B. 1 that the district court enjoined in *OCA Greater Hous. v. Texas*, No. 1:15-CV-679-RP, 2022 WL 2019295 (W.D. Tex. June 6, 2022) are **MOOT**.

Any and all claims under Title II of the Americans with Disabilities Act against the Texas Attorney General are **DISMISSED WITHOUT PREJUDICE** on failure to state a claim grounds.

Any and all claims under §§ 2 and 208 of the Voting Rights Act of 1965 against the Texas Governor are **DISMISSED WITHOUT PREJUDICE** on standing grounds.

22-50775.10661

All other claims that Houston Area Urban League, Delta Sigma Theta Sorority, Inc., The Arc of Texas, Mi Familia Vota, Marla López, Marlon López, Paul Rutledge, and Jeffrey Lamar Clemmons have asserted against the Texas Secretary of State and the Texas Attorney General may proceed.

It is so **ORDERED**.

**SIGNED** this August 2, 2022.

 

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

22-50775.10662

**Tab 6: Order on State Defendants' Motion to Dismiss OCA Plaintiffs' Second Amended Complaint (ROA.10663-10723)**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LA UNIÓN DEL PUEBLO ENTERO, et al., | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | 5:21-CV-0844-XR |
| | § | [Consolidated Cases] |
| GREGORY W. ABBOTT, et al., | § | |
| *Defendants.* | § | |

## ORDER

On this date, the Court considered the Texas Secretary of State and the Texas Attorney General's motion to dismiss the claims that OCA-Greater Houston, League of Woman Voters of Texas, REVUP-Texas, and Workers Defense Action Fund have asserted against them (ECF No. 240). After careful consideration, the Court issues the following order.

## BACKGROUND

On September 7, 2021, Texas Governor Greg Abbott signed into law the Election Protection and Integrity Act of 2021, an omnibus election law commonly referred to as S.B. 1. *See* Election Integrity Protection Act of 2021, S.B. 1, 87th Leg., 2d Spec. Sess. (2021). Premised on the state legislature's authority to make all laws necessary to detect and punish fraud under article VI, section 4 of the Texas Constitution, S.B. 1 went into effect on December 2, 2021, and amended the Texas Election Code (the "Election Code") by altering various election practices and procedures pertaining to early voting, voting by mail, voter assistance, and more. *See generally id.*

Days before and after the Governor signed S.B. 1 into law, several private plaintiffs filed suit, alleging that certain provisions of S.B. 1 violate federal statutes and the United States

22-50775.10663

Constitution.[1] This order addresses one of these suits filed by OCA-Greater Houston ("OCA-GH"), League of Woman Voters of Texas ("LWVTX"), REVUP-Texas ("REVUP"), and Workers Defense Action Fund ("WDAF") (together, the "OCA-GH Plaintiffs").[2] *See* Compl., *OCA-Greater Houston v. Esparza*, No. 1:21-CV-780-XR (W.D. Tex. Sept. 3, 2021), ECF No. 1. The OCA-GH Plaintiffs challenge sections 5.02, 5.03, 5.06, 5.07, 5.10, 5.12, 6.04, 6.06, and 7.04 of S.B. 1. ECF No. 200 ¶ 96.[3]

On January 19, 2022, the OCA-GH Plaintiffs filed their second amended complaint against the Texas Secretary of State (the "Secretary") and the Texas Attorney General (the "Attorney General"), in their official capacities (together, the "State Defendants").[4] ECF No. 200. They assert eight claims as follows:

- The OCA-GH Plaintiffs allege that sections 5.02, 5.03, 5.06, 5.07, 5.10, and 5.12 violate § 101 of the Civil Rights Act of 1964 ("CRA"), Title II of the Americans with Disabilities Act ("ADA"), and § 504 of the Rehabilitation Act, and they name the Secretary as a defendant for these three claims;

- The OCA-GH Plaintiffs allege that sections 6.04 and 6.06 violate § 208 of the Voting Rights Act of 1965 ("VRA"), Title II of the ADA, and § 504 of the Rehabilitation Act, and they name the Secretary and the Attorney General as defendants for these three claims; and

---

[1] For the purposes of judicial economy, the Court consolidated these cases under the above-captioned lead case. *See* ECF No. 31 (consolidating *OCA-Greater Houston v. Esparza*, No. 1:21-CV-780-XR (W.D. Tex. 2021); *Houston Justice v. Abbott*, No. 5:21-CV-848-XR (W.D. Tex. 2021); *LULAC Texas v. Esparza*, No. 1:21-CV-786-XR (W.D. Tex. 2021); and *Mi Familia Vota v. Abbott*, No. 5:21-CV-920-XR (W.D. Tex. 2021) under *La Unión del Pueblo Entero v. Abbott*, No. 5:21-CV-844-XR (W.D. Tex. 2021)); *see also* Order, *United States v. Texas*, No. 5:21-CV-1085-XR (W.D. Tex. Nov. 4, 2021), ECF No. 13.

[2] The Texas Organizing Project initially joined the OCA-GH Plaintiffs in filing this action. However, on April 13, 2022, the OCA-GH Plaintiffs filed an unopposed motion to withdraw the Texas Organizing Project as a party. ECF No. 366. The Court granted the motion.

[3] When citing to the parties' filings, the Court refers to paragraph numbers and ECF pagination.

[4] The OCA-GH Plaintiffs have also sued, in their official capacities, Travis County Clerk Dana DeBeauvoir, Travis County District Attorney José Garza, Harris County Elections Administrator Isabel Longoria, and Harris County District Attorney Kim Ogg. ECF No. 200 ¶¶ 48–51.

22-50775.10664

- OCA-GH, LWVTX, and WDAF allege that section 7.04 violates the First and Fourteenth Amendments to the United States Constitution because the provision burdens free speech and is unconstitutionally vague, and they name the Attorney General as a defendant for these two claims.[5]

*Id.* ¶¶ 124–47, 176–94, 214–39. The OCA-GH Plaintiffs seek to enjoin the State Defendants from enforcing each of the S.B. 1 provisions that they challenge under their constitutional and statutory claims. *Id.* at 75–76.

On February 8, 2022, the State Defendants filed a motion to dismiss all claims that the OCA-GH Plaintiffs have asserted against them. ECF No. 240. The OCA-GH Plaintiffs filed a response, ECF No. 279, and the State Defendants filed a reply, ECF No. 300. On March 18, 2022, the State Defendants filed a notice of supplemental authority. ECF No. 333. Thereafter, on April 21, 2022, the OCA-GH Plaintiffs filed a response to the State Defendants' notice. ECF No. 379.

## DISCUSSION

### I. Legal Standards

The State Defendants move to dismiss the OCA-GH Plaintiffs' claims on four grounds. First, the State Defendants argue that state sovereign immunity bars the OCA-GH Plaintiffs from suing the Secretary and the Attorney General. Second, the State Defendants claim that the OCA-GH Plaintiffs lack standing to bring this suit. Third, the State Defendants contend that the OCA-GH Plaintiffs have failed to state a claim upon which relief may be granted under Title II of the ADA, § 504 of the Rehabilitation Act, and § 208 of the VRA. Finally, the State Defendants argue that neither § 101 of the CRA nor § 208 of the VRA create private causes of action.

---

[5] The OCA-GH Plaintiffs also refer to section 6.05 of S.B. 1 throughout their complaint. *See* ECF No. 200 ¶¶ 37, 164, 181, 17, 21, 25, 33. However, these references do not expressly indicate whether and under what theory they challenge the provision. Indeed, the OCA-GH Plaintiffs do not include section 6.05 in their list of challenged S.B. 1 provisions. *See id.* ¶ 96. The Court, therefore, is unable to assess whether their challenge to section 6.05, if any, may proceed. As a result, the Court will dismiss any and all claims to section 6.05 on failure to state a claim grounds.

## A. Subject matter jurisdiction

Subject matter jurisdiction is a federal court's statutory or constitutional power to adjudicate a case.[6] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). The Eleventh Amendment and the doctrine of sovereign immunity limit a federal court's jurisdiction. *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir. 2002). "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). The doctrine of sovereign immunity "also prohibits suits against state officials or agencies that are effectively suits against a state." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). State sovereign immunity, however, "is not limitless[.]" *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 735 (5th Cir. 2020). "A State may waive its sovereign immunity . . . and in some circumstances Congress may abrogate it by appropriate legislation." *Stewart*, 563 U.S. at 253–54 (citation omitted). Additionally, under *Ex parte Young*, 209 U.S. 123 (1908), "a litigant may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law." *Reeves*, 954 F.3d at 736.

Article III of the United States Constitution also limits a federal court's constitutional power to adjudicate a case. It "gives federal courts the power to adjudicate only genuine 'Cases' and 'Controversies.'" *California v. Texas*, 141 S. Ct. 2104, 2113 (2021) (quoting U.S. CONST. art. III, § 2). The "case-or-controversy requirement is satisfied only where a plaintiff has standing." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008). Standing, therefore, "is a component of subject matter jurisdiction." *HSBC Bank USA, N.A. as Tr. for Merrill Lynch Mortg. Loan v. Crum*, 907 F.3d 199, 202 (5th Cir. 2018). It provides definition to the constitutional

---

[6] Congress, by statute, has proclaimed that the "district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331. The OCA-GH Plaintiffs assert claims against the State Defendants under federal law. The Court, therefore, is statutorily authorized to adjudicate this case.

4

limits of subject matter jurisdiction, *Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015), by identifying "those disputes which are appropriately resolved through the judicial process," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quotation marks and citation omitted).

A federal court must consider a motion to dismiss for lack of subject matter jurisdiction "before other challenges 'since the court must find jurisdiction before determining the validity of the claim.'" *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (quoting *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 450 (6th Cir. 1988)). The federal court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). At the pleading stage, "the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012).

### B.  Failure to state a claim

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of claims for failure to state a claim upon which relief may be granted. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint must be taken as true and must be construed in the light most favorable to the nonmoving

party. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555.

## II.   Analysis

The Court addresses each of the State Defendants' four grounds for dismissal, beginning, as it must, with their jurisdictional contentions.

### A.   State sovereign immunity does not bar the OCA-GH Plaintiffs' claims against the Secretary and the Attorney General.

The State Defendants claim that state sovereign immunity bars the OCA-GH Plaintiffs' claims against the Secretary and the Attorney General. ECF No. 240 at 12–20. They emphasize that the OCA-GH Plaintiffs cannot satisfy the *Ex parte Young* exception to state sovereign immunity. *Id.* at 12–19. The State Defendants also contend that the OCA-GH Plaintiffs have failed to demonstrate an alternative exception to state sovereign immunity. *Id.* at 19–20.

#### 1.   The *Ex parte Young* exception to state sovereign immunity permits the OCA-GH Plaintiffs to sue the Secretary and the Attorney General for all of the S.B. 1 provisions that they challenge under § 101 of the CRA and on constitutional grounds.

State sovereign immunity under the Eleventh Amendment generally precludes suits against state officials in their official capacities. *City of Austin*, 943 F.3d at 997. The *Ex parte Young* exception to state sovereign immunity, however, allows private parties to bring "suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). The Supreme Court has counseled that, "[i]n determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon*

22-50775.10668

*Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alterations on original) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)). The Supreme Court has also made clear that, for the *Ex parte Young* exception to apply, the state official, by virtue of his office, must have "some connection with the enforcement" of the challenged law. *Young*, 209 U.S. at 157.

Despite the straightforward inquiry that the Supreme Court envisioned, the Fifth Circuit has acknowledged that its own decisions "are not a model of clarity on what 'constitutes a sufficient connection to enforcement.'" *Tex. Democratic Party v. Abbott* (*Tex. Democratic Party I*), 961 F.3d 389, 400 n.21 (5th Cir. 2020) (quoting *City of Austin*, 943 F.3d at 999). Nevertheless, the Fifth Circuit has articulated some general rules. For instance, the Fifth Circuit has stated that "it is not enough that the official have a '*general* duty to see that the laws of the state are implemented.'" *Id.* at 400–01 (emphasis in original) (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). The Fifth Circuit has also determined that,"[i]f the official sued is not statutorily tasked with enforcing the challenged law, then the requisite connection is absent and our *Young* analysis ends." *Id.* at 401 (quotation marks and citation omitted). "Moreover," according to the Fifth Circuit, "a mere connection to a law's enforcement is not sufficient—the state officials must have taken some step to enforce." *Id.*

The Fifth Circuit has further explained that plaintiffs must at least "show the defendant has 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Tex. Democratic Party v. Abbott* (*Tex. Democratic Party II*), 978 F.3d 168, 179 (5th Cir. 2020) (quoting *Morris*, 739 F.3d at 746). Put differently, the state "official must be 'statutorily tasked with enforcing the challenged law[,]'" *id.* (quoting *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020), *cert. granted, judgment vacated sub nom. Planned Parenthood Ctr. for Choice v. Abbott*,

7

141 S. Ct. 161 (2021)), though whether the particular duty to enforce the statute in question "arises out of the general law, or is specially created by the [statute] itself, is not material so long as it exists[,]" *Young*, 209 U.S. at 157. "Enforcement typically means 'compulsion or constraint.'" *Tex. Democratic Party II*, 978 F.3d at 179 (quoting *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010)). "A 'scintilla of "enforcement" by the relevant state official with respect to the challenged law' will do." *Id.* (quoting *City of Austin*, 943 F.3d at 1002). In short, "if an 'official *can* act, and there's a significant possibility that he or she *will* . . . , the official has engaged in enough compulsion or constraint to apply the *Young* exception.'" *Tex. Democratic Party I*, 961 F.3d at 401 (emphasis in original) (quoting *City of Austin*, 943 F.3d at 1002).

Here, the OCA-GH Plaintiffs assert one claim under § 101 of the CRA against the Secretary and two claims under the First and Fourteenth Amendments against the Attorney General. ECF No. 200 ¶¶ 124–28, 214–39. They do so pursuant to 42 U.S.C. § 1983, which "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). Congress has not abrogated state sovereign immunity under § 1983. *Raj*, 714 F.3d at 328. Nonetheless, the OCA-GH Plaintiffs may institute a § 1983 action for prospective injunctive relief consistent with the *Ex parte Young* exception to state sovereign immunity. *Edelman v. Jordan*, 415 U.S. 651, 677 (1974).

> **a. The OCA-GH Plaintiffs have shown that the Secretary has a sufficient enforcement connection to all of the S.B. 1 provisions that they challenge under § 101 of the CRA.**

"Determining whether *Ex parte Young* applies to a state official requires a provision-by-provision analysis[.]"[7] *Tex. Democratic Party II*, 978 F.3d at 179. "[T]he official must have the

---

[7] The State Defendants contend that the OCA-GH Plaintiffs must, at the pleading stage, establish that the *Ex parte Young* exception applies to a state official on a provision-by-provision basis. ECF No. 240 at 13; ECF No. 300 at 7; *see also* ECF No. 333 at 2. They rely on *Texas Democratic Party II* and *Texas Alliance for Retired Americans v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022), for their assertion. Neither of these cases, however, specifically hold that the

22-50775.10670

requisite connection to the enforcement of the particular statutory provision that is the subject of the litigation." *Id.* "This is especially true here because the Texas Election Code delineates between the authority of the Secretary of State and local officials." *Id.*

Thus, the question before the Court at this stage of the proceedings is whether the OCA-GH Plaintiffs have alleged a plausible set of facts establishing that the Secretary has a sufficient enforcement connection to each of the S.B. 1 provisions that they challenge under § 101 of the CRA—that is, whether the OCA-GH Plaintiffs have plausibly established that the Secretary can and will enforce each of these provisions.

> **i.    The OCA-GH Plaintiffs have plausibly established that the Secretary can enforce all of the S.B. 1 provisions that they challenge under § 101 of the CRA.**

The OCA-GH Plaintiffs name the Secretary as a defendant for their claim challenging sections 5.02, 5.03, 5.06, 5.07, 5.10, and 5.12 of S.B. 1 under § 101 of the CRA. ECF No. 200 ¶¶ 125, 127.

Sections 5.02, 5.03, and 5.07 establish new requirements for vote-by-mail applications. In *Texas Democratic Party II*, the Fifth Circuit considered whether state sovereign immunity barred a challenge to an Election Code provision pertaining to vote-by-mail applications. Specifically, the plaintiffs alleged that an Election Code provision permitting only voters over the age of sixty-five to vote by mail was unconstitutional under the Twenty-Sixth Amendment. *Tex. Democratic Party II*, 978 F.3d at 174. The question before the Fifth Circuit was whether the district court erred

---

*Ex parte Young* exception to state sovereign immunity *must* be assessed on a provision-by-provision basis at the pleading stage. Rather, these cases discuss the *Ex parte Young* exception to state sovereign immunity in reviewing the validity of a district court's injunction. Indeed, the Fifth Circuit has made clear that, at the pleading stage, plaintiffs need only allege a plausible set of facts establishing the Court's jurisdiction. *Physician Hosps. of Am.*, 691 F.3d at 652. Nevertheless, in resolving the instant motion to dismiss, the Court assumes, but does not decide, that the OCA-GH Plaintiffs must, at this stage of the proceedings, establish that the *Ex parte Young* exception to state sovereign immunity applies on a provision-by-provision basis.

9

in requiring the Secretary to allow voters who are otherwise qualified to vote, but under the age of sixty-five, to vote by mail. *Id.*

To determine whether the Secretary was entitled to state sovereign immunity, the panel consulted the Election Code and observed that the Secretary "has the specific and relevant duty to design the application form for mail-in ballots . . . and to provide that form to local authorities and others who request it." *Id.* at 179 (citing TEX. ELEC. CODE §§ 31.002(a)–(b)). It further noted that the Election Code requires the Secretary to "furnish forms to those who request them for distribution to others." *Id.* at 179–80 (citing TEX. ELEC. CODE § 84.013). The panel also found it significant that the Election Code requires local officials "to use the Secretary's absentee-ballot form outside of emergency situations[.]" *Id.* at 180 (citing TEX. ELEC. CODE § 31.002(d)). Based on these duties found throughout the Election Code, the Fifth Circuit found that "the Secretary has the authority to compel or constrain local officials based on actions []he takes as to the application form."[8] *Id.* The Fifth Circuit therefore held that, notwithstanding the division of responsibilities among the Secretary and local officials, the Secretary had a sufficient enforcement connection to the vote-by-mail provision at issue, justifying application of the *Ex parte Young* exception to state sovereign immunity as to the Secretary. *Id.*

The same conclusion is warranted here. Section 5.02 generally provides that an applicant must now submit their driver's license, election identification certificate, or personal identification card number on their vote-by-mail application. TEX. ELEC. CODE § 84.002(a)(1-a). Section 5.03, in turn, expressly states that a vote-by-mail application must include a space for an applicant to

---

[8] The State Defendants argue that the OCA-GH Plaintiffs have failed to allege how the Secretary compels or constrains the OCA-GH Plaintiffs themselves. ECF No. 240 at 15. But they need not do so. The Fifth Circuit found it sufficient in *Texas Democratic Party II* that the Secretary compelled and constrained local officials. *See also Tex. Alliance for Retired Ams.*, 28 F.4th at 672 ("If the official does not compel or constrain *anyone* to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation.") (emphasis added).

10

22-50775.10672

enter the identification information that section 5.02 requires. *Id.* § 84.001(a)(3-a). Section 5.07 provides that an early voting clerk must reject the applicant's vote-by-mail application if the required identification information on their application is either missing or does not match the identification information that the applicant previously provided on their voter registration application. *Id.* § 86.001(f).

As *Texas Democratic Party II* explained and the OCA-GH Plaintiffs allege, the Secretary is statutorily required to prescribe the design and content of "the forms necessary for the administration" of the Election Code. *Id.* § 31.002(a); *see also* ECF No. 200 ¶ 37. The forms "must enhance the ability of a person to understand the applicable requirements and to physically furnish the required information in the space provided." TEX. ELEC. CODE § 31.002(a). The Secretary must furnish samples of these forms to "the appropriate authorities who have administrative duties under this code; and other persons who request a form for duplication." *Id.* § 31.002(b). The Secretary must also maintain a supply of these forms and provide them to individuals and organizations that request them for distribution to voters. *Id.* § 84.013. Local officials must then use these forms, except in an emergency. *Id.* § 31.002(d).

It therefore follows that the Election Code requires the Secretary to modify vote-by-mail applications, so that they include the statutorily-required space for applicants to enter the identification information that the Election Code now requires. Consequently, as in *Texas Democratic Party II*, the Secretary has the authority to compel or constrain local officials based on the actions he takes with respect to vote-by-mail applications.[9]

The same reasoning applies to the OCA-GH Plaintiffs' challenge to section 5.12. The Election Code now generally provides that a voter must submit their driver's license, election

---

[9] Thus, the Secretary's duties are not merely "ministerial—that is, they compel action by nobody but the Secretary himself." ECF No. 240 at 15.

identification certificate, or personal identification card number on their mail ballot carrier envelope. *Id.* § 86.002(g). It makes clear that a mail ballot carrier envelope "must include a space that is hidden from view when the envelope is sealed for the voter to enter" the required identification information. *Id.* The Election Code also provides that an early voting clerk must reject a mail-in ballot if the required identification information on the mail ballot carrier envelope is either missing or does not match the identification information that the voter previously provided on their voter registration application. *Id.* § 87.041(b)(8). Section 5.12, in turn, describes what curative measures a signature verification committee must or may offer to a voter whose mail-in ballot has been rejected based on, for example, the absence of the required identification information. *Id.* § 87.0271(a)(4). The provision authorizes the Secretary to "prescribe any procedures necessary to implement this section." *Id.* § 87.0271(f). Thus, as with vote-by-mail applications, the Secretary has the authority to compel or constrain early voting clerks based on the actions he takes with respect to the design and content of mail ballot carrier envelopes.

The State Defendants counter that local officials are the proper defendants for the OCA-GH Plaintiffs' challenges to these vote-by-mail and mail ballot carrier envelope provisions because the provisions explicitly reference local officials. ECF No. 240 at 14. It is true that, "[i]f the official sued is not 'statutorily tasked with enforcing the challenged law,' then the requisite connection is absent and '[the Court's] *Young* analysis ends.'" *In re Abbott*, 956 F.3d at 709 (quoting *City of Austin*, 943 F.3d at 998). But the Supreme Court also made clear long ago that the challenged provision need not explicitly identify the state official named as a defendant for the *Ex parte Young* exception to apply:

> The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, *and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists.*

12

*Young*, 209 U.S. at 157 (emphasis added). Indeed, a state official may be statutorily tasked with enforcing a challenged provision based on the text in the challenged provision itself or the general law—such as, for example, the Election Code.

Further, it is worth noting that the provision at issue in *Texas Democratic Party II*, section 82.003 of the Election Code, did not explicitly refer to the Secretary either. In its entirety, section 82.003 states: "A qualified voter is eligible for early voting by mail if the voter is 65 years of age or older on election day." TEX. ELEC. CODE § 82.003. Despite the absence of a specific reference to the Secretary in section 82.003, the Fifth Circuit located the Secretary's duties to enforce the provision in another section of the Election Code: "[T]he Secretary's specific duties regarding the application form under Section 31.002 are enough for us to conclude that the Secretary has at least a scintilla of enforcement authority for Section 82.003." *Tex. Democratic Party II*, 978 F.3d at 180. In short, the State Defendants' suggestion that the *Ex parte Young* analysis requires the Court to read each provision in a vacuum, without reference to any other Election Code provision—no matter how relevant to the enforcement question at hand—is entirely divorced from Fifth Circuit precedent, from the fundamental precepts of statutory interpretation,[10] and from common sense.

Thus, it is immaterial that the Secretary is not expressly identified in sections 5.02, 5.03, 5.07, and 5.12. The Election Code makes clear that it is the Secretary who is responsible for prescribing the design and content of vote-by-mail applications and mail ballot carrier envelopes. The challenged provisions, therefore, can be enforced only if and when the Secretary modifies vote-by-mail applications and mail ballot carrier envelopes to integrate the new identification

---

[10] "[R]easonable statutory interpretation must account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (ellipsis in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). "[T]he cardinal rule [is] that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (citing *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989)).

22-50775.10675

requirements delineated in S.B. 1. The OCA-GH Plaintiffs allege that sections 5.02, 5.03, 5.07, and 5.12 unlawfully impose immaterial requirements to vote by mail. ECF No. 200 ¶ 125. The *Ex parte Young* exception to state sovereign immunity authorizes the Court to "command[] a state official to do nothing more than refrain from violating federal law[.]" *Stewart*, 563 U.S. at 255. If the Court were to do so with respect to these provisions, then the Court's relief "might lead to prohibiting the Secretary from using [a vote-by-mail application or mail ballot carrier envelope] that expressed" unlawful requirements. *Tex. Democratic Party II*, 978 F.3d at 180. This was sufficient in *Texas Democratic Party II* and is certainly sufficient here, where the OCA-GH Plaintiffs need only allege a plausible set of facts establishing the Court's jurisdiction.

For the same reasons, it is also inconsequential that sections 5.07 and 5.12 expressly task local officials with rejecting vote-by-mail applications and providing curative measures for defective mail ballot carrier envelopes. Under the Election Code and in practice, local officials would be unable to reject either of these forms were it not for the Secretary first fulfilling his statutory duties to prescribe the design and content of vote-by-mail applications and mail ballot carrier envelopes. Put differently, it is the Secretary who is exclusively responsible for prescribing the design and content of vote-by-mail applications and mail ballot carrier envelopes in a manner that enables applicants and voters to enter the required identification information. If he fails to do so, then the Secretary necessarily compels or constrains local officials by preventing them from rejecting these forms. Thus, this is not a case where the Secretary's "duty has nothing to do with enforcing" the vote-by-mail and mail ballot carrier envelope provisions. *Lewis v. Scott*, 28 F.4th 659, 663 (5th Cir. 2022). "Though there is a division of responsibilities, the Secretary has the needed connection" to sections 5.07 and 5.12. *Tex. Democratic Party II*, 978 F.3d at 180.

22-50775.10676

*Texas Democratic Party II* applies with equal force to the OCA-GH Plaintiffs' challenge to section 5.10. The provision concerns an electronic online tool that the Secretary must "develop or otherwise provide" to early voting clerks. Tex. Elec. Code § 86.015(a). Section 5.10 states that the electronic online tool that early voting clerks use to track vote-by-mail applications and mail-in ballots must now permit a voter to add or correct the required identification information. *Id.* § 86.015(c)(4). The Election Code further states that the Secretary "shall adopt rules and prescribe procedures as necessary to implement this section." *Id.* § 86.015(e). Once again, the Secretary has the authority to compel or constrain early voting clerks based on his actions with respect to developing or otherwise providing the electronic online tool that must contain the required identification information.

Thus, the Secretary also has the authority to compel or constrain under section 5.06. The provision states that a person who cancels their vote-by-mail application after being sent a mail-in ballot, but fails to return the sent mail-in ballot, may "vote only a provisional ballot[.]"[11] *Id.* § 84.035(b). Section 5.06 tasks an election judge with providing the voter with a provisional ballot under these circumstances. *Id.* If the election judge fails to comply with their statutory duty, then the Secretary could report their conduct to the Attorney General. The election judge would then be subject to civil prosecution.[12] This credible threat of prosecution is, again, a consequence of the Secretary's authority to compel or constrain.

---

[11] The OCA-GH Plaintiffs allege that section 5.06 "adds immaterial burdens to the process of applying to and actually voting by mail." ECF No. 200 ¶ 99. That may be true, in light of the fact that a voter who decides to cancel their vote-by-mail application and instead vote in person may now vote only on a provisional ballot. But, it is unclear how the allegedly immaterial burdens associated with the identification information that S.B. 1 now requires implicate a voter who cancels their own vote-by-mail application, as section 5.06 appears to contemplate. Tex. Elec. Code § 84.035(b). Nevertheless, the Court construes, as it must, the allegations in the light most favorable to the OCA-GH Plaintiffs and finds that section 5.06 may constitute a violation of § 101 of the CRA.

[12] The Election Code provision that authorizes civil penalties states that "'election official' has the meaning assigned by Section 31.128." Tex. Elec. Code § 31.129(a). Section 31.128, however, merely states that "'election official' does not include a chair of a county political party holding a primary election or a runoff primary election."

15

Seemingly conceding that the Secretary *does* have the authority to compel or constrain, the State Defendants cite *Mi Familia Vota v. Abbott*, 977 F.3d 461 (5th Cir. 2020), and argue that the OCA-GH Plaintiffs have failed to show how the Secretary's duties harm them. ECF No. 240 at 14. In *Mi Familia Vota*, the Fifth Circuit considered whether the Secretary had a sufficient enforcement connection to section 43.007 of the Election Code requiring "counties to use electronic voting devices rather than paper ballots in order to be eligible to participate in Texas's Countywide Polling Place Program." 977 F.3d at 468. The panel observed that section 31.014 of the Election Code requires the Secretary "to provide standards for certifying electronic devices[.]" *Id.* However, because "the Plaintiffs' claims regarding section 43.007 [was] based on its prohibition of the use of paper ballots for those counties participating in the Countywide Polling Place Program[,]" the Fifth Circuit found it significant that local officials, not the Secretary, were responsible for printing and distributing ballots. *Id.* The panel accordingly noted that "[d]irecting the Secretary not to enforce the electronic-voting-devices-only provision in section 43.007 would not afford the Plaintiffs the relief that they seek, and therefore, the Secretary of State 'is not a proper defendant.'" *Id.* (quoting *In re Abbott*, 956 F.3d at 709). Immediately thereafter, the Fifth Circuit stated, "Although a court can enjoin state officials from enforcing statutes, such an injunction must be directed to those who have the authority to enforce those statutes." *Id.*

In other words, *Mi Familia Vota* merely reiterates the well-established rule in the Fifth Circuit that a state official must be statutorily tasked with enforcing the challenged provision. It does not, as the State Defendants appear to suggest, hold that the OCA-GH Plaintiffs must also now show at the pleading stage how the Secretary's duties will harm them in order to invoke the

---

*Id.* § 31.128. Thus, the Court refers to the Election Code's "Definitions" section to further clarify who is an "election official" subject to a civil penalty. The "Definitions" section confirms that an election judge is an election official, *see id.* § 1.005(4-a), and is therefore subject to civil prosecution.

*Ex parte Young* exception to state sovereign immunity. In any event, the OCA-GH Plaintiffs *do* explain how the Secretary's duties will harm them. They submit that the challenged provisions incorporate onerous new mail-in voter identification requirements and add immaterial burdens to voting by mail. ECF No. 200 ¶¶ 37, 99. But for the Secretary's duties in relation to each of the challenged provisions, the OCA-GH Plaintiffs and their members would not be harmed by the Secretary. *See id.* ¶¶ 17, 21, 25, 33.

Finally, the State Defendants contend that the OCA-GH Plaintiffs improperly rely on the Secretary's general duties. ECF No. 240 at 15–17. In *Texas Alliance for Retired Americans*, *Lewis*, and *Richardson v. Flores*, 28 F.4th 649 (5th Cir. 2022), the Fifth Circuit recently signaled that reliance on the Secretary's "general duties" under the Election Code alone is generally insufficient to establish that the Secretary is statutorily tasked with enforcing a specific Election Code provision. *See Richardson*, 28 F.4th at 654 ("Since then, however, our precedent has clarified that the Secretary's general duties under the [Texas Election] Code fail to make the Secretary the enforcer of specific election code provisions.") (alterations in original) (quotation marks and citation omitted). Even assuming that these three cases specifically hold that reliance on the Secretary's "general duties" can *never* establish that the Secretary has a duty to enforce a specific Election Code provision, the OCA-GH Plaintiffs, as discussed *supra*, rely on far more than simply the Secretary's "general duties."[13] The State Defendants' argument, therefore, is unavailing.

---

[13] The Court recently heard oral argument in *Johnson v. Callanen*, No. 5:22-CV-409-XR (W.D. Tex. 2021). In that case, three visually impaired individuals and two non-profit organizations comprising visually impaired and otherwise disabled Texans filed suit against Ms. Callanen, in her official capacity as the Bexar County Elections Administrator, for violations of Title II of the ADA and § 504 of the Rehabilitation Act. The plaintiffs sought a reasonable modification to vote by mail in secret and free from intimidation in upcoming elections. Though it was clear that Ms. Callanen, who is also a defendant in this consolidated action, did not oppose the plaintiffs' request for a reasonable modification, she nonetheless responded to the plaintiffs' complaint with a motion to dismiss and opposed the plaintiffs' motion for a preliminary injunction. At the hearing, Ms. Callanen's counsel candidly stated that the basis for Ms. Callanen's opposition was her concern that, if she granted the requested modification, then the Secretary—pursuant to his "general duties" of ensuring that elections are conducted uniformly—would refer her conduct to the Attorney General, who, in turn, could impose civil penalties upon her, including revocation of her

17

For the foregoing reasons, the Court concludes that the OCA-GH Plaintiffs have plausibly established that the Secretary is statutorily tasked with enforcing and can enforce all of the S.B. 1 provisions that they challenge under § 101 of the CRA.

### ii.  The OCA-GH Plaintiffs have plausibly established that the Secretary will enforce all of the S.B. 1 provisions that they challenge under § 101 of the CRA.

To establish that the Secretary will enforce the S.B. 1 provisions that they challenge under § 101 of the CRA, the OCA-GH Plaintiffs need only show that the Secretary has a "demonstrated willingness" to exercise his duty to enforce the provisions at issue. *Tex. Democratic Party II*, 978 F.3d at 181 (quoting *Morris*, 739 F.3d at 746).

The OCA-GH Plaintiffs allege that the Secretary "routinely issues guidance to the county registrars of all 254 Texas counties on various election procedures." ECF No. 200 ¶ 35. They further assert that the Secretary "has or imminently will be issuing guidance to all counties regarding their compliance obligations with SB 1[,]" and thus, the challenged provisions. *Id.* ¶ 36. The OCA-GH Plaintiffs also maintain that the Secretary has "explicitly vowed to take a proactive role in overseeing counties' administration of elections." *Id.* These allegations, combined with the Secretary's mandatory duties discussed *supra*, sufficiently show at this stage of the proceedings that the Secretary will enforce the S.B. 1 provisions challenged under § 101 of the CRA.

Thus, the Court finds that the OCA-GH Plaintiffs have alleged a plausible set of facts establishing that the Secretary has a sufficient enforcement connection to sections 5.02, 5.03, 5.06,

---

retirement. *See* Tex. Elec. Code §§ 31.129(c), 34.005. Indeed, Ms. Callanen's counsel referred to the deposition testimony in a prior case, where the Secretary testified under oath that referral to the Attorney General would be imminent if Ms. Callanen granted the requested modification. It is difficult to conceive of a clearer example of how the Secretary's statutory duties to obtain and maintain uniformity in the application, operation, and interpretation of the Election Code—however "general" they may be—compel or constrain local officials—like Ms. Callanen—by subjecting them to credible, perilous consequences.

22-50775.10680

5.07, 5.10, and 5.12. Their claim challenging these provisions under § 101 of the CRA may proceed against the Secretary pursuant to the *Ex parte Young* exception to state sovereign immunity.

### b. The OCA-GH Plaintiffs have shown that the Attorney General has a sufficient enforcement connection to the one S.B. 1 provision that they challenge on constitutional grounds.

As with their claim under § 101 of the CRA against the Secretary, the relevant question before the Court at this stage of the proceedings is whether the OCA-GH Plaintiffs have alleged a plausible set of facts establishing that the Attorney General has a sufficient enforcement connection to the one S.B. 1 provision that they challenge on constitutional grounds—that is, whether the OCA-GH Plaintiffs have plausibly established that the Attorney General can and will enforce the one S.B. 1 provision that they challenge on constitutional grounds.

### i. The OCA-GH Plaintiffs have plausibly established that the Attorney General can enforce the one S.B. 1 provision that they challenge on constitutional grounds.

The OCA-GH Plaintiffs name the Attorney General as a defendant for their claims challenging section 7.04 under the First and Fourteenth Amendments. ECF No. 200 ¶¶ 214–39.

Section 7.04 codifies several new offenses under sections 276.015 of the Election Code.[14] TEX. ELEC. CODE § 276.015. Specifically, section 276.015 defines three general public activities as third-degree felonies:

> (b) A person commits an offense if the person, directly or through a third party, knowingly provides or offers to provide vote harvesting services in exchange for compensation or other benefit.

---

[14] Section 7.04 also codifies new offenses under sections 276.016, 276.017, 276.018 and 276.019 of the Election Code. TEX. ELEC. CODE §§ 276.016–.019. The OCA-GH Plaintiffs' allegations, however, do not appear to challenge these sections. *See* ECF No. 200 ¶¶ 195–213. Indeed, in asserting their challenge to section 7.04, they repeatedly refer to the "anti-harvesting provision" in section 7.04, which is found in section 276.015 of the Election Code only. *See id.* ¶¶ 44–47, 96, 195–96, 216, 218, 235. The Court, therefore, construes the OCA-GH Plaintiffs' claims challenging section 7.04 as claims that challenge the validity of section 276.015 only. To the extent that the OCA-GH Plaintiffs intended to assert claims challenging sections 276.016, 276.017, 276.018, or 276.019, those claims are dismissed on failure to state a claim grounds.

19

(c) A person commits an offense if the person, directly or through a third party, knowingly provides or offers to provide compensation or other benefit to another person in exchange for vote harvesting services.

(d) A person commits an offense if the person knowingly collects or possesses a mail ballot or official carrier envelope in connection with vote harvesting services.

*Id.* §§ 276.015(b)–(d), (f). A "benefit" is "anything reasonably regarded as a gain or advantage, including a promise or offer of employment, a political favor, or an official act of discretion, whether to a person or another party whose welfare is of interest to the person." *Id.* § 276.015(a)(1). "Vote harvesting services" means any "in-person interaction with one or more voters, in the physical presence of an official ballot or a ballot voted by mail, intended to deliver votes for a specific candidate or measure." *Id.* § 276.015(a)(2). Section 276.015 makes it clear that, "[i]f conduct that constitutes an offense under this section also constitutes an offense under any other law, the actor may be prosecuted under this section, the other law, or both." *Id.* § 276.015(g).

As the OCA-GH Plaintiffs allege, the Attorney General is statutorily tasked with prosecuting criminal offenses prescribed by the Election Code. TEX. ELEC. CODE § 273.021; s*ee also* ECF No. 200 ¶¶ 40, 42. He "is the chief law enforcement officer of the State of Texas and is empowered to enforce Texas laws, including criminal and civil provisions in the Texas Election Code at issue in this case." ECF No. 200 ¶ 40. He also "prosecutes election code violations at the requests of district or county attorneys." *Id.* at ¶ 42 (citing TEX. GOV'T CODE § 402.028). The Election Code further authorizes the Attorney General "to investigate and prosecute election code violations anywhere in Texas." *Id.* (citing TEX. ELEC. CODE § 273.021). According to the OCA-GH Plaintiffs, the Attorney General "has regularly relied on Section 273.021 of the Texas Election Code as a basis for independently prosecuting purported criminal offenses arising out of the

22-50775.10682

Election Code." *Id.* The Attorney General, therefore, has the authority to compel or constrain under section 7.04, which establishes several election law offenses.

Therefore, the Court concludes that the OCA-GH Plaintiffs have plausibly established that the Attorney General is statutorily tasked with enforcing and can enforce section 7.04, the one S.B. 1 provision that they challenge on constitutional grounds.

> ii. **The OCA-GH Plaintiffs have plausibly established that the Attorney General will enforce the one S.B. 1 provision that they challenge on constitutional grounds.**

The OCA-GH Plaintiffs need only show that the Attorney General has a "demonstrated willingness" to exercise his duty to enforce the one S.B. 1 provision that they challenge on constitutional grounds to establish that the Attorney General will enforce that provision. *Tex. Democratic Party II*, 978 F.3d at 181 (quoting *Morris*, 739 F.3d at 746).

The OCA-GH Plaintiffs allege that there "can be little doubt as to the [Attorney General's] interest in enforcing" section 7.04. ECF No. 200 ¶ 44. The Attorney General, after all, has prosecuted "alleged offenses related to assisting voters, voting by mail, and campaigning[.]" *Id.* The OCA-GH Plaintiffs further assert that the Attorney General "has threatened third parties with criminal sanctions for disseminating information to voters." *Id.* "Specifically," the OCA-GH Plaintiffs allege that "the [Attorney General] has prosecuted individuals for allegedly providing unlawful assistance, election-related perjury, 'vote-harvesting,' failure to comply with provisions related to mail ballot assistance, and mail ballot fraud." *Id.*

Additionally, the OCA-GH Plaintiffs assert that the testimony before the state legislature confirms the Attorney General's willingness to enforce section 7.04. In particular, they allege that representatives from the Attorney General's Office "repeatedly testified before Texas House and Senate committees in 2021 about proposed changes to the election code, indicating that the

[Attorney General] would prosecute new offenses under the changes." *Id.* ¶ 45. For example, "Jonathan White, Chief of Election Fraud for the [Attorney General], testified before the House Elections Committee that proposed changes to the election code would help the [Attorney General] address vote harvesting, help 'do what [they're] already doing' such as prosecuting unlawful assistance offenses [and] ballot handling offenses[.]'" *Id.* (alterations in original). The OCA-GH Plaintiffs make clear that representatives from the Attorney General's Office "repeatedly answered hypotheticals from legislators about what the [Attorney General] would or would not prosecute under the proposed changes to the election code." *Id.*

The OCA-GH Plaintiffs also allege that the Attorney General's social media publications underscore his commitment to enforcing any and all election law offenses. Specifically, they assert that the Attorney General "regularly posts on Twitter about his commitment to enforcing the Election Code and bringing criminal prosecutions against those who allegedly violate it." *Id.* ¶ 46. On July 9, 2021, for instance, the Attorney General posted on social media, "I prosecute voter fraud everywhere we find it." *Id.* On October 2, 2021, the Attorney General again publicized his demonstrated willingness to prosecute election law offenses: "Between pending cases & investigations—we're working more voter fraud cases than #Texas has ever seen." *Id.*

Further, the OCA-GH Plaintiffs note that the Attorney General has "created, maintains, and continuously seeks increased funding for an 'Election Fraud Unit' housed within his office and under his control, with the express purpose of investigating and prosecuting violations of criminal provisions in the Texas Election Code[.]" *Id.* ¶ 47. They explain that the Election Fraud Unit not only releases public statements about its prosecutions for election law offenses, but also "actively seeks to pursue additional prosecutions of such offenses." *Id.* The Attorney General and his Election Fraud Unit, according to the OCA-GH Plaintiffs, "have touted their prosecutions of

individuals for criminal offenses under the Election Code related to unlawful assistance, vote harvesting, failure to comply with provisions related to mail ballot assistance, and mail ballot fraud." *Id.* The Attorney General has also established an Election Integrity Unit within his office. *Id.* The OCA-GH Plaintiffs allege that the Attorney General formed the Election Integrity Unit "purportedly to investigate claims of lack of compliance with the Election Code during elections." *Id.* Upon formally announcing the creation of the Election Integrity Unit, the Attorney General pledged that he would continue "to pursue prosecutions for criminals willing to commit election crimes." *Id.* These allegations, combined with the Attorney General's duties discussed *supra*, are sufficient at this stage of the proceedings to plausibly establish that the Attorney General has demonstrated a willingness to enforce section 7.04.

The State Defendants argue that, since the Attorney General may not unilaterally prosecute election law offenses, "nothing in Plaintiffs' complaint supports the conclusion that formal enforcement is on the horizon." ECF No. 240 at 19. True, the Election Code originally authorized the Attorney General to unilaterally "prosecute a criminal offense prescribed by the election laws of this state." TEX. ELEC. CODE § 273.021(a). In *State v. Stephens*, however, the Texas Court of Criminal Appeals held that this delegation of unilateral prosecutorial authority violated the separation-of-powers clause of the Texas Constitution. No. PD-1032-20, 2021 WL 5917198, at *11 (Tex. Crim. App. Dec. 15, 2021) (not released for publication).[15]

But even absent the delegation of authority to independently prosecute election law offenses, the surviving provisions of the Election Code still envision, and likely require, the Attorney General's participation in enforcement activities. For instance, section 273.001 provides:

> (a) If two or more registered voters of the territory covered by an election present affidavits alleging criminal conduct in connection

---

[15] The State Defendants submit that "that *Stephens* was wrongly decided." ECF No. 240 at 19 n.2. Texas "has filed a motion asking the Texas Court of Criminal Appeals to reconsider its decision." *Id.*

with the election to the county or district attorney having jurisdiction in that territory, the county or district attorney shall investigate the allegations. If the election covers territory in more than one county, the voters may present the affidavits to the attorney general, and the attorney general shall investigate the allegations.

(b) A district or county attorney having jurisdiction or the attorney general may conduct an investigation on the officer's own initiative to determine if criminal conduct occurred in connection with an election.

(c) On receipt of an affidavit [from a registrar], the county or district attorney having jurisdiction and, if applicable, the attorney general shall investigate the matter.

(d) On referral of a complaint from the secretary of state under Section 31.006, the attorney general may investigate the allegations.

TEX. ELEC. CODE § 273.001. Moreover, *Stephens* does not foreclose the Attorney General's authority to prosecute election law offenses, including those prescribed by section 7.04. Indeed, the Court of Criminal Appeals made clear that "the consent and deputization order of a local prosecutor or the request of a district or county attorney for assistance" can provide the Attorney General with the authority to enforce election law offenses. *Stephens*, 2021 WL 5917198, at *10.

The State Defendants' reliance on *City of Austin* is also unpersuasive. ECF No. 240 at 18. In *City of Austin*, the Fifth Circuit considered whether the *Ex parte Young* exception to state sovereign immunity applied to the Attorney General. 943 F.3d at 998. The City had passed a municipal ordinance prohibiting landlords from discriminating against tenants who paid their rent with federal housing vouchers. *Id.* at 996. Texas subsequently passed a state law barring municipalities or counties from adopting such ordinances. *Id.* The state statute empowered the Attorney General to enforce the law by intervening in any enforcement suit that the City might bring against a landlord for violating the municipal ordinance. *Id.* at 1000 n.1.

24

In response, the City sued the Attorney General, alleging that federal housing law preempted the state legislation. *Id.* at 997. The City argued that the *Ex parte Young* exception to state sovereign immunity applied because the Attorney General possessed the authority to enforce the state law and had a "habit" of intervening in lawsuits involving municipal ordinances to "enforce the supremacy of state law." *Id.* at 1001. The Fifth Circuit, however, held that this was not sufficient to demonstrate "some scintilla of 'enforcement,'" as the Attorney General's authority to enforce the statute alone did not constrain the City's ability to enforce its ordinance. *Id.* at 1001–02. According to the Fifth Circuit, simply because the Attorney General had "chosen to intervene to defend *different* statutes under *different* circumstances does not show that he is likely to do the same here." *Id.* at 1002 (emphasis in original). The Fifth Circuit also noted that "the City face[d] no consequences" if it enforced its ordinance. *Id.*

This case differs from *City of Austin* in many respects. Importantly, section 7.04 establish several election law offenses. Furthermore, under S.B. 1, the Attorney General has broad investigatory powers, and the Attorney General has undoubtedly filed lawsuits against election officials, invoking the State's "intrinsic right to enact, interpret, and enforce its own laws." Appellant's Emergency Mot. for Relief Under Rule 29.3, *State v. Hollins*, 607 S.W.3d 923 (Tex. App.—Houston [14th Dist.] 2020, pet. granted) (No. 14-20-00627-CV), 2020 WL 5509152, at *9 (quoting *State v. Naylor*, 466 S.W.3d 783, 790 (Tex. 2015)).

Moreover, and as already discussed at length, the Attorney General touts his office's eagerness to prosecute entities and individuals, like the OCA-GH Plaintiffs and their members, for criminal offenses under the Election Code. Far from different statutes under different circumstances, the Attorney General has demonstrated a willingness to enforce civil and criminal provisions of the Election Code regulating some of the same elections procedures that the OCA-

25

GH Plaintiffs challenge as unconstitutional in this case. This is sufficient to establish that "formal enforcement [is] on the horizon." *Tex. Democratic Party II*, 978 F.3d at 181 (quoting *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 392 (5th Cir. 2015)).

The State Defendants further contend that "speculation that the Attorney General might be asked by a local prosecutor to 'assist' in enforcing the law at issue is inadequate to support an *Ex parte Young* action against him." ECF No. 300 at 13 (quoting *In re Abbott*, 956 F.3d at 709). *In re Abbott*, however, is inapposite. There, the district court issued a temporary restraining order against the Governor and the Attorney General, exempting various categories of abortion from "GA-09, an emergency measure temporarily postponing non-essential medical procedures during the COVID-19 pandemic." *In re Abbott*, 956 F.3d at 703. On appeal, the Fifth Circuit considered whether state sovereign immunity required dismissal of the Attorney General. *Id.* at 708. In particular, the Fifth Circuit considered whether the *Ex parte Young* exception to state sovereign immunity applied. *Id.* at 709. The panel observed that the district court had reasoned that the Attorney General "ha[d] 'authority' to prosecute violations of GA-09 'at the request of local prosecutors,' and that he ha[d] also 'publicly threatened enforcement' against abortion providers." *Id.* But in the Fifth Circuit's view, "[n]either rationale establishe[d] the Attorney General's 'connection' to enforcing GA-09 for *Ex parte Young* purposes." *Id.* "Speculation that he might be asked by a local prosecutor to 'assist' in enforcing GA-09," the Fifth Circuit determined, "is inadequate to support an *Ex parte Young* action against the Attorney General." *Id.* The Fifth Circuit also found it significant that "[t]he Attorney General threatened that GA-09 *would be enforced*, not that *he* would enforce it." *Id.* (emphasis in original).

In this case, by contrast, the OCA-GH Plaintiffs challenge section 7.04, which establishes several criminal offenses under the Election Code. There is nothing temporary about the credible

threat of criminal prosecution by the Attorney General. Indeed, the Secretary is statutorily required to refer his suspicions of criminal offenses prescribed by the Election Code to the Attorney General. Further, the OCA-GH Plaintiffs allege that the Attorney General has made it abundantly clear that he will enforce the Election Code. In other words, the Attorney General has not said that the challenged provisions *would be enforced*, but that *he* would enforce them.

Put differently, the Attorney General's credible threat of enforcing the challenged S.B. 1 provisions is not mere speculation. The Attorney General publicly maintains that one of his key priorities is to investigate and prosecute allegations of voter fraud.[16] He has also publicly stated that 510 election offenses against 43 defendants remain pending and that 386 active election fraud investigations currently exist.[17] In light of *Stephens*, it must necessarily be the case that the Attorney General is prosecuting these election law offenses and pursuing these election fraud investigations along with local district attorneys. Indeed, the local district attorneys sued in this consolidated action have not expressly and affirmatively represented that they *never* intend to prosecute criminal offenses prescribed by the Election Code, and there are certainly many more local district attorneys throughout Texas who have not disavowed their intention to enlist the Attorney General's assistance to prosecute election law offenses. Consequently, the State Defendants' reliance on *In re Abbot* is unavailing. The OCA-GH Plaintiffs' allegations, combined with the Attorney General's duties discussed *supra*, sufficiently show at this stage of the proceedings that the Attorney General will enforce section 7.04.

---

[16] *See* Attorney General of Tex., *Election Integrity | Office of the Attorney General*, https://www.texas attorneygeneral.gov/initiatives/election-integrity (last visited July 28, 2022). The Court may take judicial notice of governmental websites, *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam), and may consider matters of which it takes judicial notice on a motion to dismiss, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

[17] *See* Attorney General of Tex., *supra* note 16.

22-50775.10689

Thus, the Court finds that the OCA-GH Plaintiffs have alleged a plausible set of facts establishing that the Attorney General has a sufficient enforcement connection to section 7.04. Their challenges to this provision under the First and Fourteenth Amendments may proceed against the Attorney General pursuant to the *Ex parte Young* exception to state sovereign immunity.

### 2. Congress validly abrogated state sovereign immunity for the OCA-GH Plaintiffs' claims under Title II of the ADA against the Secretary and for their claim under § 208 of the VRA against the Secretary and the Attorney General.

*Ex parte Young* is not the only vehicle for obtaining relief against a state. Congress may also abrogate a state's sovereign immunity. *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). To abrogate a state's sovereign immunity, it must be shown that Congress "both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (alterations in original) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)).

#### a. The OCA-GH Plaintiffs' claims under Title II of the ADA.

"In enacting the ADA, Congress 'invoke[d] the sweep of congressional authority, including the power to enforce the [F]ourteenth [A]mendment[.]" *United States v. Georgia*, 546 U.S. 151, 154 (2006) (alterations in original) (quoting 42 U.S.C. § 12101(b)(4)). Indeed, the ADA specifically provides that a "State shall not be immune under the [E]leventh [A]mendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. The Supreme Court has accordingly accepted this provision of the ADA "as an unequivocal expression of Congress's intent to abrogate state sovereign immunity." *Georgia*, 546 U.S. at 154 (citing *Garrett*, 531 U.S. at 363–64).

As to whether Congress has acted pursuant to a valid grant of constitutional authority, the Supreme Court has held that "the Eleventh Amendment, and the principle of state sovereignty

28

which it embodies, are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment." *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). Put differently, "Congress may subject nonconsenting States to suit in federal court when it does so pursuant to a valid exercise of its § 5 power." *Garrett*, 531 U.S. at 364. Thus, "the ADA can apply to the States only to the extent that the statute is appropriate § 5 legislation." *Id.*

Section 5 of the Fourteenth Amendment grants Congress the power to enforce the substantive guarantees found in § 1 of the Fourteenth Amendment by enacting "appropriate legislation." U.S. CONST. amend. XIV, § 5. Section 1 of the Fourteenth Amendment provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, § 1. Thus, to determine whether Congress has acted pursuant to a valid grant of constitutional authority in enacting Title II, a court assesses, on a claim-by-claim basis:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 617 (5th Cir. 2020) (quoting *Georgia*, 546 U.S. at 159). The first step, according to the Fifth Circuit, is to determine whether the plaintiffs have stated a claim upon which relief may be granted under Title II of the ADA. *Id.* at 617–18.

### i.    The OCA-GH Plaintiffs have stated valid claims under Title II.

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §

29

12132. The ADA defines the term "disability" as "a physical or mental impairment that substantially limits one or more major life activities[,]" *id.* § 12102(1)(A), and Title II "defines 'public entities' to include local governments[,]" *Cadena v. El Paso County*, 946 F.3d 717, 723 (5th Cir. 2020) (citing 42 U.S.C. § 12131(1)(A)).

Here, the OCA-GH Plaintiffs allege that their members include disabled individuals with "physical and/or mental impairments that substantially limit one or more of their major life activities, including but not limited to 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and/or working.'" ECF No. 200 ¶ 9 (quoting 42 U.S.C. § 12102(2)(A)); *see also id.* ¶¶ 23–24, 131–36, 168–73, 184–85. For instance, Ruben Fernandez is a member of REVUP who "lives with cerebral palsy and has a label of Intellectual/Development Disability." *Id.* ¶ 170. Amy Litzinger is another REVUP member who "lives with quadriplegic cerebral palsy." *Id.* ¶ 171. Laura Halvorson is also a REVUP member who "lives with muscular dystrophy, quadriplegia, and chronic neuromuscular respiratory failure." *Id.* ¶ 172. According to the OCA-GH Plaintiffs, "[t]hese examples are non-exhaustive." *Id.* ¶ 173.

Further, the OCA-GH Plaintiffs have filed suit against the Secretary and the Attorney General, in their official capacities. *Id.* ¶ 35, 40. They allege that the Secretary and the Attorney General "are public entities pursuant to the ADA[.]" *Id.* ¶ 52.

Together, these allegations establish that OCA-GH Plaintiffs have properly invoked Title II of the ADA against public entities.

The Court now considers whether the OCA-GH Plaintiffs have alleged sufficient facts to state a *prima facie* case of discrimination under Title II. To do so, they must allege sufficient facts showing:

> (1) that [they, their members, or their constituents are] a qualified individual within the meaning of the ADA; (2) that [they, their members, or their constituents are] being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or [are] otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of [their or their members' or constituents'] disability.

*Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004) (citing *Lightbourn v. County of El Paso*, 118 F.3d 421, 428 (5th Cir. 1997)).

As to the first element, a qualified individual within the meaning of Title II is a disabled individual "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The OCA-GH Plaintiffs allege that their membership includes individuals who are qualified to vote in person and by mail under Texas law. ECF No. 200 ¶¶ 11, 170–72. Thus, the OCA-GH Plaintiffs have sufficiently shown that their members are qualified individuals within the meaning of Title II.

With respect to the second and third elements, federal regulations provide that public entities may not, on the basis of disability, "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others[.]" 28 C.F.R. § 35.130(b)(1)(ii). They also prohibit public entities from providing, by reason of disability, "a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others[.]" *Id.* § 35.130(b)(1)(iii). In addition, public entities may not "utilize criteria or methods of administration . . . [t]hat have the

31

purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the service, program, or activity with respect to individuals with disabilities." *Id.* § 35.130(b)(3)(ii). Federal regulations also make clear that public entities generally "shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity[.]" *Id.* § 35.130(b)(8). Finally, the ADA itself provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by" the statute. 42 U.S.C. § 12203(b).

Here, the OCA-GH Plaintiffs allege that sections 5.02, 5.03, 5.06, 5.07, 5.10, and 5.12 violate Title II. ECF No. 200 ¶ 135. As discussed *supra*, these provisions generally concern vote-by-mail procedures. They claim that the provisions discriminate against their members "with disabilities because they do not allow equal access to mail-in voting and exclude people with disabilities from participation in the services, programs, or activities of Defendants, namely, the State's mail-in voting program." *Id.* They also allege that the identification information that these provisions require and enforce "will screen out voters with disabilities who may not know or have access to the numbers by reason of disability and consequently will prevent Plaintiffs' members and other voters with disabilities from fully and equally enjoying access to voting." *Id.* ¶ 133.

In addition, the OCA-GH Plaintiffs claim that these provisions use "voter ID criteria that will subject Plaintiffs' members and other qualified voters with disabilities to discrimination by prohibiting them from voting even if they meet all other qualifications to vote by mail." *Id.* ¶ 134. They contend that the provisions do "not allow for any modification to the ID requirement and do[] not provide any way for Plaintiffs' members and other voters with disabilities who may not

22-50775.10694

know or have access to their ID numbers to vote by mail." *Id.* ¶ 131. The OCA-GH Plaintiffs also

assert that these provisions do "not provide a modification to its cure provision as to rejected

ballots, other than voting in person, which is not possible for many voters with disabilities." *Id.*

The OCA-GH Plaintiffs further allege that sections 6.04[18] and 6.06 violate Title II. *Id.* ¶¶

96, 164, 185. Section 6.04 requires an assistor to take the following oath under penalty of perjury

before assisting a voter:

> I swear (or affirm) under penalty of perjury that the voter I am
> assisting represented to me they are eligible to receive assistance; I
> will not suggest, by word, sign, or gesture, how the voter should
> vote; I will confine my assistance to reading the ballot to the voter,
> directing the voter to read the ballot, marking the voter's ballot, or
> directing the voter to mark the ballot; I will prepare the voter's ballot
> as the voter directs; I did not pressure or coerce the voter into

---

[18] In 2018, a district court initially enjoined Texas and the Secretary from enforcing sections 61.033 and 64.0321 of the Election Code. *See OCA Greater Hous. v. Texas*, No. 1:15-CV-679-RP, 2022 WL 2019295, at *1 (W.D. Tex. June 6, 2022). On June 6, 2022, the district court, upon request, modified its injunction to prohibit Texas and its Secretary from enforcing a portion of the oath as modified under section 6.04:

> As to the first ground, OCA notes that a portion of the amended oath now reads
> exactly as did the enjoined language in Section 64.0321. A portion of the oath
> now requires the assistor to attest to confining their assistance to "reading the
> ballot to the voter, directing the voter to read the ballot, marking the voter's ballot,
> or directing the voter to mark the ballot." Tex. Elec. Code § 64.034. The enjoined
> language permits assistance in "(1) reading the ballot to the voter; (2) directing
> the voter to read the ballot; (3) marking the voter's ballot; or (4) directing the voter
> to mark the ballot." Tex. Elec. Code § 64.0321. Aside from changes in
> punctuation, the language is indistinguishable. Thus, the Court's reasoning in
> enjoining Section 64.0321 applies to the amended oath language just as it applied
> in the 2018 Injunction. . . . By requiring assistors to attest to following enjoined
> restrictions, the amended provision essentially re-ratifies the same restrictions that
> the Court enjoined. In doing so, the oath limits assistance-eligible voting to an
> impermissibly narrow set of activities. Therefore, as with the previous iteration of
> this language, the Court will enjoin enforcement of the portion of [section 6.04 of
> S.B. 1] inserting the previously enjoined language from Section 64.0321.

*Id.* at *4.

On June 14, 2022, OCA-GH filed a notice in this consolidated action, advising the Court of the district court's modified injunction. ECF No. 438. OCA-Greater Houston submits that "the United States and Private Plaintiffs' challenges to the same portions in this case may ultimately be rendered moot." *Id.* at 5. The United States and remaining plaintiffs also filed a notice, advising that they agree with OCA-GH's position on the potential impact of the modified injunction on their claims challenging the same portions of section 6.04. ECF No. 440. Texas and its Secretary did not appeal the district court's modified injunction. Thus, all claims in this consolidated action challenging the portions of section 6.04 that the district court recently enjoined in *OCA Greater Hous. v. Texas*, No. 1:15-CV-679-RP, 2022 WL 2019295 (W.D. Tex. June 6, 2022) are moot.

choosing me to provide assistance; I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs; I will not communicate information about how the voter has voted to another person; and I understand that if assistance is provided to a voter who is not eligible for assistance, the voter's ballot may not be counted.

TEX. ELEC. CODE § 64.034. Section 6.06 makes it a state jail felony for a person to compensate or offer to compensate another person—or to solicit, receive, or accept compensation—for assisting voters. *Id.* §§ 86.0105(a), (c).

The OCA-GH Plaintiffs contend that these provisions "unlawfully restrict the sort of assistance that a voter may receive." ECF No. 200 ¶ 152. They observe that the modified oath no longer allows assistors to answer a voter's questions and allege that this "drastic limitation on the sort of assistance that can be provided and the threat of felony prosecution for perjury will prevent voters from receiving the assistance they need to vote." *Id.* Individuals with disabilities in particular, the OCA-GH Plaintiffs assert, "need a wide range of options for assistance based on their wide range of unique needs." *Id.* ¶ 154. However, they claim that the oath's "narrow view of the types of assistance voters might need will prevent voters with disabilities . . . from receiving the type of assistance they need even if they manage to secure assistants." *Id.* ¶ 155. For instance, qualified disabled voters "may need assistance to physically navigate the polling place, remember the voting process, communicate with poll workers, stay on task, or set up adaptive devices—all of which are not permitted and subject a potential assistant to criminal prosecution." *Id.* ¶ 158.

The OCA-GH Plaintiffs further allege that section 6.06 "severely limits the universe of potential assistants that a mail-in ballot voter can choose from" because the provision creates "a strict liability, state jail felony that criminalizes the provision of assistance by anyone who 'solicits, receives, or accepts compensation' for assisting a voter with their mail-in ballot." *Id.* ¶ 162. "For example," the OCA-GH Plaintiffs explain that section 6.06 "could prohibit a child from assisting

34

a parent with voting by mail if the parent gives the child a monthly allowance, or 'compensation.'" *Id.* ¶ 163. "In addition, a person who asks a friend to assist them with voting and buys the friend a coffee as a token of appreciation for providing their assistance could be subjecting the friend to criminal prosecution for accepting a 'benefit' in exchange for providing assistance." *Id.* The OCA-GH Plaintiffs contend that section 6.06 and its "threat of criminal penalties for violations of SB 1's new restrictions on assistance will chill voters' ability to select the assistant of a person's choice when voting, in violation of the voter's rights under . . . the ADA." *Id.* ¶ 166. Both sections 6.04 and 6.06, the OCA-GH Plaintiffs allege, deny their disabled members a reasonable modification that may be necessary to avoid discrimination by reason of their disabilities. *Id.* ¶¶ 183–84.

Moreover, the OCA-GH Plaintiffs bolster their allegations with specific examples of how their members are directly impacted by sections 6.04 and 6.06. Mr. Fernandez, for instance, requires assistance to vote in person. *Id.* ¶ 170. His assistor helps "him in obtaining his ballot, and assists him in physically navigating the polling site in his manual wheelchair." *Id.* Mr. Fernandez also relies on his assistor to "read what is on the screen for him." *Id.* "If he does not understand what is read to him, he often needs to ask his chosen assistant questions about the information or words on the ballot." *Id.* Mr. Fernandez may also need to ask his assistor "to explain how the voting machine works, which includes answering questions about the machine's features and functionality." *Id.* To cast his vote effectively, "he needs assistance removing his printed paper ballot from the voting machine and placing it in the ballot counter." *Id.* Sections 6.04 and 6.06, the OCA-GH Plaintiffs allege, would not permit any of this. *Id.*

Similarly, Ms. Litzinger requires assistance to vote in person and by mail. *Id.* ¶ 171. When voting in person, Ms. Litzinger "requires assistance putting the ballot in the 'Scantron' machine since she lacks the dexterity to do this independently." *Id.* She must also ask her assistors to move

35

physical barriers that impede her access to the voting booth; hold and transfer items, such as her identification card and voter guides, from her backpack to her person for her use while voting; and help her drink from her water bottle when needed. *Id.* When voting by mail, Ms. Litzinger requires assistance to stuff the mail ballot carrier envelope and properly affix her signature. *Id.* Ms. Litzinger also requires assistance to mark her paper mail-in ballot. *Id.* The OCA-GH Plaintiffs allege that sections 6.04 and 6.06 limit Ms. Litzinger's ability to receive this assistance. *Id.* In fact, "[s]ome of Ms. Litzinger's direct support professionals have stated that they can no longer assist her in the manner they did previously given the new restrictions[.]" *Id.*

The same is true for Ms. Halvorson. *Id.* ¶ 172. She cannot "mark or submit the ballot herself and requires assistance putting the ballot into the 'Scantron' machine and marking the ballot on the touch screen." *Id.* At times, Ms. Halvorson "has to ask her assistor to explain the wording of lengthy amendments, which are not in plain language." *Id.* "Ms. Halvorson also brings information about candidates to the polling place to inform her vote and has been required to transfer this information to a paper sample ballot rather than being [on] her phone—something for which she must use an assistant." *Id.* According to the OCA-GH Plaintiffs, she will be unable to obtain this assistance in light of sections 6.04 and 6.06. *Id.* Indeed, as with Ms. Litzinger, "Ms. Halverson's personal care attendants have stated they may be unwilling to assist her with voting in the future for fear of prosecution." *Id.* These allegations clearly establish the second and third elements for a *prima facie* case of discrimination under Title II.

The State Defendants counter that the OCA-GH Plaintiffs have failed to state a claim under Title II.[19] ECF No. 240 at 21–27. They first contend that the organizations cannot assert a Title II

---

[19] The State Defendants assert the same arguments against the OCA-GH Plaintiffs' claims under § 208 of the VRA and § 504 of the Rehabilitation Act. ECF No. 240 at 21. Unless otherwise stated, the Court's analysis as to the sufficiency of the OCA-GH Plaintiffs' Title II claims also applies to the sufficiency of the OCA-GH Plaintiffs' claims under § 208 of the VRA and § 504 of the Rehabilitation Act.

22-50775.10698

claim because the organizations themselves do not have a disability. *Id.* at 22. However, it is well settled that an organization may sue as the representative of its members. *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010). Moreover, many courts have allowed organizations that serve disabled individuals to sue public entities under Title II. *See A Helping Hand, LLC v. Baltimore County*, 515 F.3d 356, 362–64 (4th Cir. 2008); *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 332–36 (6th Cir. 2002); *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 46–48 (2d Cir. 1997). They did so after observing that "Title II's enforcement provision extends to relief to '*any person* alleging discrimination on the basis of disability.'" *Innovative Health Sys., Inc.*, 117 F.3d at 47 (emphasis in original) (quoting 42 U.S.C. § 12133). "[T]he use of such broad language in the enforcement provisions of the statutes evinces a congressional intention to define standing to bring a private action under [Title II] as broadly as is permitted by Article III of the Constitution." *Id.* (quotation marks and citation omitted); *see also Steward v. Abbott*, 189 F. Supp. 3d 620, 630–32 (W.D. Tex. 2016) (finding that organizations have associational standing in Title II case); *Fla. State Conf. of NAACP v. Lee*, --- F. Supp. 3d ----, No. 4:21cv187-MW/MAF, 2021 WL 6072197, at *9 (N.D. Fla. 2021) (stating that plaintiffs must show "that they—*or their constituents*—are qualified individuals with a disability") (emphasis added). The Court sees no reason to carve out an exception in this case.

The State Defendants also argue that the OCA-GH Plaintiffs cannot assert Title II claims as third parties. ECF No. 240 at 22–24. This "argument conflates the merits of the suit with [their] standing to bring it." *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 613 (5th Cir. 2017). Thus, the State Defendants' discussion on standing is, for the most part, inapplicable in assessing whether the OCA-GH Plaintiffs have stated valid claims under Title II.[20]

---

[20] Indeed, "[a]n organization can seek relief under either an associational standing theory or an organizational standing theory." *US Inventor Inc. v. Hirshfeld*, 549 F. Supp. 3d 549, 555 (E.D. Tex. 2021).

The State Defendants further argue that the OCA-GH Plaintiffs have failed to state a Title II claim because neither the Secretary nor the Attorney General administer elections. ECF No. 240 at 24–25. On this point, the Court agrees with the State Defendants, to an extent. A *prima facie* case for discrimination under Title II requires a showing that the defendant public entity in some way provides the service or benefit at issue. *Ivy v. Williams*, 781 F.3d 250, 258 (5th Cir. 2015), *vacated and remanded as moot sub nom. Ivy v. Morath*, 137 S. Ct. 414 (2016). Although the Attorney General has authority to enforce criminal offenses under the Election Code as discussed *supra*, it is unclear whether and how he provides the service or benefit at issue in this case, namely voting and voting by mail. The OCA-GH Plaintiffs do not offer a compelling explanation in their complaint or briefing. Thus, the Court concludes that, in this case, the Attorney General does not provide the service or benefit at issue and will therefore dismiss the Attorney General as a defendant to the OCA-GH Plaintiffs' Title II claims only.[21]

The Secretary, however, certainly provides the service or benefit of voting and voting by mail. The Secretary "is the chief election officer of the state." TEX. ELEC. CODE § 31.001(a). As chief election officer, the Secretary must "obtain and maintain uniformity in the application, operation, and interpretation of this code and of the election laws outside this code." *Id.* § 31.003. "In performing this duty," the Election Code explains, "the secretary shall prepare detailed and comprehensive written directives and instructions relating to and based on this code and the election laws outside this code." *Id.* The Election Code also charges the Secretary with "distribut[ing] these materials to the appropriate state and local authorities having duties in the administration of these laws." *Id.* The Election Code further provides that the Secretary must "assist and advise all election authorities with regard to the application, operation, and

---

[21] The Court's finding does not extend to the OCA-GH Plaintiffs' claims under § 208 of the VRA and § 504 of the Rehabilitation Act against the Attorney General.

interpretation of this code and of the election laws outside this code." *Id.* § 31.004(a). The Secretary shall also "maintain an informational service for answering inquiries of election authorities relating to the administration of the election laws or the performance of their duties." *Id.* § 31.004(b).

The Election Code also requires the Secretary to "adopt standards of training in election law and procedure for presiding or alternate election judges[.]" *Id.* § 32.111(a)(1). Specifically, the Secretary must "develop materials for a standardized curriculum for that training; and distribute the materials as necessary to the governing bodies of political subdivisions that hold elections and to each county executive committee of a political party that holds a primary election." *Id.* §§ 32.111(a)(2)–(3). In addition, the Election Code states that a county clerk must "provide one or more sessions of training" to election judges and clerks. *Id.* § 32.114(a). The trainings that election judges and clerks must complete are premised upon "the standardized training program and materials developed and provided by the secretary of state[.]" *Id.* The Secretary must "schedule and provide assistance for the training of election judges and clerks" upon request by a county executive committee or a county clerk. *Id.* § 32.115. Moreover, the Election Code tasks the Secretary with taking "appropriate action to protect the voting rights of the citizens of this state from abuse by the authorities administering the state's electoral processes." *Id.* § 31.005(a). The Election Code empowers the Secretary as follows:

> (b) The secretary of state may order a person performing official functions in the administration of any part of the electoral processes to correct offending conduct if the secretary determines that the person is exercising the powers vested in that person in a manner that:
>
> (1) impedes the free exercise of a citizen's voting rights; or
>
> (2) unless acting under an order of a court of competent jurisdiction, delays or cancels an election that the person does not have specific authority to delay or cancel.

39

> (c) If a person described by Subsection (b) fails to comply with an order from the secretary of state under this section, the secretary may seek enforcement of the order by a temporary restraining order or a writ of injunction or mandamus obtained through the attorney general.

*Id.* §§ 31.005(b)–(c).

Based on these statutory duties, it is clear that the Secretary is responsible for providing the service or benefit of voting and voting by mail. Indeed, the Election Code lists him first under chapter 31, which is titled "Officers to Administer Elections." Thus, his statutory duties permit him to "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service" at issue in this case. 28 C.F.R. § 35.130(b)(1)(ii). In implementing and enforcing the Election Code provisions to obtain and maintain the uniformity of all election laws, the Secretary must not "[a]id or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program[.]" *Id.* § 35.130(b)(1)(v). This includes, as the Election Code expressly requires, his provision of assistance to counties and local officials. Moreover, the Secretary may not "utilize criteria or methods of administration: (i) [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability" when issuing directives, distributing election materials, and protecting voting rights. *Id.* § 35.130(b)(3). If he fails to do so, as the OCA-GH Plaintiffs allege in this case, then he is subject to liability under Title II.

The State Defendants have acknowledged in prior litigation that the "Secretary of State is the chief election officer, specially charged with administering elections." *Veasy v. Perry*, 29 F. Supp. 3d 896, 923 (S.D. Tex. 2014). But they now contend otherwise, arguing that "local election officials, not the Secretary . . . administer Texas elections." ECF No. 240 at 24. They cite *Ivy* and

22-50775.10702

*Lightbourn* to support their contention. *Id.* at 24–25. Both of these cases, however, are inapposite. Moreover, neither of these cases forecloses the possibility that the Secretary, in addition to local officials, is responsible for providing a service or benefit under Title II.

In *Ivy*, a class of hearing impaired individuals filed suit against the Texas Education Agency ("TEA") for violations of Title II. 781 F.3d at 251, 254. "In Texas, individuals under the age of 25 cannot obtain driver's licenses unless they submit a driver education certificate to the Department of Public Safety[.]" *Id.* at 252 (citing Tex. Transp. Code § 521.1601). The requisite driver education certificate is "only available from private driver education schools licensed by the TEA." *Id.* The plaintiffs requested injunctive relief requiring the TEA to bring driver education into compliance with Title II. *Id.* at 251. In response, the TEA filed a motion to dismiss for want of jurisdiction and for failure to state a claim. *Id.* at 253. The district court denied the TEA's motion, but certified its order for immediate appeal. *Id.* at 251.

On appeal, the Fifth Circuit considered whether the plaintiffs had failed to state a Title II claim. *Id.* at 254–58. The panel first observed that Title II prohibits a public entity from excluding a qualified individual with a disability from its services, programs, or activities because of the individual's disability. *Id.* at 254–55 (citing 42 U.S.C. § 12132). It then articulated the relevant legal issue as "whether the named plaintiffs have been 'excluded from participation in or . . . denied the benefits of the services, programs, or activities of [the TEA].'" *Id.* at 255 (alterations in original) (quoting 42 U.S.C. § 12132). "To answer that question," the panel made clear, "we must decide whether driver education is a service, program, or activity of the TEA." *Id.* "Although this [was] a close question[,]" the Fifth Circuit held that driver education was not a service, program, or activity of the TEA. *Id.*

41

In reaching its holding, the Fifth Circuit considered the plain text of Title II and interpretive guidance from the Department of Justice ("DOJ").[22] *See id.* at 255–57. The Fifth Circuit interpreted the phrase "services, programs, or activities of a public entity" in Title II to mean "what 'services, programs, or activities' are provided by the public entity." *Id.* (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)). The panel found it significant that "the TEA itself does not teach driver education, contract with driver education schools, or issue driver education certificates to individual students." Because the TEA's program "provide[d] the licensure and regulation of driving education schools, not driver education itself[,]" the Fifth Circuit found that the text of Title II "suggests that driver education is not a program, service, or activity of the TEA." *Id.*

Interpretive guidance from the DOJ "stated that a public entity is not accountable for discrimination in the employment or other practices of [a company licensed by the public entity], if those practices are not the result of requirements or policies established by the [public entity]." *Id.* at 256 (alterations in original) (quotation marks and citation omitted). The panel observed that the plaintiffs had alleged that it was "the TEA's *failure* to establish requirements or policies [that] allowed private driver education schools to be inaccessible." *Id.* (emphasis in original). The Fifth Circuit therefore determined that "the DOJ's interpretive guidance indicates that the TEA is not accountable for the driver education schools' inaccessibility because the TEA's requirements and policies have not caused it." *Id.*

Here, whether the Secretary provides voting and vote-by-mail services is not a close question. The Election Code makes clear that voting in person and by mail are services or benefits that the Secretary provides. The Secretary has a concrete and specific role in the administration of

---

[22] The Fifth Circuit also considered federal regulations and caselaw construing contractual and agency relationships between private and public entities. *See Ivy*, 781 F.3d at 255–58. Federal regulations, however, did not provide clarity, and contractual and agency relationships are not relevant here.

elections throughout Texas and oversees voting processes and procedures. Indeed, the Election Code, including many of the S.B. 1 provisions that the OCA-GH Plaintiffs challenge in this case, requires the Secretary to implement the Election Code itself by way of rules and requirements. In other words, the Election Code charges the Secretary with administering elections.

Further, the Secretary's duties under the Election Code constitute far more than the mere licensing that the Fifth Circuit found insufficient in *Ivy*. The Secretary must provide voting and vote-by-mail services and must do so in a specific and particular manner pursuant to the Election Code. Indeed, it is precisely because of the Secretary's statutory obligation to implement and enforce the Election Code that, according to the OCA-GH Plaintiffs, he is subject to liability under Title II. Whereas the plaintiffs in *Ivy* claimed that the TEA had failed to establish requirements or policies to counteract disability discrimination, the OCA-GH Plaintiffs in this case allege that the Secretary violates Title II by administering elections in accordance with the Election Code. They are *not* alleging that the Secretary has failed to establish requirements or policies that allow their disabled members to access voting and vote-by-mail services or benefits. Put differently, the OCA-GH Plaintiffs contend that the Secretary, in administering elections according to the specific procedures and processes the Election Code contemplates, discriminates against disabled voters.

It is for this reason that the State Defendants' reliance on *Lightbourn* is also misplaced. In that case, five visually impaired individuals, among others, filed a Title II suit for injunctive relief against the Secretary. *Lightbourn*, 118 F.3d at 423. The plaintiffs alleged that the Secretary "discriminated against them by failing to ensure that persons with visual and mobility impairments have access to 'polling sites and voting procedures.'" *Id.* In particular, they argued that Title II required the Secretary to provide them with the opportunity to vote in secret, without the assistance of an election worker or other person. *Id.* at 423–24, 431. The Fifth Circuit was not persuaded. It

framed the relevant legal issue as whether the Secretary had "a duty to ensure that local election authorities comply with the ADA." *Id.* at 427. The panel then consulted the Election Code to review the Secretary's duties under certain provisions and determined that "the Secretary ha[d] no duty under either Texas law or the ADA to take steps to ensure that local election officials comply with the ADA." *Id.* at 432.

But here, the duty at issue is the Secretary's mandate to administer elections according to the Election Code. The OCA-GH Plaintiffs are *not* alleging that the Secretary has a duty to take steps to ensure that local officials comply with the ADA. It is therefore not the case that the OCA-GH Plaintiffs "would impose supervisory liability on the [Secretary]." ECF No. 240 at 25. Rather, the Secretary is personally and potentially liable under Title II because *he* must administer elections in compliance with Election Code provisions that—the OCA-GH Plaintiffs allege—discriminate against disabled voters. *Lightbourn*, therefore, does not insulate the Secretary from the OCA-GH Plaintiffs' Title II claims.

Still, the State Defendants maintain that OCA-GH Plaintiffs' Title II claims must be dismissed because they "have not plausibly alleged that S.B. 1 actually discriminates against voters with disabilities[.]" *Id.* According to the State Defendants, no discrimination exists because "[d]isabled Texans have multiple options to vote in every election." *Id.* at 26. These alternatives, they submit, include voting in a polling place or at the curbside during early voting, in a polling place or at the curbside on Election Day, and by mail. *Id.* "After all," the State Defendants contend, "Plaintiffs have a right to vote, not a right to vote by their preferred method." *Id.* Their arguments miss the mark. The relevant question before the Court at this stage of the proceedings is whether the OCA-GH Plaintiffs have alleged sufficient facts showing that the challenged S.B. 1 provisions

44

violate Title II. The State Defendants' belief that the status quo already offers disabled voters meaningful access to vote—as Title II requires—is an argument for another day.

What is more, the OCA-GH Plaintiffs allege that the challenged provisions deny disabled voters not only equal and effective access to vote in person, but also equal and effective access to vote by mail. "Absentee and in-person voting are different benefits, and voters with disabilities are entitled to equal access to both." *Merrill v. People First of Ala.*, 141 S. Ct. 25, 27 (2020) (Sotomayor, J., dissenting); *see also Alexander v. Choate*, 469 U.S. 287, 301 (1985) ("The benefit itself, of course, cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled; to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made."); *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 506 (4th Cir. 2016) ("This case does not turn on whether there is a standalone right to vote privately and independently without assistance. Plaintiffs' argument is that defendants have provided such a benefit to non-disabled voters while denying that same benefit to plaintiffs on the basis of their disability."). Even assuming that the alternatives that the State Defendants identify constitute reasonable modifications under Title II, they do nothing for eligible disabled voters who are discriminated against when voting by mail. Surely, voting by mail cannot be a reasonable modification when, as the OCA-GH Plaintiffs plausibly allege, disabled voters who are eligible to vote by mail do not have meaningful access to actually do so because of their disabilities.

For these reasons, the State Defendants' contention that "Texas law allows for numerous accommodations for disabled voters" is also misplaced at this stage of litigation. ECF No. 240 at 26. The same goes for the State Defendants' argument that the OCA-GH Plaintiffs cannot state a valid Title II claim because "Texas law expressly prohibits election officials from interpreting the

45

Texas Election Code" in a manner that discriminates against disabled voters. *Id.* at 25. The question before the Court is whether the OCA-GH Plaintiffs have alleged sufficient facts to state valid Title II claims, not whether existing law—in the State Defendants' opinion—already provides meaningful access to vote in person and by mail, and precludes discrimination against disabled voters.

The Court, therefore, finds that the OCA-GH Plaintiffs have stated claims upon which relief may be granted under Title II of the ADA.

### ii. Congress acted pursuant to a valid grant of constitutional authority in enacting Title II of the ADA to prohibit discrimination in voting.

Having concluded that the OCA-GH Plaintiffs have stated valid Title II claims, the Court now considers which aspects of the State Defendants' alleged conduct violate Title II and to what extent such misconduct also violates the Fourteenth Amendment. *Block*, 952 F.3d at 617.

In *Lane*, the Supreme Court held "that Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority to enforce the guarantees of the Fourteenth Amendment." 541 U.S. at 533–34. In reaching its holding, the *Lane* Court considered the "constitutional right or rights that Congress sought to enforce when it enacted Title II." *Id.* at 522. The *Lane* Court observed that the Fourteenth Amendment requires that "all persons similarly situated should be treated alike[.]" *Id.* (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 439 (1985)). It then determined that Title II seeks to enforce this constitutional command by prohibiting discrimination against disabled persons. The *Lane* Court also found that Title II "seeks to enforce a variety of other basic constitutional guarantees, infringements of which are subject to more searching judicial review." *Id.* at 522–23. "These rights include some, like the right of access to the courts at issue in this case, that are protected by . . . the Fourteenth Amendment." *Id.* at 523. The *Lane* Court accordingly

46

concluded that in enacting Title II, Congress validly abrogated state sovereign immunity as it applies to Title II cases implicating the right of access to the courts. *Id.* at 533–34.

In this case, the OCA-GH Plaintiffs allege that certain S.B. 1 provisions discriminate against their disabled members by burdening their right to vote. "The Fourteenth Amendment has been interpreted to protect voters generally from laws that excessively burden the right to vote and the conduct of the political process." *Veasy v. Abbott*, 830 F.3d 216, 316 (5th Cir. 2016) (Jones, J., joined by Jolly, Smith, Clement, and Owen, JJ., concurring in part) (citing *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189–91 (2008); *Burdick v. Takushi*, 504 U.S. 428, 432–34 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 786–90 (1983)); *see also McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 807 (1969) ("[B]ecause of the overriding importance of voting rights, classifications 'which might invade or restrain them must be closely scrutinized and carefully confined' where those rights are asserted under the Equal Protection Clause[.]" (quoting *Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966)). Thus, it is clear that the State Defendants' alleged misconduct violates both Title II and the Fourteenth Amendment.

It is of no consequence that the OCA-GH Plaintiffs challenge S.B. 1 provisions pertaining to the State Defendants' vote-by-mail program. The Fourteenth Amendment, and the Equal Protection Clause in particular, "extend to all action of the State denying equal protection of the laws, whatever the agency of the State taking the action, or whatever the guise in which it is taken." *Cooper v. Aaron*, 358 U.S. 1, 17 (1958) (citations omitted). The Election Code, in turn, provides that an eligible voter who has a physical condition that prevents them from appearing at a polling place on an election day without a likelihood of needing personal assistance or of injuring their health has a right to vote by mail. TEX. ELEC. CODE § 82.002(a)(1). Therefore, voting by mail in Texas is state action subject to the constitutional guarantees found in the Fourteenth Amendment.

47

Accordingly, the Court finds that Congress acted pursuant to a valid grant of constitutional authority in enacting Title II to prohibit discrimination in voting. Thus, state sovereign immunity presents no obstacle to the OCA-GH Plaintiffs' Title II claims against the Secretary.

### b.  The OCA-GH Plaintiffs' claim under § 208 of the VRA.

The Fifth Circuit "has held that the Voting Rights Act, 'which Congress passed pursuant to its Fifteenth Amendment enforcement power, validly abrogated state sovereign immunity.'" *Mi Familia Vota*, 977 F.3d at 469 (quoting *OCA-Greater Hous.*, 867 F.3d at 614). State sovereign immunity, therefore, does not bar the OCA-GH Plaintiffs' claim under § 208 of the VRA against the Secretary and the Attorney General.

### 3.  Texas accepted federal funds and therefore waived sovereign immunity for the OCA-GH Plaintiffs' claims under § 504 of the Rehabilitation Act against the Secretary and the Attorney General.

A state waives its sovereign immunity to claims under § 504 of the Rehabilitation Act by accepting federal funds. *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 281 (5th Cir. 2005). The OCA-GH Plaintiffs allege that the State Defendants "receive federal financial assistance or funding[.]" ECF No. 200 ¶ 53. They also allege that, in 2020, Texas received $26,064,574 in funding through the Help America Vote Act and $24,546,840 pursuant to the CARES Act. *Id.* These allegations sufficiently show, at this stage of the proceedings, that the State Defendants accepted federal funds. Thus, state sovereign immunity does not bar the OCA-GH Plaintiffs' claims under § 504 of the Rehabilitation Act.[23]

---

[23] State sovereign immunity belongs to the state and extends to its officials. *See Can. Hockey, L.L.C. v. Tex. A&M Univ. Athletic Dep't*, No. 20-20503, 2022 WL 445172, at *3 (5th Cir. 2022) ("State sovereign immunity divests federal courts of jurisdiction over states and their agencies and instrumentalities, unless *the state* consents to suit[.]") (emphasis added). Thus, by accepting federal funds, Texas waived the Secretary's and the Attorney General's immunity for claims under § 504 of the Rehabilitation Act. Whether a specific state entity receives or directly benefits from federal financial assistance is a different question and more properly assessed under Rule 12(b)(6). "[A] plaintiff may not predicate a § 504 claim against a state actor on the mere fact that the state itself obtains federal money." *Lightbourn*, 118 F.3d at 427. The OCA-GH Plaintiffs have alleged that the Secretary and the Attorney General

22-50775.10710

In sum, state sovereign immunity does not bar the OCA-GH Plaintiffs' claims under § 101 of the CRA, the First and Fourteenth Amendments, Title II of the ADA, § 208 of the VRA, and § 504 of the Rehabilitation Act. However, the Court will dismiss the OCA-GH Plaintiffs' Title II claims against the Attorney General for failure to state a claim.

**B.   The OCA-GH Plaintiffs have sufficiently shown that they have standing.**

It is well settled that a plaintiff invoking a federal court's jurisdiction must establish standing by satisfying three irreducible requirements. *Lujan*, 504 U.S. at 560. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Juridical entities may satisfy these requirements under an associational or organizational theory of standing. *OCA-Greater Hous.*, 867 F.3d at 610. At the pleading stage, "the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician*, 691 F.3d at 652. Where, as here, the plaintiffs challenge several provisions in a statute, they must plead "all the elements of standing for each provision they seek to challenge." *In re Gee*, 941 F.3d 153, 162 n.4 (5th Cir. 2019). Further, where, as here, multiple plaintiffs seek injunctive relief, only one needs to establish standing for each claim asserted. *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006).

Here, OCA-GH is a named plaintiff for all claims that the OCA-GH Plaintiffs assert against the Secretary and the Attorney General. Therefore, the OCA-GH Plaintiffs need only allege a plausible set of facts establishing that OCA-GH has standing to assert these claims against the Secretary and the Attorney General.

---

received federal financial assistance or funding. Their claim under § 504 of the Rehabilitation Act, therefore, is not subject to dismissal pursuant to Rule 12(b)(6) for failure to allege that the specific state entity receives federal funds.

The OCA-GH Plaintiffs have sufficiently shown that OCA-GH has organizational standing to assert each claim and challenge each S.B. 1 provision at issue in this case. Organizational standing exists if the entity itself "meets the same standing test that applies to individuals." *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999).

### 1. Injury in fact

Under an organizational theory of standing, an organization may establish an injury in fact by alleging "a drain on its resources resulting from counteracting the effects of the defendant's actions." *La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 305 (5th Cir. 2000). That is precisely what the OCA-GH Plaintiffs have alleged in this case.

OCA-GH "is a national membership-driven civil rights organization of community advocates dedicated to advancing the social, political, and economic well-being of Americans of Asian and Pacific Island descent ('AAPIs')." ECF No. 200 ¶ 14. It is one of the many chapters and college affiliates across the country, whose mission is: "(1) to advocate for social justice, equal opportunity, and fair treatment; (2) to promote civic participation, education, and leadership; (3) to advance coalitions and community building; and (4) to foster cultural heritage." *Id.* The organization's usual activities include fundraising and programming, with the express goal of empowering the AAPI community. *Id.* ¶ 15. It fulfills its mission through leadership training, education workshops, arts and cultural events, advocacy campaigns, voting rights initiatives, legal clinics, internships, scholarships, mentorship, and civic engagement. *Id.*

The OCA-GH Plaintiffs allege that each of the S.B. 1 provisions that they challenge in this case will harm OCA-GH. *Id.* ¶ 17. They contend that the challenged provisions will "frustrate OCA-GH's mission of promoting civic participation among the AAPI community, including expanding voter registration and increasing voter turnout among AAPI voters, [by] forcing OCA-

50

GH to expend its resources counteracting SB 1's various unlawful effects." *Id.* Because of the challenged provisions, OCA-GH must divert resources away from its usual activities "and instead direct resources toward educating and helping volunteers and voters navigate those provisions' new burdensome restrictions on mail-in voting and assistance for non-English speakers, and the criminal and civil penalties associated with those provisions." *Id.* As a result, "OCA-GH will spend less time and money on its normal programming efforts . . . and will reach fewer voters overall." *Id.* But for the challenged provisions, "OCA-GH would not have to conduct this type of public education[.]" *Id.*

The OCA-GH Plaintiffs further allege that section 7.04 "will also directly harm OCA-GH by infringing on the organization's right to engage in political speech and expression." *Id.* ¶ 18. To address this infringement, "OCA-GH will need to curtail its activities, including canvassing voters' homes, providing volunteers with food, water, or gifts that may be construed as 'compensation,' hosting candidate and issues forums, and other in-person interactive activities meant to promote democratic engagement and grassroots political change, or else risk incurring and exposing members to criminal and civil penalties." *Id.* These allegations sufficiently show that OCA-GH has suffered cognizable organizational injuries.

Thus, the OCA-GH Plaintiffs have adequately alleged that OCA-GH has suffered cognizable organizational injuries based on a diversion-of-resources theory and under the First Amendment to assert each claim challenging each of the S.B. 1 provisions at issue in this case. "Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests[.]"[24] *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see also*

---

[24] To the extent that the State Defendants argue that the OCA-GH Plaintiffs have failed to identify an injury for each challenged provision, "[w]hat the State Defendants fail to appreciate is that the organizational injury the

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) ("If a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact[.]").

### 2. Causation and redressability

Whether the OCA-GH Plaintiffs' cognizable organizational injuries are fairly traceable to and redressable by the Secretary and the Attorney General is a straightforward inquiry. The invalidity of a Texas election statute is, without question, fairly traceable to and redressable by the Secretary. *OCA-Greater Hous.*, 867 F.3d at 613. Further, the credible threat of enforcing the challenged S.B. 1 provisions, as discussed in the Court's *Ex parte Young* analysis *supra*, is fairly traceable to the Attorney General, who has authority to prosecute election law offenses.[25] An injunction prohibiting the Attorney General from enforcing these provisions will, at least partly, redress the injuries that the OCA-GH Plaintiffs have suffered. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) ("[T]he ability to effectuate a partial remedy satisfies the redressability requirement." (quotation marks and citation omitted)).

The State Defendants argue that the OCA-GH Plaintiffs' cognizable organizational injuries are not fairly traceable to nor redressable by the Secretary and the Attorney General. ECF No. 240 at 20–21. For the most part, their contentions echo those that they raised in asserting that the Secretary and the Attorney General are entitled to state sovereign immunity. *Id.* However, as the State Defendants observe, "Article III standing analysis and *Ex parte Young* analysis 'significantly overlap.'" *City of Austin*, 943 F.3d at 1002 (quoting *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div.*

---

[OCA-GH] Plaintiffs have alleged is the same for each of the S.B. 1 provisions they challenge." *La Unión del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR, 2022 WL 2706116, at *13 (W.D. Tex. July 12, 2022).

[25] *Paxton v. Longoria*, No. 22-0224, 2022 WL 2080867 (Tex. June 10, 2022) does not hold otherwise. There, the Texas Supreme Court concluded that the Attorney General does not have authority to seek civil penalties under section 31.129 of the Election Code against an election official "based solely on the fact of the parties' agreement that [the Attorney General] lacks authority to enforce Section 31.129[.]" *Longoria*, 2022 WL 2080867, at *7.

*of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017)). Therefore, for the same reasons discussed in the Court's *Ex parte Young* analysis *supra*, these arguments are unpersuasive.

The State Defendants also contend that *OCA-Greater Houston* only applies in cases considering the facial validity of a Texas election statute. ECF No. 240 at 15. To be sure, in *Texas Democratic Party v. Hughs*, 974 F.3d 570 (5th Cir. 2020) (per curiam), the Fifth Circuit noted that *OCA-Greater Houston* involved a facial challenge. *Id.* at 570–71. The panel did so after observing that an "important question" had not been resolved, namely "whether and to what extent *Ex parte Young*'s exception to sovereign immunity permits plaintiffs to sue the Secretary in an as-applied challenge to a law enforced by local officials." *Id.* at 570. But the panel did not resolve that important question. Rather, it held that the "openness of the question alone [was] sufficient reason to deny" the plaintiffs' request for summary affirmance of a district court order concluding that the Secretary was not entitled to state sovereign immunity. *Id.* at 571. Moreover, as discussed *supra*, the *Ex parte Young* exception to state sovereign immunity applies to the OCA-GH Plaintiffs' claims under § 101 of the CRA and the First and Fourteenth Amendments, Congress validly abrogated state sovereign immunity in enacting the VRA and Title II, and Texas has waived sovereign immunity under § 504 of the Rehabilitation Act. *Hughs*, therefore, is inapposite.

Equally unpersuasive is the State Defendants' argument that *OCA-Greater Houston* is not binding on the Court because, in their view, the panel failed to consider *Bullock v. Calvert*, 480 S.W.2d 367 (Tex. 1972). ECF No. 240 at 15–16. *Bullock*, according to the State Defendants, indicates that the Secretary's duties under the Election Code are "not a delegation of authority to care for any breakdown in the election process." *Id.* at 16 (citing *In re Hotze*, 627 S.W.3d 642, 649 (Tex. 2020) (citing *Bullock*, 480 S.W.2d at 372))). Their contention, however, is based on

conjecture and reads much into the opinion that cannot be supported by the panel's careful reasoning.

There is also no reason to ignore *OCA-Greater Houston* in response to a nonbinding concurring opinion of the Texas Supreme Court. *Id.* The State Defendants' belief that *OCA-Greater Houston* was "wrongly" decided has no bearing. *Id.* The Court "is bound by a circuit decision unless or until it is overturned by an en banc decision of the circuit court or a decision of the Supreme Court." *Perez v. Abbott*, 250 F. Supp. 3d 123, 139 (W.D. Tex. 2017) (citing *Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1211 (5th Cir. 1991)).

Finally, the State Defendants contend that the OCA-GH Plaintiffs' injuries are not fairly traceable to the Attorney General because whether the Attorney General will enforce the challenged S.B. 1 provisions is "highly speculative." ECF No. 240 at 21. But the OCA-GH Plaintiffs, as discussed *supra*, *have* sufficiently alleged that the Attorney General can and will enforce the challenged provisions. It is the Attorney General's credible threat of enforcement that harms the OCA-GH Plaintiffs and their members. *See Longoria v. Paxton*, --- F. Supp. 3d ----, No. SA:21-CV-1223-XR, 2022 WL 447573, at \*17 (W.D. Tex. 2022*), vacated and remanded on other grounds*, No. 22-50110, 2022 WL 2208519 (5th Cir. June 21, 2022) ("To be clear, the irreparable harm alleged in this case is not *actual* enforcement of the anti-solicitation provision; the harm is the chilling effect on Plaintiffs' speech that arises from the credible *threat* of enforcement.") (emphasis in original).

Moreover, the OCA-GH Plaintiffs allege that section 7.04 inhibits "core political speech" and that the "threat of criminal prosecution inhibits Plaintiffs' and their members' full exercise of their First Amendment rights." ECF No. 200 ¶¶ 220, 224. In the pre-enforcement context, the OCA-GH Plaintiffs need only allege "an intention to engage in a course of conduct arguably

affected with a constitutional interest, but proscribed by a statute, and . . . a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014). The OCA-GH Plaintiffs have done so.

Thus, the OCA-GH Plaintiffs have alleged sufficient facts to plausibly establish that OCA-GH has standing to sue the Secretary and the Attorney General under each of their claims challenging each of the S.B. 1 provisions at issue in this case.[26]

### C. The OCA-GH Plaintiffs have stated claims upon which relief may be granted under § 101 of the CRA and § 208 of the VRA.

Relying on *Alexander v. Sandoval*, 532 U.S. 275 (2001), the State Defendants argue that § 101 of the CRA and § 208 of the VRA do not create private causes of action.[27] ECF No. 55 at 25–31. The State Defendants further contend that, even if these statutes create private causes of action, nonvoting, organizational plaintiffs cannot enforce such causes of action. *Id.* The Court disagrees.

#### 1. Section 101 of the CRA creates a private cause of action.

The CRA enforces the constitutional right to vote. Among the protections the CRA affords is the "materiality" provision set forth under § 101, which provides:

> (2) No person acting under color of law shall—
>
> (B) deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election[.]

52 U.S.C. § 10101(a)(2)(B). The CRA defines the term "vote" broadly: it includes all action necessary to make a vote effective. *Id.* § 10101(a)(3)(A), (e). Section 101, therefore, prohibits state

---

[26] It is likely that all other OCA-GH Plaintiffs also have organizational standing.

[27] The State Defendants incorporate the arguments from their first motion to dismiss. *See* ECF No. 240 at 27. Although the Court denied the State Defendants' motion to dismiss on these points at the hearing held on November 16, 2021, the Court provides a more thorough explanation for its denial herein.

55

actors from denying a person's right to make their vote effective based on an error or omission that is not material to determining whether they are qualified to vote under state law.

Section 131(c) of the CRA authorizes the Attorney General of the United States to file a civil action in federal court "[w]henever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice which would deprive any other person of any right or privilege secured by" § 101. 52 U.S.C. § 10101(c). But "[p]rivate rights of action were recognized under the statute long before the 1957 amendment that *added* the provisions which *also* allows the [U.S] Attorney General to bring an enforcement action." *Tex. Democratic Party v. Hughs*, 474 F. Supp. 3d 849, 858 (W.D. Tex. 2020), *rev'd and remanded on other grounds*, 860 F. App'x 874 (5th Cir. 2021) (emphasis in original) (citing *Smith v. Allwright*, 321 U.S. 649, 651 (1944); *Chapman v. King*, 154 F.2d 460, 461 (5th Cir. 1946); *Mitchell v. Wright*, 154 F.2d 924, 925 n.1 (5th Cir. 1946)).

Congress granted the U.S. Attorney General the power to enforce the CRA "because enforcement purely by private parties was not enough, and the intent was to make enforcement stronger without taking anything away." *Id.* Indeed, the U.S. Attorney General "at that time introduced the legislation and testified before Congress that the additional enforcement provision would not impair the ability of private individuals to bring suit under the Act." *Id.*; *see also Civil Rights Act of 1957: Hearings on S. 83, an amendment to S. 83, S. 427, S. 428, S. 429, S. 468, S. 500, S. 501, S. 502, S. 504, S. 505, S. 508, S. 509, S. 510, S. Con. Res. 5 before the Subcomm. on Const. Rights of the Comm. on the Judiciary*, 85th Cong. 60–61, 67–73 (1957) (statement and testimony of the Hon. Herbert Brownell, Jr., Attorney General of the United States). Accordingly, it should come as no surprise that private plaintiffs have continued to assert claims under § 101, despite the U.S. Attorney General's clear enforcement authority. *Hughs*, 474 F. Supp. 3d at 858.

56

The Court finds support for its conclusion in the statute itself. "For a statute to create . . . private rights, its text must be 'phrased in terms of the persons benefitted.'" *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (quoting *Cannon v. Univ. of Chi.*, 441 U.S. 677, 692 n.13 (1979)). Section 101 states that "[n]o person acting under color of law shall deny the right of any individual to vote" because of an immaterial error or omission. 52 U.S.C. § 10101(a)(2)(B). "Undoubtedly, "the focus of the text is . . . the protection of each individual's right to vote." *Schwier v. Cox*, 340 F.3d 1284, 1298 (11th Cir. 2003). Moreover, it commands, by use of the term "shall," that state officials refrain from acting in a manner that violates the statute. In other words, § 101 imposes a duty upon state officials not to deny individuals their right to vote based on immaterial errors or omissions. This duty-creating language makes it all the more reasonable to impute to Congress an intent to create a private cause of action under § 101. *Gonzaga*, 536 U.S. at 284 n.3.

Further, neither the Supreme Court nor the Fifth Circuit have prohibited private plaintiffs from asserting claims under § 101.[28] *Hughs*, 474 F. Supp. 3d at 859. As such, "many courts have recognized a private right of action[.]" *Id.* Judicial recognition of private § 101 claims and Congress's clear intent not to foreclose private causes of action under § 101 establish that "[t]here is no reason to shield the type of violations at issue herein from the reach of private litigants." *Id.* That the U.S. Attorney General now has the authority to enforce § 101 "does not mean that private actions under § 101 are no longer available."[29] *Id.* "[R]epeals by implication are disfavored."

---

[28] *Vote.Org v. Callanen*, --- F.4th ----, No. 22-50536, 2022 WL 2389566, at *5 n.5 (5th Cir. 2022), does not hold otherwise. There, the Fifth Circuit granted a stay pending appeal of a district court's order for injunctive relief, finding that an Election Code provision violates both the CRA and the United States Constitution. *Vote.Org*, 2022 WL 2389566, at *1. In doing so, the Fifth Circuit expressly stated that it need not resolve whether § 101 "create[s] an implied cause of action or a private right enforceable in a § 1983 suit." *Id.*, at *5 n.5.

[29] Taking the State Defendants at their word would mean that neither private litigants nor the U.S. Attorney General could enforce the rights guaranteed in § 101 against Texas's highest election and enforcement officials. *See La Unión del Pueblo Entero v. Abbott*, No. 5:21-CV-0844-XR, 2022 WL 1651215, at *22 (W.D. Tex. May 24, 2022) (summarizing State Defendants' arguments that the U.S. Attorney General may not enforce § 101 against the Secretary or the Attorney General).

*Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 133 (1974). Therefore, the Court concludes that § 101 of the CRA creates a private cause of action.

### 2. Section 208 of the VRA creates a private cause of action.

"The Fifteenth Amendment guarantees that the 'right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude,' § 1, and it grants Congress the authority to 'enforce' these rights 'by appropriate legislation,' § 2." *Nw. Austin Mun. Utility Dist. No. One v. Holder*, 557 U.S. 193, 217 (2009) (quoting U.S. CONST. amend. XV, §§ 1–2). "Congress enacted the landmark Voting Rights Act of 1965, 79 Stat. 437, as amended, 52 U.S.C. § 10301 *et seq.*, in an effort to achieve at long last what the Fifteenth Amendment had sought to bring about 95 years earlier: an end to the denial of the right to vote based on race." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2330 (2021). "The Voting Rights Act is ambitious, in both goal and scope." *Id.* at 2351 (Kagan, J., dissenting). It contains comprehensive sections designed "to correct an active history of discrimination" and "deal with the accumulation of discrimination." *Thornburg v. Gingles*, 478 U.S. 30, 44 n.9 (1986) (quotation marks and citation omitted).

Section 208 provides that a "voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508. Organizations and private parties have also been permitted to enforce § 208 of the VRA. In *OCA-Greater Houston*, for instance, the plaintiff was a nonprofit organization conducting "Get Out the Vote" efforts among voters with limited English proficiency. 867 F.3d at 609. The suit alleged that a provision in the Election Code that restricted who could assist voters with limited English proficiency was preempted by § 208. *Id.* at 608. On the merits, the Fifth

Circuit held that the challenged provision "impermissibly narrows the right guaranteed by Section 208 of the VRA." *Id.* at 615. District courts outside of this Circuit have also confirmed that organizations and private plaintiffs may enforce § 208. *See Democracy N.C. v. N.C. State Bd. of Elections*, --- F. Supp. 3d ----, No. 1:20CV457, 2022 WL 715973, at *14 (M.D. N.C. 2022) (holding that person "sufficiently alleged a plausible claim that North Carolina's absentee ballot voting laws violate Section 208"); *Lee*, 2021 WL 6072197, at *9 (N.D. Fla. 2021) (holding that organizations stated a claim under § 208 of VRA); *Ark. United v. Thurston*, 517 F. Supp. 3d 777, 796–97 (W.D. Ark. 2021) (same); *Priorities USA v. Nessel*, 462 F. Supp. 3d 792, 816 (E.D. Mich. 2020) (same). Indeed, "every court that has considered the issue—and the Attorney General of the United States—agree[s] that private parties may enforce [§] 208." *Lee*, 2021 WL 6072197, at *9.

Further, the Court finds the *Lee* court's analysis on the question of whether § 208 creates a private cause of action persuasive. *See id.* at *7–9. The judicial task when assessing whether a statute creates a private cause of action is "to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 286. In 1975, Congress amended § 3 of the VRA "by striking out 'Attorney General' . . . and inserting in lieu thereof the following[:] 'Attorney General or an aggrieved person.'" Voting Rights Act Amendments of 1975, Pub. L. 94-73, 89 Stat. 404. In its current form, § 3 makes clear that "an aggrieved person" may institute "a proceeding under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment in any State[.]"[30] 52 U.S.C. § 10302(a). Section 3, therefore, plainly provides that a private plaintiff may initiate a lawsuit under any statute that enforces the Fourteenth and Fifteenth Amendments.

---

[30] Congress has also made clear that in "any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, *other than the United States*, a reasonable attorney's fees, reasonable expert fees, and other reasonable litigation expenses as part of the costs." 52 U.S.C. § 10310(e) (emphasis added).

59

"Congress clearly designed section 208 to enforce the Fourteenth Amendment's guarantees." *Lee*, 2021 WL 6072197, at *9. In *Lane*, the Supreme Court held that, upon enacting Title II, Congress validly abrogated state sovereign immunity under the Fourteenth Amendment because Title II sought to remedy, among other concerns, discrimination against disabled voters. 541 U.S. at 524, 533–34. The Supreme Court has also cautioned that, "because of the overriding importance of voting rights, classifications 'which might invade or restrain them must be closely scrutinized and carefully confined' where those rights are asserted under the Equal Protection Clause[.]" *McDonald*, 394 U.S. at 807 (quoting *Harper*, 383 U.S. at 670). Thus, since § 208 is, by its terms, a statute designed for enforcement of the guarantees of the Fourteenth Amendment, "Congress must have intended it to provide private remedies." *Morse v. Republican Party of Va.*, 517 U.S. 186, 234 (1996). Congress certainly envisioned that private remedies under § 208 would be enforceable under § 3 of the VRA, which again, provides that a private plaintiff may initiate a lawsuit under *any* statute that enforces the Fourteenth Amendment. *See Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2015) ("It is a commonplace of statutory interpretation that Congress legislates against the backdrop of existing law." (quotation marks and citation omitted)). Section 208, therefore, creates a private cause of action.

In sum, caselaw clearly establishes that organizations, like the OCA-GH Plaintiffs, have historically been able to enforce these provisions. Absent any compelling showing to the contrary, the Court is not inclined to deviate from firmly entrenched historical precedent that has permitted organizational plaintiffs to invoke these provisions. The OCA-GH Plaintiffs, therefore, have stated claims upon which relief may be granted under § 101 of the CRA and § 208 of the VRA.

## CONCLUSION

For the foregoing reasons, the Texas Secretary of State and the Texas Attorney General's motion to dismiss the claims that OCA-Greater Houston, League of Woman Voters of Texas, REVUP-Texas, and Workers Defense Action Fund have asserted against them (ECF No. 240) is hereby **GRANTED IN PART** and **DENIED IN PART** as follows:

Any and all claims challenging portions of section 6.04 of S.B. 1 that the district court enjoined in *OCA Greater Hous. v. Texas*, No. 1:15-CV-679-RP, 2022 WL 2019295 (W.D. Tex. June 6, 2022) are **MOOT**.

Any and all claims challenging section 6.05 of S.B. 1 are **DISMISSED WITHOUT PREJUDICE** on failure to state a claim grounds.

Any and all claims challenging section 7.04 of S.B. 1, as codified in sections 276.016, 276.017, 276.018, and 276.019 of the Texas Election Code, are **DISMISSED WITHOUT PREJUDICE** on failure to state a claim grounds.

Any and all claims under Title II of the Americans with Disabilities Act against the Texas Attorney General are **DISMISSED WITHOUT PREJUDICE** on failure to state a claim grounds.

All other claims that OCA-Greater Houston, League of Woman Voters of Texas, REVUP-Texas, and Workers Defense Action Fund have asserted against the Texas Secretary of State and the Texas Attorney General may proceed.

It is so **ORDERED**.

**SIGNED** this August 2, 2022.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

22-50775.10723

**Tab 7: Order on State Defendants' Motion to Dismiss LUPE Plaintiffs' Second Amended Complaint (ROA.10724-92)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

LA UNIÓN DEL PUEBLO ENTERO, et al., §
　　　　　　　　*Plaintiffs,* §
§
v. § 5:21-CV-0844-XR
§ [Consolidated Cases]
GREGORY W. ABBOTT, et al., §
　　　　　　　　*Defendants.* §

## ORDER

On this date, the Court considered the State of Texas, the Texas Secretary of State, and the Texas Attorney General's motion to dismiss all claims that La Unión del Pueblo Entero, Friendship-West Baptist Church, the Anti-Defamation League Austin, Southwest, and Texoma Regions, the Southwest Voter Registration Education Project, Texas Impact, the Mexican American Bar Association of Texas, Texas Hispanics Organized for Political Education, Jolt Action, the William C. Velasquez Institute, FIEL Houston Inc., and James Lewin have asserted against them (ECF No. 255). After careful consideration, the Court issues the following order.

## BACKGROUND

On September 7, 2021, Texas Governor Greg Abbott signed into law the Election Protection and Integrity Act of 2021, an omnibus election law commonly referred to as S.B. 1. *See* Election Integrity Protection Act of 2021, S.B. 1, 87th Leg., 2d Spec. Sess. (2021). Premised on the state legislature's authority to make all laws necessary to detect and punish fraud under article VI, section 4 of the Texas Constitution, S.B. 1 went into effect on December 2, 2021, and amended the Texas Election Code (the "Election Code") by altering various election practices and procedures pertaining to early voting, voting by mail, voter assistance, and more. *See generally id.*

22-50775.10724

Days before and after the Governor signed S.B. 1 into law, several private plaintiffs filed suit, alleging that certain provisions of S.B. 1 violate federal statutes and the United States Constitution.[1] This order addresses one of these suits filed by La Unión del Pueblo Entero ("LUPE"), Friendship-West Baptist Church, the Anti-Defamation League Austin, Southwest, and Texoma Regions, the Southwest Voter Registration Education Project, Texas Impact, the Mexican American Bar Association of Texas, Texas Hispanics Organized for Political Education, Jolt Action, the William C. Velasquez Institute, FIEL Houston Inc., and James Lewin (together, the "LUPE Plaintiffs"). *See* Compl., *La Unión del Pueblo Entero v. Abbott*, No. 5:21-CV-844-XR (W.D. Tex. 2021), ECF No. 1. The LUPE Plaintiffs challenge sections 2.04, 2.06, 2.07, 2.08, 2.11, 3.04, 3.09, 3.10, 3.12, 3.13, 4.01, 4.06, 4.07, 4.09, 5.07, 5.13, 6.01, 6.03, 6.04, 6.05, 6.06, 7.04, and 8.01 of S.B. 1. ECF No. 208 ¶¶ 219, 231, 243, 256, 267, 273, 287, 302, 311.[2]

On January 25, 2022, the LUPE Plaintiffs filed their second amended complaint against the State of Texas, the Texas Secretary of State (the "Secretary") in his official capacity, and the Texas Attorney General (the "Attorney General") in his official capacity (together, the "State Defendants").[3] ECF No. 208. They assert nine claims and allege as follows:

- Sections 2.04, 2.06, 2.07, 4.01, 4.06, 4.07, 4.09, 5.07, 5.13, 6.03, 6.04, 6.05, 6.06, and 7.04 violate the First and Fourteenth Amendments because the provisions impose an undue burden on the right to vote, and they name the Secretary and the Attorney General as defendants for this claim;

---

[1] For the purposes of judicial economy, the Court consolidated these cases under the above-captioned lead case. *See* ECF No. 31 (consolidating *OCA-Greater Houston v. Esparza*, No. 1:21-CV-780-XR (W.D. Tex. 2021); *Houston Justice v. Abbott*, No. 5:21-CV-848-XR (W.D. Tex. 2021); *LULAC Texas v. Esparza*, No. 1:21-CV-786-XR (W.D. Tex. 2021); and *Mi Familia Vota v. Abbott*, No. 5:21-CV-920-XR (W.D. Tex. 2021) under *La Unión del Pueblo Entero v. Abbott*, No. 5:21-CV-844-XR (W.D. Tex. 2021)); *see also* Order, *United States v. Texas*, No. 5:21-CV-1085-XR (W.D. Tex. Nov. 4, 2021), ECF No. 13.

[2] When citing to the parties' filings, the Court refers to paragraph numbers and ECF pagination.

[3] The LUPE Plaintiffs have also sued, in their official capacities, Dallas County Elections Administrator Michael Scarpello, El Paso County Elections Administrator Lisa Wise, Dallas County District Attorney John Creuzot, El Paso County District Attorney Yvonne Rosales, and Travis County District Attorney José Garza. ECF No. 208 ¶¶ 43–44; 48–50.

2

- Sections 2.04, 2.07, 2.08, 2.11, 3.04, 3.09, 3.10, 3.12, 3.13, 4.01, 4.06, 4.07, 4.09, 6.03, 6.04, 6.05, 6.06, and 7.04 violate the Fourteenth and Fifteenth Amendments because the provisions intentionally deny the right to vote on the basis of race, and they name the Secretary and the Attorney General as defendants for these two claims;

- Sections 4.01, 4.06, 4.07, 4.09, 6.03, 6.04, 6.05, 6.06, and 7.04 violate § 2 of the Voting Rights Act of 1965 ("VRA"), and they name Texas, the Secretary, and the Attorney General as defendants for this claim;

- Sections 6.01, 6.03, 6.04, 6.05, 6.06, and 7.04 violate § 208 of the VRA, and they name Texas, the Secretary, and the Attorney General as defendants for this claim;

- Sections 6.01, 6.03, 6.04, 6.05, 6.06, and 7.04 violate Title II of the Americans with Disabilities Act ("ADA"), and they name the Secretary and the Attorney General as defendants for this claim;

- Section 7.04 violates the First and Fourteenth Amendments because the provision is unconstitutionally vague and burdens free speech, and they name the Secretary and the Attorney General as defendants for this claim;

- Sections 4.09 and 8.01 violate the Fourteenth Amendment because the provisions are unconstitutionally vague, and they name the Secretary and the Attorney General as defendants for this claim; and

- Sections 6.01, 6.03, 6.04, 6.05, and 6.06 violate the First and Fourteenth Amendments because the provisions burden free speech, and they name the Secretary and the Attorney General as defendants for this claim.

*Id.* ¶¶ 218–314. The LUPE Plaintiffs seek to enjoin the State Defendants from enforcing each of the S.B. 1 provisions that they challenge under their constitutional and statutory claims. *Id.* at 89.

On February 15, 2022, the State Defendants filed a motion to dismiss all claims that the LUPE Plaintiffs have asserted against them. ECF No. 255. The LUPE Plaintiffs filed a response, ECF No. 301, and the State Defendants filed a reply, ECF No. 313. On March 18, 2022, the State

22-50775.10726

Defendants filed a notice of supplemental authority. ECF No. 333. Thereafter, on April 8, 2022, the LUPE Plaintiffs filed a response to the State Defendants' notice.[4] ECF No. 358.

## DISCUSSION

### I.  Legal Standards

The State Defendants move to dismiss the LUPE Plaintiffs' claims on four grounds. First, the State Defendants contend that state sovereign immunity bars the LUPE Plaintiffs from suing Texas, the Secretary, and the Attorney General. Second, the State Defendants claim that the LUPE Plaintiffs lack standing to bring this suit. Third, the State Defendants argue that the LUPE Plaintiffs have failed to state a claim upon which relief may be granted under Title II of the ADA. Finally, the State Defendants submit that §§ 2 and 208 of VRA do not create private causes of action.

### A.  Subject matter jurisdiction

Subject matter jurisdiction is a federal court's statutory or constitutional power to adjudicate a case.[5] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998). The Eleventh Amendment and the doctrine of sovereign immunity limit a federal court's jurisdiction. *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 688 (5th Cir. 2002). "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011). The doctrine of sovereign immunity "also prohibits suits against state officials or agencies that are effectively suits against a state." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). State sovereign immunity, however, "is not limitless[.]" *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 735 (5th Cir. 2020). "A State may waive its

---

[4] Though named as a defendant, Ms. Wise filed a response in opposition to the State Defendants' motion to dismiss the LUPE Plaintiffs' claims. ECF No. 302.

[5] Congress, by statute, has proclaimed that the "district courts shall have original jurisdiction of all civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331. The LUPE Plaintiffs assert claims against the State Defendants under federal law. The Court, therefore, is statutorily authorized to adjudicate this case.

4

sovereign immunity . . . and in some circumstances Congress may abrogate it by appropriate legislation." *Stewart*, 563 U.S. at 253–54 (citation omitted). Additionally, under *Ex parte Young*, 209 U.S. 123 (1908), "a litigant may sue a state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law." *Reeves*, 954 F.3d at 736.

Article III of the United States Constitution also limits a federal court's constitutional power to adjudicate a case. It "gives federal courts the power to adjudicate only genuine 'Cases' and 'Controversies.'" *California v. Texas*, 141 S. Ct. 2104, 2113 (2021) (quoting U.S. CONST. art. III, § 2). The "case-or-controversy requirement is satisfied only where a plaintiff has standing." *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 273 (2008). Standing, therefore, "is a component of subject matter jurisdiction." *HSBC Bank USA, N.A. as Tr. for Merrill Lynch Mortg. Loan v. Crum*, 907 F.3d 199, 202 (5th Cir. 2018). It provides definition to the constitutional limits of subject matter jurisdiction, *Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015), by identifying "those disputes which are appropriately resolved through the judicial process," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quotation marks and citation omitted).

A federal court must consider a motion to dismiss for lack of subject matter jurisdiction "before other challenges 'since the court must find jurisdiction before determining the validity of the claim.'" *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (quoting *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 450 (6th Cir. 1988)). The federal court may dismiss an action for lack of subject matter jurisdiction "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). At the pleading stage, "the

5

plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012).

### B. Failure to state a claim

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of claims for failure to state a claim upon which relief may be granted. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint must be taken as true and must be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n.*, 987 F.2d 278, 284 (5th Cir. 1993). The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555.

## II. Analysis

The Court addresses each of the State Defendants' four grounds for dismissal, beginning, as it must, with their jurisdictional contentions.

### A. State sovereign immunity does not bar the LUPE Plaintiffs' claims against Texas, the Secretary, and the Attorney General.

The State Defendants claim that state sovereign immunity bars the LUPE Plaintiffs' claims against Texas, the Secretary, and the Attorney General. ECF No. 255 at 8–17. They emphasize that the LUPE Plaintiffs cannot satisfy the *Ex parte Young* exception to state sovereign immunity.

6

*Id.* at 8–16. The State Defendants also contend that the LUPE Plaintiffs have failed to demonstrate an alternative exception to state sovereign immunity. *Id.* at 16–17.

1. **The *Ex parte Young* exception to state sovereign immunity permits the LUPE Plaintiffs to sue the Secretary and the Attorney General for most of the S.B. 1 provisions that they challenge on constitutional grounds.**

State sovereign immunity under the Eleventh Amendment generally precludes suits against state officials in their official capacities. *City of Austin*, 943 F.3d at 997. The *Ex parte Young* exception to state sovereign immunity, however, allows private parties to bring "suits for injunctive or declaratory relief against individual state officials acting in violation of federal law." *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013). The Supreme Court has counseled that, "[i]n determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (alterations on original) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., joined by Scalia and Thomas, JJ., concurring in part and concurring in judgment)). The Supreme Court has also made clear that, for the *Ex parte Young* exception to apply, the state official, by virtue of his office, must have "some connection with the enforcement" of the challenged law. *Young*, 209 U.S. at 157.

Despite the straightforward inquiry that the Supreme Court envisioned, the Fifth Circuit has acknowledged that its own decisions "are not a model of clarity on what 'constitutes a sufficient connection to enforcement.'" *Tex. Democratic Party v. Abbott* (*Tex. Democratic Party I*), 961 F.3d 389, 400 n.21 (5th Cir. 2020) (quoting *City of Austin*, 943 F.3d at 999). Nevertheless, the Fifth Circuit has articulated some general rules. For instance, the Fifth Circuit has stated that "it is not enough that the official have a '*general* duty to see that the laws of the state are

7

implemented.'" *Id.* at 400–01 (emphasis in original) (quoting *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014)). The Fifth Circuit has also determined that, "[i]f the official sued is not statutorily tasked with enforcing the challenged law, then the requisite connection is absent and our *Young* analysis ends." *Id.* at 401 (quotation marks and citation omitted). "Moreover," according to the Fifth Circuit, "a mere connection to a law's enforcement is not sufficient—the state officials must have taken some step to enforce." *Id.*

The Fifth Circuit has further explained that plaintiffs must at least "show the defendant has 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Tex. Democratic Party v. Abbott* (*Tex. Democratic Party II*), 978 F.3d 168, 179 (5th Cir. 2020) (quoting *Morris*, 739 F.3d at 746). Put differently, the state "official must be 'statutorily tasked with enforcing the challenged law[,]'" *id.* (quoting *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020), *cert. granted, judgment vacated sub nom. Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 161 (2021)), though whether the particular duty to enforce the statute in question "arises out of the general law, or is specially created by the [statute] itself, is not material so long as it exists[,]" *Young*, 209 U.S. at 157. "Enforcement typically means 'compulsion or constraint.'" *Tex. Democratic Party II*, 978 F.3d at 179 (quoting *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010)). "A 'scintilla of "enforcement" by the relevant state official with respect to the challenged law' will do." *Id.* (quoting *City of Austin*, 943 F.3d at 1002). In short, "if an 'official *can* act, and there's a significant possibility that he or she *will* . . . , the official has engaged in enough compulsion or constraint to apply the *Young* exception.'" *Tex. Democratic Party I*, 961 F.3d at 401 (emphasis in original) (quoting *City of Austin*, 943 F.3d at 1002).

Here, the LUPE Plaintiffs assert six claims under the First, Fourteenth, and Fifteenth Amendments against the Secretary and the Attorney General. ECF No. 208 ¶¶ 218–54, 286–314.

8

They do so pursuant to 42 U.S.C. § 1983, which "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). Congress has not abrogated state sovereign immunity under § 1983. *Raj*, 714 F.3d at 328. Nonetheless, the LUPE Plaintiffs may institute a § 1983 action for prospective injunctive relief consistent with the *Ex parte Young* exception to state sovereign immunity. *Edelman v. Jordan*, 415 U.S. 651, 677 (1974).

> ### a. The LUPE Plaintiffs have shown that the Secretary has a sufficient enforcement connection to all but one of the S.B. 1 provisions that they challenge on constitutional grounds.

"Determining whether *Ex parte Young* applies to a state official requires a provision-by-provision analysis[.]"[6] *Tex. Democratic Party II*, 978 F.3d at 179. "[T]he official must have the requisite connection to the enforcement of the particular statutory provision that is the subject of the litigation." *Id.* "This is especially true here because the Texas Election Code delineates between the authority of the Secretary of State and local officials." *Id.*

Thus, the question before the Court at this stage of the proceedings is whether the LUPE Plaintiffs have alleged a plausible set of facts establishing that the Secretary has a sufficient enforcement connection to each of the S.B. 1 provisions that they challenge on constitutional grounds—that is, whether the LUPE Plaintiffs have plausibly established that the Secretary can and will enforce each of these provisions.

---

[6] The State Defendants contend that the LUPE Plaintiffs must, at the pleading stage, establish that the *Ex parte Young* exception applies to a state official on a provision-by-provision basis. ECF No. 255 at 8; ECF No. 313 at 7; *see also* ECF No. 333 at 2. They rely on *Texas Democratic Party II* and *Texas Alliance for Retired Americans v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022), for their assertion. Neither of these cases, however, specifically hold that the *Ex parte Young* exception to state sovereign immunity *must* be assessed on a provision-by-provision basis at the pleading stage. Rather, these cases discuss the *Ex parte Young* exception to state sovereign immunity in reviewing the validity of a district court's injunction. Indeed, the Fifth Circuit has made clear that, at the pleading stage, plaintiffs need only allege a plausible set of facts establishing the Court's jurisdiction. *Physician Hosps. of Am.*, 691 F.3d at 652. Nevertheless, in resolving the instant motion to dismiss, the Court assumes, but does not decide, that the LUPE Plaintiffs must, at this stage of the proceedings, establish that the *Ex parte Young* exception to state sovereign immunity applies on a provision-by-provision basis.

### i. The LUPE Plaintiffs have plausibly established that the Secretary can enforce all but one of the S.B. 1 provisions that they challenge on constitutional grounds.

The LUPE Plaintiffs name the Secretary as a defendant for their claims challenging sections 2.04, 2.06, 2.07, 2.08, 2.11, 3.04, 3.09, 3.10, 3.12, 3.13, 4.01, 4.06, 4.07, 4.09, 5.07, 5.13, 6.01, 6.03, 6.04, 6.05, 6.06, 7.04, and 8.01 of S.B. 1 under the First, Fourteenth, and Fifteenth Amendments. ECF No. 208 ¶¶ 219, 231, 243, 287, 302, 311.

A state official is most clearly tasked with enforcing a statute when the state official is "specially charged with the duty to enforce the statute[.]" *Young*, 209 U.S. at 158. Sections 2.06, 2.07, and 2.08 charge the Secretary with enforcing these provisions.

Most clearly, section 2.08 provides that the Secretary must report suspected election law offenses to the Attorney General. TEX. ELEC. CODE § 31.006(a). The provision requires the Secretary to "deliver to the attorney general all pertinent documents and information in the secretary's possession." *Id.* Undoubtedly, the Secretary is statutorily tasked with enforcing a provision that expressly requires him to report suspected election law offenses for prosecution.

The Secretary is also statutorily tasked with enforcing sections 2.06 and 2.07, which establish additional procedures for the maintenance of voter rolls. The Election Code provides:

> The secretary of state shall enter into an agreement with the Department of Public Safety under which information in the existing statewide computerized voter registration list is compared against information in the database of the Department of Public Safety on a monthly basis to verify the accuracy of citizenship status information previously provided on voter registration applications. In comparing information under this subsection, the secretary of state shall consider only a voter's information in the database of the Department of Public Safety that was derived from documents presented by the voter to the department after the person's current voter registration became effective, and may not consider information derived from documents presented by the voter to the department before the person's current voter registration became effective.

10

*Id.* § 16.0332(a-1). Upon receiving notice from the Secretary of a voter whose citizenship is in question based on the Secretary's comparison of voter registration and Department of Public Safety records, voter registrars must deliver a written notice to the voter, requiring them to submit "proof of United States citizenship in the form of a certified copy of the voter's birth certificate, United States passport, or certificate of naturalization or any other form prescribed by the secretary of state." *Id.* § 16.0332(a). The Election Code makes clear that the Secretary "shall prescribe rules for the administration of this section." *Id.* § 16.0332(d). In addition, "[n]ot later than December 31 of each year, the secretary of state shall provide a report to the legislature of the number of voter registrations canceled under this section during the calendar year." *Id.* § 16.0332(e).

Moreover, the Secretary is statutorily responsible for ensuring that voter registrars substantially comply with his rules and requirements implementing the statewide computerized voter registration list. *Id.* § 18.065(a). This necessarily includes the Secretary's rules and requirements pertaining to notices that he sends to voter registrars pursuant to section 2.07. Indeed, section 2.07 directs the Secretary to provide notice to voter registrars if he determines that a voter on the statewide computerized voter registration list is no longer "a resident of the county in which the voter is registered to vote[.]" *Id.* § 18.068(a).

Furthermore, section 2.06 requires the Secretary to sanction a voter registrar if he determines that the voter registrar failed to substantially comply with his rules or requirements implementing the statewide computerized voter registration list. *Id.* § 18.065(e). Specifically, for the first violation, the Secretary must require the voter registrar to attend a training course on compliance. *Id.* § 18.065(e)(1). Section 2.06 tasks the Secretary with developing and implementing the training program. *Id.* § 18.065(h). In the event of a second violation, the Secretary must "audit the voter registration list for the county in which the registrar serves to determine the actions

11

needed to achieve substantial compliance . . . and provide the results of the audit to the registrar[.]" *Id.* § 18.065(e)(2). For a third or any subsequent violation, if the Secretary determines that the voter registrar, within fourteen days of receiving the results of his audit, "has not performed any overt actions in pursuance of compliance with the actions identified" in those results, then he must "inform the attorney general that the county which the registrar serves may be subject to a civil penalty[.]" *Id.* § 18.065(e)(3). Section 2.06 also makes clear that the Secretary "shall adopt rules and prescribe procedures for the implementation of this section." *Id.* § 18.065(i). Thus, sections 2.06 and 2.07 plainly establish that the Secretary is statutorily tasked with enforcing the same.[7]

However, for the *Ex parte Young* exception to apply, "[t]he text of the challenged law need not actually state the official's duty to enforce it[.]" *City of Austin*, 943 F.3d at 997–98. It is enough that the state official's duty "arises out of the general law[.]" *Young*, 209 U.S. at 157. The Supreme Court's directive in *Young* is especially relevant in this case, where the Election Code includes several provisions that clearly empower the Secretary with duties to specifically enforce the remaining S.B. 1 provisions that the LUPE Plaintiffs challenge on constitutional grounds.

For instance, section 5.07 establishes new requirements for vote-by-mail applications. In *Texas Democratic Party II*, the Fifth Circuit considered whether state sovereign immunity barred a challenge to an Election Code provision pertaining to vote-by-mail applications. Specifically, the plaintiffs alleged that an Election Code provision permitting only voters over the age of sixty-five to vote by mail was unconstitutional under the Twenty-Sixth Amendment. *Tex. Democratic Party II*, 978 F.3d at 174. The question before the Fifth Circuit was whether the district court erred

---

[7] The State Defendants describe the Secretary's duties under sections 2.06, 2.07, and 2.08 as merely "sharing information" that "does not involve 'compulsion or constraint' and is therefore not enforcement." ECF No. 255 at 10–11. That is incorrect. The provisions plainly establish that the Secretary is statutorily required to subject individuals, whom he believes have engaged in election law offenses, to prosecution. They also require the Secretary to impose sanctions upon voter registrars whom, in his estimation, have not complied with his rules and requirements implementing the statewide computerized voter registration list. There can be no clearer example of compulsion or constraint and therefore enforcement.

in requiring the Secretary to allow voters who are otherwise qualified to vote, but under the age of sixty-five, to vote by mail. *Id.*

To determine whether the Secretary was entitled to state sovereign immunity, the panel consulted the Election Code and observed that the Secretary "has the specific and relevant duty to design the application form for mail-in ballots . . . and to provide that form to local authorities and others who request it." *Id.* at 179 (citing TEX. ELEC. CODE §§ 31.002(a)–(b)). It further noted that the Election Code requires the Secretary to "furnish forms to those who request them for distribution to others." *Id.* at 179–80 (citing TEX. ELEC. CODE § 84.013). The panel also found it significant that the Election Code requires local officials "to use the Secretary's absentee-ballot form outside of emergency situations[.]" *Id.* at 180 (citing TEX. ELEC. CODE § 31.002(d)). Based on these duties found throughout the Election Code, the Fifth Circuit found that "the Secretary has the authority to compel or constrain local officials based on actions []he takes as to the application form."[8] *Id.* The Fifth Circuit therefore held that, notwithstanding the division of responsibilities among the Secretary and local officials, the Secretary had a sufficient enforcement connection to the vote-by-mail provision at issue, justifying application of the *Ex parte Young* exception to state sovereign immunity as to the Secretary. *Id.*

The same conclusion is warranted here. The Election Code now generally requires an applicant to submit their driver's license, election identification certificate, or personal identification card number on their vote-by-mail application. TEX. ELEC. CODE § 84.002(a)(1-a). Indeed, it expressly states that a vote-by-mail application must include a space for an applicant to

---

[8] The State Defendants argue that the LUPE Plaintiffs have failed to allege how the Secretary compels or constrains the LUPE Plaintiffs themselves. ECF No. 313 at 8. But they need not do so. The Fifth Circuit found it sufficient in *Texas Democratic Party II* that the Secretary compelled and constrained local officials. *See also Tex. Alliance for Retired Ams.*, 28 F.4th at 672 ("If the official does not compel or constrain *anyone* to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation.") (emphasis added).

13

22-50775.10736

enter the required identification information. *Id.* § 84.001(a)(3-a). Section 5.07 provides that an early voting clerk must reject the applicant's vote-by-mail application if the required identification information on their application is either missing or does not match the identification information that the applicant previously provided on their voter registration application. *Id.* § 86.001(f).

As *Texas Democratic Party II* explained and the LUPE Plaintiffs allege, the Secretary is statutorily required to prescribe the design and content of "the forms necessary for the administration" of the Election Code. *Id.* § 31.002(a); *see also* ECF No. 208 ¶ 27. The forms "must enhance the ability of a person to understand the applicable requirements and to physically furnish the required information in the space provided." TEX. ELEC. CODE § 31.002(a). The Secretary must furnish samples of these forms to "the appropriate authorities who have administrative duties under this code; and other persons who request a form for duplication." *Id.* § 31.002(b). The Secretary must also maintain a supply of these forms and provide them to individuals and organizations that request them for distribution to voters. *Id.* § 84.013. Local officials must then use these forms, except in an emergency. *Id.* § 31.002(d).

It therefore follows that the Election Code requires the Secretary to modify vote-by-mail applications, so that they include the statutorily-required space for applicants to enter the identification information that the Election Code now requires. Consequently, as in *Texas Democratic Party II*, the Secretary has the authority to compel or constrain local officials based on the actions he takes with respect to vote-by-mail applications.

The same reasoning applies to the LUPE Plaintiffs' challenge to section 5.13. The Election Code now generally provides that a voter must submit their driver's license, election identification certificate, or personal identification card number on their mail ballot carrier envelope. *Id.* § 86.002(g). It makes clear that a mail ballot carrier envelope "must include a space that is hidden

14

from view when the envelope is sealed for the voter to enter" the required identification information. *Id.* Section 5.13, in turn, requires an early voting clerk to reject a mail-in ballot if the required identification information on the mail ballot carrier envelope is either missing or does not match the identification information that the voter previously provided on their voter registration application. *Id.* § 87.041(b)(8). Thus, as with vote-by-mail applications, the Secretary has the authority to compel or constrain early voting clerks based on the actions he takes with respect to the design and content of mail ballot carrier envelopes.

The State Defendants counter that local officials are the proper defendants for the LUPE Plaintiffs' challenges to these vote-by-mail and mail ballot carrier envelope provisions because the provisions explicitly reference local officials. ECF No. 255 at 11–12. It is true that, "[i]f the official sued is not 'statutorily tasked with enforcing the challenged law,' then the requisite connection is absent and '[the Court's] *Young* analysis ends.'" *In re Abbott*, 956 F.3d at 709 (quoting *City of Austin*, 943 F.3d at 998). But the Supreme Court also made clear long ago that the challenged provision need not explicitly identify the state official named as a defendant for the *Ex parte Young* exception to apply:

> The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, *and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists.*

*Young*, 209 U.S. at 157 (emphasis added). Indeed, a state official may be statutorily tasked with enforcing a challenged provision based on the text in the challenged provision itself or the general law—such as, for example, the Election Code.

Further, it is worth noting that the provision at issue in *Texas Democratic Party II*, section 82.003 of the Election Code, did not explicitly refer to the Secretary either. In its entirety, section 82.003 states: "A qualified voter is eligible for early voting by mail if the voter is 65 years of age

15

or older on election day." TEX. ELEC. CODE § 82.003. Despite the absence of a specific reference to the Secretary in section 82.003, the Fifth Circuit located the Secretary's duties to enforce the provision in another section of the Election Code: "[T]he Secretary's specific duties regarding the application form under Section 31.002 are enough for us to conclude that the Secretary has at least a scintilla of enforcement authority for Section 82.003." *Tex. Democratic Party II*, 978 F.3d at 180. In short, the State Defendants' suggestion that the *Ex parte Young* analysis requires the Court to read each provision in a vacuum, without reference to any other Election Code provision—no matter how relevant to the enforcement question at hand—is entirely divorced from Fifth Circuit precedent, from the fundamental precepts of statutory interpretation,[9] and from common sense.

Thus, it is immaterial that the Secretary is not expressly identified in sections 5.07 and 5.13. The Election Code makes clear that it is the Secretary who is responsible for prescribing the design and content of vote-by-mail applications and mail ballot carrier envelopes. The challenged provisions, therefore, can be enforced only if and when the Secretary modifies vote-by-mail applications and mail ballot carrier envelopes to integrate the new identification requirements delineated in S.B. 1. The LUPE Plaintiffs allege that sections 5.07 and 5.13 unconstitutionally require local officials "to reject otherwise valid mail ballot applications and mail ballots because of simple errors or omissions[.]" ECF No. 208 ¶ 2. The *Ex parte Young* exception to state sovereign immunity authorizes the Court to "command[] a state official to do nothing more than refrain from violating federal law[.]" *Stewart*, 563 U.S. at 255. If the Court were to do so with respect to these provisions, then the Court's relief "might lead to prohibiting the Secretary from using [a vote-by-

---

[9] "[R]easonable statutory interpretation must account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (ellipsis in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). "[T]he cardinal rule [is] that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991) (citing *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989)).

mail application or mail ballot carrier envelope] that expressed" unlawful requirements. *Tex. Democratic Party II*, 978 F.3d at 180. This was sufficient in *Texas Democratic Party II* and is certainly sufficient here, where the LUPE Plaintiffs need only allege a plausible set of facts establishing the Court's jurisdiction.

For the same reasons, it is also inconsequential that sections 5.07 and 5.13 expressly task local officials with rejecting vote-by-mail applications and mail ballot carrier envelopes that do not contain the required identification information. Under the Election Code and in practice, local officials would be unable to reject either of these forms were it not for the Secretary first fulfilling his statutory duties to prescribe the design and content of vote-by-mail applications and mail ballot carrier envelopes. Put differently, it is the Secretary who is exclusively responsible for prescribing the design and content of vote-by-mail applications and mail ballot carrier envelopes in a manner that enables applicants and voters to enter the required identification information. If he fails to do so, then the Secretary necessarily compels or constrains local officials by preventing them from rejecting these forms. Thus, this is not a case where the Secretary's "duty has nothing to do with enforcing" the vote-by-mail and mail ballot carrier envelope provisions. *Lewis v. Scott*, 28 F.4th 659, 663 (5th Cir. 2022). "Though there is a division of responsibilities, the Secretary has the needed connection" to sections 5.07 and 5.13. *Tex. Democratic Party II*, 978 F.3d at 180.

*Texas Democratic Party II* applies with equal force to the LUPE Plaintiffs' challenges to sections 6.01 and 6.03. Under section 6.01, "[a] person who simultaneously assists seven or more voters . . . by providing the voters with transportation to the polling place must complete and sign a form . . . that contains the person's name and address[.]" TEX. ELEC. CODE § 64.009(f). The provision requires the Secretary to prescribe the form. *Id.* § 64.009(h). Section 6.03 similarly requires an assistor to complete a form stating their name and address, their relationship to the

22-50775.10740

voter, and whether they "received or accepted any form of compensation or other benefit from a candidate, campaign, or political committee." *Id.* § 64.0322(a). Again, the Secretary must prescribe the required form. *Id.* § 64.0322(b). Consequently, sections 6.01 and 6.03 can only be enforced if and when the Secretary prescribes the forms. The LUPE Plaintiffs allege that these provisions unconstitutionally "hinder the provision of assistance at the polling place, curbside, or in connection with mail ballots[.]" ECF No. 208 ¶ 2. If the Court were to agree, then it could enjoin the Secretary from prescribing these unlawful forms. Indeed, the Secretary has the authority to compel or constrain assistors and therefore possesses a sufficient connection to these provisions.

The Fifth Circuit's reasoning in *Texas Democratic Party II* also extends to the LUPE Plaintiffs' challenge to section 4.07. The provision allows a poll watcher "to sit or stand near enough to see and hear the election officers conducting the observed activity" and makes clear that an election judge generally may not deny a poll watcher "free movement where election activity is occurring within the location at which the watcher is serving." Tᴇx. Eʟᴇᴄ. Cᴏᴅᴇ §§ 33.056(a), (e). The Election Code requires the Secretary to "develop and maintain a training program for watchers." *Id.* § 33.008. An individual must complete the Secretary's training program to serve as a poll watcher. *Id.* § 33.031(b). Upon completion, the training program must provide the poll watcher with a certificate, which the poll watcher must present to a local official when they arrive at a polling place. *Id.* §§ 33.008(2), 33.051(a)(2)–(a-1). The Secretary's training program is the only means by which a poll watcher may learn what they can and cannot do at a polling place.

Therefore, the training program must necessarily provide the poll watcher with information on where they can sit or stand in accordance with section 4.07. It is axiomatic that the Secretary, who is statutorily required to develop and maintain the training program, must develop a training program that will advise poll watchers of their privileges and responsibilities at polling places. By

22-50775.10741

doing so, the Secretary necessarily compels or constrains poll watchers to conduct themselves in a manner that will ensure compliance with the Election Code. The Secretary's duty to inform poll watchers of their privileges and responsibilities under the Election Code is all the more essential given that S.B. 1 limits local officials from removing poll watchers who violate the Election Code or any other law pertaining to the conduct of elections. *Id.* § 32.075(g). Because it is the Secretary who bears the responsibility to ensure that poll watchers comply with the Election Code, the information that he disseminates through the training program is not merely advice, guidance, or interpretive assistance. *Cf. Richardson v. Flores*, 28 F.4th 649, 655 (5th Cir. 2022).

Citing a history of voter intimidation against minority voters, the LUPE Plaintiffs allege that section 4.07 unconstitutionally "[g]ives partisan poll watchers 'free movement' to intimidate and harass voters [.]" ECF No. 208 ¶¶ 2, 57. If the LUPE Plaintiffs are correct, then the Court could enjoin the Secretary by, for example, requiring him to instruct poll watchers through his training program that their poll watching activities must satisfy constitutional standards. In doing so, the Secretary has the authority to compel or constrain poll watchers by limiting their poll watching to that which is permissible under the Election Code and the United States Constitution.

The Secretary also has the authority to compel or constrain under sections 3.04, 3.09, 3.10, 3.12, 3.13, and 4.01. Sections 3.04, 3.12, and 3.13 generally prohibit most voters from voting inside a motor vehicle and require that polling places be located inside a building. TEX. ELEC. CODE §§ 43.031(b), 85.061(a), 85.062(b). Sections 3.09 and 3.10 generally limit early voting hours. *Id.* §§ 85.005(a), 85.006(e). Section 4.01 provides that a presiding judge may not remove a poll watcher who has violated the Election Code or any other law pertaining to the conduct of elections unless an election judge or clerk observed the violation. *Id.* § 32.075(g).

22-50775.10742

The Election Code states that the Secretary "shall adopt rules . . . to assist the presiding judge of a polling place in processing forms and conducting procedures required by [the Election Code] at the opening and closing of the polling place." *Id.* § 66.004. The rules that the Secretary *must* adopt necessarily include rules pertaining to voting inside a motor vehicle, outdoor polling places, early voting hours, and poll watchers. The LUPE Plaintiffs allege that these provisions unconstitutionally "restrict[] counties from offering accommodations" and "constrain[] election administrators' ability to ensure peaceful, orderly elections[.]" ECF No. 208¶ 2. Directing the Secretary not to adopt or to modify rules implementing sections 3.04, 3.09, 3.10, 3.12, 3.13, and 4.01—if found unconstitutional—would compel or constrain local officials based on the actions he takes in response to the unconstitutionality of these provisions. In other words, by adopting, implementing, and modifying relevant rules, the Secretary has the authority to compel or constrain local officials, who, in turn, must abide by the Secretary's rules.

The Secretary also has the authority to compel or constrain under sections 4.06, 4.09, 6.04, 6.05, 6.06, and 7.04. Section 4.06 makes it a class A misdemeanor if an election officer refuses, either intentionally or knowingly, to accept a poll watcher for service when acceptance is otherwise required. TEX. ELEC. CODE § 33.051(g). Section 4.09 establishes an offense if a "person serves in an official capacity at a location at which the presence of watchers is authorized and knowingly prevents a watcher from observing an activity or procedure the person knows the watcher is entitled to observe[.]" *Id.* § 33.061(a). Sanctionable conduct under section 4.09 includes any action that obstructs a poll watcher's view or distances the poll watcher "from the activity or procedure to be observed in a manner that would make observation not reasonably effective." *Id.*

20

Further, section 6.04[10] modifies the oath that a person who assists a voter must take. *Id.* § 64.034. Specifically, section 6.04 requires an assistor to take the following oath under penalty of perjury before assisting a voter:

> I swear (or affirm) under penalty of perjury that the voter I am assisting represented to me they are eligible to receive assistance; I will not suggest, by word, sign, or gesture, how the voter should vote; I will confine my assistance to reading the ballot to the voter, directing the voter to read the ballot, marking the voter's ballot, or directing the voter to mark the ballot; I will prepare the voter's ballot as the voter directs; I did not pressure or coerce the voter into choosing me to provide assistance; I am not the voter's employer, an agent of the voter's employer, or an officer or agent of a labor union to which the voter belongs; I will not communicate information about how the voter has voted to another person; and I understand that if assistance is provided to a voter who is not eligible for assistance, the voter's ballot may not be counted.

---

[10] In 2018, a district court initially enjoined Texas and the Secretary from enforcing sections 61.033 and 64.0321 of the Election Code. *See OCA Greater Hous. v. Texas*, No. 1:15-CV-679-RP, 2022 WL 2019295, at *1 (W.D. Tex. June 6, 2022). On June 6, 2022, the district court, upon request, modified its injunction to prohibit Texas and its Secretary from enforcing a portion of the amended section 6.04:

> As to the first ground, OCA notes that a portion of the amended oath now reads exactly as did the enjoined language in Section 64.0321. A portion of the oath now requires the assistor to attest to confining their assistance to "reading the ballot to the voter, directing the voter to read the ballot, marking the voter's ballot, or directing the voter to mark the ballot." Tex. Elec. Code § 64.034. The enjoined language permits assistance in "(1) reading the ballot to the voter; (2) directing the voter to read the ballot; (3) marking the voter's ballot; or (4) directing the voter to mark the ballot." Tex. Elec. Code § 64.0321. Aside from changes in punctuation, the language is indistinguishable. Thus, the Court's reasoning in enjoining Section 64.0321 applies to the amended oath language just as it applied in the 2018 Injunction. . . . By requiring assistors to attest to following enjoined restrictions, the amended provision essentially re-ratifies the same restrictions that the Court enjoined. In doing so, the oath limits assistance-eligible voting to an impermissibly narrow set of activities. Therefore, as with the previous iteration of this language, the Court will enjoin enforcement of the portion of [section 6.04 of S.B. 1] inserting the previously enjoined language from Section 64.0321.

*Id.* at *4.

On June 14, 2022, OCA-Greater Houston filed a notice in this consolidated action, advising the Court of the district court's modified injunction. ECF No. 438. OCA-Greater Houston submits that "the United States and Private Plaintiffs' challenges to the same portions in this case may ultimately be rendered moot." *Id.* at 5. The United States and remaining private plaintiffs also filed a notice, advising that they agree with OCA-Greater Houston's position on the potential impact of the modified injunction on their claims challenging the same portions of section 6.04. ECF No. 440. Texas and its Secretary did not appeal the district court's modified injunction. Thus, all claims in this consolidated action challenging the portions of section 6.04 that the district court recently enjoined in *OCA Greater Hous. v. Texas*, No. 1:15-CV-679-RP, 2022 WL 2019295 (W.D. Tex. June 6, 2022) are moot.

*Id.* Section 6.05 provides that a person commits a state jail felony if they knowingly fail to either sign the modified oath that is part of the certificate on a voter's mail ballot carrier envelope or include on the voter's mail ballot carrier envelope their signature, name, and address; their relationship to the voter; and whether they received or accepted any form of compensation in exchange for their assistance. *Id.* §§ 86.010(e)–(g). Section 6.06 makes it a state jail felony for a person to compensate or offer to compensate another person—or to solicit, receive, or accept compensation—for assisting voters. *Id.* §§ 86.0105(a), (c).

Section 7.04 codifies several new offenses under sections 276.015 and 276.018 of the Election Code.[11] *Id.* § 276.015. Specifically, section 276.015 defines three general public activities as third-degree felonies:

> (b) A person commits an offense if the person, directly or through a third party, knowingly provides or offers to provide vote harvesting services in exchange for compensation or other benefit.
>
> (c) A person commits an offense if the person, directly or through a third party, knowingly provides or offers to provide compensation or other benefit to another person in exchange for vote harvesting services.
>
> (d) A person commits an offense if the person knowingly collects or possesses a mail ballot or official carrier envelope in connection with vote harvesting services.

*Id.* §§ 276.015(b)–(d), (f). A "benefit" is "anything reasonably regarded as a gain or advantage, including a promise or offer of employment, a political favor, or an official act of discretion, whether to a person or another party whose welfare is of interest to the person." *Id.* § 276.015(a)(1).

---

[11] Section 7.04 also codifies new offenses under sections 276.016, 276.017, and 276.019 of the Election Code. TEX. ELEC. CODE §§ 276.016–.017, .019. The LUPE Plaintiffs' allegations, however, do not appear to challenge these sections. *See* ECF No. 208 ¶¶ 2, 138–41, 108–16, 153–55, 161, 222, 291–92, 294–95, 297. The Court, therefore, construes the LUPE Plaintiffs' claims challenging section 7.04 as claims that challenge the validity of sections 276.015 and 276.018 only. To the extent that the LUPE Plaintiffs intended to assert claims challenging sections 276.016, 276.017, or 276.019, those claims are dismissed on failure to state a claim grounds.

22-50775.10745

"Vote harvesting services" means any "in-person interaction with one or more voters, in the physical presence of an official ballot or a ballot voted by mail, intended to deliver votes for a specific candidate or measure." *Id.* § 276.015(a)(2). Section 276.015 makes it clear that, "[i]f conduct that constitutes an offense under this section also constitutes an offense under any other law, the actor may be prosecuted under this section, the other law, or both." *Id.* § 276.015(g). Under section 276.018, it is a state jail felony if a person, "with the intent to deceive, . . . knowingly or intentionally makes a false statement or swears to the truth of a false statement: (1) on a voter registration application; or (2) previously made while making an oath, declaration, or affidavit described by this code." *Id.* § 276.018(a).

The Election Code now authorizes the Secretary to "refer a reported violation of law for appropriate action to the attorney general . . . or to a prosecuting attorney having jurisdiction." *Id.* § 34.005(a). It also *requires* the Secretary to report suspected election law offenses to the Attorney General. *Id.* § 31.006(a). The Secretary certainly has the authority to compel or constrain others when he not only has the authority to refer, but also the obligation to report election law offenses under sections 4.06, 4.09, 6.04, 6.05, 6.06, and 7.04. *Cf. City of Austin*, 943 F.3d at 1001. Indeed, the LUPE Plaintiffs allege that, according to the Secretary's website, the Secretary's office "refers any instances of possible illegal voting to the Office of the Texas Attorney General for investigation." ECF No. 208 ¶ 95. They further allege that sections 4.06, 4.09, 6.04, 6.05, 6.06, and 7.04 unlawfully deter election administrators from ensuring orderly elections under penalty of criminal prosecution; unlawfully hinder assistors from providing necessary assistance to voters by subjecting them to criminal prosecution; and proscribe constitutionally-protected political speech. *Id.* ¶ 2. An injunction prohibiting the Secretary from referring or reporting offenses under these provisions would certainly help alleviate the harm that the LUPE Plaintiffs plausibly allege.

22-50775.10746

Further, under section 8.01, an election official is now civilly liable if they violate an Election Code provision. TEX. ELEC. CODE § 31.129(b). Civil penalties may include termination and loss of employment benefits. *Id.* § 31.129(c). In light of his duty to report violations, the Secretary now has a specific role in ensuring that election officials comply with the Election Code. The Secretary's authority to report violations of the Election Code to the Attorney General also empowers him with the authority to compel or constrain election officials who, in turn, may credibly fear civil prosecution by way of the Secretary's referral to the Attorney General.

Thus, the Secretary also has the authority to compel or constrain under section 2.04. The provision states that a voter registrar must, within seventy-hours of determining "that a person who is not eligible to vote registered to vote or voted in an election . . . execute and deliver to . . . the secretary of state . . . an affidavit stating the relevant facts" *Id.* § 15.028. If the voter registrar fails to timely comply with their statutory duty, then the Secretary could report their conduct to the Attorney General. The voter registrar would then be subject to civil prosecution.[12] This credible threat of prosecution is, again, a consequence of the Secretary's authority to compel or constrain.

The LUPE Plaintiffs allege that section 2.04 is unconstitutional because it "[f]ascilitates the investigation and prosecution of perfectly legal activity by voters, such as being excused from jury service or having the same name as a non-U.S. citizen or non-resident in the county[.]" ECF No. 208 ¶ 2. If the Court enjoins enforcement of section 2.04, then the Secretary could no longer refer a voter registrar who does not comply with the provision to the Attorney General for civil prosecution. The Secretary's authority to enforce that specific provision, after all, would not exist.

---

[12] The Election Code provides that an elections administrator or county clerk may be designated as a voter registrar. TEX. ELEC. CODE §§ 12.001, 12.031. Section 8.01 states that "'election official' has the meaning assigned by Section 31.128." *Id.* § 31.129(a). Section 31.128, however, merely states that "'election official' does not include a chair of a county political party holding a primary election or a runoff primary election." *Id.* § 31.128. Thus, the Court refers to the Election Code's "Definitions" section to further clarify who is an "election official" under section 8.01. The "Definitions" section confirms that an elections administrator or county clerk is an election official, *see id.* § 1.005(4-a), and is therefore subject to civil prosecution under section 8.01.

Seemingly conceding that the Secretary *does* have the authority to compel or constrain, the State Defendants cite *Mi Familia Vota v. Abbott*, 977 F.3d 461 (5th Cir. 2020), and argue that the LUPE Plaintiffs have failed "to sufficiently allege how enjoining the Secretary will prevent the alleged harm from the challenged SB1 provisions." ECF No. 255 at 13. In *Mi Familia Vota*, the Fifth Circuit considered whether the Secretary had a sufficient enforcement connection to section 43.007 of the Election Code requiring "counties to use electronic voting devices rather than paper ballots in order to be eligible to participate in Texas's Countywide Polling Place Program." 977 F.3d at 468. The panel observed that section 31.014 of the Election Code requires the Secretary "to provide standards for certifying electronic devices[.]" *Id.* However, because "the Plaintiffs' claims regarding section 43.007 [was] based on its prohibition of the use of paper ballots for those counties participating in the Countywide Polling Place Program[,]" the Fifth Circuit found it significant that local officials, not the Secretary, were responsible for printing and distributing ballots. *Id.* The panel accordingly noted that "[d]irecting the Secretary not to enforce the electronic-voting-devices-only provision in section 43.007 would not afford the Plaintiffs the relief that they seek, and therefore, the Secretary of State 'is not a proper defendant.'" *Id.* (quoting *In re Abbott*, 956 F.3d at 709). Immediately thereafter, the Fifth Circuit stated, "Although a court can enjoin state officials from enforcing statutes, such an injunction must be directed to those who have the authority to enforce those statutes." *Id.*

In other words, *Mi Familia Vota* merely reiterates the well-established rule in the Fifth Circuit that a state official must be statutorily tasked with enforcing the challenged provision. It does not, as the State Defendants appear to suggest, hold that the LUPE Plaintiffs must also now show at the pleading stage how the Secretary's duties will harm them in order to invoke the *Ex parte Young* exception to state sovereign immunity. In any event, the LUPE Plaintiffs *do* explain

how the Secretary's duties will harm them. They submit that the challenged provisions add unnecessary requirements that hinder the provision of assistance at the polling place, curbside, or voting by mail; give poll watchers wide discretion to intimidate and harass voters and poll workers; infringe upon political speech and legitimate voter outreach activities; restrict counties from offering reasonable modifications; require local officials to reject vote-by-mail applications and mail-in ballots based on immaterial errors or omissions; facilitate the investigation and prosecution of legal activity; and force election officials to shift resources to comply with unlawful requirements pertaining to voter rolls—all in violation of the United States Constitution. ECF No. 208 ¶ 2. But for the Secretary's duties in relation to each of the challenged provisions, the LUPE Plaintiffs and their members would not be harmed by the Secretary. *See id.* ¶¶ 149–217.

Finally, the State Defendants contend that "the LUPE Plaintiffs improperly seek to rely on general statutes concerning the Secretary's authority." ECF No. 255 at 13. In *Texas Alliance for Retired Americans*, *Lewis*, and *Richardson*, the Fifth Circuit recently signaled that reliance on the Secretary's "general duties" under the Election Code alone is generally insufficient to establish that the Secretary is statutorily tasked with enforcing a specific Election Code provision. *See Richardson*, 28 F.4th at 654 ("Since then, however, our precedent has clarified that the Secretary's general duties under the [Texas Election] Code fail to make the Secretary the enforcer of specific election code provisions.") (alterations in original) (quotation marks and citation omitted). Even assuming that these three cases specifically hold that reliance on the Secretary's "general duties" can *never* establish that the Secretary has a duty to enforce a specific Election Code provision, the LUPE Plaintiffs, as discussed *supra*, rely on far more than simply the Secretary's "general duties."[13] The State Defendants' argument, therefore, is unavailing.

---

[13] The Court recently heard oral argument in *Johnson v. Callanen*, No. 5:22-CV-409-XR (W.D. Tex. 2021). In that case, three visually impaired individuals and two non-profit organizations comprising visually impaired and

However, the Court cannot conclude that the Secretary compels or constrains under section 2.11. The provision, which amends the Texas Government Code, requires the clerk of the court to "send a copy of the list of persons excused or disqualified in the previous month because the persons do not reside in the county" to the Secretary. TEX. GOVT. CODE § 62.114(b). Section 2.11 does not expressly charge the Secretary with enforcement. The surrounding provisions only affirm that it is the clerk of the court who must maintain the list. *Id.* § 62.114(a). In addition, the clerk of the court does not appear to be an election official who is subject to civil prosecution under section 8.01. It is therefore not apparent how the Secretary may compel or constrain the clerk of the court or anyone else. The LUPE Plaintiffs offer no explanation in their complaint or briefing. Absent an explanation to the contrary, the Court must dismiss the LUPE Plaintiffs' claims challenging section 2.11 under the Fifteenth Amendment against the Secretary.

For the foregoing reasons, the Court concludes that the LUPE Plaintiffs have plausibly established that the Secretary is statutorily tasked with enforcing and can enforce all but one of the S.B. 1 provisions (section 2.11) that they challenge on constitutional grounds.

---

otherwise disabled Texans filed suit against Ms. Callanen, in her official capacity as the Bexar County Elections Administrator, for violations of Title II of the ADA and § 504 of the Rehabilitation Act. The plaintiffs sought a reasonable modification to vote by mail in secret and free from intimidation in upcoming elections. Though it was clear that Ms. Callanen, who is also a defendant in this consolidated action, did not oppose the plaintiffs' request for a reasonable modification, she nonetheless responded to the plaintiffs' complaint with a motion to dismiss and opposed the plaintiffs' motion for a preliminary injunction. At the hearing, Ms. Callanen's counsel candidly stated that the basis for Ms. Callanen's opposition was her concern that, if she granted the requested modification, then the Secretary—pursuant to his "general duties" of ensuring that elections are conducted uniformly—would refer her conduct to the Attorney General, who, in turn, could impose civil penalties upon her, including revocation of her retirement. *See* TEX. ELEC. CODE §§ 31.129(c), 34.005. Indeed, Ms. Callanen's counsel referred to the deposition testimony in a prior case, where the Secretary testified under oath that referral to the Attorney General would be imminent if Ms. Callanen granted the requested modification. It is difficult to conceive of a clearer example of how the Secretary's statutory duties to obtain and maintain uniformity in the application, operation, and interpretation of the Election Code—however "general" they may be—compel or constrain local officials—like Ms. Callanen—by subjecting them to credible, perilous consequences.

27

### ii. The LUPE Plaintiffs have plausibly established that the Secretary will enforce all but one of the S.B. 1 provisions that they challenge on constitutional grounds.

To establish that the Secretary will enforce the S.B. 1 provisions that they challenge on constitutional grounds, the LUPE Plaintiffs need only show that the Secretary has a "demonstrated willingness" to exercise his duty to enforce those provisions. *Tex. Democratic Party II*, 978 F.3d at 181 (quoting *Morris*, 739 F.3d at 746).

The LUPE Plaintiffs allege that the "Secretary is the chief election officer of the state, and the Texas Election Code reflect[s] the Legislature's intent that election laws operate . . . under the direction and guidance of the Secretary[.]" ECF No. 208 ¶ 22 (alterations and ellipsis in original) (quotation marks and citations omitted). They submit that the Secretary "is a licensed attorney who previously served as lead attorney" and was involved in litigation against the Pennsylvania Secretary of State and county boards of elections, "seeking [a]n order, declaration, and/or injunction that prohibits the [county boards of elections and Pennsylvania's Secretary of State] from certifying the results of the 2020 General Election in Pennsylvania on a Commonwealth-wide basis." *Id.* ¶ 23 (alterations in original) (quotation marks and citation omitted). Additionally, they allege that "Governor Abbot approved transferring $4 million in funding from Texas's state budget to the Secretary's office to establish an entirely new Election Audit Division tasked with conducting comprehensive forensic audits in the State of Texas." *Id.* ¶ 97 (quotation marks and citation omitted). The LUPE Plaintiffs also cite several Election Code provisions that, as discussed *supra*, undoubtedly require the Secretary to take affirmative steps with respect to each of the S.B. 1 provisions that they challenge. *Id.* ¶¶ 24–35. These allegations, combined with the Secretary's mandatory duties discussed *supra*, sufficiently show at this stage of the proceedings that the Secretary will enforce the S.B. 1 provisions challenged on constitutional grounds.

22-50775.10751

Thus, the Court finds that the LUPE Plaintiffs have alleged a plausible set of facts establishing that the Secretary has a sufficient enforcement connection to all but one of the S.B. 1 provisions (section 2.11) that they challenge on constitutional grounds. Their claims challenging these provisions under the First, Fourteenth, and Fifteenth Amendments may proceed against the Secretary pursuant to the *Ex parte Young* exception to state sovereign immunity.

### b. The LUPE Plaintiffs have shown that the Attorney General has a sufficient enforcement connection to all but two of the S.B. 1 provisions that they challenge on constitutional grounds.

As with their claims under the First, Fourteenth, and Fifteenth Amendments against the Secretary, the relevant question before the Court at this stage of the proceedings is whether the LUPE Plaintiffs have alleged a plausible set of facts establishing that the Attorney General has a sufficient enforcement connection to the same S.B. 1 provisions that they challenge under the First, Fourteenth, and Fifteenth Amendments—that is, whether the LUPE Plaintiffs have plausibly established that the Attorney General can and will enforce the same S.B. 1 provisions that they challenge under the First, Fourteenth, and Fifteenth Amendments.

### i. The LUPE Plaintiffs have plausibly established that the Attorney General can enforce all but two of the S.B. 1 provisions that they challenge on constitutional grounds.

The LUPE Plaintiffs name the Attorney General as a defendant for their claims under the First, Fourteenth, and Fifteenth Amendments, challenging the same S.B. 1 provisions discussed *supra*. ECF No. 208 ¶¶ 219, 231, 243, 287, 302, 311.

As the LUPE Plaintiffs allege, the Attorney General is statutorily tasked with prosecuting criminal offenses prescribed by the Election Code. TEX. ELEC. CODE § 273.021; s*ee also* ECF No. 208 ¶ 38. He "is Texas' chief law enforcement officer, with a freestanding sovereign interest in enforcing Texas law." ECF No. 208 ¶ 37 (quotation marks and citation omitted). The Attorney

29

General's "role in enforcing the election laws includes statewide investigation authority and concurrent prosecution authority with local elected prosecutors over the election laws of the State[.]" *Id.* ¶ 38 (quotation marks and citation omitted). The Attorney General, therefore, has the authority to compel or constrain under sections 4.06, 4.09, 6.04, 6.05, 6.06, and 7.04—all of which establish one or more election law offenses.

Further, the Secretary must report suspected election law offenses to the Attorney General. TEX. ELEC. CODE § 31.006(a). To be eligible to vote in Texas, a voter must "be a resident of the territory covered by the election for the office or measure on which the person desires to vote[.]" *Id.* § 11.001(a)(2). Section 2.07, by extension, requires the Secretary to determine whether a voter on the statewide computerized voter registration list is not a resident of the county in which the voter is registered to vote. *Id.* § 18.068(a). If the Secretary determines that a voter is not a resident of the county in which the voter is registered to vote, then it appears that he must report the voter to the Attorney General on suspicion of unlawful voting pursuant to his statutory duty. The Attorney General, therefore, has the authority to compel or constrain under section 2.07.

Moreover, the Attorney General is expressly tasked with compelling or constraining under section 8.01, the provision that authorizes the Attorney General to collect a civil penalty from an election official who "violates a provision of this code." *Id.* § 31.129(b). The civil penalty "may include termination of the person's employment and loss of the person's employment benefits." *Id.* § 31.129(c). Thus, he also has the authority to compel and constrain any and all election officials who are subject to civil prosecution for violations of sections 2.04, 2.06, 3.04, 3.09, 3.10, 3.12, 3.13, 4.01, 4.07, 5.07, 5.13, 6.01, and 6.03—all of which establish requirements for election officials as defined under the Election Code, violations of which may result in civil prosecution.

22-50775.10753

However, the Court cannot conclude that the Attorney General has the authority to compel or constrain under sections 2.08 and 2.11. Section 2.08 provides that the Secretary must report suspected election law offenses to the Attorney General. *Id.* § 31.006(a). It does not appear that the Attorney General can criminally or civilly prosecute the Secretary for failing to report election law offenses. Similarly, it does not appear that the Attorney General can criminally or civilly prosecute a clerk of the court for failing to comply with section 2.11. The LUPE Plaintiffs do not offer an explanation in their complaint or briefing. Absent an explanation to the contrary, the Court must dismiss the LUPE Plaintiffs' claims challenging sections 2.08 and 2.11 under the Fourteenth and Fifteenth Amendments against the Attorney General.

Therefore, the Court concludes that the LUPE Plaintiffs have plausibly established that the Attorney General is statutorily tasked with enforcing and can enforce all but two of the S.B. 1 provisions (sections 2.08 and 2.11) that they challenge on constitutional grounds.

**ii.  The LUPE Plaintiffs have plausibly established that the Attorney General will enforce all but two of the S.B. 1 provisions that they challenge on constitutional grounds.**

The LUPE Plaintiffs need only show that the Attorney General has a "demonstrated willingness" to exercise his duty to enforce the S.B. 1 provisions that they challenge on constitutional grounds to establish that the Attorney General will enforce those provisions. *Tex. Democratic Party II*, 978 F.3d at 181 (quoting *Morris*, 739 F.3d at 746).

The LUPE Plaintiffs allege that "the Attorney General has prosecuted alleged violations of Texas's election laws alongside, or instead of, local district attorneys." ECF No. 208 ¶ 38. They submit that the Attorney General has claimed that "his office is currently prosecuting over 500 felony election fraud offenses in Texas courts." *Id.* (quotation marks and citation omitted). The LUPE Plaintiffs further assert that the Attorney General "recently filed suit on behalf of the State

of Texas to enforce provisions of the Texas Election Code and to restrict the actions of local election official[s], including by preventing [them] from mailing out mail ballot applications to many eligible voters unless those voters first submitted a request." *Id.* ¶ 41.

The LUPE Plaintiffs also cite to the Attorney General's social media publications, where he announced "that it was [a]n outstanding decision to demand increased penalties for vote fraudsters . . . I will continue to muster all my resources to defend election integrity!" *Id.* ¶ 100 (alterations in original) (quotation marks and citation omitted). The LUPE Plaintiffs allege that the Attorney General "has stated that prosecution of election-related offenses is one of his priorities." *Id.* ¶ 42. For instance, they submit that the Attorney General "recently announced the formation of his '2021 Texas Election Integrity Unit,' which he describes as a concentrated effort to devote agency lawyers, investigators, support staff, and resources to ensuring this local election season . . . is run transparently and securely." *Id.* (ellipsis in original). They further allege that the Attorney General "refers to himself as a national leader in election integrity, [and] brags about the many elections administrators that have been held accountable for attempts to bend or break the boundaries of lawful practices under his leadership[.]" *Id.* (quotation marks and citation omitted). These allegations, combined with the Attorney General's duties discussed *supra*, are sufficient at this stage of the proceedings to plausibly establish that the Attorney General has demonstrated a willingness to enforce the S.B. 1 provisions challenged on constitutional grounds.

The State Defendants argue that, since the Attorney General may not unilaterally prosecute election law offenses, "[t]hese and other allegations relating to the Attorney General's authority to prosecute violations of Texas's election laws are . . . insufficient to establish the Attorney General as a proper defendant." ECF No. 255 at 15. True, the Election Code originally authorized the Attorney General to unilaterally "prosecute a criminal offense prescribed by the election laws of

this state." TEX. ELEC. CODE § 273.021(a). In *State v. Stephens*, however, the Texas Court of Criminal Appeals held that this delegation of unilateral prosecutorial authority violated the separation-of-powers clause of the Texas Constitution. No. PD-1032-20, 2021 WL 5917198, at *11 (Tex. Crim. App. Dec. 15, 2021) (not released for publication).[14]

But even absent the delegation of authority to independently prosecute election law offenses, the surviving provisions of the Election Code still envision, and likely require, the Attorney General's participation in enforcement activities. For instance, section 273.001 provides:

> (a) If two or more registered voters of the territory covered by an election present affidavits alleging criminal conduct in connection with the election to the county or district attorney having jurisdiction in that territory, the county or district attorney shall investigate the allegations. If the election covers territory in more than one county, the voters may present the affidavits to the attorney general, and the attorney general shall investigate the allegations.
>
> (b) A district or county attorney having jurisdiction or the attorney general may conduct an investigation on the officer's own initiative to determine if criminal conduct occurred in connection with an election.
>
> (c) On receipt of an affidavit [from a registrar], the county or district attorney having jurisdiction and, if applicable, the attorney general shall investigate the matter.
>
> (d) On referral of a complaint from the secretary of state under Section 31.006, the attorney general may investigate the allegations.

TEX. ELEC. CODE § 273.001. Moreover, *Stephens* does not foreclose the Attorney General's authority to prosecute election law offenses, including those prescribed by the S.B. 1 provisions challenged here. Indeed, the Court of Criminal Appeals made clear that "the consent and deputization order of a local prosecutor or the request of a district or county attorney for assistance"

---

[14] The State Defendants submit that "that *Stephens* was wrongly decided." ECF No. 255 at 15 n.2. Texas "has filed a motion asking the Texas Court of Criminal Appeals to reconsider its decision." *Id.*

33

can provide the Attorney General with the authority to enforce election law offenses. *Stephens*, 2021 WL 5917198, at *10.

The State Defendants also suggest that the LUPE Plaintiffs must show that the Attorney General intends to enforce each of the S.B. 1 provisions that they challenge on constitutional grounds. ECF No. 255 at 16. Setting aside the fact that the LUPE Plaintiffs need only allege a plausible set of facts establishing the Court's jurisdiction, the State Defendants' argument strains credulity and defies logic. S.B. 1 is an omnibus election law that establishes several election law offenses and imposes sweeping civil liability on election officials for a variety of Election Code violations. It cannot be that the Attorney General must recite extensive portions of the Election Code so that the LUPE Plaintiffs can challenge on constitutional grounds the many S.B. 1 provisions that clearly implicate the Attorney General's civil and criminal enforcement power. As the Supreme Court first put it:

> It would seem to be clear that the attorney general, under his power existing at common law, and by virtue of these various statutes, had a general duty imposed upon him, which includes the right and the power to enforce the statutes of the state, including, of course, the act in question, if it were constitutional. His power by virtue of his office sufficiently connected him with the duty of enforcement to make him a proper party to a suit of the nature of the one now before the . . . court.

*Young*, 209 U.S. at 161.

The State Defendants' reliance on *City of Austin* is also unpersuasive. ECF No. 255 at 16. In *City of Austin*, the Fifth Circuit considered whether the *Ex parte Young* exception to state sovereign immunity applied to the Attorney General. 943 F.3d at 998. The City had passed a municipal ordinance prohibiting landlords from discriminating against tenants who paid their rent with federal housing vouchers. *Id.* at 996. Texas subsequently passed a state law barring municipalities or counties from adopting such ordinances. *Id.* The state statute empowered the

Attorney General to enforce the law by intervening in any enforcement suit that the City might bring against a landlord for violating the municipal ordinance. *Id.* at 1000 n.1.

In response, the City sued the Attorney General, alleging that federal housing law preempted the state legislation. *Id.* at 997. The City argued that the *Ex parte Young* exception to state sovereign immunity applied because the Attorney General possessed the authority to enforce the state law and had a "habit" of intervening in lawsuits involving municipal ordinances to "enforce the supremacy of state law." *Id.* at 1001. The Fifth Circuit, however, held that this was not sufficient to demonstrate "some scintilla of 'enforcement,'" as the Attorney General's authority to enforce the statute alone did not constrain the City's ability to enforce its ordinance. *Id.* at 1001–02. According to the Fifth Circuit, simply because the Attorney General had "chosen to intervene to defend *different* statutes under *different* circumstances does not show that he is likely to do the same here." *Id.* at 1002 (emphasis in original). The Fifth Circuit also noted that "the City face[d] no consequences" if it enforced its ordinance. *Id.*

This case differs from *City of Austin* in many respects. Importantly, sections 4.06, 4.09, 6.04, 6.05, 6.06, and 7.04 each establish one or more election law offenses. In addition, under section 31.129 of the Election Code, election officials would face significant consequences if the Attorney General were to civilly prosecute them: They would risk losing their employment and employment benefits if they violate sections 2.04, 2.06, 3.04, 3.09, 3.10, 3.12, 3.13, 4.01, 4.07, 5.07, 5.13, 6.01, or 6.03.

Furthermore, under S.B. 1, the Attorney General has broad investigatory powers, and though S.B. 1 does not specify whether the Attorney General may enforce section 31.129, he has undoubtedly filed civil lawsuits against election officials, invoking the State's "intrinsic right to enact, interpret, and enforce its own laws." Appellant's Emergency Mot. for Relief Under Rule

35

29.3, *State v. Hollins*, 607 S.W.3d 923 (Tex. App.—Houston [14th Dist.] 2020, pet. granted) (No. 14-20-00627-CV), 2020 WL 5509152, at *9 (quoting *State v. Naylor*, 466 S.W.3d 783, 790 (Tex. 2015)).

Moreover, and as already discussed at length, the Attorney General touts his office's eagerness to prosecute entities and individuals, like the LUPE Plaintiffs and their members, for criminal offenses under the Election Code. Far from different statutes under different circumstances, the Attorney General has demonstrated a willingness to enforce civil and criminal provisions of the Election Code regulating some of the same elections procedures that the LUPE Plaintiffs challenge as unconstitutional in this case. This is sufficient to establish that "formal enforcement [is] on the horizon." *Tex. Democratic Party II*, 978 F.3d at 181 (quoting *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 392 (5th Cir. 2015)).

The State Defendants further contend that "[s]peculation that the Attorney General might be asked by a local prosecutor to 'assist' in enforcing SB 1 is inadequate to support an *Ex parte Young* action against the Attorney General." ECF No. 255 at 15 (quoting *In re Abbott*, 956 F.3d at 709). *In re Abbott*, however, is inapposite. There, the district court issued a temporary restraining order against the Governor and the Attorney General, exempting various categories of abortion from "GA-09, an emergency measure temporarily postponing non-essential medical procedures during the COVID-19 pandemic." *In re Abbott*, 956 F.3d at 703. On appeal, the Fifth Circuit considered whether state sovereign immunity required dismissal of the Attorney General. *Id.* at 708. In particular, the Fifth Circuit considered whether the *Ex parte Young* exception to state sovereign immunity applied. *Id.* at 709. The panel observed that the district court had reasoned that the Attorney General "ha[d] 'authority' to prosecute violations of GA-09 'at the request of local prosecutors,' and that he ha[d] also 'publicly threatened enforcement' against abortion

providers." *Id.* But in the Fifth Circuit's view, "[n]either rationale establish[d] the Attorney General's 'connection' to enforcing GA-09 for *Ex parte Young* purposes." *Id.* "Speculation that he might be asked by a local prosecutor to 'assist' in enforcing GA-09," the Fifth Circuit determined, "is inadequate to support an *Ex parte Young* action against the Attorney General." *Id.* The Fifth Circuit also found it significant that "[t]he Attorney General threatened that GA-09 *would be enforced*, not that *he* would enforce it." *Id.* (emphasis in original).

In this case, by contrast, the LUPE Plaintiffs challenge S.B. 1 provisions that establish criminal and civil offenses under the Election Code. There is nothing temporary about the credible threat of criminal and civil prosecution by the Attorney General. Indeed, the Secretary is statutorily required to refer his suspicions of criminal offenses prescribed by the Election Code to the Attorney General, and the Secretary is also authorized to report any violations of the Election Code. Further, the LUPE Plaintiffs allege that the Attorney General has made it abundantly clear that he will enforce the Election Code. In other words, the Attorney General has not said that the challenged provisions *would be enforced*, but that *he* would enforce them.

Put differently, the Attorney General's credible threat of enforcing the challenged S.B. 1 provisions is not mere speculation. The Attorney General publicly maintains that one of his key priorities is to investigate and prosecute allegations of voter fraud.[15] He has also publicly stated that 510 election offenses against 43 defendants remain pending and that 386 active election fraud investigations currently exist.[16] In light of *Stephens*, it must necessarily be the case that the Attorney General is prosecuting these election law offenses and pursuing these election fraud

---

[15] *See* Attorney General of Tex., *Election Integrity | Office of the Attorney General*, https://www.texas attorneygeneral.gov/initiatives/election-integrity (last visited July 28, 2022). The Court may take judicial notice of governmental websites, *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam), and may consider matters of which it takes judicial notice on a motion to dismiss, *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

[16] *See* Attorney General of Tex., *supra* note 15.

investigations along with local district attorneys. Indeed, the local district attorneys sued in this consolidated action have not expressly and affirmatively represented that they *never* intend to prosecute criminal offenses prescribed by the Election Code, and there are certainly many more local district attorneys throughout Texas who have not disavowed their intention to enlist the Attorney General's assistance to prosecute election law offenses. Consequently, the State Defendants' reliance on *In re Abbot* is unavailing. The LUPE Plaintiffs' allegations, combined with the Attorney General's duties discussed *supra*, sufficiently show at this stage of the proceedings that the Attorney General will enforce the challenged provisions.

Thus, the Court finds that the LUPE Plaintiffs have alleged a plausible set of facts establishing that the Attorney General has a sufficient enforcement connection to all but two of the S.B. 1 provisions (sections 2.08 and 2.11) that they challenge on constitutional grounds. Their claims challenging these provisions under the First, Fourteenth, and Fifteenth Amendments may proceed against the Attorney General pursuant to the *Ex parte Young* exception to state sovereign immunity.

### 2. Congress validly abrogated state sovereign immunity for the LUPE Plaintiffs' claim under Title II of the ADA against the Secretary and for their claims under §§ 2 and 208 of the VRA against Texas, the Secretary, and the Attorney General.

*Ex parte Young* is not the only vehicle for obtaining relief against a state. Congress may also abrogate a state's sovereign immunity. *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). To abrogate a state's sovereign immunity, it must be shown that Congress "both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (alterations in original) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)).

38

### a.   The LUPE Plaintiffs' claim under Title II of the ADA.

"In enacting the ADA, Congress 'invoke[d] the sweep of congressional authority, including the power to enforce the [F]ourteenth [A]mendment[.]" *United States v. Georgia*, 546 U.S. 151, 154 (2006) (alterations in original) (quoting 42 U.S.C. § 12101(b)(4)). Indeed, the ADA specifically provides that a "State shall not be immune under the [E]leventh [A]mendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. The Supreme Court has accordingly accepted this provision of the ADA "as an unequivocal expression of Congress's intent to abrogate state sovereign immunity." *Georgia*, 546 U.S. at 154 (citing *Garrett*, 531 U.S. at 363–64).

As to whether Congress has acted pursuant to a valid grant of constitutional authority, the Supreme Court has held that "the Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment." *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). Put differently, "Congress may subject nonconsenting States to suit in federal court when it does so pursuant to a valid exercise of its § 5 power." *Garrett*, 531 U.S. at 364. Thus, "the ADA can apply to the States only to the extent that the statute is appropriate § 5 legislation." *Id.*

Section 5 of the Fourteenth Amendment grants Congress the power to enforce the substantive guarantees found in § 1 of the Fourteenth Amendment by enacting "appropriate legislation." U.S. CONST. amend. XIV, § 5. Section 1 of the Fourteenth Amendment provides:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST. amend. XIV, § 1. Thus, to determine whether Congress has acted pursuant to a valid grant of constitutional authority in enacting Title II, a court assesses, on a claim-by-claim basis:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 617 (5th Cir. 2020) (quoting *Georgia*, 546 U.S. at 159). The first step, according to the Fifth Circuit, is to determine whether the plaintiffs have stated a claim upon which relief may be granted under Title II of the ADA. *Id.* at 617–18.

### i.    The LUPE Plaintiffs have stated a valid claim under Title II.

Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines the term "disability" as "a physical or mental impairment that substantially limits one or more major life activities[,]" *id.* § 12102(1)(A), and Title II "defines 'public entities' to include local governments[,]" *Cadena v. El Paso County*, 946 F.3d 717, 723 (5th Cir. 2020) (citing 42 U.S.C. § 12131(1)(A)).

Here, the LUPE Plaintiffs allege that their members "include individuals with disabilities within the meaning of the ADA and are entitled to the protections of the ADA." ECF No. 208 ¶ 279. They submit that "[t]hese individuals have a qualifying 'disability' because they have a physical or mental impairment that substantially limits one or more major life activities, including, but not limited to caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* (quotation marks and citations omitted). For instance, "LUPE's

40

members include voters who are disabled and require and use assistors of their choice, but who are not blind and can see and read the ballot." *Id.* ¶ 150. LUPE's members also "include voters who require accommodations that SB 1 limits or curtails with the imposition of new requirements for casting a ballot." *Id.* ¶ 151.

Further, the LUPE Plaintiffs have filed suit against the Secretary and the Attorney General, in their official capacities. *Id.* ¶¶ 22, 36. They allege that the Secretary and the Attorney General are public officials who are subject to Title II. *Id.* ¶ 278.

Together, these allegations establish that the LUPE Plaintiffs have properly invoked Title II of the ADA against public entities.

The Court now considers whether the LUPE Plaintiffs have alleged sufficient facts to state a *prima facie* case of discrimination under Title II. To do so, they must allege sufficient facts showing:

> (1) that [they, their members, or their constituents are] a qualified individual within the meaning of the ADA; (2) that [they, their members, or their constituents are] being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or [are] otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of [their or their members' or constituents'] disability.

*Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004) (citing *Lightbourn v. County of El Paso*, 118 F.3d 421, 428 (5th Cir. 1997)).

As to the first element, a qualified individual within the meaning of Title II is a disabled individual "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

41

The LUPE Plaintiffs allege that their members "are qualified for the programs, services, and activities being challenged herein in that they are registered voters or otherwise eligible to request and cast a ballot, in Texas elections, and are qualified to participate in Defendants' programs and activities related to voting." ECF No. 208 ¶ 279. Thus, the LUPE Plaintiffs have sufficiently shown that their members are qualified individuals within the meaning of Title II.

With respect to the second and third elements, federal regulations provide that public entities may not, on the basis of disability, "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others[.]" 28 C.F.R. § 35.130(b)(1)(ii). They also prohibit public entities from providing, by reason of disability, "a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others[.]" *Id.* § 35.130(b)(1)(iii). In addition, public entities may not "utilize criteria or methods of administration . . . [t]hat have the purpose or effect of defeating or substantially impairing the accomplishment of the objectives of the service, program, or activity with respect to individuals with disabilities." *Id.* § 35.130(b)(3)(ii). Federal regulations also make clear that public entities generally "shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity[.]" *Id.* § 35.130(b)(8). Finally, the ADA itself provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of . . . or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by" the statute. 42 U.S.C. § 12203(b).

Here, the LUPE Plaintiffs allege that sections 6.01, 6.03, 6.04, 6.05, 6.06, and 7.04 violate Title II. ECF No. 208 ¶ 273. As discussed *supra*, these provisions generally implement new procedures and requirements that assistors must follow and complete before assisting a voter. The LUPE Plaintiffs claim the provisions burden "voters with disabilities in making it harder for them to get necessary assistance[.]"*Id.* ¶ 280. For instance, they allege that section 6.01 "will deter individuals from giving . . . rides, further reducing access to voting for voters who need assistance[.]" *Id.* ¶ 115. They contend that sections 6.03, 6.04, and 6.05 "will slow in-person voting and burden the right to vote of those seeking assistance[.]" *Id.* ¶ 113. In addition, they submit that section 6.06 "prohibits assistors who work for non-profit civic engagement organizations and who conduct voter outreach from assisting mail voters who require . . . assistance to vote." *Id.* ¶ 114. They similarly allege that section 7.04 "will reduce voter participation by Texans who rely on assistance to cast their mail ballots" and "will impose the greatest burdens on . . . voters with disabilities." *Id.* ¶ 143. The LUPE Plaintiffs therefore submit that their disabled voting members will be unable to obtain "equal access to the franchise" and will be prevented "from exercising their fundamental right to vote." *Id.* ¶ 280. These allegations clearly establish the second and third elements for a *prima facie* case of discrimination under Title II.

The State Defendants counter that the LUPE Plaintiffs have failed to state a claim under Title II. ECF No. 255 at 29–35. They first contend that the LUPE Plaintiffs cannot assert a Title II claim because the organizations themselves do not have a disability. *Id.* at 30–31. However, it is well settled that an organization may sue as the representative of its members. *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010). Moreover, many courts have allowed organizations that serve disabled individuals to sue public entities under Title II. *See A Helping Hand, LLC v. Baltimore County*, 515 F.3d 356, 362–64 (4th Cir. 2008); *MX*

*Grp., Inc. v. City of Covington*, 293 F.3d 326, 332–36 (6th Cir. 2002); *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 46–48 (2d Cir. 1997). They did so after observing that "Title II's enforcement provision extends to relief to '*any person* alleging discrimination on the basis of disability.'" *Innovative Health Sys., Inc.*, 117 F.3d at 47 (emphasis in original) (quoting 42 U.S.C. § 12133). "[T]he use of such broad language in the enforcement provisions of the statutes evinces a congressional intention to define standing to bring a private action under [Title II] as broadly as is permitted by Article III of the Constitution." *Id.* (quotation marks and citation omitted); *see also Steward v. Abbott*, 189 F. Supp. 3d 620, 630–32 (W.D. Tex. 2016) (finding that organizations have associational standing in Title II case); *Fla. State Conf. of NAACP v. Lee*, --- F. Supp. 3d ----, No. 4:21cv187-MW/MAF, 2021 WL 6072197, at *9 (N.D. Fla. 2021) (stating that plaintiffs must show "that they—*or their constituents*—are qualified individuals with a disability") (emphasis added). The Court sees no reason to carve out an exception in this case.

The State Defendants further argue that the LUPE Plaintiffs have failed to state a Title II claim because neither the Secretary nor the Attorney General administer elections. ECF No. 255 at 31–33. On this point, the Court agrees with the State Defendants, to an extent. A *prima facie* case for discrimination under Title II requires a showing that the defendant public entity in some way provides the service or benefit at issue. *Ivy v. Williams*, 781 F.3d 250, 258 (5th Cir. 2015), *vacated and remanded as moot sub nom. Ivy v. Morath*, 137 S. Ct. 414 (2016). Although the Attorney General has authority to enforce criminal and civil offenses under the Election Code as discussed *supra*, it is unclear whether and how he provides the service or benefit at issue in this case, namely voting and voting by mail. The LUPE Plaintiffs do not offer a compelling explanation in their complaint or briefing. Thus, the Court concludes that, in this case, the Attorney General

does not provide the service or benefit at issue and will therefore dismiss the Attorney General as a defendant to the LUPE Plaintiffs' Title II claim only.

The Secretary, however, certainly provides the service or benefit of voting and voting by mail. The Secretary "is the chief election officer of the state." TEX. ELEC. CODE § 31.001(a). As chief election officer, the Secretary must "obtain and maintain uniformity in the application, operation, and interpretation of this code and of the election laws outside this code." *Id.* § 31.003. "In performing this duty," the Election Code explains, "the secretary shall prepare detailed and comprehensive written directives and instructions relating to and based on this code and the election laws outside this code." *Id.* The Election Code also charges the Secretary with "distribut[ing] these materials to the appropriate state and local authorities having duties in the administration of these laws." *Id.* The Election Code further provides that the Secretary must "assist and advise all election authorities with regard to the application, operation, and interpretation of this code and of the election laws outside this code." *Id.* § 31.004(a). The Secretary shall also "maintain an informational service for answering inquiries of election authorities relating to the administration of the election laws or the performance of their duties." *Id.* § 31.004(b).

The Election Code also requires the Secretary to "adopt standards of training in election law and procedure for presiding or alternate election judges[.]" *Id.* § 32.111(a)(1). Specifically, the Secretary must "develop materials for a standardized curriculum for that training; and distribute the materials as necessary to the governing bodies of political subdivisions that hold elections and to each county executive committee of a political party that holds a primary election." *Id.* §§ 32.111(a)(2)–(3). In addition, the Election Code states that a county clerk must "provide one or more sessions of training" to election judges and clerks. *Id.* § 32.114(a). The trainings that election judges and clerks must complete are premised upon "the standardized training program and

45

materials developed and provided by the secretary of state[.]" *Id.* The Secretary must "schedule and provide assistance for the training of election judges and clerks" upon request by a county executive committee or a county clerk. *Id.* § 32.115. Moreover, the Election Code tasks the Secretary with taking "appropriate action to protect the voting rights of the citizens of this state from abuse by the authorities administering the state's electoral processes." *Id.* § 31.005(a). The Election Code empowers the Secretary as follows:

> (b) The secretary of state may order a person performing official functions in the administration of any part of the electoral processes to correct offending conduct if the secretary determines that the person is exercising the powers vested in that person in a manner that:
>
> > (1) impedes the free exercise of a citizen's voting rights; or
>
> > (2) unless acting under an order of a court of competent jurisdiction, delays or cancels an election that the person does not have specific authority to delay or cancel.
>
> (c) If a person described by Subsection (b) fails to comply with an order from the secretary of state under this section, the secretary may seek enforcement of the order by a temporary restraining order or a writ of injunction or mandamus obtained through the attorney general.

*Id.* §§ 31.005(b)–(c).

Based on these statutory duties, it is clear that the Secretary is responsible for providing the service or benefit of voting and voting by mail. Indeed, the Election Code lists him first under chapter 31, which is titled "Officers to Administer Elections." Thus, his statutory duties permit him to "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service" at issue in this case. 28 C.F.R. § 35.130(b)(1)(ii). In implementing and enforcing the Election Code provisions to obtain and maintain the uniformity of all election laws, the Secretary must not "[a]id or perpetuate discrimination against a qualified individual with

46

a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program[.]" *Id.* § 35.130(b)(1)(v). This includes, as the Election Code expressly requires, his provision of assistance to counties and local officials. Moreover, the Secretary may not "utilize criteria or methods of administration: (i) [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability" when issuing directives, distributing election materials, and protecting voting rights. *Id.* § 35.130(b)(3). If he fails to do so, as the LUPE Plaintiffs allege in this case, then he is subject to liability under Title II.

The State Defendants have acknowledged in prior litigation that the "Secretary of State is the chief election officer, specially charged with administering elections." *Veasy v. Perry*, 29 F. Supp. 3d 896, 923 (S.D. Tex. 2014). But they now contend otherwise, arguing that "[i]n general, local election officials administer Texas elections." ECF No. 255 at 32. They cite *Ivy* and *Lightbourn* to support their contention. *Id.* at 31–32. Both of these cases, however, are inapposite. Moreover, neither of these cases forecloses the possibility that the Secretary, in addition to local officials, is responsible for providing a service or benefit under Title II.

In *Ivy*, a class of hearing impaired individuals filed suit against the Texas Education Agency ("TEA") for violations of Title II. 781 F.3d at 251, 254. "In Texas, individuals under the age of 25 cannot obtain driver's licenses unless they submit a driver education certificate to the Department of Public Safety[.]" *Id.* at 252 (citing TEX. TRANSP. CODE § 521.1601). The requisite driver education certificate is "only available from private driver education schools licensed by the TEA." *Id.* The plaintiffs requested injunctive relief requiring the TEA to bring driver education into compliance with Title II. *Id.* at 251. In response, the TEA filed a motion to dismiss for want

47

of jurisdiction and for failure to state a claim. *Id.* at 253. The district court denied the TEA's motion, but certified its order for immediate appeal. *Id.* at 251.

On appeal, the Fifth Circuit considered whether the plaintiffs had failed to state a Title II claim. *Id.* at 254–58. The panel first observed that Title II prohibits a public entity from excluding a qualified individual with a disability from its services, programs, or activities because of the individual's disability. *Id.* at 254–55 (citing 42 U.S.C. § 12132). It then articulated the relevant legal issue as "whether the named plaintiffs have been 'excluded from participation in or . . . denied the benefits of the services, programs, or activities of [the TEA].'" *Id.* at 255 (alterations in original) (quoting 42 U.S.C. § 12132). "To answer that question," the panel made clear, "we must decide whether driver education is a service, program, or activity of the TEA." *Id.* "Although this [was] a close question[,]" the Fifth Circuit held that driver education was not a service, program, or activity of the TEA. *Id.*

In reaching its holding, the Fifth Circuit considered the plain text of Title II and interpretive guidance from the Department of Justice ("DOJ").[17] *See id.* at 255–57. The Fifth Circuit interpreted the phrase "services, programs, or activities of a public entity" in Title II to mean "what 'services, programs, or activities' are provided by the public entity." *Id.* (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998)). The panel found it significant that "the TEA itself does not teach driver education, contract with driver education schools, or issue driver education certificates to individual students." Because the TEA's program "provide[d] the licensure and regulation of driving education schools, not driver education itself[,]" the Fifth Circuit found that the text of Title II "suggests that driver education is not a program, service, or activity of the TEA." *Id.*

---

[17] The Fifth Circuit also considered federal regulations and caselaw construing contractual and agency relationships between private and public entities. *See Ivy*, 781 F.3d at 255–58. Federal regulations, however, did not provide clarity, and contractual and agency relationships are not relevant here.

Interpretive guidance from the DOJ "stated that a public entity is not accountable for discrimination in the employment or other practices of [a company licensed by the public entity], if those practices are not the result of requirements or policies established by the [public entity]." *Id.* at 256 (alterations in original) (quotation marks and citation omitted). The panel observed that the plaintiffs had alleged that it was "the TEA's *failure* to establish requirements or policies [that] allowed private driver education schools to be inaccessible." *Id.* (emphasis in original). The Fifth Circuit therefore determined that "the DOJ's interpretive guidance indicates that the TEA is not accountable for the driver education schools' inaccessibility because the TEA's requirements and policies have not caused it." *Id.*

Here, whether the Secretary provides voting and vote-by-mail services is not a close question. The Election Code makes clear that voting in person and by mail are services or benefits that the Secretary provides. The Secretary has a concrete and specific role in the administration of elections throughout Texas and oversees voting processes and procedures. Indeed, the Election Code, including many of the S.B. 1 provisions that the LUPE Plaintiffs challenge in this case, requires the Secretary to implement the Election Code itself by way of rules and requirements. In other words, the Election Code charges the Secretary with administering elections.

Further, the Secretary's duties under the Election Code constitute far more than the mere licensing that the Fifth Circuit found insufficient in *Ivy*. The Secretary must provide voting and vote-by-mail services and must do so in a specific and particular manner pursuant to the Election Code. Indeed, it is precisely because of the Secretary's statutory obligation to implement and enforce the Election Code that, according to the LUPE Plaintiffs, he is subject to liability under Title II. Whereas the plaintiffs in *Ivy* claimed that the TEA had failed to establish requirements or policies to counteract disability discrimination, the LUPE Plaintiffs in this case allege that the

49

Secretary violates Title II by administering elections in accordance with the Election Code. They are *not* alleging that the Secretary has failed to establish requirements or policies that allow their disabled members to access voting and vote-by-mail services or benefits. Put differently, the LUPE Plaintiffs contend that the Secretary, in administering elections according to the specific procedures and processes the Election Code contemplates, discriminates against disabled voters.

It is for this reason that the State Defendants' reliance on *Lightbourn* is also misplaced. In that case, five visually impaired individuals, among others, filed a Title II suit for injunctive relief against the Secretary. *Lightbourn*, 118 F.3d at 423. The plaintiffs alleged that the Secretary "discriminated against them by failing to ensure that persons with visual and mobility impairments have access to 'polling sites and voting procedures.'" *Id.* In particular, they argued that Title II required the Secretary to provide them with the opportunity to vote in secret, without the assistance of an election worker or other person. *Id.* at 423–24, 431. The Fifth Circuit was not persuaded. It framed the relevant legal issue as whether the Secretary had "a duty to ensure that local election authorities comply with the ADA." *Id.* at 427. The panel then consulted the Election Code to review the Secretary's duties under certain provisions and determined that "the Secretary ha[d] no duty under either Texas law or the ADA to take steps to ensure that local election officials comply with the ADA." *Id.* at 432.

But here, the duty at issue is the Secretary's mandate to administer elections according to the Election Code. The LUPE Plaintiffs are *not* alleging that the Secretary has a duty to take steps to ensure that local officials comply with the ADA. It is therefore not the case that "the LUPE Plaintiffs would impose supervisory liability on the [Secretary]." ECF No. 255 at 32. Rather, the Secretary is personally and potentially liable under Title II because *he* must administer elections in compliance with Election Code provisions that—the LUPE Plaintiffs allege—discriminate

50

against disabled voters. *Lightbourn*, therefore, does not insulate the Secretary from the LUPE Plaintiffs' Title II claim.

Still, the State Defendants maintain that the LUPE Plaintiffs' Title II claim must be dismissed because they "have not identified any provision of SB1 that discriminates against voters with disabilities." *Id.* at 33. According to the State Defendants, no discrimination exists because "Texans with disabilities have multiple options to vote[.]" *Id.* These alternatives, they submit, include voting in a polling place or at the curbside during early voting, in a polling place or at the curbside on Election Day, and by mail. *Id.* Their arguments miss the mark. The relevant question before the Court at this stage of the proceedings is whether the LUPE Plaintiffs have alleged sufficient facts showing that the challenged S.B. 1 provisions violate Title II. The State Defendants' belief that the status quo already offers disabled voters meaningful access to vote— as Title II requires—is an argument for another day.

What is more, the LUPE Plaintiffs allege that the challenged provisions deny disabled voters not only equal and effective access to vote in person, but also equal and effective access to vote by mail. "Absentee and in-person voting are different benefits, and voters with disabilities are entitled to equal access to both." *Merrill v. People First of Ala.*, 141 S. Ct. 25, 27 (2020) (Sotomayor, J., dissenting); *see also Alexander v. Choate*, 469 U.S. 287, 301 (1985) ("The benefit itself, of course, cannot be defined in a way that effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled; to assure meaningful access, reasonable accommodations in the grantee's program or benefit may have to be made."); *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 506 (4th Cir. 2016) ("This case does not turn on whether there is a standalone right to vote privately and independently without assistance. Plaintiffs' argument is that defendants have provided such a benefit to non-disabled voters while

51

denying that same benefit to plaintiffs on the basis of their disability."). Even assuming that the alternatives that the State Defendants identify constitute reasonable modifications under Title II, they do nothing for eligible disabled voters who are discriminated against when voting by mail. Surely, voting by mail cannot be a reasonable modification when, as the LUPE Plaintiffs plausibly allege, disabled voters who are eligible to vote by mail do not have meaningful access to actually do so because of their disabilities.

For these reasons, the State Defendants' contention that "Texas law provides numerous accommodations for disabled voters" is also misplaced at this stage of litigation. ECF No. 225 at 34. The same goes for the State Defendants' argument that the LUPE Plaintiffs cannot state a valid Title II claim because "state law expressly prohibits election officials from interpreting any provision of the Texas Election Code" in a manner that discriminates against disabled voters. *Id.* at 33. The question before the Court is whether the LUPE Plaintiffs have alleged sufficient facts to state a valid Title II claim, not whether existing law—in the State Defendants' opinion—already provides meaningful access to vote in person and by mail, and precludes discrimination against disabled voters.

The Court, therefore, finds that the LUPE Plaintiffs have stated a claim upon which relief may be granted under Title II of the ADA.

### ii. Congress acted pursuant to a valid grant of constitutional authority in enacting Title II of the ADA to prohibit discrimination in voting.

Having concluded that the LUPE Plaintiffs have stated a valid Title II claim, the Court now considers which aspects of the State Defendants' alleged conduct violate Title II and to what extent such misconduct also violates the Fourteenth Amendment. *Block*, 952 F.3d at 617.

In *Lane*, the Supreme Court held "that Title II, as it applies to the class of cases implicating the fundamental right of access to the courts, constitutes a valid exercise of Congress' § 5 authority

22-50775.10775

to enforce the guarantees of the Fourteenth Amendment." 541 U.S. at 533–34. In reaching its holding, the *Lane* Court considered the "constitutional right or rights that Congress sought to enforce when it enacted Title II." *Id.* at 522. The *Lane* Court observed that the Fourteenth Amendment requires that "all persons similarly situated should be treated alike[.]" *Id.* (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 439 (1985)). It then determined that Title II seeks to enforce this constitutional command by prohibiting discrimination against disabled persons. The *Lane* Court also found that Title II "seeks to enforce a variety of other basic constitutional guarantees, infringements of which are subject to more searching judicial review." *Id.* at 522–23. "These rights include some, like the right of access to the courts at issue in this case, that are protected by . . . the Fourteenth Amendment." *Id.* at 523. The *Lane* Court accordingly concluded that in enacting Title II, Congress validly abrogated state sovereign immunity as it applies to Title II cases implicating the right of access to the courts. *Id.* at 533–34.

In this case, the LUPE Plaintiffs allege that certain S.B. 1 provisions discriminate against their disabled members by burdening their right to vote. "The Fourteenth Amendment has been interpreted to protect voters generally from laws that excessively burden the right to vote and the conduct of the political process." *Veasy v. Abbott*, 830 F.3d 216, 316 (5th Cir. 2016) (Jones, J., joined by Jolly, Smith, Clement, and Owen, JJ., concurring in part) (citing *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 189–91 (2008); *Burdick v. Takushi*, 504 U.S. 428, 432–34 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 786–90 (1983)); *see also McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802, 807 (1969) ("[B]ecause of the overriding importance of voting rights, classifications 'which might invade or restrain them must be closely scrutinized and carefully confined' where those rights are asserted under the Equal Protection Clause[.]" (quoting

22-50775.10776

*Harper v. Va. State Bd. of Elections*, 383 U.S. 663, 670 (1966)). Thus, it is clear that the State Defendants' alleged misconduct violates both Title II and the Fourteenth Amendment.

It is of no consequence that the LUPE Plaintiffs challenge S.B. 1 provisions pertaining to the State Defendants' vote-by-mail program. The Fourteenth Amendment, and the Equal Protection Clause in particular, "extend to all action of the State denying equal protection of the laws, whatever the agency of the State taking the action, or whatever the guise in which it is taken." *Cooper v. Aaron*, 358 U.S. 1, 17 (1958) (citations omitted). The Election Code, in turn, provides that an eligible voter who has a physical condition that prevents them from appearing at a polling place on an election day without a likelihood of needing personal assistance or of injuring their health has a right to vote by mail. TEX. ELEC. CODE § 82.002(a)(1). Therefore, voting by mail in Texas is state action subject to the constitutional guarantees found in the Fourteenth Amendment.

Accordingly, the Court finds that Congress acted pursuant to a valid grant of constitutional authority in enacting Title II to prohibit discrimination in voting. Thus, state sovereign immunity presents no obstacle to the LUPE Plaintiffs' Title II claim against the Secretary.

### b. The LUPE Plaintiffs' claims under §§ 2 and 208 of the VRA.

The Fifth Circuit "has held that the Voting Rights Act, 'which Congress passed pursuant to its Fifteenth Amendment enforcement power, validly abrogated state sovereign immunity.'" *Mi Familia Vota*, 977 F.3d at 469 (quoting *OCA-Greater Hous. v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017)). State sovereign immunity, therefore, does not bar the LUPE Plaintiffs' claims under §§ 2 and 208 of the VRA against Texas, the Secretary, and the Attorney General.

In sum, state sovereign immunity does not bar the LUPE Plaintiffs' claims under the First, Fourteenth, and Fifteenth Amendments, Title II of the ADA, and §§ 2 and 208 of the VRA.

54

However, the Court will dismiss the LUPE Plaintiffs' Title II claim against the Attorney General for failure to state a claim.

### B.  The LUPE Plaintiffs have sufficiently shown that they have standing.

It is well settled that a plaintiff invoking a federal court's jurisdiction must establish standing by satisfying three irreducible requirements. *Lujan*, 504 U.S. at 560. "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant[s], and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Juridical entities may satisfy these requirements under an associational or organizational theory of standing. *OCA-Greater Hous.*, 867 F.3d at 610. At the pleading stage, "the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician*, 691 F.3d at 652. Where, as here, the plaintiffs challenge several provisions in a statute, they must plead "all the elements of standing for each provision they seek to challenge." *In re Gee*, 941 F.3d 153, 162 n.4 (5th Cir. 2019). Further, where, as here, multiple plaintiffs seek injunctive relief, only one needs to establish standing for each claim asserted. *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006).

Here, LUPE is a named plaintiff for all claims that the LUPE Plaintiffs assert against Texas, the Secretary, and the Attorney General. Therefore, the LUPE Plaintiffs need only allege a plausible set of facts establishing that LUPE has standing to assert these claims against Texas, the Secretary, and the Attorney General.

The LUPE Plaintiffs have sufficiently shown that LUPE has organizational standing to assert each claim and challenge each S.B. 1 provision at issue in this case. Organizational standing exists if the entity itself "meets the same standing test that applies to individuals." *Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999).

1. **Injury in fact**

Under an organizational theory of standing, an organization may establish an injury in fact by alleging "a drain on its resources resulting from counteracting the effects of the defendant's actions." *La. ACORN Fair Hous. v. LeBlanc*, 211 F.3d 298, 305 (5th Cir. 2000). That is precisely what the LUPE Plaintiffs have alleged in this case.

LUPE "is a non-partisan membership organization founded by labor rights activists César Chávez and Dolores Huerta." ECF No. 208 ¶ 9. Its "mission is to build strong, healthy communities in the Texas Rio Grande Valley through community organizing and civic engagement." *Id.* To fulfill its mission, LUPE "conducts know-your-rights discussions and membership meetings, participates in issue-focused advocacy, campaigns to support or oppose nonpartisan ballot measures through in-person canvassing, connects its members to social services, conducts census outreach, and conducts voter registration, education, and non-partisan get-out-the-vote campaigns (GOTV)." *Id.* "LUPE has more than 8,000 members, including Latinos, U.S. citizens, and registered voters, some of whom are disabled." *Id.* ¶ 10.

The LUPE Plaintiffs allege that each of the S.B. 1 provisions that they challenge in this case will harm LUPE. *See id.* ¶¶ 149–65. Specifically, they contend that the challenged provisions "will force LUPE to divert its resources away from its GOTV, voter registration and community education activities, which are central to its mission[.]" *Id.* ¶ 162. The organization is compelled to do so "in order to counteract the negative effects of SB1 on its members." *Id.* The LUPE Plaintiffs allege that "LUPE has in the past, and will in the future, conduct[] GOTV activities aimed at Latino registered voters with low turnout." *Id.* Additionally, "LUPE has in the past, and will in the future, pay employees who, among their other duties: educate voters about an upcoming election; urge the voters to vote; and encourage, offer and deliver assistance to voters." *Id.*

56

The LUPE Plaintiffs further allege that "LUPE will be required to divert resources to retrain staff, prepare new educational materials, recruit, train and manage new volunteers, and conduct community outreach to comply with SB1's new restrictions and requirements for assisting voters with mail and in-person voting." *Id.* ¶ 165. The LUPE Plaintiffs explain that this diversion of resources will "frustrate the mission of LUPE by reducing the number of people available to assist voters, and reducing the voter turnout of voters who rely on assistance, including Latinos with limited English proficiency, limited literacy rates and low rates of voter turnout." *Id.* These allegations sufficiently show that LUPE has suffered a cognizable organizational injury based on a diversion-of-resources theory.

The State Defendants' arguments to the contrary are unavailing. They first claim that the LUPE Plaintiffs have failed to allege a cognizable organizational injury on a provision-by-provision basis. ECF No. 255 at 18. That is incorrect. The LUPE Plaintiffs *do* allege that they have suffered an injury with respect to each of the S.B. 1 provisions that they challenge. What the State Defendants fail to appreciate is that the injury that the LUPE Plaintiffs have alleged is the same for each of the S.B. 1 provisions that they challenge. In order to counteract the effects of each of these provisions, LUPE must divert resources away from its routine community activities—such as membership meetings, census outreach, and GOTV campaigns—to retrain staff, prepare new educational materials, and recruit, train, and manage new volunteers.

The State Defendants also rely on *N.A.A.C.P. v. City of Kyle*, 626 F.3d 233 (5th Cir 2010), for the proposition that, "although the diversion of resources can constitute a requisite injury under certain circumstances, '[n]ot every diversion of resources to counteract [a] defendant's conduct . . . establishes an injury in fact.'" *Id.* at 23 (quoting *City of Kyle*, 626 F.3d at 238). They argue that the LUPE Plaintiffs' diversion-of-resources theory fails to establish a cognizable injury because

57

they have not identified specific projects that they have placed on hold or otherwise curtailed in light of the S.B. 1 provisions that they challenge. *Id.* at 24 (citing *City of Kyle*, 626 F.3d at 238).

Setting aside the fact that the LUPE Plaintiffs *have* identified specific projects that need to be placed on hold, *see supra*, the Fifth Circuit expressly rejected such a prerequisite to standing at the pleading stage in *OCA-Greater Houston*:

> Our remark in *City of Kyle* that those plaintiffs could have established standing by "identif[ying] any specific projects that the HBA had to put on hold or otherwise curtail in order to respond to the revised ordinances" *was not a heightening of the* Lujan *standard, but an example of how to satisfy it by pointing to a non-litigation-related expense.*

867 F.3d at 612 (emphasis added). The plaintiff organization in *OCA-Greater Houston* alleged that it had been injured by the need for "'additional time and effort spent explaining the Texas provisions at issue to limited English proficient voters' because 'addressing the challenged provisions frustrates and complicates its routine community outreach activities.'" *Id.* at 610. The panel held that the plaintiff organization's injury was a sufficient Article III injury to establish organizational standing because the Texas law at issue forced the organization to divert resources and "perceptibly impaired [its] ability to get out the vote among its members." *Id.* at 612 (quotation marks omitted). To establish a cognizable organizational injury, therefore, the LUPE Plaintiffs need not identify specific projects that they have placed on hold or otherwise curtailed. Having done so, they have simply exceeded the requirements for pleading organizational standing.

The State Defendants' reliance on *Zimmerman v. City of Austin*, 881 F.3d 378 (5th Cir. 2018), also imposes an improper heightened pleading standard. In *Zimmerman*, a councilmember sued the City of Austin and asserted constitutional challenges against, *inter alia*, a provision in a local campaign-finance law that prohibited candidates from accepting more than a predetermined aggregate sum of monetary contributions from individuals outside of the Austin area. 881 F.3d at

382. After a bench trial, the district court concluded that the councilmember lacked standing to challenge the provision. *Id.* On appeal, the councilmember argued that the provision prompted an Article III injury because "it caused him to change his campaign strategy and withhold solicitations he otherwise would have sent to individuals outside of the Austin area." *Id.* at 389.

The Fifth Circuit disagreed and affirmed the district court's ruling. *Id.* The panel found that the councilmember had not demonstrated at trial that he intended to engage in conduct that the provision proscribed. *Id.* However, the panel said nothing about what an organization must allege to establish a cognizable injury at the pleading stage. In fact, the Fifth Circuit observed that "changing one's campaign plans or strategies in response to an allegedly injurious law *can* itself be a sufficient injury to confer standing[.]" *Id.* at 390 (emphasis added). In doing so, the panel indicated that a diversion of efforts may be sufficient to establish a cognizable organizational injury at the pleading stage.

The State Defendants also cite *Fowler* and other out-of-circuit cases to argue that frustration of an organization's purpose, in and of itself, is insufficient to establish an injury. *See* ECF No. 255 at 25, 27. True, a "showing that an organization's mission is in direct conflict with a defendant's conduct is insufficient, *in and of itself*, to confer standing on the organization to sue on its own behalf." *Fowler*, 178 F.3d at 361 n.7 (emphasis added). The LUPE Plaintiffs, however, allege far more than a mere conflict between LUPE's mission and the S.B. 1 provisions that they challenge. As discussed *supra*, they assert that they must divert resources away from their routine and anticipated projects, both voting-related and otherwise, to address the impact that each of the challenged S.B. 1 provisions will have on LUPE's voting and volunteer members. "Such concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract

social interests[.]" *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) ("If a defendant has caused [] monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact[.]").

Finally, the State Defendants claim that a "diversion of resources is . . . cognizable only if the plaintiff 'would have suffered some other injury if it had not diverted resources to counteracting the problem.'" ECF No. 255 at 23 (quoting *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010)). But the State Defendants mischaracterize *La Asociacion de Trabajadores*. There, the Ninth Circuit began its analysis by making clear that an "organization suing on its own behalf can establish an injury when it suffered 'both a diversion of its resources and a frustration of its mission.'" *La Asociacion de Trabajadores*, 624 F.3d at 1088 (quoting *Fair Housing of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002)). The panel then noted that a plaintiff organization "cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all." *Id.* "It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *Id.* In *Havens*, the panel explained, "housing discrimination threatened to make it more difficult for HOME to counsel people on where they might live if the organization didn't spend money fighting it." *Id.* "The organization could not avoid suffering one injury or the other, and therefore had standing to sue." *Id.*

In short, the Ninth Circuit's analysis in *La Asociacion de Trabajadores* stands for the same proposition that the Supreme Court and the Fifth Circuit have repeatedly acknowledged: "An entity can show an organizational injury by alleging that it must divert resources from its usual activities in order to lessen the challenged restriction's harm to its mission." *Lewis v. Hughs*, 475 F. Supp. 3d 597, 612 (W.D. Tex. 2020), *rev'd and remanded on other grounds sub nom. Lewis*, 28 F.4th at

659 (citing *Havens*, 455 U.S. at 379); *see also OCA-Greater Hous.*, 867 F.3d at 612 (finding that plaintiff organization established injury in fact when it "went out of its way to counteract the effect of Texas's allegedly unlawful voter-interpreter restriction—not with a view toward litigation, but toward mitigating its real-world impact on OCA's members and the public"); *La. ACORN Fair Hous.*, 211 F.3d at 305 ("[A]n organization could have standing if it had proven a drain on its resources from counteracting the effects of the defendant's actions." (citing *Fowler*, 178 F.3d at 360)). The LUPE Plaintiffs have alleged that LUPE must divert resources from its usual activities to address the harms that the challenged S.B. 1 provisions will cause to its mission. No more is required at the pleading stage.[18]

Thus, the LUPE Plaintiffs have adequately alleged that LUPE has suffered a cognizable organizational injury based on a diversion-of-resources theory to assert each claim challenging each of the S.B. 1 provisions at issue in this case.

### 2. Causation and redressability

Whether LUPE's cognizable organizational injury is fairly traceable to and redressable by Texas, the Secretary, and the Attorney General is a straightforward inquiry. The "invalidity of a Texas election statute is, without question, fairly traceable to and redressable by the State itself and its Secretary of State[.]"[19] *OCA-Greater Hous.*, 867 F.3d at 613. Further, the credible threat of enforcing the challenged S.B. 1 provisions, as discussed in the Court's *Ex parte Young* analysis

---

[18] The State Defendants also argue that the LUPE Plaintiffs have failed to show that any injury with respect to the Attorney General is imminent. ECF No. 255 at 25; *see also* ECF No. 313 at 13. For the reasons discussed in the Court's *Ex parte Young* analysis *supra*, the Court disagrees. Further, the State Defendants' argument that the LUPE Plaintiffs do not have third-party standing is misplaced. ECF No. 255 at 28. "An organization can seek relief under either an associational standing theory or an organizational standing theory." *US Inventor Inc. v. Hirshfeld*, 549 F. Supp. 3d 549, 555 (E.D. Tex. 2021).

[19] In light of clear, binding Fifth Circuit precedent, it matters not that the LUPE Plaintiffs purportedly "fail to allege enforcement of the provisions challenged . . . by a state official such that the alleged harm is traceable to the State and redressable by a favorable decision." ECF No. 255 at 18.

22-50775.10784

*supra*, is fairly traceable to the Attorney General, who has authority to impose civil penalties on election officials and prosecute election law offenses.[20] An injunction prohibiting the Attorney General from enforcing these provisions will, at least partly, redress the injuries that LUPE has suffered. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) ("[T]he ability to effectuate a partial remedy satisfies the redressability requirement." (quotation marks and citation omitted)).

The State Defendants argue that the LUPE Plaintiffs' injuries are not fairly traceable to nor redressable by the Secretary and the Attorney General. ECF No. 255 at 18–20. For the most part, their contentions echo those that they raised in asserting that the Secretary and the Attorney General are entitled to state sovereign immunity. *Id.* However, as the State Defendants observe, "Article III standing analysis and *Ex parte Young* analysis 'significantly overlap.'" *City of Austin*, 943 F.3d at 1002 (quoting *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017)). Therefore, for the same reasons discussed in the Court's *Ex parte Young* analysis *supra*, these arguments are unpersuasive.

The State Defendants also contend that *OCA-Greater Houston* only applies in cases considering the facial validity of a Texas election statute. ECF No. 255 at 19–20. To be sure, in *Texas Democratic Party v. Hughs*, 974 F.3d 570 (5th Cir. 2020) (per curiam), the Fifth Circuit noted that *OCA-Greater Houston* involved a facial challenge. *Id.* at 570–71. The panel did so after observing that an "important question" had not been resolved, namely "whether and to what extent *Ex parte Young*'s exception to sovereign immunity permits plaintiffs to sue the Secretary in an as-applied challenge to a law enforced by local officials." *Id.* at 570. But the panel did not resolve that important question. Rather, it held that the "openness of the question alone [was] sufficient

---

[20] *Paxton v. Longoria*, No. 22-0224, 2022 WL 2080867 (Tex. June 10, 2022) does not hold otherwise. There, the Texas Supreme Court concluded that the Attorney General does not have authority to seek civil penalties under section 31.129 of the Election Code against an election official "based solely on the fact of the parties' agreement that [the Attorney General] lacks authority to enforce Section 31.129[.]" *Longoria*, 2022 WL 2080867, at *7.

reason to deny" the plaintiffs' request for summary affirmance of a district court order concluding that the Secretary was not entitled to state sovereign immunity. *Id.* at 571. Moreover, as discussed *supra*, the *Ex parte Young* exception to state sovereign immunity applies to the LUPE Plaintiffs' claims under the First, Fourteenth, and Fifteenth Amendments, and Congress validly abrogated state sovereign immunity in enacting the VRA and Title II. *Hughs*, therefore, is inapposite.

Equally unpersuasive is the State Defendants' argument that *OCA-Greater Houston* is not binding on the Court because, in their view, the panel failed to consider *Bullock v. Calvert*, 480 S.W.2d 367 (Tex. 1972). ECF No. 255 at 20. *Bullock*, according to the State Defendants, indicates that the Secretary's duties under the Election Code are "not a delegation of authority to care for any breakdown in the election process." *Id.* (citing *In re Hotze*, 627 S.W.3d 642, 649 (Tex. 2020) (citing *Bullock*, 480 S.W.2d at 372))). Their contention, however, is based on conjecture and reads much into the opinion that cannot be supported by the panel's careful reasoning.

There is also no reason to ignore *OCA-Greater Houston* in response to a nonbinding concurring opinion of the Texas Supreme Court. *Id.* The State Defendants' belief that *OCA-Greater Houston* was "wrongly" decided has no bearing. *Id.* The Court "is bound by a circuit decision unless or until it is overturned by an en banc decision of the circuit court or a decision of the Supreme Court." *Perez v. Abbott*, 250 F. Supp. 3d 123, 139 (W.D. Tex. 2017) (citing *Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1211 (5th Cir. 1991)).

Finally, the State Defendants contend that the LUPE Plaintiffs' injuries are not fairly traceable to the Attorney General because whether the Attorney General will enforce the challenged S.B. 1 provisions is "highly speculative." ECF No. 255 at 19. But the LUPE Plaintiffs, as discussed *supra*, *have* sufficiently alleged that the Attorney General can and will enforce most of the provisions that the LUPE Plaintiffs challenge. It is the Attorney General's credible threat of

enforcement that harms the LUPE Plaintiffs and their members. *See Longoria v. Paxton*, --- F. Supp. 3d ----, No. SA:21-CV-1223-XR, 2022 WL 447573, at *17 (W.D. Tex. 2022*), vacated and remanded on other grounds*, No. 22-50110, 2022 WL 2208519 (5th Cir. June 21, 2022) ("To be clear, the irreparable harm alleged in this case is not *actual* enforcement of the anti-solicitation provision; the harm is the chilling effect on Plaintiffs' speech that arises from the credible *threat* of enforcement.") (emphasis in original).

Moreover, the LUPE Plaintiffs allege that sections 6.01, 6.03, 6.04, 6.05, 6.06 and 7.04 inhibit burden free speech in part because they subject their members to criminal prosecution. ECF No. 208 ¶¶ 286–300, 310–14. In the pre-enforcement context, the LUPE Plaintiffs need only allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and . . . a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014). The LUPE Plaintiffs have done so.

Thus, the LUPE Plaintiffs have alleged sufficient facts plausibly establishing that LUPE has standing to sue the Secretary and the Attorney General under each of their claims, as well as Texas under their claims under §§ 2 and 208 of the VRA, challenging each of the S.B. 1 provisions at issue in this case. [21]

### C. The LUPE Plaintiffs have stated claims upon which relief may be granted under §§ 2 and 208 of the VRA.

Relying on *Alexander v. Sandoval*, 532 U.S. 275 (2001), the State Defendants argue that §§ 2 and 208 of the VRA do not create private causes of action. [22] ECF No. 53 at 35–40. The State

---

[21] It is likely that all other LUPE Plaintiffs also have organizational standing.

[22] The State Defendants incorporate the arguments from their first motion to dismiss. *See* ECF No. 255 at 35. Although the Court denied the State Defendants' motion to dismiss on these points at the hearing held on November 16, 2021, the Court provides a more thorough explanation for its denial herein.

Defendants further contend that, even if these statutes create private causes of action, nonvoting, organizational plaintiffs cannot enforce such causes of action. *Id.* The Court disagrees.

"The Fifteenth Amendment guarantees that the 'right of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude,' § 1, and it grants Congress the authority to 'enforce' these rights 'by appropriate legislation,' § 2." *Nw. Austin Mun. Utility Dist. No. One v. Holder*, 557 U.S. 193, 217 (2009) (quoting U.S. CONST. amend. XV, §§ 1–2). "Congress enacted the landmark Voting Rights Act of 1965, 79 Stat. 437, as amended, 52 U.S.C. § 10301 *et seq.*, in an effort to achieve at long last what the Fifteenth Amendment had sought to bring about 95 years earlier: an end to the denial of the right to vote based on race." *Brnovich v. Democratic Nat'l Comm.*, 141 S. Ct. 2321, 2330 (2021). "The Voting Rights Act is ambitious, in both goal and scope." *Id.* at 2351 (Kagan, J., dissenting). It contains comprehensive sections designed "to correct an active history of discrimination" and "deal with the accumulation of discrimination." *Thornburg v. Gingles*, 478 U.S. 30, 44 n.9 (1986) (quotation marks and citation omitted).

Section 2 of the VRA "was enacted to forbid, in all 50 States, any 'standard, practice, or procedure . . . imposed or applied . . . to deny or abridge the right of any citizen of the United States to vote on account of race or color.'" *Shelby County v. Holder*, 570 U.S. 529, 536 (2013) (quoting 79 Stat. 437). "The current version forbids any 'standard, practice, or procedure' that 'results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color.'" *Id.* at 536–37 (quoting 42 U.S.C. § 1973(a)). Section 208, on the other hand, provides that a "voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508.

22-50775.10788

To be sure, "private rights of action to enforce federal law must be created by Congress." *Sandoval*, 532 U.S. at 286. However, "[o]rganizations and private parties have been permitted to enforce Section 2 of the VRA, both before and after the 2001 [*Sandoval*] case on which Defendants rely." *Veasy*, 29 F. Supp. 3d at 906. For example, in *League of United Latin American Citizens v. Perry*, 548 U.S. 399 (2006), voters and interest groups challenged Texas's congressional redistricting plan under § 2. Similarly, in *Johnson v. De Grandy*, 512 U.S. 997 (1994), two groups of Hispanic and Black voters challenged Florida's legislative redistricting plan under § 2. Furthermore, in this Circuit, a Hispanic advocacy group filed suit against the City of Boerne, "alleging that the voting method adopted by the City Charter diluted minority voting strength, in violation of Section 2 of the Voting Rights Act[.]" *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 675 F.3d 433, 435 (5th Cir. 2012).

Organizations and private parties have also been permitted to enforce § 208 of the VRA. In *OCA-Greater Houston*, for instance, the plaintiff was a nonprofit organization conducting "Get Out the Vote" efforts among voters with limited English proficiency. 867 F.3d at 609. The suit alleged that a provision in the Election Code that restricted who could assist voters with limited English proficiency was preempted by § 208. *Id.* at 608. On the merits, the Fifth Circuit held that the challenged provision "impermissibly narrows the right guaranteed by Section 208 of the VRA." *Id.* at 615. District courts outside of this Circuit have also confirmed that organizations and private plaintiffs may enforce § 208. *See Democracy N.C. v. N.C. State Bd. of Elections*, --- F. Supp. 3d ----, No. 1:20CV457, 2022 WL 715973, at *14 (M.D. N.C. 2022) (holding that person "sufficiently alleged a plausible claim that North Carolina's absentee ballot voting laws violate Section 208"); *Lee*, 2021 WL 6072197, at *9 (N.D. Fla. 2021) (holding that organizations stated a claim under § 208 of VRA); *Ark. United v. Thurston*, 517 F. Supp. 3d 777, 796–97 (W.D. Ark.

2021) (same); *Priorities USA v. Nessel*, 462 F. Supp. 3d 792, 816 (E.D. Mich. 2020) (same). Indeed, "every court that has considered the issue—and the Attorney General of the United States—agree[s] that private parties may enforce [§] 208." *Lee*, 2021 WL 6072197, at *9.

Further, the Court finds the *Lee* court's analysis on the question of whether § 208 creates a private cause of action persuasive. *See id.* at *7–9. The judicial task when assessing whether a statute creates a private cause of action is "to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 286. In 1975, Congress amended § 3 of the VRA "by striking out 'Attorney General' . . . and inserting in lieu thereof the following[:] 'Attorney General or an aggrieved person.'" Voting Rights Act Amendments of 1975, Pub. L. 94-73, 89 Stat. 404. In its current form, § 3 makes clear that "an aggrieved person" may institute "a proceeding under any statute to enforce the voting guarantees of the fourteenth or fifteenth amendment in any State[.]"[23] 52 U.S.C. § 10302(a). Section 3, therefore, plainly provides that a private plaintiff may initiate a lawsuit under any statute that enforces the Fourteenth and Fifteenth Amendments.

"Congress clearly designed section 208 to enforce the Fourteenth Amendment's guarantees." *Lee*, 2021 WL 6072197, at *9. In *Lane*, the Supreme Court held that, upon enacting Title II, Congress validly abrogated state sovereign immunity under the Fourteenth Amendment because Title II sought to remedy, among other concerns, discrimination against disabled voters. 541 U.S. at 524, 533–34. The Supreme Court has also cautioned that, "because of the overriding importance of voting rights, classifications 'which might invade or restrain them must be closely scrutinized and carefully confined' where those rights are asserted under the Equal Protection

---

[23] Congress has also made clear that in "any action or proceeding to enforce the voting guarantees of the fourteenth or fifteenth amendment, the court, in its discretion, may allow the prevailing party, *other than the United States*, a reasonable attorney's fees, reasonable expert fees, and other reasonable litigation expenses as part of the costs." 52 U.S.C. § 10310(e) (emphasis added).

22-50775.10790

Clause[.]" *McDonald*, 394 U.S. at 807 (quoting *Harper*, 383 U.S. at 670). Thus, since § 208 is, by its terms, a statute designed for enforcement of the guarantees of the Fourteenth Amendment, "Congress must have intended it to provide private remedies." *Morse v. Republican Party of Va.*, 517 U.S. 186, 234 (1996). Congress certainly envisioned that private remedies under § 208 would be enforceable under § 3 of the VRA, which again, provides that a private plaintiff may initiate a lawsuit under *any* statute that enforces the Fourteenth Amendment. *See Parker Drilling Mgmt. Servs., Ltd. v. Newton*, 139 S. Ct. 1881, 1890 (2015) ("It is a commonplace of statutory interpretation that Congress legislates against the backdrop of existing law." (quotation marks and citation omitted)). Section 208, therefore, creates a private cause of action.

In sum, caselaw clearly establishes that organizations, like the LUPE Plaintiffs, have historically been able to enforce these provisions. Absent any compelling showing to the contrary, the Court is not inclined to deviate from firmly entrenched historical precedent that has permitted organizational plaintiffs to invoke these provisions. The LUPE Plaintiffs, therefore, have stated claims upon which relief may be granted under §§ 2 and 208 of the VRA.

## CONCLUSION

For the foregoing reasons, the State of Texas, the Texas Secretary of State, and the Texas Attorney General's motion to dismiss all claims that La Unión del Pueblo Entero, Friendship-West Baptist Church, the Anti-Defamation League Austin, Southwest, and Texoma Regions, the Southwest Voter Registration Education Project, Texas Impact, the Mexican American Bar Association of Texas, Texas Hispanics Organized for Political Education, Jolt Action, the William C. Velasquez Institute, FIEL Houston Inc., and James Lewin have asserted against them (ECF No. 255) is hereby **GRANTED IN PART** and **DENIED IN PART** as follows:

Any and all claims challenging section 2.11 of S.B. 1 under the Fourteenth and Fifteenth Amendments to the United States Constitution against the Texas Secretary of State are **DISMISSED WITHOUT PREJUDICE**.

Any and all claims challenging section 2.08 and 2.11 of S.B. 1 under the Fourteenth and Fifteenth Amendments to the United States Constitution against the Texas Attorney General are **DISMISSED WITHOUT PREJUDICE**.

Any and all claims challenging portions of section 6.04 of S.B. 1 that the district court enjoined in *OCA Greater Hous. v. Texas*, No. 1:15-CV-679-RP, 2022 WL 2019295 (W.D. Tex. June 6, 2022) are **MOOT**.

Any and all claims challenging section 7.04 of S.B. 1, as codified in sections 276.016, 276.017, and 276.019 of the Election Code, are **DISMISSED WITHOUT PREJUDICE** on failure to state a claim grounds.

Any and all claims under Title II of the Americans with Disabilities Act against the Texas Attorney General are **DISMISSED WITHOUT PREJUDICE** on failure to state a claim grounds.

All other claims that La Unión del Pueblo Entero, Friendship-West Baptist Church, the Anti-Defamation League Austin, Southwest, and Texoma Regions, the Southwest Voter Registration Education Project, Texas Impact, the Mexican American Bar Association of Texas, Texas Hispanics Organized for Political Education, Jolt Action, the William C. Velasquez Institute, FIEL Houston Inc., and James Lewin have asserted against the State of Texas, the Texas Secretary of State, and the Texas Attorney General may proceed.

It is so **ORDERED**.

**SIGNED** this August 2, 2022.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

On December 9, 2022, these record excerpts were served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ William F. Cole
WILLIAM F. COLE