**No. 22-50775**

In the United States Court of Appeals
for the Fifth Circuit

LA UNION DEL PUEBLO ENTERO; FRIENDSHIP-WEST BAPTIST CHURCH; ANTI-DEFAMATION LEAGUE AUSTIN, SOUTHWEST, AND TEXOMA; SOUTHWEST VOTER REGISTRATION EDUCATION PROJECT; TEXAS IMPACT; MEXICAN AMERICAN BAR ASSOCIATION OF TEXAS; TEXAS HISPANICS ORGANIZED FOR POLITICAL EDUCATION; JOLT ACTION; WILLIAM C. VELASQUEZ INSTITUTE; JAMES LEWIN; FIEL HOUSTON, INCORPORATED,

*Plaintiffs - Appellees*,

*v.*

JANE NELSON, IN HER OFFICIAL CAPACITY AS TEXAS SECRETARY OF STATE; WARREN K. PAXTON, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS; STATE OF TEXAS,

*Defendants - Appellants*.

On Appeal from the United States District Court
of the Western District of Texas, San Antonio Division

**BRIEF OF PLAINTIFFS-APPELLEES**

Nina Perales
Julia Renee Longoria
Mexican-American Legal Defense &
Education Fund
Suite 300
110 Broadway Street
San Antonio, TX 78205

Sean Morales-Doyle
Brennan Center for Justice
Suite 1750
120 Broadway
New York, NY 10271

Michael C. Keats
Rebecca L. Martin
Jason S. Kanterman
Fried, Frank, Harris, Shriver &
Jacobson, L.L.P.
1 New York Plaza
New York, NY 10004

Zachary D. Tripp
Weil, Gotshal & Manges LLP
2001 M Street NW, Suite 600
Washington, DC 20036

Aaron J. Curtis
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

Paul R. Genender
Weil, Gotshal & Manges LLP
6950, 200 Crescent Ct. Ste. 300
Dallas, TX 75201

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Circuit Rule 28.2.1 have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
| --- | --- |
| Anti-Defamation League Austin, Southwest, and Texoma | Paul R. Genender of Weil, Gotshal & Manges, L.L.P.  Dallas, TX |
| Anti-Defamation League Austin, Southwest, and Texoma | Aaron J. Curtis of Weil, Gotshal & Manges, L.L.P.  New York, NY |
| Anti-Defamation League Austin, Southwest, and Texoma | Zachary Tripp of Weil, Gotshal & Manges, L.L.P.  Washington, DC |
| Anti-Defamation League Austin, Southwest, and Texoma | Sean Morales-Doyle of Brennan Center for Justice New York, NY |
| Fiel Houston, Incorporated | Nina Perales of Mexican-American Legal Defense & Educational Fund San Antonio, TX |
| Fiel Houston, Incorporated | Julia Renee Longoria of Mexican-American Legal Defense & Educational Fund San Antonio, TX |
| Fiel Houston, Incorporated | Jason S. Kanterman of Fried, Frank, Harris, Shriver & Jacobson, L.L.P. New York, NY |
| Fiel Houston, Incorporated | Michael C. Keats of Fried, Frank, Harris, Shriver & Jacobson, L.L.P. New York, NY |
| Fiel Houston, Incorporated | Rebecca L. Martin of Fried, Frank, Harris, Shriver & Jacobson, L.L.P. |

| | New York, NY |
|---|---|
| Friendship-West Baptist Church | Paul R. Genender of Weil, Gotshal & Manges, L.L.P.  Dallas, TX |
| Friendship-West Baptist Church | Aaron J. Curtis of Weil, Gotshal & Manges, L.L.P.  New York, NY |
| Friendship-West Baptist Church | Zachary Tripp of Weil, Gotshal & Manges, L.L.P.  Washington, DC |
| Friendship-West Baptist Church | Sean Morales-Doyle of Brennan Center for Justice New York, NY |
| JOLT Action | Nina Perales of Mexican-American Legal Defense & Educational Fund San Antonio, TX |
| JOLT Action | Julia Renee Longoria of Mexican-American Legal Defense & Educational Fund San Antonio, TX |
| JOLT Action | Jason S. Kanterman of Fried, Frank, Harris, Shriver & Jacobson, L.L.P. New York, NY |
| JOLT Action | Michael C. Keats of Fried, Frank, Harris, Shriver & Jacobson, L.L.P. New York, NY |
| JOLT Action | Rebecca L. Martin of Fried, Frank, Harris, Shriver & Jacobson, L.L.P. New York, NY |
| La Union del Pueblo Entero | Nina Perales of Mexican-American Legal Defense & Educational Fund San Antonio, TX |
| La Union del Pueblo Entero | Julia Renee Longoria of Mexican-American Legal Defense & Educational Fund San Antonio, TX |
| La Union del Pueblo Entero | Jason S. Kanterman of Fried, Frank, |

| | |
|---|---|
| | Harris, Shriver & Jacobson, L.L.P. New York, NY |
| La Union del Pueblo Entero | Michael C. Keats of Fried, Frank, Harris, Shriver & Jacobson, L.L.P. New York, NY |
| La Union del Pueblo Entero | Rebecca L. Martin of Fried, Frank, Harris, Shriver & Jacobson, L.L.P. New York, NY |
| James Lewin | Paul R. Genender of Weil, Gotshal & Manges, L.L.P.  Dallas, TX |
| James Lewin | Aaron J. Curtis of Weil, Gotshal & Manges, L.L.P.  New York, NY |
| James Lewin | Zachary Tripp of Weil, Gotshal & Manges, L.L.P.  Washington, DC |
| James Lewin | Christian Menefee of Harris County Attorney's Office Houston, TX |
| James Lewin | Sean Morales-Doyle of Brennan Center for Justice New York, NY |
| Mexican American Bar Association of Texas | Nina Perales of Mexican-American Legal Defense & Educational Fund San Antonio, TX |
| Mexican American Bar Association of Texas | Julia Renee Longoria of Mexican-American Legal Defense & Educational Fund San Antonio, TX |
| Mexican American Bar Association of Texas | Jason S. Kanterman of Fried, Frank, Harris, Shriver & Jacobson, L.L.P. New York, NY |
| Mexican American Bar Association of Texas | Michael C. Keats of Fried, Frank, Harris, Shriver & Jacobson, L.L.P. New York, NY |
| Mexican American Bar Association of | Rebecca L. Martin of Fried, Frank, |

| Texas | Harris, Shriver & Jacobson, L.L.P. New York, NY |
|---|---|
| Southwest Voter Registration Education Project | Nina Perales of Mexican-American Legal Defense & Educational Fund San Antonio, TX |
| Southwest Voter Registration Education Project | Julia Renee Longoria of Mexican-American Legal Defense & Educational Fund San Antonio, TX |
| Southwest Voter Registration Education Project | Jason S. Kanterman of Fried, Frank, Harris, Shriver & Jacobson, L.L.P. New York, NY |
| Southwest Voter Registration Education Project | Michael C. Keats of Fried, Frank, Harris, Shriver & Jacobson, L.L.P. New York, NY |
| Southwest Voter Registration Education Project | Rebecca L. Martin of Fried, Frank, Harris, Shriver & Jacobson, L.L.P. New York, NY |
| Texas Hispanics Organized for Political Education | Nina Perales of Mexican-American Legal Defense & Educational Fund San Antonio, TX |
| Texas Hispanics Organized for Political Education | Julia Renee Longoria of Mexican-American Legal Defense & Educational Fund San Antonio, TX |
| Texas Hispanics Organized for Political Education | Jason S. Kanterman of Fried, Frank, Harris, Shriver & Jacobson, L.L.P. New York, NY |
| Texas Hispanics Organized for Political Education | Michael C. Keats of Fried, Frank, Harris, Shriver & Jacobson, L.L.P. New York, NY |
| Texas Hispanics Organized for Political Education | Rebecca L. Martin of Fried, Frank, Harris, Shriver & Jacobson, L.L.P. |

|  | New York, NY |
|---|---|
| Texas Impact | Paul R. Genender of Weil, Gotshal & Manges, L.L.P.  Dallas, TX |
| Texas Impact | Aaron J. Curtis of Weil, Gotshal & Manges, L.L.P.  New York, NY |
| Texas Impact | Zachary Tripp of Weil, Gotshal & Manges, L.L.P.  Washington, DC |
| Texas Impact | Sean Morales-Doyle of Brennan Center for Justice New York, NY |
| William C.  Velasquez Institute | Nina Perales of Mexican-American Legal Defense & Educational Fund San Antonio, TX |
| William C.  Velasquez Institute | Julia Renee Longoria of Mexican-American Legal Defense & Educational Fund San Antonio, TX |
| William C.  Velasquez Institute | Jason S. Kanterman of Fried, Frank, Harris, Shriver & Jacobson, L.L.P. New York, NY |
| William C.  Velasquez Institute | Michael C. Keats of Fried, Frank, Harris, Shriver & Jacobson, L.L.P. New York, NY |
| William C.  Velasquez Institute | Rebecca L. Martin of Fried, Frank, Harris, Shriver & Jacobson, L.L.P. New York, NY |

| Appellants: | Counsel for Appellants: |
|---|---|
| Warren Paxton | William F. Cole of Office of the Attorney General of Texas Austin, TX |
| Warren Paxton | William T. Thompson of Office of the Attorney General of Texas Austin, TX |
| Warren Paxton | Patrick K. Sweeten of Office of the |

| | Attorney General of Texas Austin, TX |
|---|---|
| Jane Nelson | William F. Cole of Office of the Attorney General of Texas Austin, TX |
| Jane Nelson | William T. Thompson of Office of the Attorney General of Texas Austin, TX |
| Jane Nelson | Patrick K. Sweeten of Office of the Attorney General of Texas Austin, TX |
| State of Texas | William F. Cole of Office of the Attorney General of Texas Austin, TX |
| State of Texas | William T. Thompson of Office of the Attorney General of Texas Austin, TX |
| State of Texas | Patrick K. Sweeten of Office of the Attorney General of Texas Austin, TX |

/s/ Nina Perales
*Attorney of record for*
*Plaintiffs-Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fifth Circuit Rule 28.2.3 and Rule 34(a)(1) of the Federal Rules of Appellate Procedure, Appellees request oral argument.  This appeal involves complex issues of law relating to the legality the Texas Election Integrity Act of 2021, Act of Aug. 31, 2021, 87th Leg., 2d C.S., ch. 1, 2021 Tex. Sess. Law Serv. 3873 ("S.B. 1").

**TABLE OF CONTENTS**

Certificate of Interested Persons ................................................................. i

Statement Regarding Oral Argument .................................................... vii

Table of Authorities ........................................................................... ix

Introduction ....................................................................................... 1

Statement of Jurisdiction ................................................................... 3

Issues Presented ................................................................................ 3

Statement of the Case ........................................................................ 4

      A.     S.B. 1 .................................................................................. 4

      B.     The Secretary ..................................................................... 8

      C.     The Attorney General ......................................................... 9

      D.     LUPE Lawsuit .................................................................. 10

Summary of the Argument .............................................................. 11

Standard of Review .......................................................................... 14

Argument ......................................................................................... 14

      I.     Congress Abrogated Sovereign Immunity for Plaintiffs-Appellees' Claims Arising Under the Voting Rights Act. ....... 15

      II.    Sovereign Immunity Does Not Bar Plaintiffs-Appellees' Remaining Claims Against the Secretary of State or the Attorney General. ............................................................... 16

      A.     The Secretary Is Sufficiently Connected to Enforcement of the Challenged Provisions. ....................................................... 18

      B.     The Attorney General Is Sufficiently Connected to Enforcement of the Challenged Provisions. ....................................................... 40

      III.   Appellees Have Standing to Sue the Secretary of State and Attorney General. .............................................................. 48

      A.     The Secretary. ................................................................... 49

      B.     The Attorney General. ....................................................... 53

Conclusion ....................................................................................... 56

Certificate of Service ........................................................................ 58

Certificate of Compliance ................................................................ 58

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.B.C. Rendering, Inc. v. State*,
    342 S.W.2d 345 (Tex. Civ. App.—Houston 1961, no writ)..............................48

*In re Abbott*,
    956 F.3d 696 (5th Cir. 2020) ........................................................44, 45

*Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*,
    851 F.3d 507 (5th Cir. 2017) ..................................................17, 22, 24

*Brown v. De La Cruz*,
    156 S.W.3d 560 (Tex. 2004) ................................................................48

*California v. Texas*,
    141 S. Ct. 2104 (2021)..................................................................51, 52

*City of Austin v. Paxton*,
    943 F.3d 993 (5th Cir. 2019) ........................................................14, 17, 26, 27

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)........................................................................54

*Dep't of Com. v. N.Y.*,
    139 S. Ct. 2551 (2019)....................................................................54

*State ex rel. Durden v. Shahan*,
    No. 04-19-00714-CV, 2021 WL 1894904 (Tex. App.—San
    Antonio May 12, 2021, pet. filed) ....................................................48

*Fusilier v. Landry*,
    963 F.3d 447 (5th Cir. 2020) ............................................................15

*K.P. v. LeBlanc*,
    627 F.3d 115 (5th Cir. 2010) ......................................................15, 24

*K.P. v. LeBlanc*,
    729 F.3d 427 (5th Cir. 2013) ............................................................16

*Lewis v. Scott,*
    28 F.4th 659 (5th Cir. 2022) ........................................................*passim*

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .............................................................................48

*Mi Familia Vota v. Abbott,*
    977 F.3d 461 (5th Cir. 2020) ...................................................3, 15, 27

*OCA-Greater Hous. v. Texas,*
    No. 1:15-CV-679-RP, 2022 WL 2019295 (W.D. Tex. June 6,
    2022) ....................................................................................................35

*OCA-Greater Hous. v. Texas,*
    867 F.3d 604 (5th Cir. 2017) .............................................................*passim*

*Paxton v. Longoria,*
    646 S.W.3d 532 (Tex. 2022) ........................................................42, 47

*Richardson v. Flores,*
    28 F.4th 649 (5th Cir. 2022) .............................................................33

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.,*
    547 U.S. 47 (2006) ...............................................................................48

*State v. Stephens,*
    Nos. PD-1032-20, PD-1033-20, 2021 WL 5917198 (Tex. Crim.
    App. Dec. 15, 2021) ...............................................................13, 41, 43

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) .............................................................................53

*Texas Alliance for Retired Americans v. Scott,*
    28 F.4th 669 (5th Cir. 2022) ........................................................32, 45

*Tex. Democratic Party v. Abbott,*
    978 F.3d 168 (5th Cir. 2020) .............................................................*passim*

*Tex. Democratic Party v. Hughs,*
    997 F.3d 288 (5th Cir. 2021) .............................................................27

*Texas Democratic Party v. Abbott,*
    961 F.3d 389 (5th Cir. 2020) ........................................................17, 49

*Texas v. Caremark, Inc.*,
  584 F.3d 655, 658 (5th Cir. 2009) ........................................................3

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021)........................................................................52

*Uzuegbunam v. Preczewski*,
  141 S. Ct. 792 (2021).........................................................................55

*Ex parte Young*,
  209 U.S. 123 (1908)......................................................................*passim*

**Statutes**

28 U.S.C. § 1291 ...................................................................................3

28 U.S.C. § 1331 ...................................................................................3

Tex. Elec. Code § 15.028 ...............................................................5, 20

Tex. Elec. Code § 18.065 .......................................................................5

Tex. Elec. Code § 18.068 .......................................................................5

Tex. Elec. Code § 31.006 .......................................................................6

Tex. Elec. Code § 18.065 .................................................................19, 22

Tex. Elec. Code § 18.065(a) .................................................................19

Tex. Elec. Code § 18.065(e) .................................................................19

Tex. Elec. Code § 18.065(f) .....................................................19, 42, 55

Tex. Elec. Code § 18.065(i) .................................................................19

Tex. Elec. Code § 18.068(a) .................................................................20

Tex. Elec. Code § 31.001 .......................................................................8

Tex. Elec. Code §31.003 .......................................................................8

Tex. Elec. Code § 31.002(a) .................................................................31

Tex. Elec. Code § 31.002(b) .................................................................31

TEX. ELEC. CODE § 31.002(d) ..................................................................31

TEX. ELEC. CODE § 31.006 .......................................................................38

TEX. ELEC. CODE § 31.006(a) ...........................................................*passim*

TEX. ELEC. CODE § 31.129......................................................38, 41, 47

TEX. ELEC. CODE § 31.129 ........................................................................8

TEX. ELEC. CODE § 32.075(g) ..................................................................29

TEX. ELEC. CODE § 32.075(g) ..................................................................28

TEX. ELEC. CODE § 33.051(g) ..................................................................28

TEX. ELEC. CODE § 33.056(a) ..................................................................28

TEX. ELEC. CODE § 33.056(e) ..................................................................28

TEX. ELEC. CODE § 33.061(a) ..................................................................28

TEX. ELEC. CODE § 33.008 ...............................................................29, 52

TEX. ELEC. CODE § 34.005(a) ..................................................................20

TEX. ELEC. CODE § 35.005(c) ..................................................................43

TEX. ELEC. CODE § 43.031(b) ..................................................................25

TEX. ELEC. CODE § 64.009 .......................................................................50

TEX. ELEC. CODE § 64.0322 .....................................................................50

TEX. ELEC. CODE § 64.034 .......................................................................50

TEX. ELEC. CODE § 64.009 .........................................................................7

TEX. ELEC. CODE § 64.009(f) ...................................................................34

TEX. ELEC. CODE § 64.009(h) ..................................................................34

TEX. ELEC. CODE § 64.031 .......................................................................50

TEX. ELEC. CODE § 64.0322 .......................................................................7

TEX. ELEC. CODE § 64.034 ........................................................7, 36

TEX. ELEC. CODE § 82.003 ...............................................................50

TEX. ELEC. CODE § 84.002(a)(1-a)....................................................30

TEX. ELEC. CODE § 84.011(a)(3-a).............................................30, 33

TEX. ELEC. CODE § 85.061(a) ..........................................................25

TEX. ELEC. CODE § 85.062(b) ..........................................................25

TEX. ELEC. CODE § 86.001 .........................................................6, 50

TEX. ELEC. CODE § 86.001(f).....................................................30, 32

TEX. ELEC. CODE § 86.005(c) ..........................................................31

TEX. ELEC. CODE § 86.010 ........................................................7, 50

TEX. ELEC. CODE § 86.0105 ......................................................7, 50

TEX. ELEC. CODE § 87.041 .........................................................6, 50

TEX. ELEC. CODE § 273.001(a) .........................................................43

TEX. ELEC. CODE § 273.001(c) .........................................................43

TEX. ELEC. CODE § 276.015 ....................................................7, 8, 37

TEX. ELEC. CODE § 276.018 ......................................................7, 37

## INTRODUCTION

According to Appellants' own brief, the Texas Election Integrity Act of 2021, Act of Aug. 31, 2021, 87th Leg., 2d C.S., ch. 1, 2021 Tex. Sess. Law Serv. 3873 ("S.B. 1") was enacted as a direct response to "varying applications of the State's election laws" by local election officials across Texas during the general election in 2020. Appellants' Br. 10, 11. S.B. 1 substantially amended the Texas Election Code (the "Election Code") by altering various election practices and procedures pertaining to early voting, voting by mail, voter assistance, and more—some of which are challenged in this lawsuit. But rather than leave enforcement of these new laws to the same local officials Appellants accuse of "localized electoral tinkering," *id.* at 9, the Texas Legislature in S.B. 1 very clearly tasks state-level officials—including Texas's Secretary of State and Attorney General—with critical enforcement duties.

For example, while the Election Code charges county-level voter registrars with processing voter registration applications and generally maintaining the accuracy of the voter rolls leading up to an election, S.B. 1 now *requires* the Secretary to impose escalating civil sanctions if the Secretary determines in her own estimation that a voter registrar is not in "substantial compliance with" Election Code provisions and rules concerning, among other things, cancelling voter registration. S.B. 1's new civil penalties include a mandatory re-education program

that, under S.B. 1, the Secretary must create followed by a full audit of the voter registration list for that county and even monetary penalties of $1,000 per day, which, under S.B. 1, the Attorney General can bring an action to recover.

S.B. 1 also requires voters to include the number of either their driver's license, election identification certificate, or personal identification card on any application to vote-by-mail and on their external mail ballot carrier envelope. While local election officials are charged with rejecting any vote-by-mail application or carrier envelope that does not match whatever number is on the voter's original voter registration application, the Secretary (and the Secretary alone) prescribes the design and content of these official forms, which local officials must use.

In this appeal, however, Appellants ask this Court to ignore the specific roles and responsibilities assigned to the Secretary and Attorney General relating to the enforcement of the challenged provisions and see only the conduct of local officials. Specifically, Appellants argue that sovereign immunity applies and that Plaintiffs cannot trace their particular injuries back to Appellants because these local officials, not state-level officials like the Secretary or Attorney General, are responsible for "on-the-ground enforcement." But that is not the test.

Rather, binding Supreme Court and Fifth Circuit precedent concerning the application of the *Ex parte Young* doctrine make clear that these Appellants—who implement and enforce laws that violate the Constitution, the Voting Rights Act

2

of 1965 ("VRA"), and the Americans with Disabilities Act ("ADA")—are proper defendants. That is the case even if some duties fall on other, local officials and even if an injunction against only the Appellants themselves would not provide Plaintiffs with complete relief.

Appellants—executives of the State of Texas—are properly held responsible for the State's enforcement of its Election Code, the district court's decision should be affirmed, and this case should be allowed to proceed to the merits.

## STATEMENT OF JURISDICTION

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over this interlocutory appeal pursuant to 28 U.S.C. § 1291 under the collateral-order doctrine. *Texas v. Caremark, Inc.*, 584 F.3d 655, 658 (5th Cir. 2009).

## ISSUES PRESENTED

1.    Whether the district court correctly held consistent with the Fifth Circuit's decisions in *Mi Familia Vota v. Abbott*, 977 F.3d 461, 469 (5th Cir. 2020) and *OCA-Greater Hous. v. Texas* ("*OCA I*"), 867 F.3d 604, 614 (5th Cir. 2017) that the VRA validly abrogates state sovereign immunity.

2.    Whether the district court correctly held that the Texas Secretary of State has "some connection" to the enforcement of the challenged provisions of the

Texas Election Code such that the district court can enjoin the Secretary from enforcing those provisions under *Ex parte Young*.

3.   Whether the district court correctly held that the Texas Attorney General has "some connection" to the enforcement of the challenged provisions of the Texas Election Code such that the district court can enjoin the Attorney General from enforcing those provisions under *Ex parte Young*.

4.   Whether the district court correctly held, consistent with the Fifth Circuit's decision in *OCA I*, 867 F.3d at 613, that the "invalidity of a Texas election statute is, without question, fairly traceable to and redressable by the … Secretary of State."

5.   Whether the district court correctly held that an injunction prohibiting the Attorney General, whom S.B. 1 grants the authority to impose civil penalties on election officials and prosecute election offenses, from enforcing the challenged provisions will at least partly redress the injuries alleged by Plaintiffs-Appellees.

## STATEMENT OF THE CASE

### A.   S.B. 1

On September 7, 2021, Texas Governor Greg Abbott signed into law the bill titled the "Election Protection and Integrity Act of 2021," which is referred to here as S.B. 1.  ROA.10724.  S.B. 1 substantially amended the Texas Election Code (the

"Election Code") by altering various election practices and procedures concerning early voting, voting by mail, voter assistance, and more. *Id.*

According to Appellants' brief, S.B. 1 was a direct response to what they term "localized election tinkering" by county election officials that expanded access to voting during the COVID-19 pandemic by, among other things, extending voting hours and allowing curbside voting and expanded access to vote-by-mail applications so that voters would not have to enter indoor polling places. Appellants' Br. 9-10. Despite the success of these localized efforts, the Legislature sought to shut down what Appellants' describe as "varying applications of the State's election laws" by local officials "in future elections," *id.* at 10, by enacting S.B. 1 with the stated intent of ensuring that "the application of [the Election Code] and the conduct of elections be uniform and consistent throughout this state …." *See id.* at 11.

S.B. 1 both amended existing provisions of the Election Code and added new provisions. For example, Sections 2.04, 2.06, 2.07, and 2.08 of S.B. 1 impose on the Secretary of State a host of new duties related to supervising local voter registration, including receiving and analyzing local voter registration information, determining whether voter registrars are in "substantial compliance" with requirements to implement the State's computerized voter registration list, auditing local voter registration lists, developing, implementing and requiring registrars to attend a re-education course, and reporting suspected criminal conduct relating to elections to

prosecuting authorities.   Tex. Elec. Code §§ 15.028, 18.065, 18.068, 31.006. Section 2.06 further empowers the Attorney General to bring suit to collect civil penalties imposed by the Secretary.  *Id.* § 18.065(h).

Sections 3.04, 3.09, 3.10, 3.12, and 3.13 restrict counties and local election officials from offering drive-thru voting, outdoor voting, and 24-hour early voting. *Id.* §§ 43.031, 85.005, 85.006, 85.061, 85.062.  To "assist the presiding judge of a polling place in processing forms and conducting procedures required by [the Election Code] at the opening and closing of the polling place," S.B. 1 specifically requires the Secretary to "adopt rules and create a checklist or similar guidelines," which necessarily encompasses the Challenged Provisions governing where, when and how voting may occur.  *Id.* § 66.004.

Sections 4.01, 4.06, 4.07 and 4.09 of S.B. 1 vastly expand poll watchers' authority by giving them "freedom of movement" inside the polling place to observe any election activity, while simultaneously constraining election officials' ability to reject or remove poll watchers.  *Id.* §§ 32.075, 33.051, 33.056, 33.061.  As to poll watchers, S.B. 1 assigns the Secretary a critical gatekeeping role by requiring the Secretary to develop a training program that must be completed before a person is even eligible to serve as a poll watcher.  *Id.* §§ 33.008, 33.031.

Sections 5.07 and 5.13 of S.B. 1 add new identification requirements for vote-by-mail applications and carrier envelopes.  Tex. Elec. Code §§ 86.001, 87.041.

Sections 6.01, 6.03, 6.05 and 6.06 of S.B. 1 impose new procedures and requirements on providing and receiving assistance while voting at the polling place, curbside, or by mail, including additional forms.  TEX. ELEC. CODE §§ 64.009, 64.0322, 86.010.  Under the Election Code (including as specifically amended by S.B. 1), the design and content of these official forms must be prescribed by the Secretary of State, even if local officials ultimately hand them out on Election Day. *Id.* §§ 31.002, 64.009, 64.0322.

Section 6.04 of S.B. 1 further requires any person "other than an election officer" who provides assistance to a voter to swear under penalty of perjury that "I will confine my assistance to reading the ballot to the voter, directing the voter to read the ballot, marking the voter's ballot, or directing the voter to mark the ballot," *id.* § 64.034, notwithstanding an earlier injunction against the Secretary banning those same limitations on voter assistance,[1] and Section 6.06 criminalizes compensation for providing voter assistance.  TEX. ELEC. CODE § 86.0105.

Section 7.04 of S.B. 1 criminalizes "vote harvesting," which broadly encompasses a wide swathe of previously lawful conduct, including various canvassing and voter assistance activities undertaken as part of community-based, non-partisan "Get Out the Vote" ("GOTV").  *Id.* §§ 276.015, 276.018.

---

[1] As discussed further below, the Secretary has already been enjoined from enforcing portions of Section 6.04.  *See OCA Greater Houston v. Texas* (*OCA III*), No. 1:15-CV-679-RP, 2022 WL 2019295, at *4 (W.D. Tex. June 6, 2022).

Section 8.01 of S.B. 1 imposes new civil penalties on local officials for violating Texas election law.  TEX. ELEC. CODE §§ 31.129, 276.015.

S.B. 1 went into effect on December 2, 2021.  ROA.10724.

### B.    The Secretary

Under the Election Code, and in addition to the specific duties described above, the Secretary is "the chief election officer of the state" required to "obtain and maintain uniformity in the application, operation, and interpretation of [the] code and [other] election laws," "prepare detailed and comprehensive written directives and instructions" for "the appropriate state and local authorities," and "distribute these materials to the appropriate state and local authorities having duties in the administration of these laws."  TEX. ELEC. CODE §§ 31.001, 31.003.  The Secretary must also "assist and advise all election authorities with regard to the application, operation, and interpretation" of election laws.  *Id.* § 31.004.

The Secretary may "take appropriate action to protect" voting rights "from abuse by the authorities administering the state's electoral processes," which includes "order[ing] the person to correct the offending conduct," and if the person "fails to comply …, the secretary may seek enforcement of the order by a temporary restraining order or a writ of injunction or mandamus obtained through the attorney general."  *Id.* § 31.005.  The Secretary, or her staff, "may make inspections in the same manner as state inspectors whether or not a violation of election laws is

suspected," and the Secretary may refer reported violations of law to prosecuting authorities. *Id.* § 34.004.

The Secretary also provides training materials on her website for poll workers, volunteer deputy registrars, election inspectors, and election officials as well as a poll watchers guide. ROA.6613 ¶¶33-34.

### C.    The Attorney General

The Attorney General is Texas's chief law enforcement officer. ROA.10752.

According to the Attorney General's website, his "role in enforcing the election laws" includes "statewide investigation authority and concurrent prosecution authority with local elected prosecutors over the election laws of the State" as well as having "deep experience and specialized resources to help train or assist local law enforcement and prosecution in working up complex and challenging election fraud cases." ROA.10752-53.

The Attorney General has prosecuted alleged violations of Texas's election laws alongside, or instead of, local district attorneys. ROA.10754. He has also filed suit on behalf of the State of Texas to enforce provisions of the Election Code and to restrict the actions of a local official, including by preventing him from sending mail ballot applications to eligible voters unless those voters first submitted a request. ROA.10754-55.

The Attorney General has stated that prosecution of election-related offenses is one of his priorities. ROA.10755. For example, the Attorney General announced his "2021 Texas Election Integrity Unit," which he describes as a concentrated effort to devote agency lawyers, investigators, support staff, and resources to ensuring this local election season . . . is run transparently and securely." *Id.* In the press release, the Attorney General refers to himself as a "national leader in election integrity," brags about the "many elections administrators" that have been "held accountable for attempts to bend or break the boundaries of lawful practices" under his leadership, and claims his office is "currently prosecuting over 500 felony election fraud offenses in Texas courts." *Id.*

### D.     LUPE Lawsuit

On September 3, 2021, Appellees sued Appellants and certain county officials to enjoin them from enforcing the provisions of S.B. 1 discussed above. Specifically, Appellees alleged that sections 2.04, 2.06, 2.07, 2.08, 2.11, 3.04, 3.09, 3.10, 3.12, 3.13, 4.01, 4.06, 4.07, 4.09, 5.07, 5.13, 6.01, 6.03, 6.04, 6.05, 6.06, 7.04, and 8.01 (collectively, the "Challenged Provisions") violate the First, Fourteenth, and/or Fifteenth Amendments of the United States Constitution, sections 2 and 208 of the Voting Rights Act of 1965, and/or title II of the Americans with Disabilities Act. ROA.6664–85; ROA.10725–26.

Plaintiffs-Appellees filed the operative second amended complaint on January 25, 2022 (the "SAC"). ROA.6598.

On February 15, 2022, Defendants-Appellants moved to dismiss the SAC, arguing, among other things, that Plaintiffs-Appellees did not have standing to sue and that Defendants-Appellants were immune from suit under the Eleventh Amendment. ROA.7639-73.

On August 2, 2022, the district court entered its order and opinion rejecting Defendants-Appellants' arguments and, as discussed further below, concluded that Plaintiffs-Appellees had standing to sue and that sovereign immunity did not shield Appellants from suit. ROA.10724-92.

Defendants-Appellants filed their notice of appeal on August 30, 2022. ROA.10857-58.

## SUMMARY OF THE ARGUMENT

In a well-reasoned opinion spanning nearly 70 pages, the district court found on a claim-by-claim and provision-by-provision basis that (i) sovereign immunity did not bar Plaintiffs-Appellees' claims against either Appellant for virtually all of the Challenged Provisions and (ii) that Plaintiffs adequately pleaded organizational standing.

In response, Appellants try to minimize and reframe Appellants' statutory roles and responsibilities—and even their own words—to argue that local officials,

not the Secretary or the Attorney General, are responsible for on-the-ground enforcement of the Challenged Provisions. But Appellants cannot so easily avoid binding legal precedent or the plain terms of the Election Code, including as amended by S.B. 1.

*First*, Appellants concede that binding Fifth Circuit precedent requires affirming the district court's holding that the VRA abrogates sovereign immunity. Appellants' Br. 50.

*Second*, the district court correctly held that it has jurisdiction over the claims seeking injunctive relief against the Secretary pursuant to *Ex parte Young*. In particular, the Secretary's role in enforcement is apparent from the text of S.B. 1 itself as well as the Secretary's other roles and responsibilities under the Election Code. On its face, S.B. 1 gives the Secretary a clear role in enforcing the Challenged Provisions by authorizing the Secretary to investigate and sanction local officials if she alone determines that they are not complying with requirements to maintain voter rolls and requiring the Secretary to refer all suspected election crimes to the Attorney General based on the Secretary's own analysis of information she received of even discovers on her own. That is quintessential enforcement authority.

The Secretary also has several specific duties under the Election Code (including as amended by S.B. 1). For example, the Secretary must prescribe the forms election officials must use to administer the Challenged Provisions,

promulgate rules for administering the Challenged Provisions that elections officials must follow, and direct voter registrars and poll watchers on how not to violate the Challenged Provisions through mandatory training that, under S.B. 1, the Secretary must create. The Election Code also clearly contemplates—and in some cases requires—that the Secretary will refer suspected violations of the new election law offenses created by S.B. 1 to prosecuting authorities along with supporting evidence S.B. 1 specifically enables the Secretary to receive or discover on her own.

Moreover, while Appellants try to dismiss the Secretary's more general duties under the Election Code as insufficient per se, the stated legislative intent of S.B. 1 is to ensure that the application of the Election Code and the conduct of elections is uniform and consistent throughout Texas, which is itself an express obligation of the Secretary under the Election Code.

For these and other reasons discussed below, the district court correctly held that sovereign immunity is no bar to Plaintiffs' claims for injunctive relief against the Secretary.

*Third*, the district court correctly held that it has jurisdiction over the claims seeking injunctive relief against the Attorney General pursuant to *Ex parte Young*. While the Attorney General no longer has "unilateral prosecution authority" to prosecute violations of the Election Code, *State v. Stephens*, Nos. PD-1032-20, PD-1033-20, 2021 WL 5917198, at *1, *8 (Tex. Crim. App. Dec. 15, 2021), *reh'g*

*denied*, 2022 WL 4493899 (Tex. Crim. App. Sept. 28, 2022), he still has a role in enforcing the Election Code.  Indeed, he is actually enforcing it.  As the Attorney General continues to profess on his website, he has statewide investigation authority and concurrent prosecution authority with local prosecutors and, through his designated Election Integrity Unit, is actively prosecuting hundreds of election law violations and actively investigating hundreds more.

*Last*, Appellants' argument about Article III appears to be derivative of its argument on *Ex parte Young*.  The injuries can be traced to Appellants because they enforce the Challenged Provisions, and an injunction would in turn provide some relief for Plaintiffs-Appellees.

## STANDARD OF REVIEW

The district court's determination of sovereign immunity and standing in the context of a motion to dismiss is reviewed *de novo*.  *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019).

## ARGUMENT

The district court correctly held that sovereign immunity is no defense to the claims at issue in this appeal.  For each claim, either Congress has validly abrogated Eleventh Amendment immunity, see *OCA-Greater Houston v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017) (*"OCA I"*) ("The VRA … validly abrogated state sovereign immunity."), or the claims seek injunctive relief against the enforcement of an

unconstitutional state law by state officials, *see Ex parte Young*, 209 U.S. 123 (1908); s*ee also K.P. v. LeBlanc* ("*K.P. I*"), 627 F.3d 115, 124 (5th Cir. 2010).[2]

## I.    Congress Abrogated Sovereign Immunity for Plaintiffs-Appellees' Claims Arising Under the Voting Rights Act.

Counts IV and V of the SAC arise under §§ 2 and 208 of the VRA. ROA.6671–74. As this Court has held multiple times, "[t]he VRA, which Congress passed pursuant to its Fifteenth Amendment enforcement power, validly abrogated state sovereign immunity." *OCA I*, 867 F.3d at 614; *see also Mi Familia Vota*, 977 F.3d at 469 ("There is no sovereign immunity with respect to the Voting Rights Act claims."); *Fusilier v. Landry*, 963 F.3d 447, 455 (5th Cir. 2020) ("[T]he immunity from suit these officials might otherwise enjoy offers no protection from VRA suits.").

Appellants "recognize that the panel is bound by" the holding in *OCA I* "that the VRA abrogates State sovereign immunity." Appellants' Br. 50; *id.* (explaining that "they raise this argument" only "to preserve their right to request reconsideration by the *en banc* Court"). Accordingly, this Court must affirm the district court's conclusion that "State sovereign immunity … does not bar the LUPE Plaintiffs' claims under §§ 2 and 208 of the VRA." ROA.10777.

---

[2] All emphasis is added and internal citations and quotations are omitted unless otherwise stated.

**II.    Sovereign Immunity Does Not Bar Plaintiffs-Appellees'
Remaining Claims Against the Secretary of State or the Attorney
General.**

Plaintiffs-Appellees' remaining claims against the Secretary of State and the

Attorney General arise under the United States Constitution (Counts I, II, III, VII,

VIII, and IX) and the ADA (Count VI).

Under *Ex parte Young*, lawsuits against state officials are not barred by

sovereign immunity where "prospective, injunctive relief" that is "based on an

alleged ongoing violation of the federal constitution" is sought "from a state actor,

in her official capacity." *K.P. v. LeBlanc* ("*K.P. II*"), 729 F.3d 427, 439 (5th Cir.

2013). Appellants do not contest that Appellees seeks prospective, injunctive relief

based on an alleged ongoing violation of the federal constitution by state actors

acting in their official capacity. Nor could they. Instead, Appellants argue only that

their connection to the Challenged Provisions is insufficient to warrant application

of the *Ex parte Young* exception. Appellants' Br. 26. They are wrong.

To invoke the *Ex parte Young* exception, a plaintiff must also "demonstrate

that the [sued] state officer has '*some* connection' with the enforcement of the

disputed act." *K.P. II*, 729 F.3d at 434; *Tex. Democratic Party v. Abbott* ("*TDP II*"),

978 F.3d 168, 179 (5th Cir. 2020). As Appellants themselves acknowledge, "the

precise scope of the requirement for a connection has not been defined." *TDP II*,

978 F.3d at 179. Notwithstanding a lack of precision, the burden of showing "some

connection" to the enforcement of a challenged law is not heavy. "The text of the challenged law need not actually state the official's duty to enforce it …." *City of Austin v. Paxton*, 943 F.3d 993, 997–98 (5th Cir. 2019), *cert. denied*, 141 S. Ct. 1047 (2021); *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017) (holding that "direct enforcement" such as "where the attorney general threatened civil and criminal prosecution … is not required."). Rather, it is sufficient that the state official's enforcement duty "arises out of the general law," *Ex parte Young*, 209 U.S. at 157, such as the Election Code.

The Fifth Circuit has explained that even a "scintilla of enforcement by the relevant state official with respect to the challenged law will do" to satisfy the requisite connection to enforcement, *TDP II*, 978 F.3d at 179 (quoting *City of Austin*, 943 F.3d at 1002). "[I]f an 'official *can* act, and there's a significant possibility that he or she will …, the official has engaged in enough compulsion or constraint to apply the Young exception.'" *Tex. Democratic Party v. Abbott* ("*TDP I*"), 961 F.3d 389, 401 (5th Cir. 2020) (emphasis in original) (quoting *City of Austin*, 943 F.3d at 1002). In *TDP II*, for example, the Fifth Circuit held that, "[b]ecause local authorities are required to use the Secretary's absentee-ballot form outside of emergency situations, the Secretary has the authority to compel or constrain local officials based on actions she takes as to the application form." 978 F.3d at 180 (5th Cir. 2020).

17

As set forth below, the district court correctly held on a claim-by-claim and provision-by-provision basis that the *Ex parte Young* exception applies to Plaintiffs-Appellees' claims against both the Secretary of State and the Attorney General. ROA.10752, 10761.[3]

### A.   The Secretary Is Sufficiently Connected to Enforcement of the Challenged Provisions.

The district court correctly held that it had jurisdiction over the claims seeking injunctive relief against the Secretary under *Ex parte Young* because the Election Code as amended by S.B. 1 makes clear that the Secretary has "some connection" to enforcement of the Challenged Provisions.  ROA.10750.

### 1.   Article 2 (Sections 2.04, 2.06, 2.07, and 2.08)

The Secretary has "some connection" to the enforcement of Article 2 of S.B. 1 because she has the power to compel local officials to comply with the law.  She plays that central role in enforcement by conducting investigations, making determinations regarding compliance, requiring local officials to participate in

---

[3] The district court found Plaintiffs did not plausibly establish that either Appellant could enforce Section 2.11 of S.B. 1 or that the Attorney General could enforce Section 2.08.  ROA.10750, 10754.  The district court's dismissal of Plaintiffs' claims challenging those two sections without prejudice, ROA.10792, is not at issue on appeal.  Moreover, the LUPE Plaintiffs did not challenge Sections 2.05, 3.15, 5.01, 5.02, 5.03, 5.08, 5.10, 5.11, 5.12, 5.14 or 7.02 of S.B. 1, and thus do not address Defendants-Appellants' arguments here.

training, referring election-law violators to the Attorney General for criminal prosecution and imposing civil sanctions on voter registrars.

As Appellants concede, Section 2.06 of S.B. 1 clearly states that the Secretary "*shall*" impose various sanctions on voter registrars who does not comply with certain voter registration provisions. *See* TEX. ELEC. CODE § 18.065; Appellants' Br. 29 n.11 (conceding that Section 2.06 "authorizes the Secretary to sanction a voter registrar," including "by requiring that voter registrar to attend a training"); ROA.10734. More specifically, the Election Code states that the Secretary "*shall* monitor each registrar for substantial compliance*" with specified Election Code provisions "and rules implementing the statewide computerized voter registration list." TEX. ELEC. CODE § 18.065(a). Section 2.06 of S.B. 1 further adds that the Secretary must make determinations regarding compliance, sanction local officials who are not in compliance by requiring them to attend training created by the Secretary, and report non-complying local officials to the Attorney General for possible civil penalties. *Id.* §§ 18.065(e), (f).

Similarly, under Section 2.08, if the Secretary "determines" based on information that she receives or discovers on her own "that there is reasonable cause to suspect that criminal conduct occurred" in connection with an election, she "*shall* promptly refer the information to the attorney general" along with "all pertinent documents and information in the secretary's possession." TEX. ELEC. CODE

§ 31.006(a); ROA.10735 n.7.  The Secretary is also empowered under the Election Code to refer reported violations of law to local prosecutors.  TEX. ELEC. CODE § 34.005(a).  The Secretary's role in imposing legal sanctions such as these (like the threats of civil and criminal prosecution at issue in *Ex parte Young*) are quintessential enforcement duties.  *Ex parte Young*, 209 U.S. at 158.

Sections 2.04 and 2.07 further evidence the Secretary's active role in enforcement through the identification of information that could be used to identify and prosecute election offenses.  Section 2.07 requires the Secretary to perform quarterly audits of the statewide computerized voter registration list and notify the voter registrar if she determines that a voter "has been excused or disqualified from jury service because the voter is not a citizen or a resident of the county in which the voter is registered to vote …."  TEX. ELEC. CODE § 18.068(a); ROA.10734. Section 2.04 then requires a voter registrar to submit an affidavit to the Secretary of State within 72 hours of determining that someone ineligible to vote actually voted in an election or even just registered to vote, both of which are now election crimes following S.B. 1.  *See* ROA.10747; *e.g.* TEX. ELEC. CODE § 15.028.  Together, these Challenged Provisions are designed to enable the Secretary to "discover[]" (under Section 2.07) or "receive[]" (under Section 2.04) information leading to the identification of potential voter fraud, which, if found, triggers the Secretary's mandatory duties to make reasonable cause determinations and report suspected

criminal conduct to the Attorney General. *See* ROA.10747 (citing SAC allegations that Section 2.04 "[f]acilitates the investigation and prosecution of perfectly legal activity by voters"); *see also* ROA.6645 ¶ 147 (alleging that, because of Section 2.07, "properly-registered voters living temporarily away from home … may be purged from the voter roll as ineligible non-residents and targeted for prosecution."). That is more than the "scintilla of enforcement" by the Secretary required for the *Ex parte Young* exception to apply. *TDP II*, 978 F.3d at 179.

The Secretary is also tasked with establishing rules and procedures for administering S.B. 1. ROA.10733-35 (citing TEX. ELEC. CODE §§ 16.0332(d)-(e), 18.065(i)). For example, Section 2.06 of S.B. 1 states that the Secretary "*shall* adopt rules and prescribe procedures for the implementation of this section." TEX. ELEC. CODE § 18.065(i). Contrary to Appellants' argument, these rules and procedures are not mere "advice, guidance, or interpretive assistance." Appellants' Br. 40. Rather, the statute's use of the words "rules" and "prescribe" clearly signals *that the registrar must adhere to* the rules and procedures the Secretary adopts and prescribes. In other words, the Secretary has the ability to "constrain or compel" voter registrars for purposes of *Ex parte Young*. *See Air Evac*, 851 F.3d at 511, 519 (finding that, through "rule setting a general reimbursement rate," the "state defendants obviously constrain Air Evac's ability to collect more than the

maximum-reimbursement rate under the TWCA system" under "*K.P.*'s definition of 'enforcement' as 'compulsion or constraint'").

Despite conceding that the Secretary plays a role in initiating enforcement actions, Appellants ask this Court to hold that "only an enforcement action" initiated by the prosecutor "would have [the necessary] compulsive effect ...." Appellants' Br. 44 (arguing "the Secretary would be *at least one step removed* from any enforcement of" the Challenged Provisions).[4] This unduly narrow view ignores both the text of the statute and Fifth Circuit precedent.

*First*, the text of S.B. 1 makes clear that the Secretary is not a "passive" recipient or sharer of information, as Appellants contend. Appellants' Br. 28. To the contrary, the Secretary has an *active* role in enforcement. Specifically, the Secretary is responsible for deciding whether a voter registrar is in "substantial compliance" with election laws and imposing sanctions under Section 2.06 if the registrar is not. TEX. ELEC. CODE § 18.065(e) (requiring the Secretary to compel a voter registrar to attend a re-education course created by the Secretary). Moreover, the Secretary must also evaluate information she receives (including any affidavits

_____

[4] Appellants also argue that "plaintiffs' complaint is not with the Secretary's sharing of information with the Attorney General or local prosecutors as such" but that "the Secretary's sharing of information might lead to their subsequent prosecution by *another official* with prosecuting authority." Appellants' Br. 44. This is a distinction without a difference. Appellants do not maintain that the Texas Legislature mandated that the Secretary refer all suspected election law offenses to the Attorney General so that matters would end there.

received pursuant to Section 2.04), make determinations and send notices (pursuant to Section 2.07), and report to the Attorney General both suspected civil liability from local registrars (pursuant to Section 2.06) and "reasonable cause" determinations of criminal conduct in elections (pursuant to Section 2.08). TEX. ELEC. CODE § 31.006(a). Section 2.08 also obligates the Secretary to provide "all pertinent documents and information"—including the affidavits and information evidencing the suspected crime—directly to the Attorney General. *Id.*

As the district court explained, "[t]here can be no clearer example of compulsion or constraint and therefore enforcement" than requiring the Secretary to submit individuals "*[s]he believes* have engaged in election law offenses, to prosecution" or to impose sanctions on voter registrars whom "*in [her] estimation*, have not complied with [her] rules and requirements." ROA.10735 n.7. *Cf.* Appellants' Br. 29 ("Section 2.07 requires the Secretary to notify the voter registrar *if he determines* that a voter on a registration list no longer lives in the county in which he is registered.").[5]

*Second*, Appellants' argument that "only an enforcement action"—which Appellants appear to equate to "criminal or civil prosecutions"—"would have that

---

[5] Section 4.11 of S.B. 1 also gives the Secretary discretionary authority to "refer a reported violation of law for appropriate action to the attorney general … or to a prosecuting attorney having jurisdiction." ROA.10746 (citing TEX. ELEC. CODE § 34.005(a)); ROA.6612 ¶ 30 (same).

compulsive effect," Appellants' Br. 44, is contrary to binding legal precedent in this Circuit.  As the Fifth Circuit observed in *Air Evac*, "direct enforcement" such as "where the attorney general *threatened civil and criminal prosecution … is not required*" to satisfy *Ex parte Young*.  851 F.3d at 519.  Gathering evidence, determining whether an election crime has occurred, referring the suspected crime to prosecuting authorities, and producing evidence of that suspected crime certainly constitute at least "some enforcement activity" for purposes of applying *Ex parte Young.  See K.P. I*, 627 F.3d at 125 (finding defendant Board took an "active role" in enforcing the challenged abortion statute because the Board was required to differentiate allowed claims from those not allowed under the statute).

*Lewis v. Scott*, 28 F.4th 659 (5th Cir. 2022), on which Appellants rely, does not warrant a different result.  Appellants' Br. 44.  *Lewis* was decided just a few months after S.B. 1 went into effect, and the Fifth Circuit panel did not consider any of the Challenged Provisions at issue here in deciding that the Secretary was not "specifically charged with enforcement of the criminal prohibition on possessing a voter's mail-in ballot."  28 F.4th at 664.  In this case, the Challenged Provisions in Article 2 of S.B. 1 give the Secretary (i) authority to impose sanctions on local officials who do not comply with election laws; (ii) express authority to make "reasonable cause" determinations of whether criminal conduct has occurred based on any "information" she receives or even discovers on her own; (iii) authority to

conduct local audits and compel local officials who do not comply with the election laws to attend a re-education course created by the Secretary; (iv) a statutory duty to refer "all pertinent documents and information" in her possession, after determining that the information warrants an investigation.

This Court should affirm the district court's findings that the Secretary has a sufficient connection to the enforcement of Sections 2.04, 2.06, 2.07, and 2.08.

**2.** Article 3 (Sections 3.04, 3.09, 3.10, 3.12, and 3.13).

Sections 3.04, 3.12, and 3.13 prohibit outdoor polling places and require that polling places be located within a physical building, TEX. ELEC. CODE §§ 43.031(b), 85.061(a), 85.062(b), while Sections 3.09 and 3.10 prohibit future efforts to increase access to the polls by limiting voting hours, *id*. §§ 85.005(a), 85.006(e).

Although these provisions do not expressly discuss enforcement, the requisite connection to enforcement need not be contained in the specific challenged provisions "so long as it exists" elsewhere in the general law. *Ex parte Young*, 209 U.S. at 157; *see also City of Austin*, 943 F.3d at 997–98.

Here, Section 66.004 of the Election Code specifically requires the Secretary to "adopt rules and create a checklist or similar guidelines to assist the presiding judge *of a polling place* in processing forms and conducting procedures required by [the Election Code] *at the opening and closing of the polling place*." TEX. ELEC. CODE § 66.004. And as the district court explained, these rules "necessarily include

rules pertaining to voting inside a motor vehicle, outdoor polling places, and early voting hours." ROA.10742-43. In other words, Section 66.004 gives the Secretary authority to direct local officials on how, where and when voting will occur. Therefore, the Secretary has some connection to the enforcement of S.B. 1's provisions regarding the format and timing of elections.

In response, Appellants argue that an injunction barring the Secretary from adopting rules relating to the Challenged Provisions "would not relieve the … *local officials* of their obligation to enforce" the Challenged Provisions or "stop any ongoing constitutional violation." Appellants' Br. 41–42. But Appellants' contention that the Secretary's rules have no impact on the conduct of local officials defies common sense. If the Secretary adopts rules and guidelines that prohibit outdoor voting and limit voting hours, local officials will almost certainly comply with those directives. Conversely, if the Secretary adopts rules and guidelines that allow outdoor voting and expanded voting hours, then some local officials may offer those options to voters. As Appellants concede in their brief, an injunction could be used to "bar the Secretary from adopt[ing] rules and creat[ing] a checklist or similar guidelines" implementing the Challenged Provisions. Appellants' Br. 41. Those rules will have a substantial impact on the actions of local officials. *Cf. TDP II*, 978 F.3d at 180 ("Though there is a division of responsibilities, the Secretary has the

needed connection."); *City of Austin*, 943 F.3d at 1002 (requiring only a "scintilla of enforcement").

Contrary to the implication in their brief, Appellants' Br. 30, the Fifth Circuit's decisions in *Mi Familia Vota v. Abbott*, 977 F.3d 461 (5th Cir. 2020) and *Tex. Democratic Party v. Hughs* ("*TDP III*"), 997 F.3d 288 (5th Cir. 2021) do not require a different result. Among other things, they did not consider any of the Election Code provisions amended by Sections 3.04, 3.09, 3.10 or 3.12 and, in any event, do not consider the Secretary's role in adopting rules pursuant to Section 66.004 of the Election Code.

This Court should affirm the district court's conclusions that the Secretary has a sufficient connection to the enforcement of Sections 3.04, 3.09, 3.10, 3.12, and 3.13.

### 3.     Article 4 (Sections 4.01, 4.06, 4.07, and 4.09).

Sections 4.01, 4.06, 4.07, and 4.09 of S.B. 1 further limit the ability of election officials to deal with unruly poll watchers and permit the government to prosecute election officials who limit poll watchers' abilities to observe certain functions at polling places. TEX. ELEC. CODE §§ 32.075(g), 33.051, 33.056, 33.061(a). The Secretary has some connection to the enforcement of these statutory provisions.

As explained above, Section 2.08 *requires* the Secretary to report election law offenses to the Attorney General for prosecution. TEX. ELEC. CODE § 31.006(a);

ROA.10746 (explaining that "[t]he Secretary certainly has the authority to compel or constrain others when he not only has the authority to refer, but also the obligation to report election law offenses"). The Challenged Provisions in Article 4 turn actions by election officials to constrain unruly poll watchers into election crimes, which the Secretary necessarily enforces by referring such election crimes to prosecuting authorities. For example, S.B. 1 makes it a Class A misdemeanor for an election officer to refuse to accept a poll watcher. *Id*. § 33.051(g) (added by Section 4.06). S.B. 1 also prohibits anyone from denying poll watchers "free movement" around the polling place, including sitting and standing "near enough to see and hear the activity," *id*. § 33.056(a), (e) (amended by Section 4.07) and prohibits a presiding judge from removing a poll watcher who has violated the Election Code or any other law pertaining to elections unless an election judge or clerk observed the violation, TEX. ELEC. CODE § 32.075(g) (added by Section 4.01 of S.B. 1), which becomes a Class A misdemeanor for "knowingly preventing a watcher from observing an activity or procedure the person knows the watcher is entitled to observe," *id*. § 33.061(a) (amended by Section 4.09).

If the Secretary "receiv[es] or discover[s] information" concerning these offenses and "determines that there is reasonable cause to suspect that criminal conduct occurred" under the Election Code, then the Secretary "*shall* refer the information to the attorney general," along with "all pertinent documents and

information." *Id.* § 31.006(a). As the district court correctly recognized, "[a]n injunction prohibiting the Secretary from referring or reporting offenses under these provisions would certainly help alleviate the harm that Appellees plausibly allege." ROA.10746.

Moreover, Section 4.04 directs the Secretary to "develop and maintain a training program for watchers," TEX. ELEC. CODE § 33.008, which must be completed before a person is eligible to serve as a poll watcher, *id.* § 33.031(b). As the district court observed, "the information that [the Secretary] disseminates through the training program is not merely advice, guidance, or interpretive assistance." ROA.10742. Rather, "the Secretary necessarily compels or constrains poll watchers" through this mandatory training "to conduct themselves in a manner that will ensure compliance with the Election Code." ROA.10742. Indeed, the Secretary is responsible for instructing poll watchers on "where they can sit or stand in accordance with section 4.07." ROA.10741. That gives the Secretary some connection to the enforcement of the poll watcher provisions of S.B. 1.

Moreover, if a court found that the Challenged Provisions in Article 4 were unlawful, the Secretary would have to amend any rules she promulgated concerning the Challenged Provisions, *see* ROA.10743 (citing TEX. ELEC. CODE § 66.004), as well as the poll watcher training protocol she created.

This Court should affirm the district court's decision that the Secretary has sufficient connection to the enforcement of Sections 4.01, 4.06, 4.07, and 4.09.

> **4.**    Article 5 (Sections 5.07 and 5.13).

Article 5 of S.B. 1 establishes new identification requirements for both mail ballot applications and carrier envelopes. ROA.10735. In relevant part, Section 5.07 requires applicants to include the number of either their driver's license, election identification certificate, or personal identification card on their vote-by-mail application, TEX. ELEC. CODE § 84.002(a)(1-a); requires vote-by-mail applications to include a space for the newly required information, *id.* § 84.011(a)(3-a); and requires early voting clerks to reject any vote-by-mail applications with identifying information that does not match the State's voter rolls. *Id.* § 86.001(f). Section 5.13 imposes a similar requirement for mail ballot carrier envelopes. *Id.* § 86.002(g).

The Fifth Circuit has already held that the Secretary has some connection to the enforcement of Election Code provisions that relate to the content and design of voting forms. In *TDP II*, the Court held that the Secretary had a sufficient connection to enforcement of a vote-by-mail provision under the *Ex parte Young* exception because of (i) the Secretary's "specific and relevant duty to design the application form for mail-in ballots . . . and to provide that form to local authorities"; (ii) the Secretary's duty to "furnish forms to those who request them for distribution to others"; and (iii) local officials' obligation "to use the Secretary's absentee-ballot

form outside of emergency situations." *TDP II*, 978 F.3d at 179–80; Tex. Elec. Code §§ 31.002(a), (b), (d), *id.* § 84.013.

As the district court correctly held in this case, "[t]he same conclusion is warranted here." ROA.10736. Indeed, the same statutory provisions discussed in *TDP II* also require the Secretary to "prescribe the design and content . . . of the forms necessary for the administration of" the Challenged Provisions and provide such forms to appropriate election officials, who are similarly required to use those forms except during an emergency when the forms are unavailable. Tex. Elec. Code §§ 31.002(a), (b), (d); ROA.10737 (citing ROA.6611–12 ¶ 27).

While Appellants argue that *voters* are not "required" to use official forms, such an argument is disingenuous at best. Appellants' Br. 36. The same statutory provision Appellants cite requires voters to "place the ballot envelope *in the official carrier envelope*." Tex. Elec. Code § 86.005(c). In any event, common sense dictates that most, if not all, voters will use official forms to vote and apply to vote by mail rather than create their own.

Appellants' argument that enjoining the Secretary from prescribing forms of the vote-by-mail applications and carrier envelopes consistent with S.B. 1 would not "relieve local officials . . . of their independent obligation to enforce" the law, Appellants' Br. 36, is once again of no moment. Indeed, the *TDP II* Court expressly found that "the Secretary has the needed connection" to enforcement based on

prescribing required forms *even though* there was a "division of responsibilities" and the early voting clerk was required to "review" the mail ballot applications. 978 F.3d at 180 (citing Section 86.001(a)). That same logic applies here. *See* TEX. ELEC. CODE § 86.001(f) (requiring post-S.B. 1 that the early voting clerk "reject" certain mail ballot applications).

Appellants' reliance on *Texas All. for Retired Americans v. Scott* ("*Texas Alliance*"), 28 F.4th 669 (5th Cir. 2022), is unavailing. *See* Appellants' Br. 31-32, 35-40. There, the plaintiffs filed suit shortly before the 2020 General Election to challenge the elimination of straight-ticket voting, which allowed voters to "cast a vote for all the nominees of one party" by placing an "X" beside the desired political party. *Texas Alliance*, 28 F.4th at 670. But the Secretary does not actually design the ballot used for voting in polling places, which was the particular form at issue in *Texas Alliance*. *Id.* at 673 (explaining that the Secretary's "discretion is cabined to encoding ballots (prepared by local officials) for compatibility with an electronic voting system"). That is not the case here.

Appellants also assert that "plaintiffs' complaints are not about the forms themselves" and that enjoining the Secretary "would not afford the Plaintiffs the relief they seek." Appellants' Br. 36. But Plaintiffs *do* challenge the forms themselves. S.B. 1 specifically requires the Secretary to include "a space for entering the information" voters must now provide on vote-by-mail applications and

carrier envelopes. TEX. ELEC. CODE § 84.011(a)(3-a). And as Plaintiffs allege, "*SB1's requirements to provide additional information on mail ballot applications and carrier envelopes* will injure LUPE's members by causing the rejection of their mail ballots when they make inadvertent clerical errors or where the clerk lacks ID information in the voter's record on file." ROA.6648 ¶ 158. An injunction against the Secretary would, among other things, require the Secretary to omit those portions of the forms calling for the offending information. Therefore, Appellees are not merely challenging the "processes surrounding the use of these forms," Appellants' Br. 40; they are challenging the requirement of certain extraneous information *on the forms themselves*.

*Richardson v. Flores*, 28 F.4th 649 (5th Cir. 2022), is similarly inapposite. *Cf.* Appellants' Br. 35-40. There, the Fifth Circuit considered a challenge to Texas's system for verifying signatures on mail-in ballots. In dicta, the panel rejected the argument that the Secretary's duty to prescribe the design and content of forms rendered him amenable to suit under *Ex parte Young* specifically *because* the plaintiffs there challenged "the processes of verifying mail-in ballots and notifying voters," but not "the design or content of the forms associated with mail-in balloting." 28 F.4th at 654. As explained above, that is not the case here.

This Court should affirm the district court's conclusions that the Secretary has some connection to the enforcement of Sections 5.07 and 5.13.

**5.**     Article 6 (Sections 6.01, 6.03, 6.04, 6.05, and 6.06).

The Challenged Provisions in Article 6 impose onerous new procedures and requirements on people who attempt to assist others in voting.  Section 6.01 requires individuals transporting seven or more curbside voters to fill out various time-consuming forms, including identifying if the driver also serves as a voting assistor.  TEX. ELEC. CODE § 64.009(f).  Sections 6.03, 6.04, and 6.05 establish additional forms, procedures, and requirements for assistors, including an expanded oath.  *Id.* §§ 64.0322, 64.034, 86.010(e).

The Secretary is directly responsible for drafting these forms.  *E.g.*, TEX. ELEC. CODE § 64.009(h) ("The [Secretary] shall prescribe the form described by" S.B. 1 Section 6.01); *id.* § 64.0322 ("The [Secretary] shall prescribe the form required by this [Section 6.03].").  Appellants even concede in their brief that an injunction "would certainly restrain the Secretary from prescribing" the "forms described in sections 6.01 and 6.03" and "indirectly prevent local officials from *using a form* prescribed by the Secretary."  Appellants' Br. 36-37.  Indeed, as the district court correctly held, the Secretary has some connection to the enforcement of these provisions because "sections 6.01 and 6.03 can only be enforced if and when the Secretary prescribes the forms."  ROA.10740–41.

Moreover, the Secretary is already bound by an injunction against enforcing portions of Section 6.04.  On January 31, 2022, the plaintiff in *OCA-Greater Hous.*

*v. Texas* ("*OCA II*"), No. 1:15-CV-679-RP (W.D. Tex.), filed a motion to modify a prior injunction enjoining the Secretary from enforcing Sections 61.033 and 64.0321 of the Texas Election Code, which (before S.B.1) provided, respectively, that (i) only voters registered in a given county would be eligible to serve as an interpreter in that county, and (ii) the lawful activities an assistor could engage in were limited to: "(1) reading the ballot to the voter; (2) directing the voter to read the ballot; (3) marking the voter's ballot; or (4) directing the voter to mark the ballot." *OCA II*, No. 1:15-CV-679-RP, 2022 WL 2019295, at *4 (W.D. Tex. June 6, 2021). In its motion to modify the injunction, plaintiff OCA-Greater Houston claimed certain provisions of S.B. 1 (including Section 6.04) ran afoul of the 2018 injunction. Motion by Plaintiff for Modification of the 2018 Permanent Injunction, *OCA II*, No. 1:15-CV-679-RP (W.D. Tex. Jan. 31, 2022), ECF No. 96.

The district court rejected similar arguments to those the Secretary makes in this case and enjoined the Secretary from enforcing portions of Section 6.04 of S.B. 1. ROA.10744 n.10 (quoting *OCA III*, 2022 WL 2019295, at *4). The *OCA II* court had no problem concluding that the Secretary was "[a] proper part[y] to this action" challenging Section 6.04 "in light of the Secretary of State's obligations and administering election laws." *OCA II*, 2022 WL 2019295, at *4. The Secretary elected not to appeal that decision and is currently bound by that injunction. In other words, the Secretary is currently enjoined from enforcing Section 6.04's requirement

that assistors "swear (or affirm) under penalty of perjury" that they "will confine [their] assistance to reading the ballot to the voter, directing the voter to read the ballot, marking the voter's ballot, or directing the voter to mark the ballot …." *See id.* The Secretary should also be enjoined from enforcing the rest of Section 6.04 challenged in this action, including oaths that the voter "represented to [them] that they are eligible to receive assistance"; that the assistor "understand[s] that if assistance is provided to a voter who is not eligible for assistance, the voter's ballot may not be counted"; and that the assistor did not "pressure" the voter to choose them as an assistor.  TEX. ELEC. CODE § 64.034.[6]

Last, Section 6.06 creates a state jail felony if a person solicits, receives, or accepts compensation, or compensates or offers to compensate another person for assisting mail voters.  *Id.*  §§ 86.0105(a), (c).  As discussed above, Section 2.08 requires the Secretary to report election law offenses to the Attorney General, which encompasses offenses under Section 6.06.  TEX. ELEC. CODE § 31.006(a).  Therefore, the district court properly held that "[a]n injunction prohibiting the Secretary from

---

[6] Appellants are incorrect that "any challenge to section 6.04" was declared "moot." Appellants' Br. 27 n.10.    Rather, the district court dismissed only claims "challenging the portions of section 6.04 that the district court recently enjoined" in *OCA III*—i.e., "the portion of [section 6.04 of S.B. 1] inserting the previously enjoined language from Section 64.0321."  ROA.10744 n.10.  Plaintiffs also challenged other portions of Section 6.04, which remain at issue.  *See* ROA.6633–34 ¶¶ 109-11.

referring or reporting offenses under these provisions would certainly help alleviate the harm that the LUPE Plaintiffs plausibly allege." ROA.10746.

This Court should affirm the district court's holding that the Secretary is sufficiently connected to Sections 6.01, 6.03, 6.04, 6.05, and 6.06.

### 6. Articles 7 and 8 (Section 7.04 and 8.01).

Articles 7 and 8 impose civil and criminal penalties for various election-related offenses. Section 7.04 criminalizes all "in-person interaction with one or more voters, in the physical presence of an official ballot or a ballot voted by mail, intended to deliver votes for a specific candidate or measure" and "knowingly collect[ing] or possess[ing] a mail ballot or official carrier envelope in connection with harvesting services." TEX. ELEC. CODE §§ 276.015, 276.018.[7] Section 8.01 piles on civil penalties, including termination of employment and loss of

---

[7] In their brief, Appellants misleadingly state that "the district court held that … plaintiffs failed to state a claim challenging section 7.04, [ROA.10792]." Appellants' Br. 27 n.10. What the district court's decision actually stated was that, in addition to codifying "several new offenses under sections 276.015 and 276.018 of the Election Code," "Section 7.04 also codifies new offenses under sections 276.016, 276.017, and 276.019 of the Election Code," which "[t]he LUPE Plaintiffs' allegations … do not appear to challenge …." ROA.10745 & n.11. Thus, the district court held that "[t]o the extent that the LUPE Plaintiffs intended to assert claims challenging" these other three provisions, "*those* claims are dismissed on failure to state a claim grounds." *Id.* ROA.10792 ("Any and all claims challenging section 7.04 of S.B. 1, as codified in sections 276.016, 276.017, and 276.019 of the Election Code, are DISMISSED WITHOUT PREJUDICE …."). The district court did *not* dismiss Plaintiffs' claims as to the new offenses in Section 7.04 codified in Election Code Sections 276.015 and 276.018.

employment benefits, for election officials if they violate any Election Code provision, including other Challenged Provisions. *Id.* § 31.129.

Appellants' argument for these provisions is little more than a few conclusory statements regarding lack of prosecutorial authority. Appellants' Br. 34–35. As explained above, however, the Secretary is *required* to report any and all suspected election law crimes to the Attorney General," TEX. ELEC. CODE § 31.006, which includes all suspected violations of Section 7.04 as well as violations of Section 8.01 based on criminal offenses. That is more than the "scintilla of enforcement" by the Secretary required for the *Ex parte Young* exception to apply. *TDP II*, 978 F.3d at 179; *see also* ROA.10747 (explaining that "[t]he Secretary's authority to report violations of the Election Code to the Attorney General also empowers him with the authority to compel or constrain election officials who, in turn, may credibly fear civil prosecution").

For these and other reasons set forth in the district court's order and Plaintiffs' briefing below, the Secretary is sufficiently connected to the Challenged Provisions and is a proper defendant here under the doctrine of *Ex parte Young*.

**7.** **The Secretary's More "General Duties" Are Sufficient, But Not Necessary, to Support the District Court's Decision**

As Appellants themselves explain, the stated intent of S.B. 1 is "to ensure that "application of th[e] [Texas Election] [C]ode and the conduct of elections be uniform and consistent throughout this state …." Appellants' Br. 11 (alterations in brief).

This language closely tracks one of the Secretary's primary duties under the Election Code: that "[t]he secretary of state shall obtain and maintain uniformity in the application, operation, and interpretation of this code …." § 31.003 ("Uniformity"). Section 31.003 further requires that, "[i]n performing this duty, the secretary *shall* prepare detailed and comprehensive written directives and instructions relating to and based on this code" and "*shall* distribute these materials to the appropriate state and local authorities having duties in the administration of these laws." *Id.* The Secretary thus has a concrete and specific role in the administration and enforcement of S.B. 1 even through Section 31.003, among others. *See* ROA.10768-72.

Appellants attempt to minimize and reframe the Secretary's roles and responsibilities as Texas's chief elections officer based on recent Fifth Circuit cases suggesting that the Secretary's "general duties" under the Election Code do not, without more, provide sufficient connection to enforcement. Appellants' Br. 35-45. But none of those cases considered S.B. 1 or similar statements of legislative intent parroting the Secretary's duties as chief elections officer.

In any event, the district court's order here does not rely exclusively—or even primarily—on the statutory provisions setting forth the Secretary's more general duties concerning election administration. This Court has already explained what it considers to be the Secretary's "general duties." In *Lewis*, the Fifth Circuit considered a pre-S.B. 1 challenge to Section 86.006 of the Election Code, "which

criminalizes knowingly possessing another person's mail-in ballot or carrier envelope except in specified circumstances." 28 F.4th at 662.  While the trial judge found a sufficient connection to enforcement under *Ex parte Young*, the Fifth Circuit held that the district court erred by basing its *Ex parte Young* reasoning solely on so-called "general duties," which included the Secretary's "role as chief election officer," "duty to obtain and maintain uniformity in the laws' application," "duty to assist and advise election officials," and "authority to take appropriate action to protect voting rights." *Lewis*, 28 F.4th at 664.

By contrast, there are numerous specific duties both within the Challenged Provisions of S.B. 1 and elsewhere in the Election Code that establish the requisite connection to enforcement for each of the Challenged Provisions for purposes of applying the *Ex parte Young* exception here.  ROA.10733-50.  While Appellants try to shoehorn several of the Secretary's more specific duties—including reporting suspected election law offenses to prosecuting authorities, prescribing official forms for vote-by-mail applications and carrier envelopes, and promulgating rules and procedures for the administration of specific statutory provisions—into the Fifth Circuit's concept of "general duties," the shoe does not fit.

### B. The Attorney General Is Sufficiently Connected to Enforcement of the Challenged Provisions.

When Plaintiffs filed this suit, the Attorney General was statutorily tasked with prosecuting election crimes and touted that he was by his own account actively

"prosecuting over 500 felony election fraud cases in Texas courts." ROA.6614 ¶ 38. S.B. 1 created a number of new criminal offenses and a provision (Section 8.01) making election officials "liable to th[e] state" for civil penalties for violating the Election Code. *See* TEX. ELEC. CODE § 31.129. The Attorney General publicized his intent to enforce this new law, and Plaintiffs had every reason to believe that would include both criminal prosecutions and suits seeking civil penalties. ROA.6614-16, 6631 ¶¶ 38-42, 100.

Since Plaintiffs filed their suit—and even since the district court's decision—certain circumstances have changed limiting the Attorney General's authority to enforce S.B. 1. The Texas Court of Criminal Appeals ruled that the Attorney General lacked unilateral prosecutorial authority in *Stephens*, 2021 WL 5917198, at *1, *8,[8] and the Attorney General himself disclaimed civil enforcement authority under S.B. 1 before the Texas Supreme Court in *Paxton v. Longoria*, 646 S.W.3d 532, 541-42 (Tex. 2022). Provided this Court agrees with the Attorney General and holds that he lacks authority under S.B. 1's civil penalty provisions, Plaintiffs agree

---

[8] Although the Texas Court of Criminal Appeals held the Attorney General lacks unilateral prosecutorial authority in *Stephens* before Plaintiffs filed their Second Amended Complaint, 2021 WL 5917198, at *1, *8, the Attorney General moved for reconsideration of that decision. That request was not denied until after the district court's ruling in this case. 2022 WL 4493899 (Tex. Crim. App. Sept. 28, 2022). As of the district court's decision, the Attorney General maintained that he did have unilateral prosecutorial authority. ECF No. 449, p. 33 n.14.

those provisions no longer create a connection to enforcement under *Ex Parte Young*.

Despite these changes, the Attorney General is still a proper defendant under *Ex Parte Young* for Plaintiffs' challenges to Sections 2.06 and the criminal provisions of S.B. 1 in Sections 4.06, 4.09, 6.04, 6.05, 6.06, and 7.04.

### 1.     Section 2.06

The Attorney General is expressly authorized to initiate actions to collect civil penalties for voter registrar non-compliance with election law requirements under Section 2.06 of S.B. 1. TEX. ELEC. CODE § 18.065(f). The district court's conclusion that the Attorney General "has the authority to compel or constrain any and all election officials who are subject to civil prosecution for violations" of Section 2.06 should be affirmed. ROA.10753.

### 2.     Sections 4.06, 4.09, 6.04, 6.05, 6.06, and 7.04

The district court also correctly concluded that the Attorney General has the power to enforce the criminal provisions of S.B. 1—sections 4.06, 4.09, 6.04, 6.05, 6.06, and 7.04—based on his statutory duties under the Election Code, including the Attorney General's broad investigative powers. ROA.10758. Under Section 273.001, the Attorney General must investigate criminal violations of the Election Code if he receives the proper affidavits. TEX. ELEC. CODE § 273.001(a),(c). The Attorney General also has discretionary authority under the

Election Code to launch investigations "to determine if criminal conduct occurred in connection with an election." *Id.* As the district court properly found, these "provisions of the Election Code still envision, and likely require, the Attorney General's participation in enforcement activities." ROA.10756 *see also* ROA.10769 (citing TEX. ELEC. CODE § 35.005(c)); TEX. ELEC. CODE § 35.005(c) ("[T]he secretary may seek enforcement of the order by a temporary restraining order or a writ of injunction or mandamus obtained *through the attorney general*."). Following investigation, the Attorney General can still prosecute election offenses with "the consent and deputization order of a local prosecutor or the request of a district or county attorney for assistance." *Stephens*, 2021 WL 5917198, at *10. Finally, the Attorney General has demonstrated not just a willingness, but a passion, for exercising these enforcement powers. *See* ROA.10754-55, 10759.

Appellants rely on *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020), *cert. granted, judgment vacated sub nom. Planned Parenthood Ctr. For Choice v. Abbott*, 141 S. Ct. 1261 (2021), to argue that the Attorney General's remaining concurrent prosecutorial authority is insufficient to give him the connection to enforcement needed for *Ex Parte Young* purposes. That decision was vacated and is therefore not binding on this Court. It is also distinguishable from the case at hand.[9]

---

[9] Because the instant case is distinguishable from *In re Abbott*, the Court need not decide whether that vacated opinion was correctly decided. However, LUPE

In *In re Abbott*, the Fifth Circuit determined there was "[n]othing" in the statute (a COVID-19-related ban on abortions) that "tasks the Attorney General with enforcing it," and the plaintiffs identified a single press release stating only that the challenged statute would be enforced without referencing any involvement of the Attorney General himself. *In re Abbott*, 956 F.3d at 709 ("The Attorney General threatened that GA-09 *would be enforced*, not that *he* would enforce it.") (emphasis in original). That is not the case here.

Unlike *In re Abbott*, the Attorney General still has investigative duties (both discretionary and mandatory) under S.B. 1. Appellants argue that "[a]n investigation, without more … does not compel or constrain anyone to obey any law, so it cannot constitute enforcement within the meaning of *Ex parte Young*." Appellants' Br. 49. Yet none of the cited authorities stand for that proposition. In *Texas Alliance*, for example, the Fifth Circuit panel found that an injunction preventing the Secretary from sending notices about a legislative bill would not force "election officials to restore straight-ticket voting, which is what Plaintiffs want." 28 F.4th at 673. In stark contrast, an injunction preventing the Attorney General from initiating criminal investigations into so-called vote harvesting as (only vaguely) defined in Section 7.04 would provide much of the relief Plaintiffs seek.

---

Plaintiffs agree with the arguments made by OCA Plaintiffs that *In re Abbott* was wrongly decided.

*E.g.*, ROA.6683 ¶ 300 (asking the court to declare Section 7.04 "unlawful and enjoin its implementation and enforcement").

Furthermore, the Attorney General's own words and actions show his "demonstrated willingness" to enforce the Challenged Provisions of S.B. 1. Appellants' Br. 48–50. Following S.B. 1's enactment, the Attorney General announced the formation of "Election Integrity" teams within his office, which he described as a "concentrated effort to devote agency lawyers, investigators, support staff, and resources to ensuring this local election season … is run transparently and securely," ROA.6615-16 ¶ 42 & n.36, and broadcast on Twitter that he intends to enforce S.B. 1: "I will continue to muster all my resources to defend election integrity!" ROA.6631 ¶ 100 (citing Ken Paxton (@KenPaxtonTX), TWITTER (Oct. 1, 2021, 11:34 PM EST)). As alleged in the SAC, the Attorney General is "currently prosecuting over 500 felony election fraud offenses in Texas courts," ROA.6614 ¶ 38, and has held "many elections administrators … accountable for attempts to bend or break the boundaries of lawful practices" under his leadership, ROA.6615 ¶ 42. The Attorney General's office has also spent "22,000 staff hours investigating voter fraud in the 2020 Election." ROA.6266-27 ¶ 80.

Thus, contrary to the arguments in Appellants' brief, it is far from speculation "that the Attorney General might be deputized by a local prosecutor to assist with prosecutions of Election Code violations." Appellants' Br. 46. He has done so in

the past and his words and conduct demonstrate a credible threat that he will again. Thus, as the district court held, the *Ex parte Young* exception applies here too, and the Attorney General is a proper defendant for Plaintiffs' claims as to the criminal provisions.

### 3. Section 8.01

Appellants also argue that the Attorney General lacks enforcement power under S.B. 1's "civil-penalty provision" in Section 8.01. Appellants' Br. 47–48. When briefing the motion to dismiss in this case, Appellees reasonably believed that the Attorney General might bring civil enforcement actions under S.B. 1. The legislation created "liability to the State," and the Attorney General initially refused to take a position on whether that gave him authority, as the State's chief law enforcement officer, to bring suit to enforce the law. Brief of Appellant Attorney General at 15, *Longoria v. Paxton*, No. 22-50110 (5th Cir. Feb. 23, 2022) ECF No. 37; Oral Argument at 14:26, *Longoria v. Paxton*, No. 22-50110 (5th Cir. Mar. 21, 2022), https://www.ca5.uscourts.gov/OralArgRecordings/22/22-50110_3-8-2022.mp3. The Attorney General has now decided he does not have authority to bring such an action. Appellants' Br. 47-48. But with no controlling law on the matter, Appellees and their members have no assurance that the Attorney General will maintain that position going forward. To resolve the matter, Appellees

respectfully request that the Court affirmatively rule that the Attorney General lacks the authority to enforce civil penalties under Section 8.01.

In a related case, when the Attorney General refused to take a position on whether he had enforcement authority under S.B. 1's civil penalties provision, TEX. ELEC. CODE § 31.129, this Court certified that question to the Texas Supreme Court. It was there that the Attorney General first took the position that he lacked authority to pursue civil liability against election officials. *See Paxton v. Longoria*, 646 S.W.3d 532, 541-42 (Tex. 2022). However, the Texas Supreme Court declined to make a final decision on that question, leaving Plaintiffs with only the Attorney General's disclaimer of authority. *Id.* at 542 ("'[W]e answer the third certified question 'no' based solely on the fact of the parties' agreement that Paxton lacks authority to enforce Section 31.129, such that our response shall have no effect beyond this case."). The Court should resolve the issue and affirmatively rule that he cannot enforce civil penalties. Should the Court so rule, Plaintiffs agree that the Attorney General lacks the requisite connection to enforcement of those provisions and is not a proper defendant in the challenges to the civil provisions of S.B. 1.[10]

---

[10] By the Attorney General's logic, Section 8.01 is "unenforceable by any public official, attorney, or agency" because the legislature did not unmistakably specify who can bring an action for civil penalties. *Brown v. De La Cruz*, 156 S.W.3d 560, 566 (Tex. 2004); *see also State ex rel. Durden v. Shahan*, No. 04-19-00714-CV, 2021 WL 1894904, at *5 (Tex. App.—San Antonio May 12, 2021, pet. filed) ("[T]he constitution delegates to the Legislature the power to fix the respective duties of county attorneys and district attorneys, and absent express legislative authority, county attorneys (in counties with district attorneys) lack authority to institute suits on behalf of the State." (citation omitted)); *A.B.C. Rendering, Inc. v. State*, 342 S.W.2d 345, 348 (Tex. Civ. App.—Houston 1961, no writ) (similar).

Thus, as the district court held, the *Ex parte Young* exception applies, and the Attorney General is a proper defendant for Plaintiffs' claims as to the Sections 2.06, 4.06, 4.09, 6.04, 6.05, 6.06, and 7.04.

### III.    Appellees Have Standing to Sue the Secretary of State and Attorney General.

As the district court correctly held, Appellees also have standing to bring all of their claims against both Appellants.  ROA.10778.  A plaintiff has standing if it "(1) [suffered] an injury in fact (2) that is fairly traceable to the challenged conduct and (3) redressable by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  "[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 52 n.2 (2006).

According to Appellants, the only issue on appeal as to standing is whether Plaintiffs "meet the traceability element of the test for Article III standing." Appellants' Br. 4, 51.  Acknowledging that the "Article III standing analysis and *Ex parte Young* analysis 'significantly overlap,'" Appellants contend that Plaintiffs cannot meet the traceability element because only local officials, and not the Secretary or the Attorney General, enforce the Challenged Provisions.  Appellants' Br. 51-55.  Because the injury here is traceable to both the Secretary and the Attorney General, as both have the power to enforce the Challenged Provisions, Appellees have standing to bring their claims.

## A.    The Secretary.

This Court has held that "[t]he facial invalidity of a Texas election statute is, *without question*, fairly traceable to and redressable by the State itself and its Secretary of State, who serves as the chief election officer of the state." *OCA I*, 867 F.3d at 613; ROA.10784.  While Appellants argue that *OCA I* cannot "bear the weight the district court placed upon it" and dismiss the Court's analysis as "breezy," Appellants' Br. 54-55, this Court has already recognized *OCA I* as "a significant obstacle" to the very argument Appellants make here.  *Texas Democratic Party v. Abbott ("TDP I")*, 961 F.3d 389, 399 (citing *OCA I*, 867 F.3d at 612-13).

In *TDP I*, the Secretary similarly argued that the plaintiffs lacked standing because enforcement of the challenged provision—i.e., "[a]cceptance or rejection of an application to vote by mail"—"falls to local, rather than state, officials."  961 F.3d at 399.  The Fifth Circuit rejected that argument, explaining that even where "Texas's vote-by-mail statutes are administered, at least in in the first instance, by local election officials," the Secretary still "has the duty to 'obtain and maintain uniformity in the application, operation, and interpretation of' Texas's election laws, including by 'prepar[ing] detailed and comprehensive written directives and instructions relating to' those vote-by-mail rules" and "has the power to 'take appropriate action to protect' Texans' voting rights 'from abuse by the authorities administering the state's electoral processes.'"  *Id.* (citing *OCA I*, 867 F.3d at 612-

13). "Based on that," the panel found that "the state officials have not shown … they are likely to establish that the plaintiffs lack standing" as to their claims against the Secretary. *Id.*

Appellants note that *OCA I* "only considered one provision of the Election Code." Appellants' Br. 54-55. But the Fifth Circuit's pronouncement on the traceability of election law harms to the Secretary is no less relevant here. *Id.* As in *OCA I*, the LUPE Plaintiffs challenge Texas voting laws "imposing … restriction[s] on the interpretation assistance that English-limited voters may receive." *Compare OCA I*, 867 F.3d at 606 (challenging TEX. ELEC. CODE § 64.031) *with* SAC ¶ 2 (challenging S.B. 1 provisions adding or amending TEX. ELEC. CODE §§ 64.009, 64.0322, 64.034, 86.010, 86.0105). And as in *TDP I*, Plaintiffs challenge Texas law imposing restrictions on voting by mail. *Compare TDP I*, 961 F.3d at 178 (challenging TEX. ELEC. CODE § 82.003) *with* SAC ¶ 2 (challenging S.B. 1 provisions adding or amending Tex. Elec. Code § 86.001, 87.041). The same statutorily prescribed roles and responsibilities of the same state official in the same statutory scheme deemed sufficient in *OCA I* and *TDP I* equally suffice as to these (and other) Challenged Provisions.

Appellants' last-ditch effort to undermine *OCA I* is arguing that the panel's standing analysis is inconsistent with the Supreme Court's decision in *California v. Texas*, 141 S. Ct. 2104 (2021). Appellants Br. 54-55. Not so. In *California*, the

Supreme Court considered a constitutional challenge by 18 States and two individual plaintiffs to the Patient Protection and Affordable Care Act (the "ACA") provision requiring most Americans to obtain minimum essential health insurance coverage. 141 S. Ct. at 2112. The individual plaintiffs claimed injury "in the form of payments they have made and will make each month" to comply with the insurance mandate. *Id.* at 2113. Notably, however, while the ACA technically imposed a monetary penalty for non-compliance, "Congress effectively nullified the penalty by setting its amount at $0." *Id.* at 2112. The Supreme Court found that, without that monetary penalty, the individual plaintiffs could not "point[] to any way in which the defendants … will act to enforce" the challenged provision or "how any other federal employees could do so either. In a word, they have not shown that any kind of Government action or conduct has caused or will cause" their so-called "pocketbook injury." *Id.* at 2114. That is not the case here.

To the contrary, for the same reasons discussed above in the *Ex parte Young* analysis, the Secretary clearly has "a role in causing the claimed injury and is in a position to redress it at least in part," *TDP II*, 978 F.3d at 178-79, given her statutory authority to (a) sanction voter registrars who do not comply with rules set by the Secretary (*see* Section 2.06); (b) prescribe the design and content of unconstitutional mail voting and assistor forms (*see* Sections 5.07, 5.13, 6.01 and 6.03); (c) promulgate rules concerning the location and timing for polling places (*see*

Sections 3.04, 3.09, 3.10, 3.12, and 3.13); (d) develop a training program that is a mandatory prerequisite for eligibility to serve as a poll watcher (*see* Sections 4.01, 4.06, 4.07, and 4.09 and Tex. Elec. Code § 33.008); (e) seek and receive information intended to identify suspected unlawful voting and registration (*see* Sections 2.04 and 2.07); and (f) investigate, make determinations about, and refer individuals suspected of election offenses for prosecution (*see* Section 2.08, 4.01, 4.06, 4.07, 4.09, 6.06, 7.04 and 8.01). *See* ROA.10784.

Contrary to the argument in Appellants' Brief, Appellants' Br. 52, the Secretary's performance of her roles and responsibilities enforcing the Challenged Provisions will result in "concrete" and "tangible" harms to Plaintiffs. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021); ROA.10779-87. Among other things, the Challenged Provisions "expos[e] the [Plaintiff] organization's paid staff and members to investigation and prosecution," SAC ¶ 155, and will force "LUPE to divert its resources away from its GOTV, voter registration and community education activities … to counteract the negative effects of SB1 on its members," *id.* ¶ 162. LUPE's members will be deprived "of the assistors of their choice," deterred from serving as assistors, face intimidation by poll watchers and long wait times at polling places, and see their mail ballot and mail ballot applications rejected as a result of clerical errors. ROA.6648-49 ¶¶ 156-61.

That is enough to confer standing to sue the Secretary. *TDP II*, 978 F.3d at 178-79.

### B.    The Attorney General.

As for Challenged Provisions that may carry criminal penalties, Plaintiffs in the pre-enforcement context need only allege their "intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and . . . a credible threat of prosecution thereunder." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014); ROA.10787. As the district court explained, Appellees have adequately alleged that Sections 6.01, 6.03, 6.04, 6.05, 6.06 and 7.04 "burden free speech in part because they subject their members to criminal prosecution." ROA.10787; ROA.6457-6464 ¶¶ 286–300, 310–14. More specifically, Plaintiffs alleged that these restrictions will burden the free speech of Appellees' employees, volunteers, and members because the extensive reach of the so-called "vote harvesting," requirement of sworn assistor oaths and forms, and the accompanying threat of criminal penalties will deter these individuals from participating in Appellees' voter education and GOTV efforts, thereby limiting the means by which Appellees communicate with voters and engage in the political process. ROA.6457-6464 ¶¶ 298, 310–14.

Appellants argue that the "chain of events" between the Attorney General's participation and criminal prosecution is too "speculative" to confer standing

because it depends on "guesswork" as to whether "independent decisionmakers," such as local prosecutors, will actually prosecute such crimes and invite the Attorney General to assist them. Appellants' Br. 53–54. As the Supreme Court has held, however, future actions of third parties *can* support standing where those parties have "historically" behaved in a certain manner. *Dep't of Com. v. N.Y.*, 139 S. Ct. 2551, 2566 (2019).

As discussed above, the SAC more than adequately alleges the Attorney General's history of investigating and prosecuting violations of elections laws and willingness to enforce the Challenged Provisions, including through the Election Integrity Unit created shortly after S.B. 1 was signed into law. *See, e.g.*, ROA.10754-55 (quoting SAC allegations). As the District Court correctly held, "[i]t is the Attorney General's credible threat of enforcement that harms the LUPE Plaintiffs and their members." ROA.10786-87. There is no "guesswork" here as to how *the Attorney General* "will exercise [his] judgment." *Cf. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413–14 (2013). An injunction prohibiting the Attorney General from enforcing these provisions will, at least partly, redress the injuries suffered. *See Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801 (2021) ("[T]he ability to effectuate a partial remedy satisfies the redressability requirement"). Therefore, the credible threat of enforcement of the Challenged Provisions is fairly traceable to

the Attorney General, who has authority to investigate and co-prosecute election offenses.

Additionally, as explained above, the Attorney General is statutorily authorized under Section 2.06 of S.B. 1 to initiate actions to collect civil penalties imposed by the Secretary based on registrar non-compliance. TEX. ELEC. CODE § 18.065(f). Appellants argue that Appellees lack standing to challenge Section 2.06 because "none of the plaintiffs or their members is alleged to be a voter registrar." Appellants' Br. 29 n.11. This argument misses the point; Plaintiffs' members include registered voters, ROA.6604–09 ¶¶ 10, 12, 14, 15, 16, 17, 19, who by definition are on the list of voters who could be flagged and subjected to investigation and potential prosecution as a result of an overzealous voter registrar seeking to avoid sanctions. *E.g.*, ROA.6664–65 ¶222 (alleging that "S.B. 1 inflicts severe burdens on Texas's voters through each individual restriction and the cumulative effect of all the measures that impose barriers to voting, including by … [f]acilitating investigation and prosecution of perfectly legal activity by voters, such as being excused from jury service or having the same name as a non-resident in the county (Sections 2.04, 2.06, and 2.07)").

Thus, for all of the reasons stated above, the Secretary and the Attorney General are the proper parties to sue, and Appellees have standing to bring this suit.

## CONCLUSION

For the reasons stated above, Plaintiffs-Appellees respectfully request that the

Court affirm the decision below.

Respectfully submitted

*/s/ Nina Perales*
Nina Perales

Michael C. Keats
Jason S. Kanterman
Fried, Frank, Harris, Shriver & Jacobson,
L.L.P.
1 New York Plaza
New York, NY 10004

Nina Perales
Julia Renee Longoria
Mexican-American Legal Defense &
Education Fund
Suite 300
110 Broadway Street
San Antonio, TX 78205

Sean Morales-Doyle
Brennan Center for Justice
Suite 1750
120 Broadway
New York, NY 10271

Zachary D. Tripp
Weil, Gotshal & Manges LLP
2001 M Street NW, Suite 600
Washington, DC 20036

Aaron J. Curtis
Weil, Gotshal & Manges, L.L.P.
767 5th Avenue

New York, NY 10153-0119

Counsel for Plaintiffs-Appellees

## CERTIFICATE OF SERVICE

On February 8, 2022, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Nina Perales
Nina Perales

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,997 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Times New Roman) using Microsoft Word (the same program used to calculate the word count).

/s/ Nina Perales
Nina Perales

US\32061268.v18-2/9/23