# In the United States Court of Appeals for the Fifth Circuit

La Union del Pueblo Entero; Friendship-West Baptist Church; Anti-Defamation League Austin, Southwest, and Texoma; Southwest Voter Registration Education Project; Texas Impact; Mexican American Bar Association of Texas; Texas Hispanics Organized for Political Education; JOLT Action; William C. Velazquez Institute; James Lewin; Fiel Houston, Incorporated,

*Plaintiffs-Appellees,*

*v.*

Jane Nelson, In Her Official Capacity as Texas Secretary of State; Warren K. Paxton, In His Official Capacity as Attorney General of Texas; State of Texas,

*Defendants-Appellants,*

———

consolidated with
No. 22-50777

———

Mi Familia Vota; Marla Lopez; Marlon Lopez; Paul Rutledge,

*Plaintiffs-Appellees,*

*v.*

Gregory W. Abbott, In His Official Capacity as the Governor of Texas; Jane Nelson, In Her Official Capacity as Secretary of State of Texas; Warren K. Paxton, In His Official Capacity as Attorney General of Texas,

*Defendants-Appellants,*

DELTA SIGMA THETA SORORITY, INCORPORATED; HOUSTON
AREA URBAN LEAGUE, THE ARC OF TEXAS; JEFFREY LAMAR
CLEMMONS,

*Plaintiffs-Appellees,*

*v.*

GREGORY WAYNE ABBOTT, IN HIS OFFICIAL CAPACITY AS THE
GOVERNOR OF TEXAS, WARREN KENNETH PAXTON, JR., IN HIS
OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF TEXAS,

*Defendants-Appellants,*

MI FAMILIA VOTA; MARLA LOPEZ; MARLON LOPEZ; PAUL
RUTLEDGE,

*Plaintiffs-Appellees,*

*v.*

GREG ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF
TEXAS; JANE NELSON, IN HER OFFICIAL CAPACITY AS TEXAS
SECRETARY OF STATE; WARREN KENNETH PAXTON, JR., IN HIS
OFFICIAL CAPACITY AS ATTORNEY GENERAL OF TEXAS,

*Defendants-Appellants,*

consolidated with
No. 22-50778

LA UNION DEL PUEBLO ENTERO; ET AL,

*Plaintiffs,*

*v.*

GREGORY W. ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR
OF TEXAS; ET AL,

*Defendants,*

OCA-GREATER HOUSTON; LEAGUE OF WOMEN VOTERS OF
TEXAS; REVUP-TEXAS; WORKERS DEFENSE ACTION FUND,

*Plaintiffs-Appellees,*

*v.*

JANE NELSON, IN HER OFFICIAL CAPACITY AS TEXAS SECRETARY
OF STATE; KEN PAXTON, TEXAS ATTORNEY GENERAL,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

## REPLY BRIEF FOR DEFENDANTS-APPELLANTS

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

JUDD E. STONE II
Solicitor General

WILLIAM F. COLE
Assistant Solicitor General
William.Cole@oag.texas.gov

Counsel for Defendants-Appellants

# TABLE OF CONTENTS

Page

Table of Authorities .................................................................................... ii

Introduction ............................................................................................... 1

Argument .................................................................................................... 3

    I.   This Court Has Appellate Jurisdiction. ...................................... 3

         A.  The district court's order denying the State Defendants' sovereign immunity is an archetypal "collateral order" under section 1291. ....... 4

         B.  This Court has jurisdiction over the Article III standing question. ...... 7

    II.  Plaintiffs' Section 1983 Claims Against the Secretary and Attorney General Are Barred by Sovereign Immunity. ........................................... 10

         A.  Local officials, not the Secretary of State, enforce the challenged provisions of S.B. 1. ........................................................................... 11

             1.  Due to the nature of their claims, Plaintiffs cannot rely on the Secretary's role in designing election-related forms. .................. 13

             2.  Plaintiffs cannot rely on the Secretary's promulgation of rules to challenge how local officials implement state law. ...................... 17

             3.  The Secretary's information-sharing roles are not "enforcement" within the meaning of this Court's jurisprudence. ........................................................................ 20

         B.  The Attorney General does not enforce the challenged provisions of S.B. 1. ...................................................................................... 23

    III.  Plaintiffs Lack Standing to Sue the Secretary or the Attorney General ..... 27

Conclusion ............................................................................................... 33

Certificate of Service ................................................................................ 34

Certificate of Compliance ........................................................................ 34

# Table of Authorities

Page(s)

**Cases:**

*Abbott v. Mexican Am. Legis. Caucus, Tex. House of Representatives*,
647 S.W.3d 681 (Tex. 2022) ..........................................................30

*In re Abbott*,
956 F.3d 696 (5th Cir. 2020) ........................................................24

*Agey v. Am. Liberty Pipe Line Co.*,
172 S.W.2d 972 (Tex. 1943) ..........................................................21

*Air Evac EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*,
851 F.3d 507 (5th Cir. 2017) .................................................*passim*

*BancPass, Inc. v. Highway Toll Admin., L.L.C.*,
863 F.3d 391 (5th Cir. 2017) ...........................................................6

*Bertulli v. Indep. Ass'n of Cont'l Pilots*,
242 F.3d 290 (5th Cir. 2001) ...........................................................7

*Bullock v. Calvert*,
480 S.W.3d 367 (Tex. 1972) ...........................................................31

*Burlington N. & Santa Fe Ry. v. Vaughn*,
509 F.3d 1085 (9th Cir. 2007) .........................................................9

*California v. Texas*,
141 S. Ct. 2104 (2021) ............................................................ 30, 31

*Carswell v. Camp*,
54 F.4th 307 (5th Cir. 2022) ...........................................................7

*Charles Scribner's Sons v. Marrs*,
262 S.W. 722 (Tex. 1924) ..............................................................22

*City of Austin v. Paxton*,
943 F.3d 993 (5th Cir. 2019) .................................................*passim*

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ......................................................................30

*In re Deepwater Horizon*,
922 F.3d 660 (5th Cir. 2019) ...........................................................9

*Dep't of Com. v. New York*,
139 S. Ct. 2551 (2019) ..................................................................30

*Escobar v. Montee*,
895 F.3d 387 (5th Cir. 2018) ...........................................................7

ii

*In re Franchise Servs. of N. Am., Inc.*,
  891 F.3d 198 (5th Cir. 2018) .......................................................... 27

*In re Gee*,
  941 F.3d 153 (5th Cir. 2019) .......................................................... 32

*Google, Inc. v. Hood*,
  822 F.3d 212 (5th Cir. 2016) .......................................................... 26

*Haverkamp v. Linthicum*,
  6 F.4th 662 (5th Cir. 2021) .............................................................. 4

*Hawaii v. Gordon*,
  373 U.S. 57 (1963) .......................................................................... 20

*Hodgson v. H. Morgan Daniel Seafoods, Inc.*,
  433 F.2d 918 (5th Cir. 1970) .......................................................... 27

*Hosp. House, Inc. v. Gilbert*,
  298 F.3d 424 (5th Cir. 2002) ........................................................ 7, 9

*JTB Tools & Oilfield Servs. L.L.C. v. United States*,
  831 F.3d 597 (5th Cir. 2016) ............................................................ 9

*K.P. v. LeBlanc*,
  627 F.3d 115 (5th Cir. 2010) ................................................... 8, 9, 15

*Leonard v. Martin*,
  38 F.4th 481 (5th Cir. 2022) ..................................................... 4, 5, 7

*Lewis v. Scott*,
  28 F.4th 659 (5th Cir. 2022) ............................................... 12, 18, 20

*Longoria v. Paxton*,
  No. 22-50110, 2022 WL 832239 (5th Cir. Mar. 21, 2022) ............... 27

*Mi Familia Vota v. Abbott*,
  977 F.3d 461 (5th Cir. 2020) .......................................................... 19

*Murphy v. NCAA*,
  138 S. Ct. 1461 (2018) ................................................................... 20

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  567 U.S. 519 (2012) ........................................................................ 20

*OCA-Greater Houston v. Texas*,
  867 F.3d 604 (5th Cir. 2017) ...................................... 3, 27, 30, 31, 32

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
  506 U.S. 139 (1993) .......................................................................... 4

*In re Paxton*,
  60 F.4th 252 (5th Cir. 2023) ............................................................. 7

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) .......................................................................20

*Perry v. Del Rio*,
    67 S.W.3d 85 (Tex. 2001) ........................................................... 21

*Pickett v. Tex. Tech Univ. Health Scis. Ctr.*,
    37 F.4th 1013 (5th Cir. 2022) .......................................................4

*Planned Parenthood Gulf Coast, Inc. v. Phillips*,
    24 F.4th 442 (5th Cir. 2022) ...................................................5, 6

*Richardson v. Flores*,
    28 F.4th 649 (5th Cir. 2022) ........................................ 2, 14, 17, 18

*Richardson v. Tex. Sec'y of State*,
    978 F.3d 220 (5th Cir. 2020)...................................................... 19

*Russell v. Jones*,
    49 F.4th 507 (5th Cir. 2022) ................................................... 7, 10

*State v. Stephens*,
    No. PD-1032-20, 2021 WL 5917198 (Tex. Crim. App. Dec. 15,
    2021).................................................................... 22, 23, 25

*Tex. All. for Retired Ams. v. Scott*,
    28 F.4th 669 (5th Cir. 2022) ..............................................*passim*

*Tex. Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) ...................................... 25, 30, 31, 32

*Tex. Democratic Party v. Abbott*,
    978 F.3d 168 (5th Cir. 2020) ......................... 10, 16, 17, 25, 31

*Tex. Democratic Party v. Hughs*,
    997 F.3d 288 (5th Cir. 2021) ...................................................... 18

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021) ............................................................... 10

*Twitter, Inc. v. Paxton*,
    65 F.4th 1170 (9th Cir. 2022) .....................................................26

*Vann v. Kempthorne*,
    534 F.3d 741 (D.C. Cir. 2008) ................................................... 19

*Vote.Org v. Callanen*,
    39 F.4th 297 (5th Cir. 2022).................................................. 16, 28

*Wayte v. United States*,
    470 U.S. 598 (1985).....................................................................22

*Whole Woman's Health v. Jackson*,
    13 F.4th 434 (5th Cir. 2021) .................................................... 7, 9
*Whole Woman's Health v. Jackson*,
    142 S. Ct. 522 (2021) ................................................................. 21
*Williams v. Davis*,
    No. 22-30181, 2023 WL 119452 (5th Cir. Jan. 6, 2023) ............. 7, 8, 9
*Ex parte Young*,
    209 U.S. 123 (1908) ........................................................*passim*

**Constitutional Provisions and Statues:**

U.S. Const. art. III § 2, cl. 1 ..............................................*passim*
28 U.S.C.:
    § 1291 ........................................................................................ 4
29 U.S.C.:
    § 794 .................................................................... 5, 6, 9, 10
42 U.S.C.:
    § 1983 ................................................................ 5, 10, 27, 33
    § 12131 et seq. ....................................................... 6, 9, 10
52 U.S.C.:
    § 10301 ..................................................................................... 5
    § 10508 ..................................................................................... 5
Tex. Const.:
    art. IV, § 1 ............................................................................. 21
    art. V, § 21 ............................................................................. 19
Tex. Elec. Code:
    § 16.0332(a) .......................................................................... 29
    § 16.0332(a-1) ...................................................................... 29
    § 18.065(e) ............................................................................ 29
    § 18.068(a) ............................................................................ 29
    § 31.001 .................................................................................. 31
    § 31.002(d) ............................................................................ 15
    § 31.003 .................................................................................. 31
    § 31.012(d) ........................................................................ 18, 19
    § 31.129(b) ............................................................................ 23
    § 33.008 ............................................................................ 18, 19
    § 33.061(a) ............................................................................ 19

§ 43.002-.004 ............................................................... 18

§ 43.031(b) ................................................................... 18

§ 64.009(f) ................................................................... 14

§ 64.0322 ..................................................................... 14

§ 66.004 ................................................................. 18, 19

§ 84.001(c) ................................................................... 15

§ 85.005 ....................................................................... 18

§ 85.005(e) ................................................................... 18

§ 85.006(b) ................................................................... 18

§ 85.061(a) ................................................................... 18

§ 85.062(b) ................................................................... 18

§ 86.001(f) ................................................................... 14

§ 86.001(f-1) ................................................................. 14

§ 86.001(f-2) ................................................................. 14

§ 86.005(d) ................................................................... 15

§ 86.006(a-2) ................................................................. 14

§ 87.041(b) ................................................................... 14

§ 87.041(d) ................................................................... 14

§ 273.021(a) ................................................................. 23

Tex. Gov't Code:

§ 402.028(a) ............................................................. 23-24

**Other Authorities:**

Press Release, Off. of the Att'y Gen., AG Paxton Announces Formation
of 2022 General Election Integrity Team (Oct. 24, 2022) ............................... 25

Texas Election Integrity Act of 2021, Act of Aug. 31, 2021, 87th Leg.,
2d C.S., ch. 1, 2021 Tex. Sess. Law Serv. 3873:

§ 2.04 ................................................................... 20, 23

§ 2.05 ............................................................... 17, 23, 28

§ 2.06 ........................................................... 13, 20, 23, 28

§ 2.07 ............................................................... 20, 23, 28

§ 2.08 ....................................................................... 20

§ 3.04 ............................................................... 17, 18, 23

§ 3.09 ............................................................... 17, 18, 23

§ 3.10 ............................................................... 17, 18, 23

§ 3.12 ................................................................................................. 17, 18, 23

§ 3.13 ................................................................................................. 17, 18, 23

§ 3.15 ..................................................................................................... 17, 23

§ 4.01 ................................................................................................. 17, 18, 23

§ 4.06 ................................................................................................. 15, 20, 23

§ 4.07 ........................................................................................... 15, 17, 18, 23

§ 4.09 ................................................................................................. 15, 20, 23

§ 4.12 ................................................................................................. 13, 14, 23

§ 5.01 ................................................................................................. 13, 14, 23

§ 5.02 ..................................................................................................... 13, 14

§ 5.03 ............................................................................................................ 13

§ 5.04 ..................................................................................................... 20, 23

§ 5.06 ............................................................................................................ 20

§ 5.07 ................................................................................................. 13, 14, 23

§ 5.08 ..................................................................................................... 13, 14

§ 5.10 ............................................................................................................ 17

§ 5.11 ..................................................................................................... 20, 23

§ 5.12 ................................................................................................. 13, 14, 23

§ 5.13 ................................................................................................. 13, 14, 23

§ 5.14 ................................................................................................. 13, 14, 23

§ 6.01 ....................................................................................... 13, 14, 17, 18, 23

§ 6.03 ................................................................................................. 13, 14, 23

§ 6.04 ..................................................................................................... 20, 23

§ 6.05 ..................................................................................................... 20, 23

§ 6.06 ..................................................................................................... 20, 23

§ 6.07 ..................................................................................................... 13, 14

§ 7.02 ..................................................................................................... 20, 23

§ 7.04 ..................................................................................................... 20, 23

§ 8.01 ................................................................................................. 20, 23, 27

# Introduction

Just last year, this Court reiterated that, because "the Texas Election Code delineates between the authority of the Secretary of State and local officials," courts and litigants must pay careful attention to the text of each provision of law that a plaintiff seeks to enjoin the Secretary from enforcing when assessing the applicability of the *Ex parte Young*, 209 U.S. 123 (1908), exception to sovereign immunity. *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022) ("*TARA*"). Plaintiffs' briefing disregards that instruction as well as the extensive and central role in elections administration that the challenged provisions of S.B. 1 prescribe for local, county-level officials. *See generally* Texas Election Integrity Act of 2021, Act of Aug. 31, 2021, 87th Leg., 2d C.S., ch. 1, 2021 Tex. Sess. Law Serv. 3873 ("S.B. 1"). The district court erred by falling into the same trap, and this Court should reverse those orders.

The MFV Plaintiffs and OCA Plaintiffs[1]—but, tellingly, not the LUPE Plaintiffs—try at the outset to avoid review of the district court's orders by arguing that this Court lacks appellate jurisdiction. But it has been black-letter law for three decades that district-court orders, like the ones below, denying a state official's entitlement to sovereign immunity are immediately appealable under the collateral-order doctrine. Likewise, this Court has long held that it has appellate jurisdiction over questions of Article III standing when assessing the applicability of the *Ex parte Young* exception to sovereign immunity.

---

[1] Defined terms are given the meaning assigned in the opening brief.

Plaintiffs also err by doubling down on the argument that the Secretary must enforce at least thirty-eight separate provisions of S.B. 1 because she has general duties to promulgate forms, prescribe rules, and report violations of law. They, like the district court before them, ignore the critical fact that the challenged provisions of S.B. 1 independently task local officials—such as voter registrars, commissioners courts, election judges, early-voting clerks, early-voting ballot boards, and district or county attorneys—with implementing and enforcing the challenged provisions of law regardless of whether the Secretary prescribes a form, promulgates a rule, or reports a violation of law. That means that an injunction against the Secretary "would not afford Plaintiffs the relief that they seek, and therefore, the Secretary of State is not a proper defendant." *Richardson v. Flores*, 28 F.4th 649, 654 (5th Cir. 2022).

Plaintiffs similarly veer off-course by arguing that the Attorney General must enforce thirty provisions of S.B. 1 because Texas law (1) authorizes him to criminally prosecute violations of the election laws of the State, and (2) makes any election official who violates the Election Code liable to the State for a civil penalty. As to the former, the Texas Court of Criminal Appeals has held that the Texas Constitution forbids the Attorney General to institute criminal prosecutions absent a request for representation by a district attorney. It is entirely speculative whether any district attorneys will request the Attorney General's assistance to prosecute election-law crimes against Plaintiffs (or anyone else). As to the latter, state law requires the Attorney General to be authorized to enforce civil-penalty provisions. S.B. 1 does not generally authorize him to institute actions in the trial court to collect civil penalties, and Plaintiffs' briefing points to no authority to institute civil penalties under the

specific provisions they cite. At minimum, that fails to show a "demonstrated willingness" to enforce the provisions—assuming the Attorney General even has the power to do so. *City of Austin v. Paxton*, 943 F.3d 993, 1000 (5th Cir. 2019).

Finally, and for similar reasons, Plaintiffs lacked standing to sue the State Defendants in the first place. Because Plaintiffs have not plausibly alleged the State Defendants are going to enforce the challenged provisions of S.B. 1 against them, Plaintiffs cannot establish the traceability element of Article III standing. Plaintiffs point to this Court's decision in *OCA-Greater Houston v. Texas*, 867 F.3d 604 (5th Cir. 2017), but its perfunctory traceability analysis has been undermined by more recent Supreme Court decisions as well as S.B. 1's efforts to clarify the responsibilities of various state and local officials. Moreover, it is of limited relevance because it considered a challenge to only one provision of the Texas Election Code—not the more-than-three-dozen provisions that Plaintiffs must individually establish standing to challenge here.

**ARGUMENT**

## I. This Court Has Appellate Jurisdiction.

This Court has appellate jurisdiction over these consolidated cases. For decades, it has been black-letter law that an order denying sovereign immunity is appealable under the collateral-order doctrine. And here, the district court's order denied the Secretary and Attorney General's sovereign-immunity arguments across the board. Likewise, this Court must always examine whether Article III has been satisfied—

particularly in *Ex parte Young* cases where the questions of immunity and standing are inextricably intertwined.

### A. The district court's order denying the State Defendants' sovereign immunity is an archetypal "collateral order" under section 1291.

**1.** This Court "ha[s] jurisdiction of appeals from all final decisions of the district courts." 28 U.S.C. § 1291. "The archetypal final decision is one that ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Leonard v. Martin*, 38 F.4th 481, 485 (5th Cir. 2022) (quotation omitted). But "the Supreme Court has long given § 1291 a practical rather than a technical construction." *Id.* at 486 (quotation omitted). As a result, "[s]ection 1291 encompasses not only the final decisions that terminate an action, but also a small class of collateral rulings that, although they do not end the litigation, are appropriately deemed final." *Id.* (quotation omitted).

One type of order that "courts routinely allow immediate appeal from" is an order "deny[ing] a state's" sovereign immunity. *Id.* at 487 (citing *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 141 (1993)); *see also Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022); *Haverkamp v. Linthicum*, 6 F.4th 662, 669 (5th Cir. 2021) (per curiam). This has been established law since at least 1993. *See P.R. Aqueduct*, 506 U.S. at 141. And because the district court's orders in these cases denied the State Defendants' sovereign-immunity defense to each one of Plaintiffs' statutory and constitutional claims, ROA.10592-647, 10668-711, 10727-78, there can be no serious dispute that the district court's orders are "collateral orders" subject to immediate appeal under binding Supreme Court

and Circuit precedent. Indeed, the LUPE Plaintiffs expressly agree (at 3) with this conclusion.

**2.**　The MFV and OCA Plaintiffs do not dispute the well-established proposition that orders denying sovereign immunity are immediately appealable. Instead, they argue that, because the Secretary and Attorney General did not appeal every issue upon which they did not prevail in the district court, appellate jurisdiction is lacking for the issues they do raise. OCA Br. 12-15; MFV Br. 18-23.

There is no merit to this argument. The collateral-order inquiry focuses on the nature of the district court's order and the arguments presented to that court, not on which arguments the appellant chooses to present to the appellate court. *See Leonard*, 38 F.4th at 486-87. That is why, in Plaintiffs' primary authority, *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442 (5th Cir. 2022), this Court looked at the arguments presented in the plaintiff's "motion to dismiss" to conclude that the district court's order was a "collateral order" that this Court had appellate jurisdiction to review. *Id.* at 448-49. That resolves the issue here: the Secretary and Attorney General argued in their "motion[s] to dismiss" that sovereign immunity barred the MFV and OCA Plaintiffs' constitutional claims under section 1983, their section 2 and 208 claims under the Voting Rights Act, their claims under Title II of the Americans with Disabilities Act, and their claim under section 504 of the Rehabilitation Act, ROA.7204-20, 7239-47.[2] And the district court disposed of those

---

[2] The MFV and OCA Plaintiffs argue that the State Defendants "concede," or "do not dispute" that sovereign immunity does not bar their claims under the VRA,

motions by denying each of the Secretary and Attorney General's sovereign-immunity arguments. ROA.10592-10647, 10668-10711, 10727-10778.

The MFV and OCA Plaintiffs nevertheless argue that *Phillips* established a new rule that appellate jurisdiction over an interlocutory order is lacking unless the appeal will dispose of the "entire suit." OCA Br. 11-12; MFV Br. 20-21. But *Phillips* established no such thing. To the contrary, the panel recognized that exercising appellate jurisdiction may be proper even where the State asserted "immunity from only some, and not all, of a plaintiff's claims in the district court." *Phillips*, 24 F.4th at 450 n.13 (citing *BancPass, Inc. v. Highway Toll Admin., L.L.C.*, 863 F.3d 391, 396, 398 (5th Cir. 2017)). This holding applies *a fortiori* in this case—as it did in *Phillips*—where the Secretary and Attorney General asserted sovereign immunity from each one of Plaintiffs' claims in the district court. *See id.*

The MFV Plaintiffs' only response (at 22) is that the State Defendants' interest in avoiding the burdens of trial may yet be vindicated at the summary-judgment stage. But sovereign immunity is not merely concerned with post-summary judgment efforts to avoid trial. Instead, it is broadly aimed at avoiding the "indignity" of subjecting a State's "sovereign prerogatives . . . to individuals through coercive judicial process," including invasive discovery of the type Plaintiffs have sought here.

---

ADA, or Rehabilitation Act. MFV Br. 18-19, 20, 22; OCA Br. 10, 12. Not so. The State Defendants argued in the district court that sovereign immunity barred all three statutory claims. ROA.7218-26, 7246-55. And they have maintained in this Court (at 50) that the VRA claims are barred by sovereign immunity. They have acknowledged, as they must, that circuit precedent is to the contrary and preserved that issue for en banc review at an appropriate time.

*Russell v. Jones*, 49 F.4th 507, 513-15 (5th Cir. 2022). That is why this Court has repeatedly "emphasized that a defendant's entitlement to immunity 'should be determined at the earliest possible stage of the litigation.' " *In re Paxton*, 60 F.4th 252, 257 (5th Cir. 2023) (quoting *Carswell v. Camp*, 54 F.4th 307, 312 (5th Cir. 2022)); *Leonard*, 38 F.4th at 486-87.

### B.  This Court has jurisdiction over the Article III standing question.

The MFV and OCA Plaintiffs also argue that the Court lacks appellate jurisdiction to consider the Secretary and Attorney General's standing arguments. OCA Br. 15-25; MFV Br. 23-26. But this Court must always assess whether Article III is satisfied. *City of Austin*, 943 F.3d at 1003 n.3 (citing *Bertulli v. Indep. Ass'n of Cont'l Pilots*, 242 F.3d 290, 294 (5th Cir. 2001)). And it has pendent appellate jurisdiction over the standing issues because they are "inextricably intertwined" with the sovereign immunity issues. *Escobar v. Montee*, 895 F.3d 387, 391 (5th Cir. 2018). This Court has routinely considered standing in sovereign-immunity appeals because the issues are "both 'inextricably intertwined' and 'necessary to ensure meaningful review.' " *Williams v. Davis*, No. 22-30181, 2023 WL 119452, at *4 (5th Cir. Jan. 6, 2023) (per curiam) (quoting *Escobar*, 895 F.3d at 391); *id.* at *2-4 (collecting authorities); *Whole Woman's Health v. Jackson*, 13 F.4th 434, 446 (5th Cir. 2021); *Hosp. House, Inc. v. Gilbert*, 298 F.3d 424, 429 (5th Cir. 2002).

Put simply, the Court's "Article III standing analysis and *Ex parte Young* analysis 'significant[ly] overlap.' " *City of Austin*, 943 F.3d at 1002 (quoting *Air Evac EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017)). And apart from the Court's perpetual duty to assure itself that Article III has been

satisfied, its "caselaw shows that a finding of standing tends toward a finding that the *Young* exception applies to the state official(s) in question." *Id.* After all, traceability requires that "an official can act, and there's a significant possibility that he or she will act to harm a plaintiff." *City of Austin*, 943 F.3d at 1002. If so, the official likely "has engaged in enough 'compulsion or constraint' to apply the *Young* exception." *Id.* That is why this Court has "even addressed standing before proceeding to an *Ex parte Young* analysis even though 'neither party . . . raised the issue of standing.'" *Williams*, 2023 WL 119452, at *3 (quoting *K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010)).

These authorities apply with equal force here: if the Secretary or Attorney General enforces the challenged provisions of S.B. 1, it is likely that Plaintiffs can also meet the traceability element of the Article III standing test. Because neither *does* enforce the challenged provisions (or at least has not shown any willingness to do so against Plaintiffs), Plaintiffs *cannot* show traceability. Consequently, because there is a "significant overlap" between this Court's "Article III standing analysis and *Ex parte Young* analysis," the exercise of pendent appellate jurisdiction over the standing question in this case is proper. *Williams*, 2023 WL 119452, at *3 (citing *City of Austin*, 943 F.3d at 1002).

The OCA Plaintiffs raise (at 16-24) three arguments in response, but none is meritorious. *First*, they argue (at 16) that the State Defendants forfeited the argument that pendent appellate jurisdiction allows review of the standing issues. But the Secretary and Attorney General expressly identified in their statement of jurisdiction the fact that courts in this Circuit routinely consider standing issues in the context

of interlocutory appeals raising sovereign immunity, citing *City of Austin*. Appellants' Br. 3. To the extent that the OCA Plaintiffs' argument is that the Secretary and Attorney General "did not deploy the magic words" in their statement of jurisdiction, "that is immaterial." *In re Deepwater Horizon*, 922 F.3d 660, 668-69 (5th Cir. 2019). Here, the Secretary and Attorney General cited the controlling case law and identified the relevant basis for appellate jurisdiction in their statement of jurisdiction. *See JTB Tools & Oilfield Servs. L.L.C. v. United States*, 831 F.3d 597, 601 (5th Cir. 2016). Nothing more is required. *See Burlington N. & Santa Fe Ry. v. Vaughn*, 509 F.3d 1085, 1093 n.3 (9th Cir. 2007).

*Second*, the OCA Plaintiffs argue (at 22 n.14) that the Court should ignore *Williams* because it is an unpublished decision. But Plaintiffs ignore that *Williams* restated the law as articulated in numerous published decisions—*e.g.*, *City of Austin, Air Evac, K.P., Whole Woman's Health*, and *Hospitality House*—which make clear that this Court has long examined the Article III standing question in *Ex parte Young* appeals. Plaintiffs do not even try to grapple with this law. Indeed, the OCA Plaintiffs appear to all but concede (at 19 & n.10) the point.

*Third*, the OCA Plaintiffs argue (at 19-24) that the standing and sovereign-immunity arguments are not "inextricably intertwined" because the question whether Congress abrogated the Secretary and Attorney General's sovereign immunity under Title II of the ADA or section 504 of the Rehabilitation Act, and the injury-in-fact element of the Article III, are analytically distinct questions that do not overlap with the *Ex parte Young* analysis. This argument is a red herring. The State Defendants' standing arguments focus (at 4, 50-55) on the traceability element of Article III

standing, not the injury-in-fact element. Moreover, the standing arguments focus (at 51) on Plaintiffs' constitutional claims brought pursuant to section 1983 and *Ex parte Young*—not the ADA and Rehabilitation Act claims. Since Plaintiffs must individually establish standing for each claim, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021), it is irrelevant whether or not the injury-in-fact or congressional-abrogation inquiries would diverge from the *Ex parte Young* inquiry as that question is not presented by this appeal.

## II. Plaintiffs' Section 1983 Claims Against the Secretary and Attorney General Are Barred by Sovereign Immunity.

The sovereign-immunity doctrine forbids a plaintiff to "sue a state . . .without the state's consent." *Russell*, 49 F.4th at 512. Application of that principle here bars Plaintiffs' effort to enjoin Texas's Secretary of State and Attorney General from enforcing more than three dozen provisions of S.B. 1. *See* Appellants' Br. 26-50.

Plaintiffs invoke the *Ex parte Young* exception in a bid to overcome the State Defendants' sovereign immunity. But that narrow exception makes state officials proper defendants in suits seeking injunctive relief where those officials have "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." *TARA*, 28 F.4th at 672 (quoting *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) ("*TDP II*")). And "'enforcement' means compulsion or constraint.'" *Id.* (quoting *City of Austin*, 943 F.3d at 1000). So, "[i]f the official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation." *Id.* (citing *Air Evac*, 851 F.3d at 520). Under these standards, Plaintiffs' effort to fit their claims within the

*Ex parte Young* exception founders for one simple reason: each of the challenged provisions is "enforced" against Plaintiffs, if at all, by local officials, not the Secretary or Attorney General. *See* Appellants' Br. 26-50.

## A. Local officials, not the Secretary of State, enforce the challenged provisions of S.B. 1.

Plaintiffs collectively seek to enjoin the Secretary from enforcing thirty-eight provisions contained in Articles 2 through 7 of S.B. 1. *See id.* 27 & n.10. But they cannot satisfy *Ex parte Young* because each provision is either expressly enforced by a local election official or does not imbue the Secretary with "enforcement" power:

- The challenged provisions in Article 2 of S.B. 1 concerning voter registration and the maintenance of voter rolls are enforced against Plaintiffs (if at all) by voter registrars. Appellants' Br. 28-29. The Secretary's role—at most—involves sharing information with voter registrars, the Attorney General, or Department of Public Safety. *Id.*

- The challenged provisions of Article 3 involve the conduct and security of elections, including designating polling locations, setting early-voting requirements, and preparing ballots. *Id.* at 29-30. But it is commissioners courts, early-voting clerks, and county clerks who are tasked with enforcing these provisions at precinct-level polling places. *Id.* at 30.

- The challenged provisions of Article 4 restrict the ability of election officials to interfere with poll watchers and clarify that unmanned drop boxes for early-voting ballots are not permitted. *Id.* at 30-31. But these provisions are enforced by either local prosecutors or early-voting clerks. *Id.* at 30-31.

- The challenged provisions of Article 5 amend vote-by-mail and early-voting procedures. But they too are enforced by the early-voting clerk, presiding election judge, early-voting ballot board, and signature-verification committee—the local officials who are generally tasked with administering the early-voting and vote-by-mail process. *Id.* at 31-32.

- The challenged provisions of Article 6 involve new informational requirements for, and one criminal prohibition regarding, those providing assistance to voters. *Id.* at 33-34. But the information is collected by the same local election officials who administer the early-voting or election-day voting process, and the criminal prohibition is enforced by district or county attorneys with prosecuting authority. *Id.*

- Finally, the challenged provisions of Articles 7 and 8 define new election-law offenses. *Id.* at 34-35. Again, they are enforced by local prosecutors. *Id.*

"Where a state actor or agency is statutorily tasked with enforcing the challenged law[,] and a different official is the named defendant, [the] *Young* analysis ends." *Lewis v. Scott*, 28 F.4th 659, 663 (5th Cir. 2022) (quoting *City of Austin*, 943 F.3d at 998). Because none of these provisions is enforced by the Secretary, Plaintiffs' claims against the Secretary fail.

Although the challenged provisions of S.B. 1 task local officials with enforcement, Plaintiffs nevertheless maintain that the Secretary has a "concurrent" enforcement role with local officials. *E.g.*, MFV Br. 44. Like the district court, Plaintiffs locate this enforcement authority in provisions of S.B. 1 that task the Secretary with designing and promulgating mail-in-voting and voter-assistance forms, providing

rules and guidance to assist local officials, and reporting any suspected violations of election law to prosecuting authorities. LUPE Br. 18-40; MFV Br. 37-45; OCA Br. 27-42. But, as the Secretary has explained, none of these three general duties constitutes "enforcement" because none constrains or compels Plaintiffs to do anything. Appellants' Br. 35-45.[3] Plaintiffs' three counterarguments fail to demonstrate otherwise.

### 1. Due to the nature of their claims, Plaintiffs cannot rely on the Secretary's role in designing election-related forms.

Plaintiffs contend that the Secretary enforces twelve[4] provisions of S.B. 1 because the Election Code tasks her with designing various forms, such as vote-by-mail applications, mail-in-ballot carrier envelopes, and voter-assistance forms. *See* Appellants' Br. 35 & n.12. But Plaintiffs' theory is based on the alleged effect of S.B. 1 on their ability to exercise the franchise. *E.g.*, ROA.6132-35, 6136-37, 6204-08, 6211-13, 6260-61, 6264-65, 6292-98, 6599-6603, 6632-35. Merely creating a form does not make the Secretary the enforcer of the new substantive requirements of S.B. 1 because designing a form does not compel Plaintiffs to do anything or constrain Plaintiffs from voting in any way. Appellants' Br. 35-40. Enforcement of the substantive

---

[3] The State Defendants agree with the LUPE Plaintiffs (at 22, 55) that the Secretary "enforces" the component of section 2.06 that authorizes the Secretary to sanction *voter registrars* who do not comply with certain provisions of S.B. 1. But that does not help the LUPE Plaintiffs: because no Plaintiff is alleged to be a voter registrar, they lack standing to challenge those provisions. *See infra* at 28; Appellants' Br. 52.

[4] Sections 4.12, 5.01, 5.02, 5.03, 5.07, 5.08, 5.12, 5.13, 5.14, 6.01, 6.03, and 6.07. ROA.10601-07, 10671-76, 10735-41.

requirements of S.B. 1 occurs when, for example, an early-voting clerk or early-voting ballot board *rejects* a mail-in-ballot application or carrier envelope because the voter has not provided the information now required under sections 5.01, 5.02, 5.12, 5.13, and 5.14 of S.B. 1. *Id.* at 37-38. Or it occurs when "an election officer" at the polling place collects the information required by sections 4.12, 6.01, and 6.03 from a voter-assistor or individual dropping off another person's ballot (whether on the Secretary's form or otherwise). *Id.* at 36-37, 38. Plaintiffs respond in three overarching ways, but none has merit.

*First*, Plaintiffs repeat the canard that the substantive provisions of S.B. 1 cannot be enforced unless the Secretary prescribes the forms. OCA Br. 29; LUPE Br 34. But sections 5.07, 5.12, 5.13, and 5.14 of S.B. 1 *independently* require early-voting clerks, early-voting ballot boards, and signature-verification committees to reject mail-in-ballot applications and carrier envelopes that do not contain the information required by sections 5.01, 5.02, 5.08, and 6.07 of S.B. 1. *See* Tex. Elec. Code §§ 86.001(f), (f-1), (f-2), 87.041(b), (d). And sections 4.12, 6.01, and 6.03 *independently* require "election officials" to collect certain information from voter assistors or those dropping off another individual's ballot. *Id.* §§ 64.009(f), 64.0322, 86.006(a-2). Neither obligation goes away if the Secretary were never to fulfill her statutory duty to create a form. Enjoining the *Secretary* from providing the forms for use by these local officials in exercising their statutory duties thus does not free those local officials from their separate legal obligations. Because "enjoining the Secretary" from creating these forms "would not afford the Plaintiffs the relief that they seek," the Secretary "is not a proper defendant." *Richardson*, 28 F.4th at 654.

*Second*, Plaintiffs try to bridge this gap by arguing that because section 31.002(d) of the Election Code requires local officials to *use* the Secretary's forms, she should be deemed to enforce these provisions by *creating* those forms. MFV Br. 38; OCA Br. 38. This response fails to grapple with the fact that local officials are independently required to reject nonconforming mail-in-ballot applications and carrier envelopes and collect information from voter assistors—irrespective of whether a form is prescribed. *See supra* at 14. It also elides that none of these Plaintiffs is one of those local officials.[5] Under this Court's caselaw, only those "actions that constrain[] the plaintiffs" are relevant to the *Ex parte Young* inquiry. *City of Austin*, 943 F.3d at 1001; *see also Air Evac*, 851 F.3d at 519 ("state defendants obviously *constrain* Air Evac[]," the plaintiff); *K.P.*, 627 F.3d at 125 ("the Board took an active role in enforcing Section 9:2800.12 [of the Louisiana Revised Statutes] as to" one of the original plaintiffs). Thus absent any compulsion for *Plaintiffs* to use the forms—which the Election Code affirmatively *disclaims* for mail-in-ballot applications and official ballot (but not carrier) envelopes, Tex. Elec. Code § 84.001(c), 86.005(d)—Plaintiffs' complaints fail.

The OCA Plaintiffs counter (at 38) by pointing to this Court's statement in *TARA* that "[i]f the official does not compel or constrain *anyone* to obey the

---

[5] To be sure, two of the Plaintiffs—Jeffrey Clemmons and James Lewin—*previously* served as local officials. ROA.6154, 6609. But neither has suggested that they will hold positions that will require them to use any Secretary-prescribed forms in the future. Clemmons has also expressly limited his challenge to sections 4.06, 4.07, and 4.09 of S.B. 1, ROA.6154—none of which involves forms promulgated by the Secretary.

challenged law, enjoining that official could not stop any ongoing constitutional violation." 28 F.4th at 672 (emphasis added). "Local officials," the OCA Plaintiffs reason (at 38), "are clearly 'anyone.'" But *TARA* did *not* say that an enforcement connection is established whenever a plaintiff points to the defendant's enforcement of a law against third parties—a rule that would raise serious standing questions. *See Vote.Org v. Callanen*, 39 F.4th 297, 303 (5th Cir. 2022). To the contrary, *TARA* relied heavily on *Air Evac*, *TARA*, 28 F.4th at 672, which in turn evaluated whether the defendant enforced the challenged law against *the plaintiff* before the Court, 851 F.3d at 519, and acknowledged the "significant overlap between Article III jurisdiction, *Ex parte Young*, and equitable relief." *TARA*, 28 F.4th at 672 (quoting *AirEvac*, 851 F.3d at 520). Absent narrow circumstances not applicable here, Article III does not permit Plaintiffs to assert the injuries of third parties. *Callanen*, 39 F.4th at 303. So, in context, *TARA*'s use of the word "anyone" is merely a legal truism: if the state officer does not enforce the law against even a single person, *Ex parte Young* is—by definition—not met. But it says nothing about whether *Ex parte Young* can be met by Plaintiff A because the state officer can enforce the law as to Non-Party B.

*Third*, Plaintiffs argue that *TDP II* controls this case because the Court concluded that the Secretary enforced provisions of Texas law allowing 65-and-over voters to vote by mail in part because the Secretary "design[s] the application form for mail-in-ballots." 978 F.3d at 179; *see* OCA Br. 31-32; MFV Br. 38; LUPE Br. 30. But Plaintiffs ignore a key distinction: whereas the *TDP II* plaintiffs "challenge[d] . . . the mail-in forms" themselves, here Plaintiffs challenge "how local officials" use them,

which renders *TDP II* distinguishable. *Richardson*, 28 F.4th at 654 n.9; *see* Appellants' Br. 39-40.

Plaintiffs protest that they "*do* challenge the forms themselves" as opposed to the actions of local officials who may use the forms when deciding whether to accept or reject a mail-in-ballot application or when collecting information from voter assistors. LUPE Br. 32; *see* OCA Br. 34. But their own briefing betrays them. As the LUPE Plaintiffs put it: "SB 1's requirements to provide additional information on mail ballot applications and carrier envelopes will injure LUPE's members *by causing the rejection of their mail ballots* when they make inadvertent clerical errors or where *the clerk* lacks ID information in the voter's record on file." LUPE Br. 33 (quoting ROA.6648) (emphasis altered). As do the allegations in their operative complaints. *See* Appellants' Br. 39 (collecting examples). As this Court has noted, "*Ex parte Young* and standing turn on the specific details in the complaint." *Air Evac*, 851 F.3d at 520. And Plaintiffs' complaints certainly *are* about the "processes" surrounding use of these vote-by-mail and voter-assistance forms—that early-voting clerks will reject those forms, for example—which falls "on local officials, not the Secretary." *Richardson*, 28 F.4th at 654.

## 2. Plaintiffs cannot rely on the Secretary's promulgation of rules to challenge how local officials implement state law.

Plaintiffs next argue that the Secretary enforces eleven[6] other provisions of S.B. 1 because the Election Code authorizes her to promulgate rules, guidelines, or

---

[6] Sections 2.05, 3.04, 3.09, 3.10, 3.12, 3.13, 3.15, 4.01, 4.07, 5.10, and 6.01. ROA.10598-600, 10607-10, 10741-43.

advisories to assist local officials with the implementation of various provisions of S.B. 1. *See* Appellants' Br. 40 & n.13. But this Court has twice held that "[o]ffering advice, guidance, or interpretive assistance does not compel or constrain local officials." *Richardson*, 28 F.4th at 655. Indeed, in *TARA* the Court held that a law requiring the Secretary to "adopt rules and establish procedures as necessary" to facilitate the elimination of straight-party voting—language materially similar to the statutes Plaintiffs point to here, *cf.* Tex. Elec. Code §§ 31.012(d), 33.008, 66.004— did not "make[] the Secretary the 'enforcer' of" the underlying law. 28 F.4th at 673.

Moreover, an injunction prohibiting the Secretary from issuing rules, guidance, or advisories is not a proper *Ex parte Young* remedy because it would not relieve local officials of their independent obligation to implement the challenged provisions. *See* Appellants' Br. 41-43. For example, commissioners courts are independently required by S.B. 1 to enforce section 3.04's prohibition on motor voting, and nothing about that obligation is dependent upon the Secretary's issuance of guidance. *See* Tex. Elec Code § 43.031(b); *see also id.* §§ 43.002-.004. The same goes for early-voting clerks who are independently required to implement the new early-voting procedures in sections 3.09 and 3.10 and the prohibitions on mobile voting in sections 3.12 and 3.13. *See id.* §§ 85.005, 85.006(b), (e), 85.061(a), 85.062(b); *see also Tex. Democratic Party v. Hughs*, 997 F.3d 288, 291 & n.16 (5th Cir. 2021) ("the 'early voting clerk' [is] responsible for conducting the early voting in each election"). And the same is true for local prosecutors, "who are specifically charged with the enforcement of the criminal prohibition[s]" in the Election Code (including sections 4.01, 4.07, and 6.01), *Lewis*, 28 F.4th at 664, and whose ability to execute that charge

does not turn on any action or inaction of the Secretary, *see* Tex. Elec. Code § 33.061(a); Tex. Const. art. V, § 21.

Plaintiffs' primary response is that the Secretary's guidance is "binding" on local officials. LUPE Br. 21, 25-26, 29; OCA Br. 35-36, 39. This rejoinder is a non sequitur. Plaintiffs are not challenging any guidance issued by the Secretary—their lawsuits are aimed at the underlying substantive provisions of S.B. 1 enforced by local officials. *See* Appellants' Br. 28-35. Further, Plaintiffs are not these local officials, so it is irrelevant how the Secretary does or does not constrain such third parties. *Supra* at 15-16 & n.5. And in any event, this contention is not responsive to the Secretary's argument that, even without her issuance of guidance, local officials would *still* be obligated to enforce the challenged provisions against the Plaintiffs. *Supra* at 18-19.

Elsewhere, Plaintiffs suggest that the district court could issue an injunction that dictates the *content* of the Secretary's advisories or guidance documents. *See* LUPE Br. 26. But that type of relief is not available under *Ex parte Young.* Since *Ex parte Young* itself, courts have recognized that they "may not 'control [a state officer] in the exercise of his discretion.'" *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 242 (5th Cir. 2020) (quoting *Ex parte Young*, 209 U.S. at 158); *see also, e.g.*, *Vann v. Kempthorne*, 534 F.3d 741, 753 (D.C. Cir. 2008). And the content of the Secretary's advisories, guidance, or training programs is plainly left to her discretion. *See, e.g.*, Tex. Elec. Code §§ 31.012(d), 33.008, 66.004. Moreover, federal law "does not provide authority for courts to order state officials to promulgate legislation, regulations or executive orders." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 469 (5th Cir. 2020). And sovereign immunity prevents this Court from "requir[ing] [a state actor's]

official affirmative action." *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam). That is, the Constitution *preempts* contrary state law, but the "Constitution simply does not give" the federal government "the authority to require the States to regulate." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 578 (2012) (plurality op.); *see also Murphy v. NCAA*, 138 S. Ct. 1461, 1477 (2018). Nor could Plaintiffs claim any injunction would merely enforce a *state law* obligation to promulgate rules, since *Ex parte Young* does not allow federal courts to order state officials to comply with state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

### 3. The Secretary's information-sharing roles are not "enforcement" within the meaning of this Court's jurisprudence.

**a.** Finally, Plaintiffs claim that the Secretary enforces fifteen[7] provisions of S.B. 1 that define new crimes under the Election Code or require the Secretary to share information about violations of the law with the Attorney General, Department of Public Safety, or local prosecutors. *See* Appellants' Br. 43 n.14. The Secretary does not enforce these provisions of law for at least two reasons.

*First*, she does not have prosecuting authority, so any enforcement of the criminal or civil prohibitions of S.B 1 would only occur if and when an enforcement action is brought by an individual with prosecuting authority, such as a county or district attorney. Appellants' Br. 44 (citing *Lewis*, 28 F.4th at 664). Contrary to the OCA Plaintiffs' suggestion (at 48), recognizing that legal reality would not require Plaintiffs to "expose [themselves] to actual arrest or prosecution" in order to challenge

---

[7] Sections 2.04, 2.06, 2.07, 2.08, 4.06, 4.09, 5.04, 5.06, 5.11, 6.04, 6.05, 6.06, 7.02, 7.04, and 8.01. ROA.10599-600, 10610-15, 10677, 10733-35, 10743-47.

the criminal-law provisions of S.B. 1—they simply need to sue the district or county attorneys who enforce those laws, as Plaintiffs have done by suing the Harris County, Travis County, Dallas County, Bexar County, and El Paso County district attorneys in this very lawsuit. ROA.6157, 6278-79, 6617.[8]

*Second*, the mere sharing of information about violations of law with other officials does not constitute "enforcement" because sharing information with a third party does not "compel or constrain" the recipients of the information—much less the Plaintiffs themselves—to do anything. *TARA*, 28 F.4th at 672.

**b.** Plaintiffs respond in two ways, but each misses the mark. *First*, Plaintiffs argue that any referral of information about violations of law to the Attorney General or local prosecutors "all but guarantees that enforcement will follow," such that the Secretary herself should be treated as the one doing the enforcing. MFV Br. 39; *see also* LUPE Br. 22 n.4. But this is irreconcilable with state law: although the Attorney General and the Secretary of State are both executive officers under article IV, section 1 of the Texas Constitution, it is the Attorney General's chief function—not the Secretary of State's—"to represent the State in civil litigation." *Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex. 2001); and he has broad discretion regarding how to do so, *id.*; *see also Agey v. Am. Liberty Pipe Line Co.*, 172 S.W.2d 972, 974 (Tex. 1943);

---

[8] For the same reason, the MFV Plaintiffs are wrong to say (at 44-45) that accepting the State Defendants' sovereign-immunity arguments "would leave no proper defendant responsible for S.B. 1's enforcement." Even if that were not true, *Ex parte Young* does not provide an "unqualified right to pre-enforcement review of constitutional claims in federal court." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 538 (2021).

*Charles Scribner's Sons v. Marrs*, 262 S.W. 722, 727-28 (Tex. 1924) (orig. proceeding). "[O]ffices of county and district attorneys are in the judicial branch of government," and thus have been held to exercise functions that cannot be dictated by executive officials at all.[9] Even under federal law, where prosecution and civil litigation are centralized under the Department of Justice, such a theory of enforcement would be incorrect as it flies in the face of the established concept of prosecutorial discretion. *See Wayte v. United States*, 470 U.S. 598, 607-08 (1985).

*Second*, the LUPE Plaintiffs argue (at 23-24) that the Secretary's referral of information to the Attorney General and local prosecutors is akin to "enforcement connection" found in *Air Evac*. But it is not. *Air Evac* involved a challenge to a rule promulgated by the Texas Commissioner of Workers Compensation that was preempted by federal law. 851 F.3d at 511. The Court held that the Commissioner had a sufficient enforcement "connection" to the challenged rule because the Commission's rate-setting actually "constrain[s] Air Evac's ability to collect more than the maximum-reimbursement rate" in administrative proceedings. *Id.* at 519 (alteration omitted). But here it is not an administrative rule promulgated by the Secretary that constrains the Plaintiffs—it is freestanding provisions of state law that would be enforced against the Plaintiffs by local officials even without any action by the Secretary.

---

[9] *State v. Stephens*, No. PD-1032-20, 2021 WL 5917198, at *2 (Tex. Crim. App. Dec. 15, 2021), *reh'g denied*, No. PD-1032-20, 2022 WL 4493899 (Tex. Crim. App. Sept. 28, 2022).

## B. The Attorney General does not enforce the challenged provisions of S.B. 1.

**1.** Similarly without merit is the district court's holding that the Attorney General enforces thirty[10] provisions of S.B. 1 based on two provisions of Texas law. *See* Appellants' Br. 45 & n.16. The first authorizes "[t]he attorney general [to] prosecute a criminal offense prescribed by the election laws of this state," Tex. Elec. Code § 273.021(a), and the second makes any election official who "violates a provision of this code" "liable to th[e] state for a civil penalty," *id.* § 31.129(b). But the Texas Court of Criminal Appeals has since held that the Texas Constitution forbids the Attorney General to unilaterally institute criminal prosecutions, so the former source of "enforcement" authority is inapplicable. *See* Appellants' Br. 46 (citing *Stephens*, 2021 WL 5917198 at *1, *8). And under state law, the Attorney General does not enforce the civil-penalty provision, either. *See* Appellants' Br. 47-48. So enjoining the Attorney General "could not stop any ongoing constitutional violation," making him an improper defendant under *Ex parte Young. TARA*, 28 F.4th at 672.

**2.** Plaintiffs offer three responses, but none is meritorious. *First*, Plaintiffs argue that, despite the lack of unilateral prosecutorial authority, the Attorney General might still assist district or county attorneys in prosecuting election-law crimes. LUPE Br. 43-44; OCA Br. 42-43; MFV Br. 35-36. But the provision of such assistance requires that it is first "request[ed]" by a district or county attorney. Tex.

---

[10] Sections 2.04, 2.05, 2.06, 2.07, 3.04, 3.09, 3.10, 3.12, 3.13, 3.15, 4.01, 4.06, 4.07, 4.09, 4.12, 5.01, 5.04, 5.07, 5.11, 5.12, 5.13, 5.14, 6.01, 6.03, 6.04, 6.05, 6.06, 7.02, 7.04, and 8.01. ROA.10619-28, 10681-90, 10752-61.

Gov't Code § 402.028(a). And Plaintiffs do not allege any such request has occurred or will soon be occurring. Regardless, this Court has already held that "[s]peculation that he might be asked by a local prosecutor to 'assist' in enforcing" the law "is inadequate to support an *Ex parte Young* action against the Attorney General." *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020), *cert. granted, judgment vacated sub nom. Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021).

Plaintiffs nevertheless insist that it is *not* speculative to argue that the Attorney General will partner up with local prosecutors to criminally prosecute election-law crimes because "[h]e has done so in the past and his words and conduct demonstrate a credible threat that he will again." LUPE Br. 45-46. Specifically, they point to three categories of conduct: (a) the Attorney General's acceptance of requests for representation from local prosecutors in the past; (b) his website's acknowledgment of his office's statutory authority to assist local prosecutors, and (c) his prior statements about the importance of election integrity. OCA Br. 43-48; LUPE Br. 42-46.[11]

Yet "the mere fact that the Attorney General *has* the authority" to partner with local prosecutors to prosecute election-law offenses and has done so in the past does not mean that he will do so in the future—much less partner with local prosecutors in jurisdictions where Plaintiffs or any of their members who may be affected by

---

[11] The LUPE Plaintiffs also point (at 45) to a press release from the Attorney General's office stating that "Attorney General Paxton is currently prosecuting over 500 felony election fraud offenses in Texas courts." But this was a pre-*Stephens* press release, and it is therefore of limited relevance in ascertaining the scope of the Attorney General's authority post-*Stephens*. *See also* OCA Br. 47 n.33.

S.B. 1 are located. *City of Austin*, 943 F.3d at 1001. After all, that he has assisted with prosecutions of "*different* statutes under *different* circumstances" at the request of different prosecutors "does not show that he is likely to do the same here" with respect to certain unnamed prosecutors. *Id.*

Likewise, the fact that the Attorney General has maintained an "outspoken commitment," OCA Br. 46, to election integrity in various press statements and Twitter posts, OCA Br. 43-44, LUPE Br. 45, does not support the inference that he is likely to enforce criminal election-law statutes against Plaintiffs here. This Court's cases "do not support the proposition that an official's public statement alone establishes authority to enforce a law, or the likelihood of his doing so, for *Young* purposes." *TDP II*, 978 F.3d at 181. Moreover, none of the identified statements was directed "to the [P]laintiffs" or suggested that "[P]laintiffs had violated any specific law," and none "ma[d]e a specific threat or indicate[d] that enforcement was forthcoming." *Id.* What Plaintiffs point to are akin to "public statement[s] that a law will be enforced," which do "not constitute enforcement threats." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 401-02 (5th Cir. 2020) ("*TDP I*").

Plaintiffs also point to the Attorney General's "Election Integrity Unit" as evidence that he will soon accept representations to prosecute them for state-law election crimes. OCA Br. 42; LUPE Br. 45. But this Unit was created before the *Stephens* decision, and the post-*Stephens* press release that the OCA Plaintiffs identify (at 43 n.28, 46 n.32) states that its current "primary function is to serve as a focused resource to both election officials and the public" during the 2022 general election season. Press Release, Off. of the Att'y Gen., AG Paxton Announces Formation of

2022 General Election Integrity Team (Oct. 24, 2022). Local prosecutors are neither "election officials" nor "the public." Moreover, nothing about that press release indicates that any local prosecutor will request the Attorney General's assistance in prosecuting election-law crimes, let alone a prosecutor with jurisdiction over Plaintiffs or their members. Again, "the mere fact that the Attorney General *has* the authority to" assist local prosecutors upon their request is insufficient to satisfy *Ex parte Young* because (among other reasons) it does not mean that a local prosecutor will ask. *See City of Austin*, 943 F.3d at 1001.

*Second*, Plaintiffs argue that the Attorney General enforces various criminal prohibitions created by S.B. 1 because he may conduct investigations. LUPE Br. 42; MFV Br. 34. But nothing about an investigation—without a corresponding demand for compliance or action from the Plaintiffs—constitutes "enforcement" because an investigation does not "compel[] or constrain[]" Plaintiffs to do anything. *TARA*, 28 F.4th at 672. It is, at most, a precursor to potential enforcement. *See Twitter, Inc. v. Paxton*, 65 F.4th 1170, 1176 (9th Cir. 2022) (plaintiffs lacked standing to assert claim challenging issuance of civil investigative demand because the demand is "not self-enforcing" and OAG must take additional steps to enforce it); *Google, Inc. v. Hood*, 822 F.3d 212, 224-26 (5th Cir. 2016) (similar). Plaintiffs' response appears to be that an investigation constitutes enforcement because, if the results of that investigation are passed off to a prosecutor *and* the prosecutor chooses to pursue charges, the information obtained in the investigation could be used to support the prosecution. MFV Br. 34. But that is merely a concession that is it the prosecutor, not the investigator (here the Attorney General), who is doing the enforcement.

*Lastly*, the LUPE Plaintiffs concede (at 46-48) that the Attorney General's lack of authority under state law to enforce section 8.01's civil-penalty provision makes him an improper *Ex parte Young* defendant. *See* Appellants' Br. 47-49. The LUPE Plaintiffs nevertheless ask (at 47) this Court to "resolve the issue" anyway "and affirmatively rule that [the Attorney General] cannot enforce civil penalties" under section 8.01. But the Court should reject this invitation to issue an advisory opinion. *See In re Franchise Servs. of N. Am., Inc.*, 891 F.3d 198, 205 (5th Cir. 2018); *Hodgson v. H. Morgan Daniel Seafoods, Inc.*, 433 F.2d 918, 920 (5th Cir. 1970) ("We cannot render an advisory opinion on hypothetical or abstract facts.") And at a minimum, the Court should not make an *Erie* guess on this pure question of state law without the input of the Texas Supreme Court, as this Court recognized just last year. *See Longoria v. Paxton*, No. 22-50110, 2022 WL 832239 (5th Cir. Mar. 21, 2022) (per curiam) (certifying question about Attorney General's enforcement authority under section 8.01 of S.B. 1 to Texas Supreme Court).

### III. Plaintiffs Lack Standing to Sue the Secretary or the Attorney General.

Even if the Plaintiffs could get around sovereign immunity, they lack Article III standing to bring their constitutional claims under section 1983 against the Secretary and Attorney General for many of the same reasons. Put simply, because the Secretary and Attorney General do not enforce the challenged provisions of S.B. 1, Plaintiffs cannot show that their alleged injuries are fairly traceable to any conduct of these State Defendants. *See* Appellants' Br. 51-54. Plaintiffs' principal authority, *OCA-Greater Houston*, 867 F.3d at 612-14, is of far more limited reach than they suggest,

and in any event, it cannot serve as the missing plank to bridge their standing gap. *See* Appellants' Br. 54-55. Plaintiffs respond in two ways, but neither has merit.

**A.** Plaintiffs first double down on the argument that the Secretary and Attorney General enforce each of the challenged provisions. MFV Br. 48-51; LUPE Br. 51-52, 53. For example, Plaintiffs argue that the Secretary enforces the voter-registration provisions in Article 2 of S.B. 1, because section 2.05 authorizes her to prescribe rules to assist voter registrars in ensuring the accuracy of voter rolls, section 2.07 instructs her to notify voter registrars of inaccuracies on a statewide voter registration list, and section 2.06 authorizes her to sanction voter registrars who are non-compliant with the voter-registration requirements of Article 2. MFV Br. 48-49; LUPE Br. 51.

But to the extent that these provisions are enforced by the Secretary, they are enforced against *voter registrars*. Even Plaintiffs are forced to admit as much, noting that "[w]ere the Secretary not empowered to enforce the law in these ways *voter registrars'* ability to identify and ensure compliance with" S.B. 1 "would be severely circumscribed." MFV Br. 49 (emphasis added). Because neither Plaintiffs nor any of their members is alleged to be a voter registrar, however, they lack standing to assert claims based upon the Secretary's purported enforcement of S.B. 1's provisions against third parties not before the Court. *Callanen*, 39 F.4th at 303.

It is no answer for Plaintiffs to say that they should be able to sue the Secretary because their members are harmed whenever a voter registrar enforces S.B. 1's registration provisions against them. MFV Br. 49; LUPE Br. 55. Nothing about a voter registrar's discharge of its independent legal obligations under Article 2 is dependent

upon whether the Secretary promulgates rules, transmits information, or issues a sanction. *See* Tex. Elec. Code §§ 16.0332(a), (a-1), 18.065(e), 18.068(a). Instead, a voter registrar is independently required under S.B. 1 to enforce the voter-registration provisions of Article 2. *See id.* And for that reason, an injunction against the Secretary will not redress the injury Plaintiffs assert—being erroneously stricken from the voter rolls, *see* ROA.6198-99, 6220, 6225, 6229, 6601, 6644-46.

Likewise, Plaintiffs are wrong to argue that the Secretary enforces the challenged provisions in Article 3 of S.B. 1, because she is tasked with "adopt[ing] rules pertaining to voting inside a motor vehicle, outdoor polling places, and early voting hours." MFV Br. 50; *see also* LUPE Br. 50-51. As described above, commissioners courts, early-voting clerks, and county clerks are tasked with implementing these provisions, and their enforcement obligations do not hinge upon the Secretary's issuance of guidelines. *Supra* at 18. Nor does the Secretary enforce the vote-by-mail provisions of Article 5 and the voter-assistance provisions of Article 6 simply because she prescribes certain forms. *See* MFV Br. 50; LUPE Br. 51. This argument is built on the faulty premise that "there can be no enforcement of the challenged provisions" if the Secretary does not prescribe the forms, MFV Br. 50. But as the Secretary has explained, that is wrong. *Supra* at 14.

Finally, local prosecutors, not the Attorney General, enforce the criminal prohibitions in Articles 4 and 7 of S.B. 1, and Plaintiffs may not rely on speculation that the Attorney General will be asked by a local prosecutor to assist. Appellants' Br. 53-54. The LUPE Plaintiffs respond that it is not speculative to suggest that a district attorney will request the Attorney General's help because "future actions of third

parties *can* support standing where those parties have 'historically' behaved in a certain manner." LUPE Br. 54 (quoting *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019)). But the LUPE Plaintiffs make no allegations to suggest that any specific prosecutor—let alone a prosecutor with jurisdiction over Plaintiffs or their members—has a "history" of requesting assistance from the Attorney General. So their standing theory does indeed "rest on speculation about the decisions of independent actors"—here unnamed district or county attorneys where Plaintiffs or their members may or may not reside at a time that Plaintiffs or their members may or may not be affected by S.B. 1. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013).

**B.** Plaintiffs also argue that *OCA-Greater Houston* and *TDP I* defeat the Secretary's standing arguments. LUPE Br. 49-50. But there are at least two problems with this response.

*First*, the traceability analysis in both *OCA-Greater Houston* and *TDP I* (which merely applied *OCA-Greater Houston*) is inconsistent with the way the Supreme Court has recently articulated it.[12] To have standing, a plaintiff's injury must be "fairly traceable *to the defendant's challenged behavior*." *Dep't of Com.*, 139 S. Ct. at 2565 (emphasis added). That means that plaintiffs must identify a "way in which *the defendants* . . . will act to enforce*" the challenged law. *California v. Texas*, 141

---

[12] *OCA-Greater Houston*'s "bare holding" on standing—which depended in part on the Court's understanding of state law—was also recently criticized by the Texas Supreme Court, which "decline[d] to follow" its "conclusory . . . determination" that the invalidity of any provision of the Election Code is fairly traceable to and redressable by the State itself. *Abbott v. Mexican Am. Legis. Caucus, Tex. House of Representatives*, 647 S.W.3d 681, 698 (Tex. 2022).

S. Ct. 2104, 2114 (2021) (emphasis added). Thus, the plaintiff must point to the defendant's "action or conduct [that] has caused or will cause the[ir] injury." *Id.*

*OCA-Greater Houston* and *TDP I* fail to identify any "action or conduct" on the part of the Secretary to support its traceability analysis. Instead, those decisions casually invoke the Secretary's role as "chief election officer of the state" and her obligation to "obtain and maintain uniformity in the application, operation, and interpretation of" the Election Code. *OCA-Greater Houston*, 867 F.3d at 613-14; *see also TDP I*, 961 F.3d at 399. But neither her title as chief election officer nor her general duty to maintain uniformity in the application of the Election Code constitutes any "action or conduct," *California*, 141 S. Ct. 2114, that would result in her enforcement of the provisions of S.B. 1 against Plaintiffs. After all, the mere fact that the Secretary is the "chief election officer of the state," Tex. Elec. Code § 31.001, does not cause Plaintiffs to suffer any injury. Likewise, nothing in Plaintiffs' operative complaints shows how the Secretary's general duty to "prepare detailed and comprehensive written directives and instructions" to ensure uniformity in "application, operation, and interpretation" of the Election Code, *id.* § 31.003, results in enforcement of more than three dozen provisions of S.B. 1 against them. Indeed, that provision is not "a delegation of authority to care for any [*i.e.*, every] breakdown in the election process." *TDP II*, 978 F.3d at 180 (quoting *Bullock v. Calvert*, 480 S.W.3d 367, 372 (Tex. 1972) (Reavley, J.)).

*Second*, even if *OCA-Greater Houston* and *TDP I* were consistent with the Supreme Court's standing jurisprudence on traceability, the two cases are of far more limited application here than Plaintiffs suggest. "[S]tanding is not dispensed in

gross," so Plaintiffs must plausibly allege "standing to challenge *each provision* of law at issue." *In re Gee*, 941 F.3d 153, 161-62 (5th Cir. 2019) (per curiam) (emphasis added). Yet *OCA-Greater Houston* involved a post-enforcement challenge to a *single* provision of the Election Code that required voter-interpreters to be a registered voter of the county in which the voter needing interpretation resides. 867 F.3d at 609. Likewise, *TDP I* involved a challenge to one provision of Texas law allowing voters 65-and-over to vote by mail. 961 F.3d at 394-95. But here, Plaintiffs challenge more than *three dozen* provisions of Texas law. At most, then, the traceability analysis in *OCA-Greater Houston* and *TDP I* is instructive for cases involving laws similar to the ones at issue in those cases. But those cases simply could not have presaged that the Secretary enforces more than three dozen provisions of S.B. 1, years before that law was even enacted—in part to clarify which state officials enforced which aspects of the Texas Election Code.

## CONCLUSION

The Court should reverse the district court's orders concluding that Plaintiffs' section 1983 claims can proceed against the Secretary and the Attorney General under the *Ex parte Young* exception to sovereign immunity and that Plaintiffs established Article III standing to sue the Secretary and the Attorney General.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

JUDD E. STONE II
Solicitor General

/s/ William F. Cole
WILLIAM F. COLE
Assistant Solicitor General
William.Cole@oag.texas.gov

Counsel for Defendants-Appellants

## CERTIFICATE OF SERVICE

On March 20, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/William F. Cole
WILLIAM F. COLE

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)—which was extended by 2,500 words by order of the Court—because it contains 8,991 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ William F. Cole
WILLIAM F. COLE